# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:

**Cheryl Lynn DeClouet**

Debtor(s)

Attorney Phone No:  **(214) 810-5294**

Case No:  **14-30153-HDH-13**
DATED:  **1/13/2014**
Chapter:  **13**
EIN:
Judge:

### DEBTOR'S(S') CHAPTER 13 PLAN AND MOTION FOR VALUATION
### SECTION I
### DEBTOR'S(S') CHAPTER 13 PLAN - SPECIFIC PROVISIONS
### FORM REVISED 11-4-2012

This Plan contains non-standard provisions in Section IV (last page):  ☐ yes  ☒ no

**A.  DEBTOR PAYMENTS**  DEBTOR(S) PROPOSES TO PAY TO THE TRUSTEE THE SUM OF:

MONTHS 1 TO 60          $200.00   PER MONTH

FOR A TOTAL OF  **$12,000.00**  ("BASE AMOUNT").                              .

FIRST PAYMENT IS DUE  _____ .

THE ESTIMATED UNSECURED CREDITORS POOL IS
_____**$0.00**_____  calculated as:  _____**$0.00**_____  (Disposable
income per § 1325(b)(2)) x  **36 months**  (Applicable
Commitment Period per § 1325(b)(4)), but not less than
Debtor's equity in non-exempt property:  **$15,793.36**
pursuant to § 1325(a)(4).

**B.  ADMINISTRATIVE AND DSO CLAIMS:**

1.  **CLERK'S FILING FEE:**  Total filing fees paid through the plan, if any, are  _____**$0.00**_____  and shall be paid in full prior to disbursements to any other creditor.

2.  **TRUSTEE FEES AND NOTICING FEES:** Trustee fees and any noticing fees shall be paid first out of each disbursement and as provided in General Order 2010-01.

3.  **DOMESTIC SUPPORT OBLIGATIONS:**  Prior to discharge, Debtor will pay all post-petition Domestic Support Obligations (as defined in § 101(14A)) directly to the holder(s) of such obligation(s), unless payment through the Plan as hereinafter provided is agreed to in writing by the respective holder(s) of the claim(s) or their agent(s).  Pre-petition Domestic Support Obligations per Schedule "E" shall be paid the following monthly payments:

| DSO CLAIMANT(S) | SCHEDULED AMOUNT(S) | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| | | | |

**C.  ATTORNEY FEES:**  TO  _____**Herrin & Wright, PLLC**_____ , TOTAL: **$3,500.00** ;
_____**$600.00**_____  PRE-PETITION;  **$2,900.00**  THROUGH TRUSTEE.  PRE-CONFIRMATION PAYMENTS TO DEBTOR'S ATTORNEY WILL BE PER THE AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS.  POST-CONFIRMATION PAYMENTS TO DEBTOR'S ATTORNEY WILL BE MADE FROM FUNDS REMAINING AFTER PAYMENT OF ADMINISTRATIVE AND DSO CLAIMS AS PROVIDED ABOVE ('B') AND EACH SPECIFIED MONTHLY PLAN PAYMENT TO SECURED CREDITORS ('D' AND/OR 'E' BELOW) BEFORE ANY PAYMENT TO PRIORITY CREDITORS ('H' BELOW) OR UNSECURED CREDITORS ('I' AND 'J' BELOW).

**D.  HOME MORTGAGE ARREARAGE:**

| MORTGAGEE | SCHED. ARR. AMT | DATE ARR. THROUGH | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| Seterus Inc | $6,000.00 | | 0.00% | Month(s) 17-53 | Pro-Rata |
| Wells Fargo Bank Nv Na | $600.00 | | 0.00% | Month(s) 17-53 | Pro-Rata |

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

If pursuant to this Plan, the Debtor pays through the Trustee the Allowed pre-petition Home Mortgage Arrearage Claim Amount to any Mortgagee identified in paragraph "D" or its assignee(s), while timely making all required post-petition mortgage payments, upon discharge, the mortgage will be reinstated according to its original terms, extinguishing any right of the Mortgagee or its assignee(s) to recover any amount alleged to have arisen prior to the filing of the petition.

### E.(1)  SECURED CREDITORS--PAID BY THE TRUSTEE

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| | | | | | |

### E.(2)(a)  SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE--NO CRAM DOWN:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| | | | | | |

### E.(2)(b)  SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE--CRAM DOWN:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| | | | | | |

*TO THE EXTENT THE VALUE AMOUNT IN E.(2)(b) IS LESS THAN THE SCHEDULED AMOUNT IN E.(2)(b), THE CREDITOR SHALL HAVE THE OPTION OF REQUIRING THE DEBTOR TO SURRENDER THE COLLATERAL BY OBJECTING TO THE PROPOSED TREATMENT.*

**IN THE EVENT THAT A CREDITOR OBJECTS TO THE TREATMENT PROPOSED IN PARAGRAPH E.(2)(b) THE DEBTOR RETAINS THE RIGHT TO SURRENDER THE COLLATERAL TO THE CREDITOR IN SATISFACTION OF THE CREDITOR'S CLAIM.  IF THE DEBTOR ELECTS TO SURRENDER THE COLLATERAL, THEN THE AUTOMATIC STAY WILL BE TERMINATED AS TO SUCH COLLATERAL UPON ENTRY OF THE ORDER CONFIRMING THE PLAN, UNLESS OTHERWISE ORDERED BY THE COURT.**

**ABSENT SUCH OBJECTION, THE CREDITOR(S) LISTED IN "E.(2)(b)" SHALL BE DEEMED TO HAVE "ACCEPTED" THE PLAN PER SECTION 1325(a)(5)(A) OF THE BANKRUPTCY CODE AND WAIVED THEIR RIGHTS UNDER SECTION 1325(a)(5)(B) AND (C) OF THE BANKRUPTCY CODE.**

*THE VALUATION OF COLLATERAL AND INTEREST RATE TO BE PAID ON THE ABOVE SCHEDULED CLAIMS IN E(1) AND E(2)(a) AND (b) WILL BE FINALLY DETERMINED AT CONFIRMATION.  THE CLAIM AMOUNT WILL BE DETERMINED BASED ON A TIMELY FILED PROOF OF CLAIM AND THE TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC".)*

*EXCEPT FOR "VALUATION" AND "INTEREST RATE," CONFIRMATION HEREOF SHALL BE WITHOUT PREJUDICE TO THE DEBTOR'S, THE TRUSTEE'S, OR ANY SECURED CREDITOR'S RIGHT TO A LATER DETERMINATION OF THE ALLOWED AMOUNT OF ANY CREDITOR'S SECURED CLAIM.  TO THE EXTENT SUCH CLAIM IS ALLOWED FOR AN AMOUNT GREATER OR LESSER THAN THE "SCHEDULED AMOUNT" PROVIDED FOR ABOVE, AFTER THE TRCC IS FINAL, DEBTOR WILL MODIFY THE PLAN TO FULLY PROVIDE FOR SUCH ALLOWED SECURED CLAIM.*

### F.  SECURED CREDITORS--COLLATERAL TO BE SURRENDERED:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|
| | | | |

*The Automatic Stay will terminate as to Collateral listed in this paragraph F. upon filing hereof but nothing in this Plan shall be deemed to abrogate any applicable non-bankruptcy law contract rights of the Debtor(s).*

### G.  SECURED CREDITORS--PAID DIRECT BY DEBTOR

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|
| **Seterus Inc Homestead** | **$116,032.00** | **$135,290.00** | |

Case No:    14-30153-HDH-13
Debtor(s):  **Cheryl Lynn DeClouet**

| | | |
|---|---|---|
| **Us Bank Home Mortgage**<br>**2220 Bellaire** | $48,992.00 | $75,000.00 |
| **Wells Fargo Bank Nv Na**<br>**Homestead** | $25,431.00 | $19,258.00 |

**H.  PRIORITY CREDITORS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS:**

| CREDITOR | SCHED. AMT. | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| | | | |

**I.  SPECIAL CLASS:**

| CREDITOR /<br>JUSTIFICATION | SCHED. AMT. | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| | | | |

**J.  UNSECURED CREDITORS**

| CREDITOR | SCHED. AMT. | COMMENT |
|---|---|---|
| **Capital 1 Bank** | $832.00 | |
| **Chase** | $6,070.00 | |
| **Citibank Sd, Na** | $4,771.00 | |
| **Comenity Bank/vctrssec** | $40.00 | |
| **Escallate Llc** | $781.00 | |
| **GECRB / HH Gregg** | $2,273.00 | |
| **M.a.r.s.inc** | $175.00 | |
| **Victoria's Secret** | $0.00 | |
| TOTAL SCHEDULED UNSECURED: | $14,942.00 | |

UNSECURED CREDITORS ARE NOT GUARANTEED A DIVIDEND WHEN A PLAN IS CONFIRMED, SEE GENERAL ORDER 2010-01.  ALLOWED GENERAL UNSECURED CLAIMS MAY RECEIVE A PRO-RATA SHARE OF THE UNSECURED CREDITORS' POOL, BUT NOT LESS THAN THE SECTION 1325(a)(4) AMOUNT SHOWN IN SECTION I "A" ABOVE LESS ALLOWED ADMINISTRATIVE AND PRIORITY CLAIMS, AFTER THE TRCC BECOMES FINAL.  A PROOF OF CLAIM MUST BE TIMELY FILED TO BE ALLOWED.

**K.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES:**

| § 365 PARTY | ASSUME/REJECT | CURE AMOUNT | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|
| | | | | |

**L.  CLAIMS TO BE PAID:**

'TERM (APPROXIMATE)' SHOWN HEREIN GIVES THE ESTIMATED NUMBER OF MONTHS FROM THE PETITION DATE REQUIRED TO FULLY PAY THE  ALLOWED CLAIM.  IF ADEQUATE PROTECTION PAYMENTS HAVE BEEN AUTHORIZED AND MADE, THEY WILL BE APPLIED TO PRINCIPAL AS TO  UNDER-SECURED  CLAIMS AND ALLOCATED BETWEEN INTEREST AND PRINCIPAL AS TO OVER-SECURED  CLAIMS.  *PAYMENT PURSUANT TO THIS PLAN WILL ONLY BE MADE TO SECURED, ADMINISTRATIVE, PRIORITY AND UNSECURED CLAIMS THAT HAVE BEEN ALLOWED OR THAT THE DEBTOR HAS AUTHORIZED IN AN ADEQUATE PROTECTION AUTHORIZATION.  GENERAL UNSECURED CLAIMS WILL NOT RECEIVE ANY PAYMENT UNTIL AFTER THE TRCC BECOMES FINAL.*

*THE "SCHED. AMT." SHOWN IN THIS PLAN SHALL NOT DETERMINE THE "ALLOWED AMOUNT" OF ANY CLAIM.*

**M.  ADDITIONAL PLAN PROVISIONS:**

SEE SECTION IV ON LAST PAGE FOR ADDITIONAL PLAN PROVISIONS, IF ANY.

Case No:    14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

**SECTION II**
**DEBTOR'S(S') CHAPTER 13 PLAN--GENERAL PROVISIONS**
**FORM REVISED 11-4-2012**

### A.  SUBMISSION OF DISPOSABLE INCOME

Debtor(s) hereby submits such portion of future earnings or other future income as herein provided to the supervision and control of the Trustee as necessary for the execution of the Plan as herein provided.

Debtor proposes to PAY TO THE TRUSTEE the Base Amount indicated in Section I, Part "A" hereof.  If applicable, cause exists for payment over a period of more than three (3) years.

If the Plan does not pay 100% to all creditors, the Base Amount shall not be less than the sum of the allowed administrative expenses plus the allowed priority and secured claims (with interest if applicable) plus the greater of the unsecured creditors' pool, or the 11 USC 1325(a)(4) amount (Best Interest Test).

Payment of any claim against the Debtor may be made from the property of the estate or property of the Debtor(s), as herein provided.

### B.  ADMINISTRATIVE EXPENSES, DSO CLAIMS & PAYMENT OF TRUSTEE'S STATUTORY FEES AND NOTICING FEES

The Administrative Expenses of the Trustee shall be paid in full pursuant to 11 U.S.C. Sec 105(a), 503(b), 1326(b)(2), and 28 U.S.C. Sec 586(e)(1)(B).  The Trustee's Fees & Expenses, not to exceed ten percent (10%) allowed pursuant to 28 U.S.C. Sec 586(e)(1)(B), shall be deducted from each payment.  Additionally, the Trustee is authorized to charge and collect Noticing Fees as indicated in Section I, Part "B" hereof, pursuant to local rule.  No Trustee fee will be collected on Noticing Fees.

Debtor will pay in full all Domestic Support Obligations that are due before discharge, including section 507(a)(1) Priority claims due before the petition was filed, but only to the extent provided for in this Plan.

### C.  ATTORNEY FEES

Debtor's(s') Attorney Fees totaling the amount indicated in Section I Part "C", shall be paid by the Trustee in the amount shown as "through Trustee", pursuant to this Plan and the Debtor's(s') Authorization for Adequate Protection Disbursements.

### D.  PRINCIPAL RESIDENCE ARREARAGES (HOME MORTGAGE)

Arrearage on claims secured only by a security interest in the Debtor's(s') principal residence shall be paid by the Trustee in the allowed pre-petition arrearage amount, and at the Annual Percentage rate of interest indicated in Section I, Part "D" herein.  To the extent interest is provided, interest will be calculated from the date of the Petition.  The principal balance owing upon confirmation of the Plan on the allowed pre-petition arrearage amount shall be reduced by the total of adequate protection paid less any interest (if applicable) made to the respective creditor by the Trustee.  Unless otherwise provided, post-petition payments may be paid 'Direct' by Debtor(s), beginning with the first payment due after the 'ARR. THROUGH' date in Section I, Part "D".  Such creditors shall retain their liens.  To the extent an arrearage claim is allowed in an amount in excess of the Sched. Arr. Amt., the Debtor will promptly Modify the Plan to provide for full payment of the allowed amount, or for surrender of the collateral, at Debtor's election.  If Debtor elects to surrender the collateral, the creditor may retain all pre-surrender payments received pursuant hereto.

If pursuant to this Plan, the Debtor pays through the Trustee the Allowed pre-petition Home Mortgage Arrearage Claim Amount to any Mortgagee identified in paragraph "D" or its assignee(s), while timely making all required post-petition mortgage payments, upon discharge, the mortgage will thereupon be reinstated according to its original terms, extinguishing any right of the Mortgagee or its assignee(s) to recover any amount alleged to have arisen prior to the filing of the petition.

### E.(1)  SECURED CLAIMS TO BE PAID BY TRUSTEE

The claims listed in Section I, Part "E(1)" shall be paid by the Trustee as "SECURED" to the extent of the lesser of the Claim Amount (per timely filed Proof of Claim not objected to by a party in interest), or the VALUE as shown of the collateral, which will be retained by the Debtor(s).  Any amount claimed in excess of the value shall automatically be "split" and treated as unsecured as indicated in Section I, Part "H" or "J", per 11 U.S.C. Sec. 506(a).  Such creditors shall retain their liens on the collateral described in Section I, Part "E(1)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of confirmation hereof, or if the value shown is greater than the Claim Amount, from the date of the Petition, up to the amount by which the claim is over-secured.  The principal balance owing upon confirmation of the Plan on the allowed secured claim shall be reduced by the total of adequate protection paid less any interest (if applicable) paid to the respective creditor by the Trustee.

Case No:    14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

### E.(2)(a)  SECURED SECTION 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--NO CRAM DOWN

Claims in Section I, Part "E(2)(a)" are either debts incurred within 910 days of the Petition date secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor or debts incurred within one year of the petition date secured by any other thing of value.

The claims listed in Section I, Part "E(2)(a)" shall be paid by the Trustee as "SECURED" to the extent of the "ALLOWED AMOUNT" (per timely filed Proof of Claim not objected to by a party in interest.)  Such creditors shall retain their liens on the collateral described in Section I, Part "E(2)(a)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of the Petition.  The principal balance owing upon confirmation of the Plan on the allowed secured claim shall be reduced by the total of adequate protection paid less any interest (if applicable) paid to the respective creditor by the Trustee.

### E.(2)(b)  SECURED SECTION 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--CRAM DOWN

The claims listed in Section I, Part "E(2)(b)" shall be paid by the Trustee as "SECURED" to the extent of the LESSER OF the Claim Amount (per timely filed Proof of Claim not objected to by a party in interest), or the VALUE as shown of the collateral, which will be retained by the Debtor(s).  Any amount claimed in excess of the value shall automatically be "split" and treated as unsecured as indicated in Section I, Part "H" or "J", per 11 U.S.C. Sec. 506(a).  Such creditors shall retain their liens on the collateral described in Section I, Part "E(2)(b)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of confirmation hereof, or if the value shown is greater than the Claim Amount, from the date of the Petition, up to the amount by which the claim is over-secured.

**IF THE "VALUE" SHOWN IN "E(2)(b)" ABOVE IS LESS THAN THE "SCHED. AMT." SHOWN, THE "ALLOWED AMOUNT" OF THE SECURED PORTION OF THE CLAIM SHALL NOT EXCEED THE "VALUE" DETERMINED AT CONFIRMATION.**

**IN THE EVENT THAT A CREDITOR OBJECTS TO THE TREATMENT PROPOSED IN THIS PARAGRAPH, THE DEBTOR RETAINS THE RIGHT TO SURRENDER THE COLLATERAL TO THE CREDITOR IN SATISFACTION OF THE CREDITOR'S CLAIM.  IF THE DEBTOR ELECTS TO SURRENDER THE COLLATERAL, THEN THE AUTOMATIC STAY WILL BE TERMINATED AS TO SUCH COLLATERAL UPON ENTRY OF THE ORDER CONFIRMING THE PLAN, UNLESS OTHERWISE ORDERED BY THE COURT.**

**ABSENT SUCH OBJECTION, THE CREDITOR LISTED IN "E.(2)(b)" SHALL BE DEEMED TO HAVE "ACCEPTED" THE PLAN PER SECTION 1325(a)(5)(A) OF THE BANKRUPTCY CODE AND WAIVED ITS RIGHTS UNDER SECTION 1325(a)(5)(B) AND (C) OF THE BANKRUPTCY CODE.**

To the extent a secured claim NOT provided for in Section I Part "D", "E(1)" or "E(2)" is allowed by the Court, Debtor(s) will pay the claim 'DIRECT' per the contract.

Each secured claim shall constitute a separate class.

### F.    SATISFACTION OF CLAIM BY SURRENDER OF COLLATERAL

The claims listed in Section I, Part "F" shall be satisfied as 'SECURED' to the extent of the VALUE of the collateral, as shown, by SURRENDER of the collateral by the Debtor(s) on or before Confirmation.  Any amount claimed in excess of the value of the collateral as shown, to the extent it is allowed, shall be automatically "split" and treated as indicated in Section I, Part "H" or "J" per 11 U.S.C. Sec 506(a).

Each secured claim shall constitute a separate class.

### G.   DIRECT PAYMENTS BY DEBTOR(S)

All secured claims listed in Section I, Part "G" shall be paid 'DIRECT' by the Debtor(s) in accordance with the terms of their agreement, unless otherwise provided in Section IV.

Each secured claim shall constitute a separate class.

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

## H.   PRIORITY CLAIMS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS

All allowed claims (i.e., those for which a Proof of Claim is timely filed and not objected to by a party in interest) entitled to priority under Section 507(a) of the Bankruptcy Code, other than Section 507(a)(1) Domestic Support Obligations, will be paid in full (except as provided in Section 1322(a)(4)) in deferred installments, unless the holder of such claim agrees to a different treatment of such claim. Failure to object to confirmation of this Plan shall not be deemed "acceptance" of the "SCHED AMT." shown in Section I Part "H" hereof. The claims listed in Section I, Part "H" shall be paid their allowed amount by the Trustee in full as Priority without interest at the monthly amount indicated or pro rata.

Priority claims for taxes are unsecured and shall not accrue interest or penalty subsequent to the filing, and such interest or penalty as might otherwise accrue thereafter shall be discharged upon completion of the Plan.

## I.   CLASSIFIED UNSECURED CLAIMS

Classified unsecured claims shall be treated as allowed by the Court.

## J.   GENERAL UNSECURED CLAIMS TIMELY FILED

All other claims not otherwise provided for herein shall be designated general unsecured claims. Payments, if any, to general unsecured claims will be on a pro rata basis. All allowed general unsecured claims shall be paid in an amount under the Plan which is not less than the amount that would be paid on such claims if the estate of the Debtor(s) were liquidated under Chapter 7 of the Bankruptcy Code on the date of filing of the Petition herein.

Any delinquencies under the Plan on allowed secured claims, allowed priority claims and allowed classified unsecured claims must be brought current before any payments are made on general unsecured claims.

General unsecured claims may be paid concurrently with secured, priority and classified unsecured claims so long as each secured, priority, and classified unsecured creditor is receiving not less than its monthly installment as provided herein. If the indicated monthly amount is insufficient to fully pay the monthly payment provided for such allowed secured, priority or classified unsecured claim(s) respectively, the Trustee shall pay in the following order: each classification of such allowed secured claim(s), priority claim(s) and classified unsecured claim(s) pro rata until all such payments within each subclass are current, prior to any other payments to allowed general unsecured claims.

General unsecured claims totaling the amount indicated in Section I Part "J", shall be paid by the Trustee, a PRO RATA share of the unsecured creditors' pool estimated in Section I, Part "A" but not less than the amount indicated pursuant to Section 1325(a)(4) less allowed administrative and priority claims, or the estimated % (if any) shown above.

## K.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

As provided in Section 1322(b)(7) of the Bankruptcy Code, the Debtor(s) assumes or rejects the executory contracts or unexpired leases with the parties so indicated in Section I, Part "K".

Assumed lease and executory contract arrearage amounts shall be paid by the Trustee as indicated in Section I Part "K".

## L.   CLAIMS TO BE PAID

See Section I, Part "L" of the Plan.

## M.   ADDITIONAL PLAN PROVISIONS

The provisions set forth in Section IV are additional Plan provisions not otherwise referred to herein.

## N.   POST-PETITION CLAIMS

Claims filed under Section 1305 of the Bankruptcy Code shall be paid as allowed. To the extent necessary, Debtor will modify this Plan.

## O.   LATE FILED CLAIMS AND CLAIMS NOT FILED

Late filed unsecured claims on pre-petition debt shall be paid pro rata, only after all other timely filed unsecured claims are paid in full. Such payment shall be before any payment on pre-petition non-pecuniary penalties. Late filed claims on priority pre-petition claims shall be paid in full before any payment on late filed general unsecured pre-petition claims. Late filed secured claims shall be paid in full before any payment on late filed priority claims.

A claim not filed with the Court will not be paid by the Trustee post-confirmation regardless of its treatment in Section I or on the AAPD.

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

**P.  CLAIMS FOR PRE-PETITION NON-PECUNIARY PENALTIES, FINES, FORFEITURES, MULTIPLE, EXEMPLARY OR PUNITIVE DAMAGES**

Any unsecured claim for non-pecuniary penalty, fines, forfeitures, multiple, exemplary or punitive damages, expressly including IRS penalty to date of petition on unsecured and/or priority claims, shall be paid only a pro rata share of any funds remaining after all other unsecured claims including late filed claims, shall have been paid in full.

**Q.  CLAIMS FOR POST-PETITION PENALTIES AND INTEREST**

No interest, penalty, or additional charge shall be allowed on any pre-petition claims subsequent to the filing of the petition, unless expressly provided herein.

**R.  BUSINESS CASE OPERATING REPORTS**

Upon confirmation, business debtors are no longer required to file operating reports with the Trustee, unless the Trustee requests otherwise.  However, a final operating report through the date of confirmation is required if operating reports were previously required.  Confirmation hereof shall terminate the Trustee's duties to investigate or monitor the debtor's business affairs, assets or liabilities.

**S.  NO TRUSTEE'S LIABILITY FOR DEBTOR'S POST CONFIRMATION OPERATION AND BAR DATE FOR CLAIMS FOR PRECONFIRMATION OPERATIONS**

The Trustee shall not be liable for any claim arising from the post-confirmation operation of Debtor's business.  Any claims against the Trustee arising from the pre-confirmation operation of the Debtor's business must be filed with the Bankruptcy Court within sixty (60) days after entry by the Bankruptcy Court of the Order of Confirmation hereof, or be barred.

**T.  DISPOSAL OF DEBTOR'S NON-EXEMPT PROPERTY AND TRUSTEE PAYMENTS UPON POST CONFIRMATION CONVERSION OR DISMISSAL**

Debtor shall not dispose of or encumber any non-exempt property or release or settle any lawsuit or claim by Debtor(s), prior to discharge, without consent of the Trustee or order of the Court after notice to the Trustee and all creditors.

Upon conversion or dismissal of the case post confirmation, the Trustee shall disburse all funds on hand in accordance with this Plan.

**U.  ORDER OF PAYMENT**

All claims shown in Section I, will be paid in the following order from each disbursement, to the extent allowed:

    1st --   Administrative Fees and DSO claims in "B"
    2nd --  Assumed lease and executory contract arrearage claims in "K"
    3rd --   Specified monthly dollar amounts to secured claims in "D", "E(1)", and "E(2)"
    4th --   Pro-rata among attorney fees in "C"
    5th --   Pro-rata among secured claims in "D", "E(1)" and "E(2)"
    6th --   Specified monthly dollar amounts to priority claims in "H"
    7th --   Pro-rata among priority claims in "H"
    8th --   Specified monthly dollar amounts to special class claims in "I"
    9th --   Pro-rata among special class claims in "I"
    10th -- Pro-rata among claims in "J" other than late filed and penalty claims
    11th -- Pro-rata among late filed priority claims in "H"
    12th -- Pro-rata among late filed general unsecured claims in "J"
    13th -- Pro-rata among penalty claims in "J".

Case No:    14-30153-HDH-13
Debtor(s):  **Cheryl Lynn DeClouet**

---

### V.    TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC") PROCEDURE

Pursuant to General Order 2010-01, Paragraph 8, as soon as practicable after the governmental claims bar date, the Trustee shall prepare and serve on Debtor's counsel, all creditors who were scheduled, all creditors who filed claims and any party that has filed a Notice of Appearance, a Trustee's Recommendation Concerning Claims ("TRCC") and Notice of Hearing and Pre-Hearing Conference thereon.  The TRCC may be deemed in part to be an Objection to Claims.  Objections to the TRCC shall be filed within thirty (30) days from the date of service of the TRCC.  Unless an objection is timely filed as to the treatment of any claim, the claim will be allowed or approved only as described in the TRCC, and such treatment will be binding on all parties without further order of the court.  All unresolved objections to the TRCC shall be deemed waived if not timely filed or if the proponent of any such objection fails to attend the Trustee's Pre-Hearing Conference or give the Trustee prior written notice that a hearing is necessary.  To the extent secured and/or priority claims being paid through the Plan by the Trustee are allowed for amounts in excess of the amounts provided for in this Plan, the Debtor(s) will promptly modify the Plan to provide for full payment of the allowed amount.  After the TRCC becomes final, should the Plan then become infeasible and/or "insufficient", the Trustee shall be permitted to move the Court to dismiss the case for such reason.

## SECTION III
## MOTION FOR VALUATION

Pursuant to Bankruptcy Rule 3012, for purposes of 11 U.S.C. Sec 506(a) and § 1325(a)(5) and for purposes of determination of the amounts to be distributed to holders of secured claims who do not accept the Plan, Debtor(s) hereby moves the Court to value the collateral described in Section I, Part "E" and Part "F", as the LESSER of the value set forth therein, or any value claimed on the proof of claim.   **Any objection to valuation shall be filed at least seven (7) days prior to the date of the Trustee's pre-hearing conference regarding Confirmation, or be deemed waived.**

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

## SECTION IV
## ADDITIONAL PLAN PROVISIONS

Additional (non-standard) Plan provisions, if any,   <u>CAPITALIZED, BOLD AND UNDERSCORED ARE AS FOLLOWS:</u>
**None.**

Respectfully submitted,                 Case No.:   **14-30153-HDH-13**

**/s/ C. Daniel Herrin**
C. Daniel Herrin, Debtor's(s') Attorney

**24065409**
State Bar Number

**Herrin & Wright, PLLC**
4925 Greenville Avenue
Suite 200
Dallas, TX 75206

Bar Number: 24065409
Phone: (214) 810-5294

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**
Revised 11-1-05

| | | |
|---|---|---|
| IN RE: | § | |
| **Cheryl Lynn DeClouet** | § | CASE NO: **14-30153-HDH-13** |
| | § | |
| Debtor(s) | § | |
| | § | |

## AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS   DATED: _1/13/2014_.

The undersigned Debtor(s) hereby request that payments received by the Trustee prior to confirmation be disbursed in accordance with General Order 2005-05, as indicated below:

| | First (1) | Second (2) (Other) |
|---|---|---|
| Periodic Payment Amount | | **$200.00** |
| Disbursements | First (1) | Second (2) (Other) |
| Account Balance Reserve | $5.00 | $0.00 |
| Trustee Fee | $19.50 | $20.00 |
| Filing Fee | $0.00 | $0.00 |
| Noticing Fee | $16.80 | $0.00 |
| **Subtotal Expenses/Fees** | **$41.30** | **$20.00** |
| Available for Adequate Protection, Attorney Fees and Undisputed Priority Claims: | **$158.70** | **$180.00** |

## SECURED CREDITORS:

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

| | |
|---|---|
| Total Adequate Protection Payments for Secured Creditors: | **$0.00** |

## SPECIAL CLASS CREDITORS:

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

| | |
|---|---|
| Total Adequate Protection Payments for Special Class Creditors: | **$0.00** |
| Total Adequate Protection Payments: | **$0.00** |
| Funds Available For Debtor's Attorney First Disbursement: | **$158.70** |
| Funds Available For Debtor's Attorney Future Disbursements: | **$180.00** |
| Available For Secured Creditors as Authorized by the Plan: | **$180.00**** |

---

** Amount is based on the plan payment scheduled on the month following the month when the attorney fees are paid in full.
*Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas - (210) 561-5300.*

(H)  **Cheryl Lynn DeClouet**
(W)
(C#)  **14-30153-HDH-13**

**AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS**

DATED: __**1/16/2014**_____

__**/s/ C. Daniel Herrin**_____          _____
Attorney for Debtor(s)                                                              Trustee, Attorney for Trustee or Trustee's Representative

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

IN RE: **Cheryl Lynn DeClouet**  CASE NO.  **14-30153-HDH-13**

Debtor

CHAPTER  **13**

Joint Debtor

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 20, 2014, a copy of the attached Chapter 13 Plan, with any attachments, was served on each party in interest listed below, by placing each copy in an envelope properly addressed, postage fully prepaid in compliance with Local Rule 9013 (g).

**/s/ C. Daniel Herrin**

C. Daniel Herrin
Bar ID:24065409
Herrin & Wright, PLLC
4925 Greenville Avenue
Suite 200
Dallas, TX 75206
(214) 810-5294

| | | |
|---|---|---|
| Attorney General of Texas<br>Collections Div Bankruptcy Sec<br>P.O. Box 12548<br>Austin, TX 78711-2548 | Cheryl Lynn DeClouet<br>1328 Clearwater Drive<br>Grand Prairie, TX 75052 | GECRB / HH Gregg<br>xxxxxxxxxxxx8290<br>Attn:  Bankruptcy<br>PO Box 103104<br>Roswell, GA 30076 |
| Bank of America<br>xxxx8865<br>Attn: Correspondence Unit/CA6-919-02-41<br>PO Box 5170<br>Simi Valley, CA 93062 | Citibank Sd, Na<br>xxxxxxxxxxxx8740<br>Attn: Centralized Bankruptcy<br>PO Box 20363<br>Kansas City, MO 64195 | Internal Revenue Service<br>Department of the Treasury<br>P.O. Box 7346<br>Philadelphia, PA 19101-7 |
| Capital 1 Bank<br>xxxxxxxxxxxx6491<br>Attn: Bankruptcy Dept.<br>PO Box 30285<br>Salt Lake City, UT 84130 | Comenity Bank/vctrssec<br>xxxxx5407 | Linebarger Goggan Blair & Sampson, LLP<br>2323 Bryan Street, Ste 1600<br>Dallas, Texas 75201 |
| Chase<br>xxxxxxxxxxxx8834<br>Po Box 15298<br>Wilmington, DE 19850 | Escallate Llc<br>xxxx2565<br>5200 Stoneham Rd<br>North Canton, OH 44720 | M.a.r.s.inc<br>xxx1744<br>5810 E Skelly Dr<br>Tulsa, OK 74135 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

IN RE: **Cheryl Lynn DeClouet** _____

*Debtor*

CASE NO. **14-30153-HDH-13**

_____

*Joint Debtor*

CHAPTER **13**

## CERTIFICATE OF SERVICE
(Continuation Sheet #1)

---

Marinosci Law Group
xx-xx963-1
14643 Dallas Parkway, Suite 750
Dallas, TX 75254

Victoria's Secret
xxxxx7344
Attention: Bankruptcy
PO Box 182125
Columbus, OH 43218


Seterus Inc
xxx5223
14523 Sw Millikan Way St
Beaverton, OR 97005

Wells Fargo Bank Nv Na
xxxxxxxxxxxxx0001
Attn: Deposits Bankruptcy MAC#
P6103-05K
PO Box 3908
Portland, OR 97208


Seterus Inc
14523 Sw Millikan Way St
Beaverton, OR 97005

Wells Fargo Bank Nv Na
Attn: Deposits Bankruptcy MAC#
P6103-05K
PO Box 3908
Portland, OR 97208


TEXAS COMPTROLLER OF PUBLIC
ACCOUNTS
REVENUE ACCOUNTING DIV -
BANKRUPTCY SECT
P.O. Box 13528
Austin, TX 78711-3528

TEXAS EMPLOYMENT COMMISSION
TEC BUILDING - BANKRUPTCY
101 E. 15th Street
Austin, TX 78778-0001


United States Trustee
1100 Commerce Street
Room 976
Dallas, Texas 75242-1496


Us Bank Home Mortgage
xxxxxxxxx6043
4801 Frederica St
Owensboro, KY 42301

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP        BDFTE# 00000004317111
15000 SURVEYOR BLVD SUITE 100
ADDISON, TX 75001
(972) 341-0500

Attorney for FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O
SETERUS, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST

<div align="center">

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

</div>

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-30153-HDH-13 |
| | § | |
| CHERYL LYNN DECLOUET, | § | |
| Debtor | § | CHAPTER 13 |

<div align="center">

**NOTICE OF APPEARANCE AND REQUEST FOR DUPLICATE
NOTICE COMBINED WITH REQUEST FOR ALL COPIES PURSUANT TO
BANKRUPTCY RULE 2002(a), (b) AND PLEADINGS PURSUANT
TO BANKRUPTCY RULES 3017(a) AND 9007**

</div>

Comes now BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP pursuant to

Bankruptcy Rules 9010 (b), 2002 (a), (b), 3017 (a), 9007, and files this Notice of Appearance

and Demand for Service of Papers as Counsel for FEDERAL NATIONAL MORTGAGE

ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC. ITS ASSIGNS

AND/OR SUCCESSORS IN INTEREST, party in interest in the captioned proceedings.

Request is hereby made that all notices given or required to be given in this case and in

any cases consolidated herewith, and all papers served or required to be served in this case and

in any cases consolidated herewith, be given to and served upon the undersigned attorneys at

the address and telephone number as follows:

<div align="center">

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**
15000 SURVEYOR BLVD SUITE 100
ADDISON, TX 75001
(972) 341-0500

</div>

<div align="center">Exhibit "B" - Page 1 of 4</div>

This request encompasses all notices and pleadings including, without limitation, notices of any orders, motions, pleadings or requests, formal or informal applications, disclosure statement or plan of reorganization or any other documents brought before this Court in this case.

This Notice of Appearance shall not be construed as authorization to serve counsel for  FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST with any summons and complaint or any service of process under Bankruptcy Rule 7001, et. seg.  The undersigned firm will not accept service of process in any adversary case for FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC. ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST.

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, additionally requests that the Debtor and the Clerk of the Court place the name and address of the undersigned attorney on any mailing matrix to be prepared or existing in the above-numbered case, and on any list of creditors to be prepared or existing in the above-numbered bankruptcy case.

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP


BY: /s/ STEVE TURNER_____     4/2/2014
STEVE TURNER
TX NO. 20341700
15000 SURVEYOR BLVD SUITE 100
ADDISON, TX 75001
Telephone: (972) 341-0500
Facsimile: (972) 341-0502
E-mail:  NDECF@BDFGROUP.COM
ATTORNEY FOR CLAIMANT

## CERTIFICATE OF SERVICE

I hereby certify that on April 02, 2014, a true and correct copy of the Notice of Appearance and Request for Duplicate Notice was served via electronic means as listed on the Court's ECF noticing system or by regular first class mail to the parties listed on the attatched list.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

BY: /s/ STEVE TURNER _____ 4/2/2014
STEVE TURNER
TX NO. 20341700
15000 SURVEYOR BLVD SUITE 100
ADDISON, TX 75001
Telephone: (972) 341-0500
Facsimile: (972) 341-0502
E-mail: NDECF@BDFGROUP.COM
ATTORNEY FOR CLAIMANT

**BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:**

**DEBTOR:**
CHERYL LYNN DECLOUET
1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX  75052

**DEBTOR'S ATTORNEY:**
C. DANIEL HERRIN
4925 GREENVILLE AVE
SUITE 200
DALLAS, TX  75206

**TRUSTEE:**
THOMAS D. POWERS
125 E. JOHN CARPENTER FRWY.
SUITE 1100
IRVING, TX  75062-2288

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:                                                  Case No:     **14-30153-HDH-13**
**Cheryl Lynn DeClouet, xxx-xx-1883**                   DATED:       **4/15/2014**
**1328 Clearwater Drive**                               Chapter:     13
**Grand Prairie, TX 75052**                             EIN:

Attorney Phone No:   **(214) 810-5294**                 Judge:

### DEBTOR'S(S') CHAPTER 13 PLAN AND MOTION FOR VALUATION
### SECTION I
### DEBTOR'S(S') CHAPTER 13 PLAN - SPECIFIC PROVISIONS
### FORM REVISED 11-4-2012

This Plan contains non-standard provisions in Section IV (last page):   ☐ yes   ☑ no

**A.** **DEBTOR PAYMENTS**   DEBTOR(S) PROPOSES TO PAY TO THE TRUSTEE THE SUM OF:

MONTHS 1 TO 12          $200.00   PER MONTH
MONTHS 13 TO 60        $425.00   PER MONTH

FOR A TOTAL OF   **$22,800.00**   ("BASE AMOUNT").                         .

FIRST PAYMENT IS DUE   **2/5/2014**   .

THE ESTIMATED UNSECURED CREDITORS POOL IS
**$0.00**   calculated as:   **$0.00**   (Disposable
income per § 1325(b)(2)) x   **36 months**   (Applicable
Commitment Period per § 1325(b)(4)), but not less than
Debtor's equity in non-exempt property:   **$10,793.36**
pursuant to § 1325(a)(4).

**B.** **ADMINISTRATIVE AND DSO CLAIMS:**

1.  **CLERK'S FILING FEE:**   Total filing fees paid through the plan, if any, are   **$0.00**   and shall be paid in full prior to disbursements to any other creditor.

2.  **TRUSTEE FEES AND NOTICING FEES:** Trustee fees and any noticing fees shall be paid first out of each disbursement and as provided in General Order 2010-01.

3.  **DOMESTIC SUPPORT OBLIGATIONS:**   Prior to discharge, Debtor will pay all post-petition Domestic Support Obligations (as defined in § 101(14A)) directly to the holder(s) of such obligation(s), unless payment through the Plan as hereinafter provided is agreed to in writing by the respective holder(s) of the claim(s) or their agent(s).  Pre-petition Domestic Support Obligations per Schedule "E" shall be paid the following monthly payments:

| DSO CLAIMANT(S) | SCHEDULED AMOUNT(S) | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
|  |  |  |  |

**C.** **ATTORNEY FEES:** TO   **Herrin & Wright, PLLC**   , TOTAL: **$3,500.00**   ;
**$600.00**   PRE-PETITION;   **$2,900.00**   THROUGH TRUSTEE.  PRE-CONFIRMATION PAYMENTS TO DEBTOR'S ATTORNEY WILL BE PER THE AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS.  POST-CONFIRMATION PAYMENTS TO DEBTOR'S ATTORNEY WILL BE MADE FROM FUNDS REMAINING AFTER PAYMENT OF ADMINISTRATIVE AND DSO CLAIMS AS PROVIDED ABOVE ('B') AND EACH SPECIFIED MONTHLY PLAN PAYMENT TO SECURED CREDITORS ('D' AND/OR 'E' BELOW) BEFORE ANY PAYMENT TO PRIORITY CREDITORS ('H' BELOW) OR UNSECURED CREDITORS ('I' AND 'J' BELOW).

**D.** **HOME MORTGAGE ARREARAGE:**

| MORTGAGEE | SCHED. ARR. AMT | DATE ARR. THROUGH | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|
| Seterus Inc | $6,000.00 |  | 0.00% | Month(s) 1-32 | Pro-Rata |
| Wells Fargo Bank Nv Na | $600.00 |  | 0.00% | Month(s) 1-32 | Pro-Rata |

Case No:    14-30153-HDH-13
Debtor(s):    **Cheryl Lynn DeClouet**

If pursuant to this Plan, the Debtor pays through the Trustee the Allowed pre-petition Home Mortgage Arrearage Claim Amount to any Mortgagee identified in paragraph "D" or its assignee(s), while timely making all required post-petition mortgage payments, upon discharge, the mortgage will be reinstated according to its original terms, extinguishing any right of the Mortgagee or its assignee(s) to recover any amount alleged to have arisen prior to the filing of the petition.

### E.(1)  SECURED CREDITORS--PAID BY THE TRUSTEE

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|

### E.(2)(a)  SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE--NO CRAM DOWN:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|

### E.(2)(b)  SECURED 1325(a)(9) CLAIMS PAID BY THE TRUSTEE--CRAM DOWN:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | % | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|---|

*TO THE EXTENT THE VALUE AMOUNT IN E.(2)(b) IS LESS THAN THE SCHEDULED AMOUNT IN E.(2)(b), THE CREDITOR SHALL HAVE THE OPTION OF REQUIRING THE DEBTOR TO SURRENDER THE COLLATERAL BY OBJECTING TO THE PROPOSED TREATMENT.*

**IN THE EVENT THAT A CREDITOR OBJECTS TO THE TREATMENT PROPOSED IN PARAGRAPH E.(2)(b) THE DEBTOR RETAINS THE RIGHT TO SURRENDER THE COLLATERAL TO THE CREDITOR IN SATISFACTION OF THE CREDITOR'S CLAIM.  IF THE DEBTOR ELECTS TO SURRENDER THE COLLATERAL, THEN THE AUTOMATIC STAY WILL BE TERMINATED AS TO SUCH COLLATERAL UPON ENTRY OF THE ORDER CONFIRMING THE PLAN, UNLESS OTHERWISE ORDERED BY THE COURT.**

**ABSENT SUCH OBJECTION, THE CREDITOR(S) LISTED IN "E.(2)(b)" SHALL BE DEEMED TO HAVE "ACCEPTED" THE PLAN PER SECTION 1325(a)(5)(A) OF THE BANKRUPTCY CODE AND WAIVED THEIR RIGHTS UNDER SECTION 1325(a)(5)(B) AND (C) OF THE BANKRUPTCY CODE.**

*THE VALUATION OF COLLATERAL AND INTEREST RATE TO BE PAID ON THE ABOVE SCHEDULED CLAIMS IN E(1) AND E(2)(a) AND (b) WILL BE FINALLY DETERMINED AT CONFIRMATION.  THE CLAIM AMOUNT WILL BE DETERMINED BASED ON A TIMELY FILED PROOF OF CLAIM AND THE TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC".)*

*EXCEPT FOR "VALUATION" AND "INTEREST RATE," CONFIRMATION HEREOF SHALL BE WITHOUT PREJUDICE TO THE DEBTOR'S, THE TRUSTEE'S, OR ANY SECURED CREDITOR'S RIGHT TO A LATER DETERMINATION OF THE ALLOWED AMOUNT OF ANY CREDITOR'S SECURED CLAIM.  TO THE EXTENT SUCH CLAIM IS ALLOWED FOR AN AMOUNT GREATER OR LESSER THAN THE "SCHEDULED AMOUNT" PROVIDED FOR ABOVE, AFTER THE TRCC IS FINAL, DEBTOR WILL MODIFY THE PLAN TO FULLY PROVIDE FOR SUCH ALLOWED SECURED CLAIM.*

### F.  SECURED CREDITORS--COLLATERAL TO BE SURRENDERED:

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|

*The Automatic Stay will terminate as to Collateral listed in this paragraph F. upon filing hereof but nothing in this Plan shall be deemed to abrogate any applicable non-bankruptcy law contract rights of the Debtor(s).*

### G.  SECURED CREDITORS--PAID DIRECT BY DEBTOR

| CREDITOR / COLLATERAL | SCHED. AMT. | VALUE | TREATMENT |
|---|---|---|---|
| **Seterus Inc Homestead** | **$116,032.00** | **$135,290.00** | |

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

| | | |
|---|---|---|
| **Us Bank Home Mortgage**<br>**2220 Bellaire** | $48,992.00 | $70,000.00 |
| **Wells Fargo Bank Nv Na**<br>**Homestead** | $25,431.00 | $19,258.00 |

**H.  PRIORITY CREDITORS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS:**

| CREDITOR | SCHED. AMT. | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| | | | |

**I.  SPECIAL CLASS:**

| CREDITOR /<br>JUSTIFICATION | SCHED. AMT. | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|
| | | | |

**J.  UNSECURED CREDITORS**

| CREDITOR | SCHED. AMT. | COMMENT |
|---|---|---|
| **Capital 1 Bank** | **$832.00** | |
| **Chase** | **$6,070.00** | |
| **Citibank Sd, Na** | **$4,771.00** | |
| **Comenity Bank/vctrssec** | **$40.00** | |
| **Escallate Llc** | **$781.00** | |
| **GECRB / HH Gregg** | **$2,273.00** | |
| **M.a.r.s.inc** | **$175.00** | |
| **Victoria's Secret** | **$0.00** | |
| TOTAL SCHEDULED UNSECURED: | **$14,942.00** | |

UNSECURED CREDITORS ARE NOT GUARANTEED A DIVIDEND WHEN A PLAN IS CONFIRMED, SEE GENERAL ORDER 2010-01. ALLOWED GENERAL UNSECURED CLAIMS MAY RECEIVE A PRO-RATA SHARE OF THE UNSECURED CREDITORS' POOL, BUT NOT LESS THAN THE SECTION 1325(a)(4) AMOUNT SHOWN IN SECTION I "A" ABOVE LESS ALLOWED ADMINISTRATIVE AND PRIORITY CLAIMS, AFTER THE TRCC BECOMES FINAL. A PROOF OF CLAIM MUST BE TIMELY FILED TO BE ALLOWED.

**K.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES:**

| § 365 PARTY | ASSUME/REJECT | CURE AMOUNT | TERM (APPROXIMATE) | TREATMENT |
|---|---|---|---|---|
| | | | | |

**L.  CLAIMS TO BE PAID:**

'TERM (APPROXIMATE)' SHOWN HEREIN GIVES THE ESTIMATED NUMBER OF MONTHS FROM THE PETITION DATE REQUIRED TO FULLY PAY THE <u>ALLOWED CLAIM.</u> IF ADEQUATE PROTECTION PAYMENTS HAVE BEEN AUTHORIZED AND MADE, THEY WILL BE APPLIED TO PRINCIPAL AS TO <u>UNDER-SECURED</u> CLAIMS AND ALLOCATED BETWEEN INTEREST AND PRINCIPAL AS TO <u>OVER-SECURED</u> CLAIMS. *PAYMENT PURSUANT TO THIS PLAN WILL ONLY BE MADE TO SECURED, ADMINISTRATIVE, PRIORITY AND UNSECURED CLAIMS THAT HAVE BEEN ALLOWED OR THAT THE DEBTOR HAS AUTHORIZED IN AN ADEQUATE PROTECTION AUTHORIZATION. GENERAL UNSECURED CLAIMS WILL NOT RECEIVE ANY PAYMENT UNTIL AFTER THE TRCC BECOMES FINAL.*

*THE "SCHED. AMT." SHOWN IN THIS PLAN SHALL NOT DETERMINE THE "ALLOWED AMOUNT" OF ANY CLAIM.*

**M.  ADDITIONAL PLAN PROVISIONS:**

SEE SECTION IV ON LAST PAGE FOR ADDITIONAL PLAN PROVISIONS, IF ANY.

Case No:    14-30153-HDH-13
Debtor(s):    **Cheryl Lynn DeClouet**

---

## SECTION II
### DEBTOR'S(S') CHAPTER 13 PLAN--GENERAL PROVISIONS
### FORM REVISED 11-4-2012

**A.** **SUBMISSION OF DISPOSABLE INCOME**

Debtor(s) hereby submits such portion of future earnings or other future income as herein provided to the supervision and control of the Trustee as necessary for the execution of the Plan as herein provided.

Debtor proposes to PAY TO THE TRUSTEE the Base Amount indicated in Section I, Part "A" hereof. If applicable, cause exists for payment over a period of more than three (3) years.

If the Plan does not pay 100% to all creditors, the Base Amount shall not be less than the sum of the allowed administrative expenses plus the allowed priority and secured claims (with interest if applicable) plus the greater of the unsecured creditors' pool, or the 11 USC 1325(a)(4) amount (Best Interest Test).

Payment of any claim against the Debtor may be made from the property of the estate or property of the Debtor(s), as herein provided.

**B.** **ADMINISTRATIVE EXPENSES, DSO CLAIMS & PAYMENT OF TRUSTEE'S STATUTORY FEES AND NOTICING FEES**

The Administrative Expenses of the Trustee shall be paid in full pursuant to 11 U.S.C. Sec 105(a), 503(b), 1326(b)(2), and 28 U.S.C. Sec 586(e)(1)(B). The Trustee's Fees & Expenses, not to exceed ten percent (10%) allowed pursuant to 28 U.S.C. Sec 586(e)(1)(B), shall be deducted from each payment. Additionally, the Trustee is authorized to charge and collect Noticing Fees as indicated in Section I, Part "B" hereof, pursuant to local rule. No Trustee fee will be collected on Noticing Fees.

Debtor will pay in full all Domestic Support Obligations that are due before discharge, including section 507(a)(1) Priority claims due before the petition was filed, but only to the extent provided for in this Plan.

**C.** **ATTORNEY FEES**

Debtor's(s') Attorney Fees totaling the amount indicated in Section I Part "C", shall be paid by the Trustee in the amount shown as "through Trustee", pursuant to this Plan and the Debtor's(s') Authorization for Adequate Protection Disbursements.

**D.** **PRINCIPAL RESIDENCE ARREARAGES (HOME MORTGAGE)**

Arrearage on claims secured only by a security interest in the Debtor's(s') principal residence shall be paid by the Trustee in the allowed pre-petition arrearage amount, and at the Annual Percentage rate of interest indicated in Section I, Part "D" herein. To the extent interest is provided, interest will be calculated from the date of the Petition. The principal balance owing upon confirmation of the Plan on the allowed pre-petition arrearage amount shall be reduced by the total of adequate protection paid less any interest (if applicable) made to the respective creditor by the Trustee. Unless otherwise provided, post-petition payments may be paid "Direct" by Debtor(s), beginning with the first payment due after the 'ARR. THROUGH' date in Section I, Part "D". Such creditors shall retain their liens. To the extent an arrearage claim is allowed in an amount in excess of the Sched. Arr. Amt., the Debtor will promptly Modify the Plan to provide for full payment of the allowed amount, or for surrender of the collateral, at Debtor's election. If Debtor elects to surrender the collateral, the creditor may retain all pre-surrender payments received pursuant hereto.

If pursuant to this Plan, the Debtor pays through the Trustee the Allowed pre-petition Home Mortgage Arrearage Claim Amount to any Mortgagee identified in paragraph "D" or its assignee(s), while timely making all required post-petition mortgage payments, upon discharge, the mortgage will thereupon be reinstated according to its original terms, extinguishing any right of the Mortgagee or its assignee(s) to recover any amount alleged to have arisen prior to the filing of the petition.

**E.(1)** **SECURED CLAIMS TO BE PAID BY TRUSTEE**

The claims listed in Section I, Part "E(1)" shall be paid by the Trustee as "SECURED" to the extent of the lesser of the Claim Amount (per timely filed Proof of Claim not objected to by a party in interest), or the VALUE as shown of the collateral, which will be retained by the Debtor(s). Any amount claimed in excess of the value shall automatically be "split" and treated as unsecured as indicated in Section I, Part "H" or "J", per 11 U.S.C. Sec. 506(a). Such creditors shall retain their liens on the collateral described in Section I, Part "E(1)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of confirmation hereof, or if the value shown is greater than the Claim Amount, from the date of the Petition, up to the amount by which the claim is over-secured. The principal balance owing upon confirmation of the Plan on the allowed secured claim shall be reduced by the total of adequate protection paid less any interest (if applicable) paid to the respective creditor by the Trustee.

Case No:     14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

**E.(2)(a)   SECURED SECTION 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--NO CRAM DOWN**

Claims in Section I, Part "E(2)(a)" are either debts incurred within 910 days of the Petition date secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor or debts incurred within one year of the petition date secured by any other thing of value.

The claims listed in Section I, Part "E(2)(a)" shall be paid by the Trustee as "SECURED" to the extent of the "ALLOWED AMOUNT" (per timely filed Proof of Claim not objected to by a party in interest.)  Such creditors shall retain their liens on the collateral described in Section I, Part "E(2)(a)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of the Petition.  The principal balance owing upon confirmation of the Plan on the allowed secured claim shall be reduced by the total of adequate protection paid less any interest (if applicable) paid to the respective creditor by the Trustee.

**E.(2)(b)   SECURED SECTION 1325(a)(9) CLAIMS TO BE PAID BY THE TRUSTEE--CRAM DOWN**

The claims listed in Section I, Part "E(2)(b)" shall be paid by the Trustee as "SECURED" to the extent of the LESSER OF the Claim Amount (per timely filed Proof of Claim not objected to by a party in interest), or the VALUE as shown of the collateral, which will be retained by the Debtor(s).  Any amount claimed in excess of the value shall automatically be "split" and treated as unsecured as indicated in Section I, Part "H" or "J", per 11 U.S.C. Sec. 506(a).  Such creditors shall retain their liens on the collateral described in Section I, Part "E(2)(b)" until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328, and shall receive interest at the Annual Percentage Rate indicated from the date of confirmation hereof, or if the value shown is greater than the Claim Amount, from the date of the Petition, up to the amount by which the claim is over-secured.

**IF THE "VALUE" SHOWN IN "E(2)(b)" ABOVE IS LESS THAN THE "SCHED. AMT." SHOWN, THE "ALLOWED AMOUNT" OF THE SECURED PORTION OF THE CLAIM SHALL NOT EXCEED THE "VALUE" DETERMINED AT CONFIRMATION.**

**IN THE EVENT THAT A CREDITOR OBJECTS TO THE TREATMENT PROPOSED IN THIS PARAGRAPH, THE DEBTOR RETAINS THE RIGHT TO SURRENDER THE COLLATERAL TO THE CREDITOR IN SATISFACTION OF THE CREDITOR'S CLAIM.  IF THE DEBTOR ELECTS TO SURRENDER THE COLLATERAL, THEN THE AUTOMATIC STAY WILL BE TERMINATED AS TO SUCH COLLATERAL UPON ENTRY OF THE ORDER CONFIRMING THE PLAN, UNLESS OTHERWISE ORDERED BY THE COURT.**

**ABSENT SUCH OBJECTION, THE CREDITOR LISTED IN "E.(2)(b)" SHALL BE DEEMED TO HAVE "ACCEPTED" THE PLAN PER SECTION 1325(a)(5)(A) OF THE BANKRUPTCY CODE AND WAIVED ITS RIGHTS UNDER SECTION 1325(a)(5)(B) AND (C) OF THE BANKRUPTCY CODE.**

To the extent a secured claim NOT provided for in Section I Part "D", "E(1)" or "E(2)" is allowed by the Court, Debtor(s) will pay the claim 'DIRECT' per the contract.

Each secured claim shall constitute a separate class.

**F.     SATISFACTION OF CLAIM BY SURRENDER OF COLLATERAL**

The claims listed in Section I, Part "F" shall be satisfied as 'SECURED' to the extent of the VALUE of the collateral, as shown, by SURRENDER of the collateral by the Debtor(s) on or before Confirmation.  Any amount claimed in excess of the value of the collateral as shown, to the extent it is allowed, shall be automatically "split" and treated as indicated in Section I, Part "H" or "J" per 11 U.S.C. Sec 506(a).

Each secured claim shall constitute a separate class.

**G.    DIRECT PAYMENTS BY DEBTOR(S)**

All secured claims listed in Section I, Part "G" shall be paid 'DIRECT' by the Debtor(s) in accordance with the terms of their agreement, unless otherwise provided in Section IV.

Each secured claim shall constitute a separate class.

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

**H.**   **PRIORITY CLAIMS OTHER THAN DOMESTIC SUPPORT OBLIGATIONS**

All allowed claims (i.e., those for which a Proof of Claim is timely filed and not objected to by a party in interest) entitled to priority under Section 507(a) of the Bankruptcy Code, other than Section 507(a)(1) Domestic Support Obligations, will be paid in full (except as provided in Section 1322(a)(4)) in deferred installments, unless the holder of such claim agrees to a different treatment of such claim.  Failure to object to confirmation of this Plan shall not be deemed "acceptance" of the "SCHED AMT." shown in Section I Part "H" hereof.  The claims listed in Section I, Part "H" shall be paid their allowed amount by the Trustee in full as Priority without interest at the monthly amount indicated or pro rata.

Priority claims for taxes are unsecured and shall not accrue interest or penalty subsequent to the filing, and such interest or penalty as might otherwise accrue thereafter shall be discharged upon completion of the Plan.

**I.**   **CLASSIFIED UNSECURED CLAIMS**

Classified unsecured claims shall be treated as allowed by the Court.

**J.**   **GENERAL UNSECURED CLAIMS TIMELY FILED**

All other claims not otherwise provided for herein shall be designated general unsecured claims.  Payments, if any, to general unsecured claims will be on a pro rata basis.  All allowed general unsecured claims shall be paid in an amount under the Plan which is not less than the amount that would be paid on such claims if the estate of the Debtor(s) were liquidated under Chapter 7 of the Bankruptcy Code on the date of filing of the Petition herein.

Any delinquencies under the Plan on allowed secured claims, allowed priority claims and allowed classified unsecured claims must be brought current before any payments are made on general unsecured claims.

General unsecured claims may be paid concurrently with secured, priority and classified unsecured claims so long as each secured, priority, and classified unsecured creditor is receiving not less than its monthly installment as provided herein.  If the indicated monthly amount is insufficient to fully pay the monthly payment provided for such allowed secured, priority or classified unsecured claim(s) respectively, the Trustee shall pay in the following order: each classification of such allowed secured claim(s), priority claim(s) and classified unsecured claim(s) pro rata until all such payments within each subclass are current, prior to any other payments to allowed general unsecured claims.

General unsecured claims totaling the amount indicated in Section I Part "J", shall be paid by the Trustee, a PRO RATA share of the unsecured creditors' pool estimated in Section I, Part "A" but not less than the amount indicated pursuant to Section 1325(a)(4) less allowed administrative and priority claims, or the estimated % (if any) shown above.

**K.**   **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

As provided in Section 1322(b)(7) of the Bankruptcy Code, the Debtor(s) assumes or rejects the executory contracts or unexpired leases with the parties so indicated in Section I, Part "K".

Assumed lease and executory contract arrearage amounts shall be paid by the Trustee as indicated in Section I Part "K".

**L.**   **CLAIMS TO BE PAID**

See Section I, Part "L" of the Plan.

**M.**   **ADDITIONAL PLAN PROVISIONS**

The provisions set forth in Section IV are additional Plan provisions not otherwise referred to herein.

**N.**   **POST-PETITION CLAIMS**

Claims filed under Section 1305 of the Bankruptcy Code shall be paid as allowed.  To the extent necessary, Debtor will modify this Plan.

**O.**   **LATE FILED CLAIMS AND CLAIMS NOT FILED**

Late filed unsecured claims on pre-petition debt shall be paid pro rata, only after all other timely filed unsecured claims are paid in full.  Such payment shall be before any payment on pre-petition non-pecuniary penalties.  Late filed claims on priority pre-petition claims shall be paid in full before any payment on late filed general unsecured pre-petition claims.  Late filed secured claims shall be paid in full before any payment on late filed priority claims.

A claim not filed with the Court will not be paid by the Trustee post-confirmation regardless of its treatment in Section I or on the AAPD.

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

**P.**  **CLAIMS FOR PRE-PETITION NON-PECUNIARY PENALTIES, FINES, FORFEITURES, MULTIPLE, EXEMPLARY OR PUNITIVE DAMAGES**

Any unsecured claim for non-pecuniary penalty, fines, forfeitures, multiple, exemplary or punitive damages, expressly including IRS penalty to date of petition on unsecured and/or priority claims, shall be paid only a pro rata share of any funds remaining after all other unsecured claims including late filed claims, shall have been paid in full.

**Q.**  **CLAIMS FOR POST-PETITION PENALTIES AND INTEREST**

No interest, penalty, or additional charge shall be allowed on any pre-petition claims subsequent to the filing of the petition, unless expressly provided herein.

**R.**  **BUSINESS CASE OPERATING REPORTS**

Upon confirmation, business debtors are no longer required to file operating reports with the Trustee, unless the Trustee requests otherwise.  However, a final operating report through the date of confirmation is required if operating reports were previously required.  Confirmation hereof shall terminate the Trustee's duties to investigate or monitor the debtor's business affairs, assets or liabilities.

**S.**  **NO TRUSTEE'S LIABILITY FOR DEBTOR'S POST CONFIRMATION OPERATION AND BAR DATE FOR CLAIMS FOR PRECONFIRMATION OPERATIONS**

The Trustee shall not be liable for any claim arising from the post-confirmation operation of Debtor's business.  Any claims against the Trustee arising from the pre-confirmation operation of the Debtor's business must be filed with the Bankruptcy Court within sixty (60) days after entry by the Bankruptcy Court of the Order of Confirmation hereof, or be barred.

**T.**  **DISPOSAL OF DEBTOR'S NON-EXEMPT PROPERTY AND TRUSTEE PAYMENTS UPON POST CONFIRMATION CONVERSION OR DISMISSAL**

Debtor shall not dispose of or encumber any non-exempt property or release or settle any lawsuit or claim by Debtor(s), prior to discharge, without consent of the Trustee or order of the Court after notice to the Trustee and all creditors.

Upon conversion or dismissal of the case post confirmation, the Trustee shall disburse all funds on hand in accordance with this Plan.

**U.**  **ORDER OF PAYMENT**

All claims shown in Section I, will be paid in the following order from each disbursement, to the extent allowed:

    1st --  Administrative Fees and DSO claims in "B"
    2nd --  Assumed lease and executory contract arrearage claims in "K"
    3rd --  Specified monthly dollar amounts to secured claims in "D", "E(1)", and "E(2)"
    4th --  Pro-rata among attorney fees in "C"
    5th --  Pro-rata among secured claims in "D", "E(1)" and "E(2)"
    6th --  Specified monthly dollar amounts to priority claims in "H"
    7th --  Pro-rata among priority claims in "H"
    8th --  Specified monthly dollar amounts to special class claims in "I"
    9th --  Pro-rata among special class claims in "I"
    10th --  Pro-rata among claims in "J" other than late filed and penalty claims
    11th --  Pro-rata among late filed priority claims in "H"
    12th --  Pro-rata among late filed general unsecured claims in "J"
    13th --  Pro-rata among penalty claims in "J".

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

## V.   TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC") PROCEDURE

Pursuant to General Order 2010-01, Paragraph 8, as soon as practicable after the governmental claims bar date, the Trustee shall prepare and serve on Debtor's counsel, all creditors who were scheduled, all creditors who filed claims and any party that has filed a Notice of Appearance, a Trustee's Recommendation Concerning Claims ("TRCC") and Notice of Hearing and Pre-Hearing Conference thereon.  The TRCC may be deemed in part to be an Objection to Claims.  Objections to the TRCC shall be filed within thirty (30) days from the date of service of the TRCC.  Unless an objection is timely filed as to the treatment of any claim, the claim will be allowed or approved only as described in the TRCC, and such treatment will be binding on all parties without further order of the court.  All unresolved objections to the TRCC shall be deemed waived if not timely filed or if the proponent of any such objection fails to attend the Trustee's Pre-Hearing Conference or give the Trustee prior written notice that a hearing is necessary.  To the extent secured and/or priority claims being paid through the Plan by the Trustee are allowed for amounts in excess of the amounts provided for in this Plan, the Debtor(s) will promptly modify the Plan to provide for full payment of the allowed amount.  After the TRCC becomes final, should the Plan then become infeasible and/or "insufficient", the Trustee shall be permitted to move the Court to dismiss the case for such reason.

### SECTION III
### MOTION FOR VALUATION

Pursuant to Bankruptcy Rule 3012, for purposes of 11 U.S.C. Sec 506(a) and § 1325(a)(5) and for purposes of determination of the amounts to be distributed to holders of secured claims who do not accept the Plan, Debtor(s) hereby moves the Court to value the collateral described in Section I, Part "E" and Part "F", as the LESSER of the value set forth therein, or any value claimed on the proof of claim.   **Any objection to valuation shall be filed at least seven (7) days prior to the date of the Trustee's pre-hearing conference regarding Confirmation, or be deemed waived.**

Case No:   14-30153-HDH-13
Debtor(s):   **Cheryl Lynn DeClouet**

---

**SECTION IV**
**ADDITIONAL PLAN PROVISIONS**

Additional (non-standard) Plan provisions, if any,   <u>CAPITALIZED, BOLD AND UNDERSCORED ARE AS FOLLOWS:</u>
**None.**

Respectfully submitted,                                   Case No.:  __**14-30153-HDH-13**__

**/s/ C. Daniel Herrin**
C. Daniel Herrin, Debtor's(s') Attorney

**24065409**
State Bar Number

**Herrin & Wright, PLLC**
4925 Greenville Avenue
Suite 200
Dallas, TX 75206

Bar Number:   24065409
Phone:   (214) 810-5294

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**
Revised 11-1-05

| | | |
|---|---|---|
| IN RE: | § | |
| **Cheryl Lynn DeClouet** | § | CASE NO:  **14-30153-HDH-13** |
| | § | |
| Debtor(s) | § | |
| | § | |

## AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS   DATED: <u>4/15/2014</u>.

The undersigned Debtor(s) hereby request that payments received by the Trustee prior to confirmation be disbursed in accordance with General Order 2005-05, as indicated below:

| Periodic Payment Amount | Variable Plan Payments.  See Monthly Schedule below.* | |
|---|---|---|
| Disbursements | First (1) | Second (2) (Other) |
| Account Balance Reserve | $5.00 | See below* |
| Trustee Fee | $19.50 | See below* |
| Filing Fee | $0.00 | See below* |
| Noticing Fee | $16.80 | See below* |
| **Subtotal Expenses/Fees** | **$41.30** | **See below*** |
| Available for Adequate Protection, Attorney Fees and Undisputed Priority Claims: | **$158.70** | **See below*** |

## SECURED CREDITORS:

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

Total Adequate Protection Payments for Secured Creditors:   **$0.00**

## SPECIAL CLASS CREDITORS:

| Name | Collateral | Scheduled Amount | Value of Collateral | Adequate Protection Percentage | Adequate Protection Payment Amount |
|---|---|---|---|---|---|
| | | | | | |

Total Adequate Protection Payments for Special Class Creditors:   **$0.00**

Total Adequate Protection Payments:   **$0.00**

Funds Available For Debtor's Attorney First Disbursement:   **$158.70**
Funds Available For Debtor's Attorney Future Disbursements:   **See below***

Available For Secured Creditors as Authorized by the Plan:   **$382.50****

---

** Amount is based on the plan payment scheduled on the month following the month when the attorney fees are paid in full.
*Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas - (210) 561-5300.*
Exhibit "C" - Page 10 of 13

(H) **Cheryl Lynn DeClouet**
(W)
(C#) **14-30153-HDH-13**

**AUTHORIZATION FOR ADEQUATE PROTECTION DISBURSEMENTS**

**\*Monthly Schedule**

| Month | Plan Payment | Account Balance Reserve | Related Expense to Trustee | Filing Fees | Noticing Fees | Subtotal Expenses/ Fees | Available | Available for APD | Available for Attorney |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $200.00 | $5.00 | $19.50 | $0.00 | $16.80 | $41.30 | $158.70 | $0.00 | $158.70 |
| 2 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 3 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 4 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 5 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 6 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 7 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 8 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 9 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 10 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 11 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 12 | $200.00 | | $20.00 | | | $20.00 | $180.00 | $0.00 | $180.00 |
| 13 | $425.00 | | $42.50 | | | $42.50 | $382.50 | $0.00 | $382.50 |
| 14 | $425.00 | | $42.50 | | | $42.50 | $382.50 | $0.00 | $382.50 |

DATED: __**4/15/2014**_____

__/s/ C. Daniel Herrin_____
Attorney for Debtor(s)

_____
Trustee, Attorney for Trustee or Trustee's Representative

** Amount is based on the plan payment scheduled on the month following the month when the attorney fees are paid in full.
*Computer software provided by LegalPRO Systems, Inc., San Antonio, Texas - (210) 561-5300.*
Exhibit "C" - Page 11 of 13

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE: **Cheryl Lynn DeClouet**
_____
*Debtor*

CASE NO.   **14-30153-HDH-13**

_____
*Joint Debtor*

CHAPTER   **13**

## CERTIFICATE OF SERVICE

_____

    I, the undersigned, hereby certify that on April 15, 2014, a copy of the attached Chapter 13 Plan, with any attachments, was served on each party in interest listed below, by placing each copy in an envelope properly addressed, postage fully prepaid in compliance with Local Rule 9013 (g).

**/s/ C. Daniel Herrin**
_____
C. Daniel Herrin
Bar ID:24065409
Herrin & Wright, PLLC
4925 Greenville Avenue
Suite 200
Dallas, TX 75206
(214) 810-5294

_____

| | | |
|---|---|---|
| Attorney General of Texas<br>Collections Div Bankruptcy Sec<br>P.O. Box 12548<br>Austin, TX 78711-2548 | Cheryl Lynn DeClouet<br>1328 Clearwater Drive<br>Grand Prairie, TX 75052 | GECRB / HH Gregg<br>xxxxxxxxxxxx8290<br>Attn:  Bankruptcy<br>PO Box 103104<br>Roswell, GA 30076 |
| Bank of America<br>xxxx8865<br>Attn: Correspondence Unit/CA6-919-02-41<br>PO Box 5170<br>Simi Valley, CA 93062 | Citibank Sd, Na<br>xxxxxxxxxxxx8740<br>Attn: Centralized Bankruptcy<br>PO Box 20363<br>Kansas City, MO 64195 | Internal Revenue Service<br>Department of the Treasury<br>P.O. Box 7346<br>Philadelphia, PA 19101-7 |
| Capital 1 Bank<br>xxxxxxxxxxxx6491<br>Attn: Bankruptcy Dept.<br>PO Box 30285<br>Salt Lake City, UT 84130 | Comenity Bank/vctrssec<br>xxxxx5407 | Linebarger Goggan Blair & Sampson, LLP<br>2323 Bryan Street, Ste 1600<br>Dallas, Texas 75201 |
| Chase<br>xxxxxxxxxxxx8834<br>Po Box 15298<br>Wilmington, DE 19850 | Escallate Llc<br>xxxx2565<br>5200 Stoneham Rd<br>North Canton, OH 44720 | M.a.r.s.inc<br>xxx1744<br>5810 E Skelly Dr<br>Tulsa, OK 74135 |

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

IN RE:  **Cheryl Lynn DeClouet**

_____

*Debtor*

CASE NO.   **14-30153-HDH-13**

_____

*Joint Debtor*

CHAPTER   **13**

## CERTIFICATE OF SERVICE
### (Continuation Sheet #1)

Marinosci Law Group
xx-xx963-1
14643 Dallas Parkway, Suite 750
Dallas, TX 75254

Victoria's Secret
xxxxx7344
Attention: Bankruptcy
PO Box 182125
Columbus, OH 43218

Seterus Inc
xxx5223
14523 Sw Millikan Way St
Beaverton, OR 97005

Wells Fargo Bank Nv Na
xxxxxxxxxxxxx0001
Attn: Deposits Bankruptcy MAC#
P6103-05K
PO Box 3908
Portland, OR 97208

Seterus Inc
14523 Sw Millikan Way St
Beaverton, OR 97005

Wells Fargo Bank Nv Na
Attn: Deposits Bankruptcy MAC#
P6103-05K
PO Box 3908
Portland, OR 97208

TEXAS COMPTROLLER OF PUBLIC
ACCOUNTS
REVENUE ACCOUNTING DIV -
BANKRUPTCY SECT
P.O. Box 13528
Austin, TX 78711-3528

TEXAS EMPLOYMENT COMMISSION
TEC BUILDING - BANKRUPTCY
101 E. 15th Street
Austin, TX 78778-0001

United States Trustee
1100 Commerce Street
Room 976
Dallas, Texas 75242-1496

Us Bank Home Mortgage
xxxxxxxxx6043
4801 Frederica St
Owensboro, KY 42301

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF TEXAS | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>CHERYL LYNN DECLOUET | Case Number<br>14-30153-HDH-13 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
SETERUS INC., AS AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC.

**COURT USE ONLY**

Name and address where notices should be sent:
SETERUS, INC. F/K/A IBM LENDER BUSINESS PROCESS SERVICES, INC.
P.O. BOX 2008
GRAND RAPIDS, MI 49501-2008
Telephone number:          email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on : _____

Name and address where payment should be sent (if different from above):
SETERUS, INC.
P.O. BOX 2206
GRAND RAPIDS, MI 49501-2206
Telephone number:          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**      $116,815.44

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage Note
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>5  2  2  3 | **3a. Debtor may have scheduled account as:**<br>Seterus Inc.<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$ 7,331.15

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: 1328 CLEARWATER DRIVE, GRAND PRAIRIE, TX 75052

**Basis for perfection:** Deed of Trust

**Value of Property:** $_____

**Amount of Secured Claim:** $ 116,815.44

**Annual Interest Rate** 7.375 % ☒Fixed or ☐Variable
**(when case was filed)**

**Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

$ _____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

Exhibit "D" - Page 1 of 31

B10 (Official Form 10) (04/13)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.      ☐ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,      ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                            or their authorized agent.              (See Bankruptcy Rule 3005.)
                                                                            (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  DONNA WILKINSON
Title:       Attorney for SETERUS INC., AS AUTHORIZED SUBSERVICER FOR
             FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"),
             CREDITOR C/O SETERUS, INC.
Company:     BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP        /s/ DONNA WILKINSON                    05/13/2014
Address and telephone number (if different from notice address above):    (Signature)                        (Date)
  15000 SURVEYOR BLVD SUITE 100
  ADDISON, TX  75001

Telephone number  (972) 386-5040      email: NDECF@BDFGROUP.COM

---

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | |
|---|---|
| **Name of debtor:** CHERYL LYNN DECLOUET | **Case number:** 14-30153-HDH-13 |
| **Name of creditor:** SETERUS INC., AS AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC. | **Last four digits** of any number you use to identify the debtor's account: 5 2 2 3 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due** (1) $ 111,979.96

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 7.375 % | 08/01/2013 | 01/06/2014 | $ 3,619.14 |
| _____ % | _/_/_ | _/_/_ | $ _____ |
| _____ % | _/_/_ | _/_/_ | + $ _____ |

Total interest due as of the petition date   $ 3,619.14   Copy total here ▶ (2) + $ 3,619.14

3. **Total principal and interest due** (3) $ 115,599.10

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 0816/2013 - 10/16/2013 | (1) $ | 128.43 |
| 2. Non-sufficient funds (NSF) fees | 10/04/2013 | (2) $ | 25.00 |
| 3. Attorney's fees | | (3) $ | |
| 4. Filing fees and court costs | | (4) $ | |
| 5. Advertisement costs | | (5) $ | |
| 6. Sheriff/auctioneer fees | | (6) $ | |
| 7. Title costs | | (7) $ | |
| 8. Recording fees | | (8) $ | |
| 9. Appraisal/broker's price opinion fees | | (9) $ | |
| 10. Property inspection fees | 11/14/2013 - 12/31/2013 | (10) $ | 45.00 |
| 11. Tax advances (non-escrow) | | (11) $ | |
| 12. Insurance advances (non-escrow) | | (12) $ | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | See Attached Escrow Analysis | (13) $ | 462.95 |
| 14. Property preservation expenses. Specify: _____ | | (14) $ | |
| 15. Other. Specify: Speed Pay Charges | 09/30/2013 | (15) $ | 10.00 |
| 16. Other. Specify: _____ | | (16) $ | |
| 17. Other. Specify: _____ | | (17) $ | |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) $ | 671.38 |

Exhibit "D" - Page 3 of 31

B 10A (Attachment A) (12/11)

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes.  Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | 08/26/2013 | |
| | Number of installment payments due | (1) _____5_____ | |

| 2. **Amount of installment payments due** | | | |
|---|---|---|---|
| _2_ installments @ | 1,353.02 | $ 2,706.04 | |
| _3_ installments @ | 1,317.91 | $ 3,953.73 | |
| _____ installments @ | | + $ _____ | |

| **Total installment payments due as of the petition date** | $ 6,659.77 | Copy total here ▶ (2) | $ 6,659.77 |
|---|---|---|---|

3. **Calculation of cure amount**

| | | | |
|---|---|---|---|
| **Add total prepetition fees, expenses, and charges** | | Copy total from Part 2 here ▶ + $ | 671.38 |
| <u>Subtract</u> **total of unapplied funds** (funds received but not credited to account) | | - $ | 0.00 |
| <u>Subtract</u> **amounts for which debtor is entitled to a refund** | | - $ | 0.00 |
| **Total amount necessary to cure default as of the petition date** | | (3) $ | 7,331.15 |

Copy total onto Item 4 of Proof of Claim form

bkusbk_POC_B10-AA-COS.rpt - 42/Northern/DALLAS/00000004317111

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2014, a true and correct copy of the Proof of Claim was served via electronic means as listed on the Court's ECF noticing system or by regular first class mail to the parties listed on the attached list.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP


BY: /s/ DONNA WILKINSON        05/13/2014
DONNA WILKINSON
TX NO. 24084098
15000 SURVEYOR BLVD SUITE 100
ADDISON, TX 75001
Telephone: (972) 386-5040
E-mail:  NDECF@BDFGROUP.COM
ATTORNEY FOR CLAIMANT

**BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:**

**DEBTOR:**
CHERYL LYNN DECLOUET
1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX  75052

**DEBTOR'S ATTORNEY:**
C. DANIEL HERRIN
4925 GREENVILLE AVE
SUITE 200
DALLAS, TX  75206

**TRUSTEE:**
THOMAS D. POWERS
125 E. JOHN CARPENTER FRWY.
SUITE 1100
IRVING, TX  75062-2288

ORIGINAL L#

MIN: ████████████          **NOTE**          Loan Number: ████████████

JULY 27, 2006                    IRVING                         TEXAS
[Date]                            [City]                        [State]

1328 CLEARWATER DRIVE, GRAND PRAIRIE, TEXAS 75052
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 123,950.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, A FLORIDA LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on SEPTEMBER 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 700 NW 107TH AVENUE, 3RD FLOOR, MIAMI, FLORIDA 33172-3139
or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 856.10

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                        Page 1 of 3

DocMagic *e*Forms  800-649-1362
www.docmagic.com

Us32001.not.1.tem


and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01                                    Page 2 of 3

DocMagic *eFovrms* 800-649-1362
*www.docmagic.com*

Us32002.not.2.tem

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

 If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

 If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)     _____ (Seal)
CHERYL L DECLOUET  -Borrower           -Borrower


_____ (Seal)     _____ (Seal)
            -Borrower           -Borrower


_____ (Seal)     _____ (Seal)
            -Borrower           -Borrower


*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01       Page 3 of 3

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Exhibit "D" - Page 9 of 31

Us32003.not.3.tem

Greenpoint Mortgage Funding, Inc.

Pay to the order of

without recourse
Universal American Mortgage Company, LLC

Brenda Henry, Assistant Secretary

WITHOUT RECOURSE
PAY TO THE ORDER OF:

GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President

# seterus™

Representation Of Printed Document

PO Box 2008; Grand Rapids, MI 49501-2008

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.
**Phone** 866.570.5277

4-789-09016-0002038-001-000-000-000-000

*L913C*

DECLOUET, CHERYL L
C/O DANIEL HERRIN
4925 GREENVILLE AVE STE 200
DALLAS TX 75206-0500

## ESCROW ACCOUNT STATEMENT

| Analysis Date: | 01/20/14 |
|---|---|
| Loan Number: | |
| Escrow Account Number: | |

| **Current Payment** | | **New Payment Effective**<br>**03/01/14** | |
|---|---|---|---|
| Principal and<br>Interest | $856.10 | Principal and<br>Interest* | $856.10 |
| Escrow | $461.81 | Escrow | $470.74 |
| Total Current<br>Payment | $1,317.91 | **Total NEW<br>Payment*** | $1,326.84 |

\* The principal and interest payments reflect the contractual amount due under the note, which can be modified with a mutually agreed upon payment plan. In addition, the new principal and interest payment and the total new payment may not reflect any changes due to interest rate adjustments. You will receive a separate notice for interest rate adjustments.

### NEW MORTGAGE PAYMENT NOTICE AND ESCROW ACCOUNT DISCLOSURE STATEMENT

Seterus, Inc. is the servicer of the above referenced loan. In accordance with federal guidelines, your escrow account is reviewed at least once a year to determine if sufficient funds are available to pay your taxes and/or insurance. Your escrow payment will be a minimum of the total anticipated disbursements divided by the number of scheduled installments due in the next 12 months. This payment will increase if you have a post-petition shortage or deficiency. This statement provides a history of actual escrow account activity and a projection of the escrow account activity for the next 12 months.

Our records indicate a petition for Bankruptcy was filed on 01/06/14. Pursuant to that petition, we have filed a proof of claim with the Bankruptcy court. Any deficiency and/or shortage listed under the Proof of Claim section will be excluded from your future scheduled escrow payment as these amounts will be added to your pre-petition arrearage and collected in your bankruptcy plan payment.

| ANTICIPATED DISBURSEMENTS | |
|---|---|
| March 2014 to February 2015 | |
| Taxes | 3,772.97 |
| Insurance | 1,782.76 |
| PMI | 0.00 |
| Total Disbursements | 5,555.73 |
| Bankruptcy File Date | 01/06/14 |
| Proof of Claim Escrow Balance | |
| Pre-Petition Escrow Deficiency | $1,007.91 |
| Pre-Petition Escrow Shortage | $462.95 |
| Total Escrow POC | $1,470.86 |
| Payments Applied | $0.00 |
| Remaining Escrow Balance | |
| Pre-Petition Escrow Deficiency | $1,007.91 |
| Pre-Petition Escrow Shortage | $462.95 |

*Escrow Balance adjusted by proof of claim amounts

**Beginning balance = Starting balance less any unpaid escrow disbursements due in the prepaid period

The Real Estate Settlement Procedures Act (RESPA) allows us to collect and maintain up to 1/6 of your total disbursements in your escrow account at all times, unless prohibited by state law. This cushion covers any potential increases in your tax and/or insurance disbursements. Cushion selected by servicer: $925.96.

### ESCROW ACCOUNT PROJECTIONS FOR THE NEXT 12 MONTH ESCROW CYCLE
Anticipated Activity

| Date | Payments to Escrow | Payments from Escrow | Description | Projected Balance |
|---|---|---|---|---|
| Starting Balance | | | | $-84.29 |
| Beginning Balance** | | | | $-84.29 |
| Post Petition Beg Bal* | | | | $1,386.57 |
| 03/01/2014 | 470.74 | 0.00 | | 1,857.31 |
| 04/01/2014 | 470.74 | 0.00 | | 2,328.05 |
| 05/01/2014 | 470.74 | 0.00 | | 2,798.79 |
| 06/01/2014 | 470.74 | 0.00 | | 3,269.53 |
| 07/01/2014 | 470.74 | 0.00 | | 3,740.27 |
| 07/31/2014 | 0.00 | 1,782.76 | HAZARD INSURANCE | 1,957.51 |
| 08/01/2014 | 470.74 | 0.00 | | 2,428.25 |
| 09/01/2014 | 470.74 | 0.00 | | 2,898.99 |
| 10/01/2014 | 470.74 | 0.00 | | 3,369.73 |
| 11/01/2014 | 470.74 | 0.00 | | 3,840.47 |
| 12/01/2014 | 470.74 | 0.00 | | 4,311.21 |
| 12/01/2014 | 0.00 | 3,772.97 | COUNTY PROPERTY TAX | 538.24 |
| 01/01/2015 | 470.74 | 0.00 | | 1,008.98 |
| 02/01/2015 | 470.74 | 0.00 | | 1,479.72 |
| Total | $5,648.88 | $5,555.73 | | |

A deficiency occurs if the escrow account has a negative balance. The pre-petition deficiency is accounted for on the POC and will be collected as part of your pre-petition plan payment.

An escrow shortage occurs when there is a zero or positive balance in the escrow account but not enough to pay the estimated items and any additional reserve deposits that need to be paid during the next 12 months. This pre-petition shortage is accounted for on the POC and will be collected as part of your pre-petition plan payment. The post-petition shortage of $465.32 will be collected over the next 60 installments.

***Continued ***

INTERNET REPRINT

Representation of Printed Document

## ESCROW ACCOUNT HISTORY

This is a statement of actual activity in your escrow account from September 2013 to February 2014. This history compares the projections from your last escrow analysis or initial disclosure and the actual activity in your account. If a prior escrow analysis was not conducted during this historical period, the projected escrow balance will be zero.

| | ACTUAL ESCROW ACCOUNT HISTORY | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Payments to Escrow | | Payments from Escrow | | Description | | Escrow Balance | |
| | Projected | Actual | Projected | Actual | | | Projected | Actual |
| Beginning Balance Date | | | | | | | | $2,946.26 |
| 09/01/13 | 496.92 | 0.00 * | 0.00 | 0.00 | | | 3,261.98 | 2,946.26 |
| 09/19/13 | 0.00 | -181.20 * | 0.00 | 0.00 | | | 3,261.98 | 2,765.06 |
| 09/30/13 | 0.00 | 496.92 * | 0.00 | 0.00 | | | 3,261.98 | 3,261.98 |
| 10/01/13 | 496.92 | 0.00 * | 0.00 | 0.00 | | | 3,758.90 | 3,261.98 |
| 10/04/13 | 0.00 | -496.92 * | 0.00 | 0.00 | | | 3,758.90 | 2,765.06 |
| 11/01/13 | 461.81 | 0.00 * | 0.00 | 0.00 | | | 4,220.71 | 2,765.06 |
| 11/25/13 | 0.00 | 0.00 | 0.00 | 3,772.97 * | COUNTY PROPERTY TAX | | 4,220.71 | -1,007.91 |
| 12/01/13 | 461.81 | 0.00 * | 3,758.91 | 0.00* | COUNTY PROPERTY TAX | | 923.61 | -1,007.91 |
| 01/01/14 | 461.81 | 461.81 | 0.00 | 0.00 | EST: | | 1,385.42 | -546.10 |
| 02/01/14 | 461.81 | 461.81 | 0.00 | 0.00 | EST: | | 1,847.23 | -84.29 |
| Total | $2,841.08 | $742.42 | $3,758.91 | $3,772.97 | | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.

**NOTE** – This analysis was prepared in advance of the escrow payment change date. Therefore, the projected beginning balance for the next 12 months estimates that you have paid all the required scheduled installments as shown in your actual account history and that all scheduled disbursements have been made from your escrow account.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA  Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228.  The office's phone number is 888.738.5576. **NEW YORK CITY:** 1331537, 1340663, 1340148.  **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.  Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

After Recording Return To:
UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC
311 PARK PLACE BOULEVARD, SUITE 500 - SECONDARY MARKETING OPS
CLEARWATER, FLORIDA 33759-3999
Loan Number: ▮▮▮▮▮▮

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

**MIN:** ▮▮▮▮▮▮▮▮▮▮▮

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  JULY 27, 2006            , together with all Riders to this document.

(B)  "Borrower" is  CHERYL L DECLOUET, AN UNMARRIED WOMAN


Borrower is the grantor under this Security Instrument.

(C)  "Lender" is  UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC

Lender is a  FLORIDA LIMITED LIABILITY COMPANY                              organized and existing under the laws of  FLORIDA
Lender's address is  700 NW 107TH AVENUE, 3RD FLOOR, MIAMI, FLORIDA 33172-3139

Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D)  "Trustee" is  SCOTT R. VALBY


Trustee's address is  1700 WEST LOOP SOUTH, SUITE 260, HOUSTON, TEXAS 77027

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                  Page 1 of 15

DocMagic €Forms 800-649-1362
www.docmagic.com

Tx30441.mzd.1.tem

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    JULY 27, 2006
The Note states that Borrower owes Lender    ONE HUNDRED TWENTY-THREE THOUSAND
NINE HUNDRED FIFTY AND 00/100    Dollars (U.S. $ 123,950.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2036     .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☒ Planned Unit Development Rider
☐ Balloon Rider               ☐ Biweekly Payment Rider
☐ 1-4 Family Rider            ☐ Second Home Rider
☐ Condominium Rider          ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 2 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx30442.mzd.2.tem

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY       of       DALLAS

[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

LOT 21, BLOCK J, LAKEWOOD PHASE FIVE, AN ADDITION TO THE CITY OF GRAND PRAIRIE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN COLUME 2005182, PAGE 24, MAP/PLAT RECORDS, DALLAS COUNTY, TEXAS.

which currently has the address of       1328 CLEARWATER DRIVE

[Street]

GRAND PRAIRIE       , Texas    75052    ("Property Address"):

[City]       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01       Page 3 of 15       DocMagic *eFarms* 800-649-1362
www.docmagic.com

Tx30443.mz6.3.tem

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 4 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx30444.mzd.4.tem

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 5 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Tx30445.mad.5.tem

Exhibit "D" - Page 17 of 31

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

Tx30446.mzd.6.tem

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 7 of 15

*DocMagic* 800-649-1362
www.docmagic.com

Tx30447.mzd.7.%rn

Exhibit "D" - Page 19 of 31

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 8 of 15

DocMagic *eFormns* 800-649-1362
www.docmagic.com

Tx30448.mzd.8.tem

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 9 of 15

DocMagic *eFormns* 800-649-1362
www.docmagic.com

Tx30449.mzd.9.tem

Exhibit "D" - Page 21 of 31

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 10 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx304410.mzd.10.tem

or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 11 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx304411.mzd.11.tem

Exhibit "D" - Page 23 of 31

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 12 of 15

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Tx304412.mzd.12.tem

Exhibit "D" - Page 24 of 31

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

    **26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

    **27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒  **Purchase Money.**
    The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐  **Owelty of Partition.**
    The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐  **Renewal and Extension of Liens Against Homestead Property.**
    The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐  **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
    The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

    **28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 13 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Tx304413.mzd.13.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CHERYL L DECLOUET        -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                          Witness:

_____         _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                          Page 14 of 15

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Tx304414.mzd.14.tem

The State of Texas
County of   DALLAS

Before me,   *the undersigned*

on this day personally appeared   CHERYL L DECLOUET

known to me (or proved to me on the oath of ———
or through *drivers license ID*                                                                )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this   *31*   day of   *July, 2006*

REXANNE McCAULEY
Notary Public
State of Texas
Comm. Expires 09-22-2009

_____
Notary Public Signature

(Seal)

My commission expires:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 15 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

Tx3044.15.mzd.15.tem

Loan Number: ██████████

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     27th     day of JULY, 2006     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to   UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, A FLORIDA LIMITED LIABILITY COMPANY (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1328 CLEARWATER DRIVE, GRAND PRAIRIE, TEXAS 75052
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

LAKEWOOD PHASE FIVE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01          Page 1 of 3

*DocMagic* ⓔⒻⓞⓡⓜⓢ *800-649-1362*
*www.docmagic.com*

Us31501.rid.1.tem

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us31502.rid.2.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
CHERYL L DECLOUET                -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                           Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3150.3.rid.3.tem

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Cynthia Figueroa Calhoun*

Cynthia Figueroa Calhoun, County Clerk
Dallas County TEXAS
August 10 2006 12:47 PM
FEE: $ 84.00

**200600294226**



U.S. BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK

THE DATE OF ENTRY IS

ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 6, 2014**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                                                    CASE NO: 14-30153-HDH-13
CHERYL LYNN DECLOUET
            DEBTOR

---

### Order Confirming Chapter 13 Plan, Valuing Collateral, Allowing Debtor's Attorney's Fees, Providing for a Trustee's Recommendation Concerning Claims, and Other Related Matters (With Revisions to the Plan as Specified Herein)

---

It having been determined after at least twenty-eight (28) days notice to all creditors, no hearing having been requested and no Objection to Confirmation or Valuation having been timely filed, or if filed, having been overruled or withdrawn:

That the Debtor's Chapter 13 Plan ("Plan") complies with Chapter 13 and all applicable provisions of Title 11, United States Code;

That any fee, charge or amount required under Chapter 13 of Title 28 of the United States Code or by the Plan, to be paid before Confirmation, has been paid.

That the Plan has been proposed in good faith and not by any means forbidden by law;

Order Confirming Chapter 13 Plan, Page 2
Case # 14-30153-HDH-13
CHERYL LYNN DECLOUET

That the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of Title 11 of the United States Code on such date;

That the Plan provides that the holders of secured claims who have not accepted the Plan shall retain their liens until the earlier of the payment of the underlying debt determined under non-bankruptcy law or discharge under Section 1328; and if this case is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law; and the value, as of the effective date of the Plan, of property to be distributed under the Plan on account of secured claims whose holders have not accepted the Plan is not less than the allowed amount of those claims; and as to the holders of secured claims who have not accepted the Plan, if property to be distributed pursuant to the Plan is in the form of       periodic payments, such payments will be in equal monthly amounts; and if the holder of the claim is secured by personal property, the amount of such payments will not be less than an amount sufficient to provide the holder of such claim adequate protection during the period of the Plan; or the Debtor will surrender the property securing such claim to such holder;

That the action of the Debtor in filing the petition was in good faith;

That the Debtor Has paid all amounts that are required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition, if the Debtor Is required by a judicial or administrative order or by statute, to pay such Domestic Support Obligation;

That the Debtor has filed all applicable Federal, State, and Local Tax Returns as required by Section 1308 of Title 11 of the United States Code;

That no Objection to Confirmation has been filed by the Trustee or any unsecured creditor, or if so, that the Debtor will pay under the Plan, all Debtor's projected disposable income for the applicable commitment period, to be applied to payments to unsecured creditors under the Plan;

That Confirmation of Debtor's Plan and the Valuation set forth therein have been recommended by the Standing Chapter 13 Trustee; and

That no further operating reports are necessary or required to be filed with the Standing Chapter 13 Trustee.

**IT IS THEREFORE  ORDERED** that the Debtor's Chapter 13 Plan filed **04/15/2014** is confirmed.

**IT IS FURTHER ORDERED** that the Debtor's shall pay a total plan base of **$22,800.00** over **60** months (not to exceed 60) by making monthly payments commencing on **02/05/2014** in accordance with the following payment schedule:

| Due Date | Amount Due | Number of Payments |
|----------|-----------|--------------------|
| 2/5/14 | $200.00 | 2 months |
| 4/5/14 | $200.00 | 10 months |
| 2/5/15 | $425.00 | end of plan |

Order Confirming Chapter 13 Plan, Page 3
Case # 14-30153-HDH-13
CHERYL LYNN DECLOUET

**IT IS FURTHER ORDERED** that the Debtor's Plan complies with 11 U.S.C. 1325(a)(4) and 1325(b)(1)(B) in that it provides for total payments at least equal to a minimum base of **$7,200.00**.

**IT IS FURTHER ORDERED** that the allowed unsecured claims will be paid pro-rata from the non-exempt property of **$10,793.00**.

**IT IS FURTHER ORDERED** that the Debtor's Attorney, **HERRIN & WRIGHT PLLC**, is allowed a total fee not to exceed **$3,500.00** with **$2,900.00** to be paid through the plan by the Trustee, unless a greater amount is approved by separate Order of the Court after hearing on a fee application.

**IT IS FURTHER ORDERED** that for purposes of distribution under the Plan, Section 506 and Section 1325 (a),(5) of the Bankruptcy Code, the value of collateral securing any claim herein and treatment of the claim secured thereby is as set forth in Section I, Paragraphs "E", "F" and "G" of the Debtor's(s') Chapter 13 Plan and Motion for Valuation herein confirmed, EXCEPT:

No Changes

**IT IS FURTHER ORDERED** that if the Claim is not paid during the term (Approximate) shown in Section I, Paragraphs D, E, H and/or I of the Plan, the Trustee shall continue to pay the Claim until it is paid in full, as stated in Section II, Paragraph U of the Plan;

**IT IS FURTHER ORDERED** that the Trustee is authorized to receive, endorse, and apply to any delinquent payments under the Plan, any Income Tax Refund payable to debtor(s) during the pendency of this case, and apply any IRS refund in excess of $2000 pro-rata to Debtor's allowed general unsecured creditors, per Paragraph 10 of General Order 2010-01.

**IT IS FURTHER ORDERED** that Debtor shall provide a copy of their federal income tax return to the Trustee within ten (10) days of filing such during the term of the Plan.

**IT IS FURTHER ORDERED** that the Debtor shall not dispose of or encumber any non-exempt property prior to discharge without consent of the Trustee or order of the Court after notice to the Trustee and all creditors.

**IT IS FURTHER ORDERED** that the Standing Chapter 13 Trustee is hereby discharged from any liability from the Debtor's operation of business and from any further duty to investigate the business of the Debtor or to require any further operating reports from the Debtor.

**IT IS FURTHER ORDERED** that pursuant to General Order 2010-01, Paragraph 8, as soon as practicable after the governmental claims bar date, the Trustee shall prepare and serve on Debtor's counsel, all creditors who were scheduled, all creditors who filed claims and any party that has filed a Notice of Appearance, a Trustee's Recommendation Concerning Claims ("TRCC") and notice of hearing and pre-hearing conference thereon. The TRCC may be deemed in part to be an Objection to Claims. Objections to the TRCC shall be filed within thirty (30) days from the date of service of the TRCC. Unless an objection is timely filed as to the treatment of any claim, the claim will be allowed or approved only as described in the TRCC, and such treatment will be binding on all parties without further order of the Court. All unresolved objections to the TRCC shall be deemed waived if not timely filed or if the proponent of any such obligation fails to attend the Trustee's pre-hearing conference or give the Trustee prior written notice that a hearing is necessary.

Order Confirming Chapter 13 Plan, Page 4
Case # 14-30153-HDH-13
CHERYL LYNN DECLOUET


Approved by:

/s/  Tom Powers
_____


### End of Order ###

Office of the Standing Chapter 13 Trustee
125 E JOHN CARPENTER FREEWAY
SUITE 1100 11TH FLOOR
IRVING, TX  75062
(214) 855-9200

**Office of the Standing Chapter 13 Trustee**
**125 E John Carpenter Freeway**
**Suite 1100 11th Floor**
**Irving, TX 75062**
**(214) 855 9200 / (214) 965 0756 (Fax)**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

</div>

IN RE:                                                        Case No. 14 30153 HDH 13
CHERYL LYNN DECLOUET
                    Debtor                                    Hearing Date: September 25, 2014

<div align="center">

**Notice of Pre Hearing Conference and Hearing on**
**Trustee's Recommendation Concerning Claims, Objection to Claims and Plan**
**Modification (if required)**

</div>

TO:       ALL PARTIES IN INTEREST

A pre-hearing conference with the Chapter 13 Trustee concerning the Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required) ("TRCC") will be held at 8:30 a.m. on **September 25, 2014** at 125 E John Carpenter Freeway, Suite 1100 11th Floor, Irving, TX 75062.

Any objection to the Pleading not resolved or defaulted at the Trustee's pre-hearing conference will be heard by the Court at 2:00 p.m. on the same day at 1100 Commerce Street, Fourteenth Floor, Dallas, Texas.

Pursuant to General Order 2010-01, unless an objection is timely filed as to the treatment of any claim or modification, the claim or modification will be allowed or approved as described in the TRCC, and such treatment will be final and binding on all parties.

TO BE CONSIDERED, ANY OBJECTION OR RESPONSE MUST BE MADE IN WRITING, FILED WITH THE COURT, AND A COPY SERVED ON ANY AFFECTED CREDITORS AND ON THE FOLLOWING PARTIES NO LATER THAN 08/27/2014.

| | |
|---|---|
| Debtor: | CHERYL LYNN DECLOUET, 1328 CLEARWATER DRIVE, GRAND PRAIRIE, TX 75052 |
| Attorney: | HERRIN & WRIGHT PLLC, 4925 GREENVILLE AVENUE, SUITE 200, DALLAS, TX 75206 |
| Court: | CLERK'S OFFICE, US BANKRUPTCY COURT, 1100 COMMERCE ST., 12TH FLOOR, DALLAS, TEXAS, 75202 |
| Trustee: | TRUSTEE'S OFFICE, 125 E. JOHN CARPENTER FREEWAY, SUITE 1100, IRVING, TEXAS 75062 |

By: /s/ Thomas D. Powers

Thomas D. Powers, Chapter 13 Trustee
State Bar No. 16218700

## Certificate of Service

I hereby certify that a copy of the foregoing "Notice of Hearing on Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)" and "Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)" was served on the following parties at the addresses listed below by United States First Class Mail or via electronic mail.

Debtor:         Cheryl Lynn Declouet, 1328 Clearwater Drive, Grand Prairie, Tx 75052
Attorney:       Herrin & Wright Pllc, 4925 Greenville Avenue, Suite 200, Dallas, Tx 75206**
Creditor(s):    Altair Oh Xiii Llc, Co Weinstein Pinson And Riley Ps, 2001 Western Avenue Ste 400, Seattle, Wa 98121

                Altair Oh Xiii Llc, Co Weinstein Pinson And Riley Ps, Po Box 3978, Seattle, Wa 98124

                American Express Ban Fsb, Co Becket And Lee Llp, Po Box 3001, Malvern, Pa 19355-0701

                American Express Centurion, Becket And Lee Llp, Po Box 3001, Malvern, Pa 19355-0701**

                American Infosource Lp, Methodist Health System, Po Box 248838, Oklahoma City, Ok 73124

                Attorney General Of Texas, Po Box 12548, Austin, Tx 78711-2548**

                Barrett Daffin Frappier Et Al, 15000 Surveyor Blvd Suite 100, Addison, Tx 75001**

                Butler & Hosch Pa, 13800 Montfort Dr Ste 300, Dallas, Tx 75240

                Cach Llc, 4340 South Monaco St, 2Nd Floor, Denver, Co 80237

                Cavalry Spv I Llc, Cavalry Portfolio Services, 500 Summit Lake Drive Ste 400, Valhalla, Ny 10595

                Cavalry Spv I Llc, Po Box 27288, Tempe, Az 85282

                Chase, Po Box 15298, Wilmington, De 19850

                County Of Dallas, Co Linebarger Goggan Blair Et Al, 2777 N Stemmons Fwy Ste 1000, Dallas, Tx 75207**

                Escallate Llc, 5200 Stoneham Rd, North Canton, Oh 44720

                Internal Revenue Service, Po Box 7317, Philadelphia, Pa 19101-7317

                Internal Revenue Service, Po Box 7346, Philadelphia, Pa 19101-7346**

                Marsinc, 5810 E Skelly Dr, Tulsa, Ok 74135

                Portfolio Recovery Associates, By Pra Receivables Management, Po Box 12914, Norfolk, Va 23541

                Portfolio Recovery Associates, By Pra Receivables Management, Po Box 41067, Norfolk, Va 23541

                Quantum3 Group Llc, Po Box 788, Kirkland, Wa 98083-0788

                Seterus Inc, Po Box 2206, Grand Rapids, Mi 49501-2206

                Seterus, Po Box 2008, Grand Rapids, Mi 49501-2008

                Texas Comptroller Of Public Accounts, Revenue Accounting Div - Bankruptcy Sect, Po Box 13528, Austin, Tx 78711-3528

                Us Ban Home Mortgage, 4801 Frederica Street, Owensboro, Ky 42301

                Victorias Secret, Attention: Bankruptcy, Po Box 182125, Columbus, Oh 43218

                Wells Fargo Ban Na, Home Equity Group, X2303 01A 1 Home Campus, Des Moines, Ia 50328-0001

                Wells Fargo Ban Na, Wells Fargo Operations Center, Po Box 31557 Mac B6955 01B, Billings, Mt 59107

**Indicates party has elected to receive all notifications via electronic service and was not served a copy via United States First Class Mail.

Dated: 07/28/2014                          By: /s/ Thomas D. Powers
                                           Thomas D. Powers, Chapter 13 Trustee
                                           State Bar No. 16218700

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                                                          Case No. 14-30153-HDH-13
CHERYL LYNN DECLOUET
             Debtor                                             Hearing Date: September 25, 2014

## Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)

The Trustee hereby objects to the following claims for the reason(s) indicated, pursuant to Bankruptcy Rule 3007:

I.

### OBJECTION - NO PROOF OF CLAIM FILED

The following creditors were scheduled by the Debtor. No Proof of Claim has been filed by them or on their behalf, as required by Bankruptcy Rule 3002(a). The "bar date" for filing claims pursuant to Bankruptcy Rule 3002(c) has passed. Therefore the claims should be DISALLOWED.

| T'ee # | Creditor's Name | Sched Amount | Sched Amount |
|--------|-----------------|--------------|--------------|
| 4 | CHASE | Unsecured | $ 6,070.00 |
| 7 | ESCALLATE LLC | Unsecured | $ 781.00 |
| 11 | MARS INC | Unsecured | $ 175.00 |
| 33 | VICTORIAS SECRET | Unsecured | $ 0.00 |

II.

### SPECIFIC OBJECTIONS

The Trustee hereby objects to the following claims, for the reason(s) indicated in Column 7. The claims should be ALLOWED/DISALLOWED as indicated in Column 4 for the amount and class indicated in Columns 5 and 6 respectively.

| Column 1 Pacer # | Column 2 Creditor Name | Column 3 Claim | Column 4 Allow/ Disallow | Column 5 Amount | Column 6 Class | Column 7 Reason (See Below) | Column 8 T'ee # |
|---|---|---|---|---|---|---|---|
| *** NONE *** | | | | | | | |

### CODE-REASON(S) FOR CLAIM OBJECTION

*** NONE ***

III.

### TRUSTEE'S RECOMMENDATIONS CONCERNING ALLOWED CLAIMS

The Trustee hereby recommends the ALLOWANCE of the following claims for the amount and in the class listed below.

| T'ee Clm # | DSO Creditors | Collateral | Claim Amount | Paid by |
|---|---|---|---|---|
| | *** NONE *** | | | |

| T'ee Clm # | Secured 910 Creditors No Cram Down | Collateral | Claim Amount | Value | | Paid by |
|---|---|---|---|---|---|---|
| | *** NONE *** | | | | | |

| T'ee Clm # | Secured Creditors | Collateral | Claim Amount | Value | | Paid by |
|---|---|---|---|---|---|---|
| 13 | SETERUS INC | 1ST LN/HOME/ARREARS | $ 7,331.15 | $ 135,290.00 | 0.00 | Trustee |
| 16 | US BANK HOME MORTGAGE | 2220 BELLAIRE | $ 48,039.74 | $ 70,000.00 | 0.00 | Direct by Debtor |
| 18 | WELLS FARGO BANK NA | 2ND LN/HOME/ARREARS | $ 566.92 | $ 19,258.00 | 0.00 | Trustee |
| 21 | SETERUS INC | 1ST LN/HOME/CURRENT | $ 116,815.44 | $ 135,290.00 | 0.00 | Direct by Debtor |
| 22 | WELLS FARGO BANK NA | 2ND LN/HOME/CURRENT | $ 25,857.17 | $ 19,258.00 | 0.00 | Direct by Debtor |
| 23 | COUNTY OF DALLAS | REAL PROPERTY | $ 3,772.97 | $ 135,290.00 | 0.00 | Direct by Debtor |

| T'ee Clm # | Priority Creditors | Comment | Claim Amount | Paid by |
|---|---|---|---|---|
| | *** NONE *** | | | |

| T'ee Clm # | Unsecured Special Class Creditors | Collateral | Claim Amount | Paid by |
|---|---|---|---|---|
| | *** NONE *** | | | |

| T'ee Clm # | Unexpired Leases | Collateral | Claim Amount | Value | | Paid by |
|---|---|---|---|---|---|---|
| | *** NONE *** | | | | | |

| T'ee Clm # | Unsecured Creditors | Comment | Claim Amount |
|---|---|---|---|
| 3 | PORTFOLIO RECOVERY ASSOCIATES | CAPITAL ONE | $ 883.63 |
| 5 | ALTAIR OH XIII LLC | CITIBANK | $ 4,771.03 |
| 8 | CAVALRY SPV I LLC | GE RETAIL BANK/BASSETT FURNTIURE | $ 2,273.32 |
| 15 | CACH LLC | MID AMERICA BANK | $ 748.84 |
| 17 | QUANTUM3 GROUP LLC | COMENITY BANK/VICTORIAS SECRET | $ 40.04 |
| 27 | AMERICAN EXPRESS CENTURION | | $ 2,130.59 |
| 28 | AMERICAN EXPRESS BANK FSB | | $ 543.77 |
| 31 | AMERICAN INFOSOURCE LP | METHODIST CHARLTON MED CTR | $ 339.38 |
| 32 | AMERICAN INFOSOURCE LP | METHODIST CHARLTON MED CTR | $ 16.40 |

**IV.**

**PLAN MODIFICATION, subject to feasibility**

Pursuant to 11 U.S.C. Section 1329, and in accordance with General Order 2010-01, the Trustee requests the following Modification of the Debtor Confirmed Plan, subject to feasibility, herein:

☐ Change monthly payment amount from $200.00 per month to $200.00 X 4; $444.00 X 50;. This payment change will begin with the payment due on 08/05/2014; and

Case 20-03005 Doc 2-6 Filed 07/28/14 Entered 07/28/14 10:25:15 Page 70 of 295

Case 14-30153 HDH 13                                                                                    Page 5
CHERYL LYNN DECLOUET
 Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)

---

☐ The above change(s) will result in a new "BASE AMOUNT" of $24,200.00 (total due to Trustee under Plan, if all payments timely made).

**<u>Reason for Modification</u>**

The modification is requested for the following reason(s):

☐ To cure an insufficient plan.

By: /s/ Thomas D. Powers
Thomas D. Powers, Chapter 13 Trustee
State Bar No. 16218700



U.S. BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK

THE DATE OF ENTRY IS

ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 6, 2014**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                                                                CASE NO:  14-30153-HDH-13
CHERYL LYNN DECLOUET
          DEBTOR

_____

### Order on Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required)

_____

At Dallas in said District:

On this day came on for hearing the Trustee's Recommendation Concerning Claims, Objections to Claims and Plan Modification (if required) (hereinafter referred to as "TRCC") dated 7/28/14, and any responses filed thereto.

After considering the pleadings, the evidence and stipulations, if any, and the argument of counsel, the Court finds that the following order should be entered:

Order on Trustee's Recommendation Concerning Claims, Objection to Claims and Plan Modification (if required), Page 2
Case # 14-30153-HDH-13
CHERYL LYNN DECLOUET

IT IS THEREFORE ORDERED that all claims listed in Section I of the TRCC (No Proof of Claim Filed) are hereby **DISALLOWED** except for the following, if any, which are **ALLOWED**:

No Changes

**IT IS FURTHER ORDERED** that all claims shown in Section II of the TRCC (Specific Objections) are hereby **ALLOWED** or **DISALLOWED** as shown therein except as follows:

No Changes

**IT IS FURTHER ORDERED** that all claims shown in Section III of the TRCC (Recommendations) are hereby **ALLOWED** as shown therein except as follows:

No Changes

**IT IS FURTHER ORDERED** that the Plan Modification show in Section IV of the TRCC is **APPROVED** except as follows:

Payments changed to:   The total amount due under the plan as of 07/05/2014 is $1,200.00; payments to resume 08/05/2014,

$200.00 X 4; $444.00 X 50;

Plan Base is $24,200.00

Plan Term is 60 months.

Approved by:

/s/  Tom Powers
_____

### End of Order ###

Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway
Suite 1100 11th Floor
Irving, TX  75062
(214) 855-9200

Exhibit "G" - Page 2 of 2

Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway Suite 1100 11th Floor
Irving, TX 75062
Telephone: (214) 855-9200  Facsimile: (214) 965-0758

<div align="center">

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

</div>

| | |
|---|---|
| IN RE: | Case No.  14-30153-HDH-13 |
| | **Hearing Date:** 9/24/2015 8:30 AM |
| CHERYL LYNN DECLOUET (xxxxx1883) | |
| | |
| **1328 CLEARWATER DRIVE** | |
| **GRAND PRAIRIE, TX  75052** | |
| | **CHAPTER 13** |
| Debtor | |

ATTENTION SETERUS INC, Court Claim No. 13

<div align="center">

**NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARS**
**(per Local Bankruptcy Rule 3002-2 regarding Trustee's Mid Case Audit of Plan and Mortgage)**

**SCHEDULING ORDER**

</div>

A Scheduling Order will be served by the Bankruptcy Clerk which will establish specific, important, and mandatory dates and deadlines concerning this Notice.  If there is any conflict between the Scheduling Order and this Notice, the Scheduling Order will control.

<div align="center">

**RESPONSE REQUIRED**

</div>

ON OR BEFORE 60 DAYS FROM THE SERVICE OF THIS NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARS, IF THE CREDITOR/HOLDER NAMED ABOVE DISPUTES THE INFORMATION IN THE NOTICE, THE CREDITOR/HOLDER MUST FILE WITH THE CLERK OF THE COURT AT U.S. BANKRUPTCY COURT, 1100 COMMERCE ST 14TH FLOOR, DALLAS, TEXAS, 75242, A WRITTEN RESPONSE AND SERVE IT ON THE DEBTOR, DEBTOR'S ATTORNEY, AND THE CHAPTER 13 TRUSTEE, PURSUANT TO LOCAL BANKRUPTCY RULE 3002-2(c), INDICATING WHETHER THE CREDITOR/HOLDER DISPUTES THE INFORMATION IN THIS NOTICE.

THE RESPONSE MUST ALSO ITEMIZE CURE AMOUNTS OR POST-PETITION ARREARS, IF ANY, THAT THE CREDITOR/HOLDER CONTENDS EXIST AS OF THE DATE OF THE RESPONSE.

FAILURE BY CREDITOR/HOLDER NAMED ABOVE TO RESPOND TIMELY TO THIS NOTICE MAY RESULT IN THE ENTRY OF A DEFAULT ORDER BY THE COURT DEEMING THE MORTGAGE TO BE CURRENT, OR DELINQUENT IN THE AMOUNT(S) SET FORTH IN THIS NOTICE.

THE ENTRY OF SUCH AN ORDER MAY PRECLUDE THE CREDITOR/HOLDER OF THE CLAIM FROM ASSERTING OTHER CURE AMOUNTS OR POST-PETITION ARREARS THAT ALLEGEDLY ACCRUED BEFORE THE DATE OF THIS NOTICE IN ANY CONTESTED MATTER OR ADVERSARY PROCEEDING IN THE CASE OR IN ANY OTHER MATTER, MANNER, OR FORUM AFTER DISCHARGE IN THIS CASE, UNLESS THE COURT DETERMINES, AFTER NOTICE AND HEARING, THAT THE FAILURE WAS SUBSTANTIALLY JUSTIFIED OR IS HARMLESS.

## NEGATIVE NOTICE
### (per Local Bankruptcy Rule 9007-1(c))

NO HEARING WILL BE CONDUCTED ON THIS NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARAGE UNLESS A WRITTEN RESPONSE TO THE CREDITOR/HOLDER NAMED ABOVE IS FILED BEFORE THE CLOSE OF BUSINESS AT LEAST 60 DAYS FROM THE DATE OF SERVICE HEREOF, OR UNLESS A WRITTEN RESPONSE TO THE DEBTOR IS FILED BEFORE THE CLOSE OF BUSINESS AT LEAST 90 DAYS FROM THE DATE OF SERVICE HEREOF, WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT U.S. BANKRUPTCY COURT, 1100 COMMERCE ST 14TH FLOOR, DALLAS, TEXAS, 75242.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON THE DEBTOR, COUNSEL FOR THE DEBTOR, IF ANY, THE CREDITOR/HOLDER, COUNSEL FOR THE CREDITOR/HOLDER, IF ANY, AND THE CHAPTER 13 TRUSTEE.

IF A RESPONSE IS TIMELY FILED BY CREDITOR/HOLDER OR THE DEBTOR, A PRE-HEARING CONFERENCE WILL BE HELD AT 8:30 AM ON 09/24/2015 AT THE OFFICE OF TOM POWERS, CHAPTER 13 TRUSTEE, 125 E JOHN CARPENTER FREEWAY STE 1100, IRVING, TEXAS 75062. ANY MATTERS UNRESOLVED AT THE TRUSTEE'S PRE-HEARING CONFERENCE WILL BE HEARD BY THE COURT AT 2:00 pm ON 09/24/2015.

IF NO RESPONSE IS TIMELY FILED, THE INFORMATION CONTAINED IN THIS NOTICE WILL BE DEEMED UNOPPOSED AND/OR UNDISPUTED, AND THE COURT WILL ISSUE AN ORDER BY DEFAULT, FINDING THE MORTGAGE TO BE CURRENT, OR DELINQUENT IN THE AMOUNT SET FORTH HEREIN, AS OF THE DATE OF THIS NOTICE.

Pursuant to Local Bankruptcy Rule 3002-2(b), the Chapter 13 Trustee, Tom Powers, files this Notice of Amount Deemed Necessary to Cure Mortgage Arrears ("Notice").

## PLAN ARREARAGE

To the Trustee's knowledge, the Debtor are current on their plan, or if not, the amount believed necessary to cure any default on the plan is $313.77.

# PRE‑PETITION MORTGAGE ARREARAGE

The amount believed necessary to cure any pre-petition home mortgage arrearage claim(s) (**cure amount**) is as follows

Name of Creditor: SETERUS INC
Claim Type: HOME MORTGAGE ARREARAGE

| Court Claim # | Trustee Claim# | Account Number | Claim Amount | Claim Allowed | | Amount Paid |
|---|---|---|---|---|---|---|
| 13 | 13 | 5223 | $7,331.15 | $7,331.15 | Prinicpal+ Interest | $926.66 $0.00 |

Total Amount Paid By Trustee: $926.66

**PRINCIPAL AMOUNT NECESSAR TO CURE PRE PETITION MORTGAGE ARREARAGE CLAIM (TRUSTEE CLAIM 13) TO E PAID  THE TRUSTEE, IF AN $6,404.49**

## ONGOING CURRENT MONTHL MORTGAGE PA MENTS

Name of Creditor: SETERUS INC
Claim Type: HOME MORTGAGE REGULAR PAYMENT

| Court Claim # | Trustee Claim# | Account Number | Claim Amount | Claim Allowed |
|---|---|---|---|---|
| 13 | 21 | 5223 | $116,815.44 | $116,815.44 |

Total Amount Paid By Trustee: - NONE

**THE ONGOING CURRENT MONTHL MORTGAGE PA MENTS ARE, ACCORDING TO THE PLAN, TO E PAID DIRECT  THE DE TOR. THE TRUSTEE HAS NO NOWLEDGE OF THE STATUS OF THOSE ONGOING PA MENTS, OR AN POST PETITION ARREARS THEREON, E CEPT AS NOTED A OVE. HOWEVER, THE HOLDER OF THE CLAIM MUST ITEMI E IN ITS RESPONSE AN OTHER PRE PETITION ARREARAGES OR AN POST PETITION ARREARS THAT THE HOLDER CONTENDS E IST AS OF THE DATE OF THE RESPONSE OTHERWISE THE COURT WILL ISSUE AN ORDER  DEFAULT, FINDING THE MORTGAGE TO E CURRENT AS OF THE DATE OF THIS NOTICE.**

Date 06/12/2015

RESPECTFULL SU MITTED,

/s/ Thomas D. Powers
Thomas D. Powers, Trustee
State Bar No. 16218700
Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway Suite 1100 11th Floor
Irving, TX 75062
Telephone: (214) 855-9200  Facsimile: (214) 965-0758

### CERTIFICATE OF SERVICE

The undersigned does hereby ceritfy that a true and correct copy of the foregoing was sent to all parties as listed below on June 12, 2015, either electronically or via U.S. First Class Mail.

Debtor:    Cheryl Lynn Declouet, 1328 Clearwater Drive, Grand Prairie, Tx  75052
Attorney:    Herrin & Wright Pllc, 4925 Greenville Avenue, Suite 130, Dallas, Tx  75206**
Creditor(s):    Barrett Daffin Frappier Et Al, 15000 Surveyor Blvd Suite 100, Addison, Tx  75001**
    Butler & Hosch Pa, 13800 Montfort Dr Ste 300, Dallas, Tx  75240
    County Of Dallas, Co Linebarger Goggan Blair Et Al, 2777 N Stemmons Fwy Ste 1000, Dallas, Tx  75207**
    Seterus, Po Box 2008, Grand Rapids, Mi  49501-2008

**Indicates party has elected to receive all notifications via electronic service and was not served a copy via United States First Class Mail.

Date 06/12/2015

**RESPECTFULLY SUBMITTED,**

/s/ Thomas D. Powers
Thomas D. Powers, Trustee
State Bar No. 16218700
Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway Suite 1100 11th Floor
Irving, TX 75062
Telephone: (214) 855-9200   Facsimile: (214) 965-0758

BTXN 220 (03/14)

<div align="center">

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

</div>

| | | |
|---|---|---|
| In Re: | § | |
| Cheryl Lynn DeClouet | § | Case No.: 14–30153–hdh13 |
| | § | Chapter No.: 13 |
| Debtor(s) | § | |

## *SCHEDULING ORDER REGARDING MID–CASE NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARAGE*

On *6/12/15*, the chapter 13 trustee filed and served a "Notice of Amount Deemed Necessary to Cure Mortgage Arrearage" (the *"Mortgage Notice"* ). This scheduling order shall govern any disputes over the Mortgage Notice.

### *THE FOLLOWING DEADLINES APPLY IN THE CASE:*

The Mortgage Notice is set for pre–hearing conference on *9/24/15* at *8:30 am* at *Thomas Powers, Ch. 13 Trustee, 125 E. John Carpenter Frwy., Suite 1100 Irving, TX 75062–2288*. The trustee is not required to send a seperate notice of the pre–hearing conference to any party.

If the debtor disputes the information in the Mortgage Notice, the lender must file a response (the *"Lender's Response"* ) on or before *8/11/15*. The Lender's Response must be served on the chapter 13 trustee, the debtor and the debtor's counsel, if the debtor has counsel. The Lender's Response must include an itemization of any cure amounts or post–petition arrearages the lender contends existed as of the date of the Lender's Response. If the lender fails to respond by the deadline provided herein or files a response stating that the lender agrees with the Mortgage Notice and the debtor does not timely file a Debtor's Reply as described herein, the lender is not required to attend the pre–hearing conference and the court will enter an order approving the amounts asserted in the Mortgage Notice.

If the debtor disputes the information in the Mortgage Notice or if the lender files a Lender's Response and the debtor disputes the information in the Lender's Response, the debtor must file a reply (the *"Debtor's Reply"* ) on or before *9/10/15*. The Debtor's Reply must admit or deny whether any pre– or post– petition delinquency exists and must provide specific information to contest any delinquency asserted by the trustee in the Mortgage Notice and/or the lender in the Lender's Response. If the debtor denies any asserted delinquency, a general denial will not suffice; rather, the Debtor's Reply must provide specific facts in support of the denial, such as the date and amount of any payment the debtor made that supports the debtor's denial of delinquency. If the Debtor's Reply does not contain such specific information, the trustee may grant the debtor an additional 14 days to provide specific information. If the debtor fails to provide the specific information within the 14–day period, the trustee may deem the Debtor's Reply to be a default under the terms of the order. The Debtor's Reply must be served on the chapter 13 trustee, the lender and the lender's counsel, if the lender has counsel. If the debtor fails to respond by the deadline provided herein or files a response stating that the debtor agrees with the Mortgage Notice and the Lender's Response (if any), the debtor is not required to attend the pre–hearing conference and the court will enter an order approving the amounts asserted in the Mortgage Notice, except as follows: if a timely filed Lender's Response asserts a different post–petition arrearage than that asserted in the Mortgage Notice, the post–petition arrearage in the Lender's Response shall control and be set forth in the order regarding the Mortgage Notice.

At the time set for the pre–hearing conference, if there are any unresolved disputes raised in either the Lender's Response or the Debtor's Reply, the disputing parties must attend the pre–hearing conference.

If the lender is a disputing party and the lender does not attend the pre–hearing conference and no timely Debtor's Reply is filed, the court will enter an order approving the amounts asserted by the trustee in the Mortgage Notice. If a Debtor's Reply is filed timely, the court will enter an order approving the amounts asserted in the Mortgage Notice except as follows: if the debtor asserts a different post–petition arrearage in the Debtor's Reply on that part of the mortgage claim being paid post–petition directly by the debtor to the mortgage holder, such post–petition arrearage asserted in the Debtor's Reply shall control and be set forth in the order regarding the Mortgage Notice.

If the debtor is a disputing party and the debtor does not appear at the pre–hearing conference, the court will enter an order approving the amounts asserted in the Mortgage Notice except as follows: if a timely filed Lender's Response asserts a different post–petition arrearage than that asserted in the Mortgage Notice on that part of the mortgage claim being paid post–petition directly by the debtor to the mortgage holder, such post–petition arrearage asserted in the Lender's Response shall control and be set forth in the order regarding the Mortgage Notice.

If the trustee is not a disputing party and the debtor and the lender are both disputing parties and neither the debtor nor the lender appear at the pre–hearing conference, the court will enter an order approving the amounts asserted in the Mortgage Notice except as follows: if the debtor asserts a different post–petition arrearage in a timely filed Debtor's Reply on that part of the mortgage claim being paid post–petition directly by the debtor to the mortgage holder, such post–petition arrearage asserted in the Debtor's Reply shall control and be set forth in the order regarding the Mortgage Notice.

If the matter is not resolved as of the time of the pre–hearing conference, the trustee shall either set the matter on the next regular chapter 13 court docket, or at the trustee's option, contact the courtroom deputy and obtain a special setting for an evidentiary hearing. The court will use its best efforts to provide an evidentiary hearing within 30 to 45 days after the pre–hearing conference. All witness and exhibit lists must be filed and exhibits must be exchanged at least three business days before the evidentiary hearing date.

Once the court enters an order on the Mortgage Notice, the debtor and the lender will be barred from contesting the amounts set out in the order in any contested matter or adversary proceeding in this case, or in any other matter, manner or forum after a discharge in the case, unless the court determines, after notice and a hearing, that the failure to respond or the failure to attend the pre–hearing conference was substantially justified or is harmless.


DATED:  6/15/15                          FOR THE COURT:
                                         Tawana C. Marshall, Clerk of Court

                                         by: /s/J. Calfee, Deputy Clerk

Case No:  14-30153-HDH-13

# UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF TEXAS

Dallas Division

| | | | |
|---|---|---|---|
| In re: | CHERYL LYNN DECLOUET | Case No: | 14-30153-HDH-13 |
| | | Chapter: | 13 |

Property Address:  1328 CLEARWATER DRIVE, GRAND PRAIRIE, TX 75052

Last four digits of any number you use to
Identify the Debtor's account:  5223

Court Claim No. (if known)  13

## STATEMENT IN RESPONSE TO NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARS UNDER L.B.R. 3002-2

**FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC.**
("Creditor") hereby responds to that certain Statement in Response to Notice of Amount Deemed Necessary to Cure Mortgage Arrears  ("Cure Notice") dated June 12, 2015 and filed as Docket 36.

### Pre-Petition Amounts Received

Applicable  option is checked

☑ Agrees that the Trustee has paid the amounts listed on the Cure Notice towards the Creditor's claim.

☐ Disagrees that the Trustee has paid the amounts listed on the Cure Notice towards Creditor's claim. Creditor states that the total amount received as of the date of the Cure Notice is:

| Total Amount Due: | $0.00 |
|---|---|

Attached is an itemized Statement of amounts paid through the date listed on the Statement.

### Post-Petition Amounts Outstanding

Applicable  option is checked

☐ Agrees that Debtors are current with respect to all post-petition payments, fees and costs, whether paid directly to Creditor or being paid through Debtor's Chapter 13 Plan as of the date of the Cure Notice.

☑ Disagrees that Debtors are current with respect to all post-petition payments, fees and costs as of the date of the Cure Notice and states that the total amount to cure the post-petition arrearage is:

| Total Amount Due: | $14,061.14 | * |
|---|---|---|

Attached is an itemized Statement of the post-petition arrearage due and owing through the date listed on the Statement. The outstanding amounts identified on the Statement do not reflect amounts that became or may become due after the date listed therein, including any fees that may have been incurred in the preparation, filing or prosecution of this Cure Notice.

The outstanding amounts identified on the attached Statements may not, due to timing, reflect all payments sent to Creditor as of the date stated therein. In addition, the amounts due may include payments reflected on the Notice of Amount Deemed Necessary to Cure Mortgage Arrears but which have not yet been received and/or processed by Creditor.

Exhibit "J" - Page 1 of 6

Case No: 14-30153-HDH-13

# UNITED STATES BANKRUPTCY COURT

X /s/ DONNA WILKINSON _____      X ___08/26/2015_____

          Signature                                              Date  (MM/DD/YYYY)

First Name: **DONNA**           Middle Name:           Last Name: **WILKINSON**

Title:      **Attorney**

Company    **BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**

Address     **15000 SURVEYOR BLVD SUITE 100**

City        **ADDISON**          State: **TX**           Zip: **75001**

Phone     **(972) 386-5040**

# UNITED STATES BANKRUPTCY COURT

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2015, a true and correct copy of the Statement in Response to Notice of Amount Deemed Necessary to Cure Mortgage Arrears Under L.B.R. 3002-2 was served via electronic means as listed on the Court's ECF noticing system or by regular first class mail to the parties listed on the attached list.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

BY: /s/ DONNA WILKINSON                    08/26/2015
    DONNA WILKINSON
    TX NO. 24084098
    15000 SURVEYOR BLVD SUITE 100
    ADDISON, TX 75001
    Telephone: (972) 386-5040
    E-mail: NDECF@BDFGROUP.COM
    ATTORNEY FOR CLAIMANT

Case No:  14-30153-HDH-13

# UNITED STATES BANKRUPTCY COURT

### BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:

**DEBTOR:**
CHERYL LYNN DECLOUET
1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX 75052

**DEBTOR'S ATTORNEY:**
DANIEL HERRIN
4925 GREENVILLE AVE
SUITE 130
DALLAS, TX  75206

**TRUSTEE:**
THOMAS POWERS
125 E. JOHN CARPENTER FRWY
SUITE 1100
IRVING, TX  75062-2288

**UNITED STATES TRUSTEE:**
1100 COMMERCE STREET
ROOM 976
DALLAS, TX  75242

Exhibit "J" - Page 4 of 6

## <u>Schedule of Amounts Outstanding Post-Petition Claim</u>

| Fee Description | Fee Amount |
|---|---|
| **PAYMENTS:** 10/1/2014 – 8/1/2015  (11 payments) @ $1,317.91 | $14,497.01 |
| **SUSPENSE:** | ($435.87) |
| **TOTAL:** | **$14,061.14** |

# POST-PETITION PAYMENT HISTORY

**Name:** Cheryl Declouet
**Loan #:**
**Case #:** 14-30153
**Date Filed:** 1/6/14

| Date Received | Amount Received | $ Applied To Payment | Post-Petition Date Paid | Paid To Suspense | Running Suspense Total | Post Petition Payment Amount Due |
|---|---|---|---|---|---|---|
| | | | | | $  - | |
| | | | | | $  - | |
| 3/14/2014 | $ 1,317.83 | | | $1,317.83 | $ 1,317.83 | |
| 4/14/2014 | $ 1,317.83 | $1,317.91 | 2/1/2014 | ($0.08) | $ 1,317.75 | $ 1,317.91 |
| 6/9/2014 | $ 1,317.83 | $1,317.91 | 3/1/2014 | ($0.08) | $ 1,317.67 | $ 1,317.91 |
| 6/30/2014 | $ 1,317.83 | $1,317.91 | 4/1/2014 | ($0.08) | $ 1,317.59 | $ 1,317.91 |
| 8/12/2014 | $ 1,317.83 | $1,317.91 | 5/1/2014 | ($0.08) | $ 1,317.51 | $ 1,317.91 |
| 11/4/2014 | $ 1,320.00 | $1,317.91 | 6/1/2014 | $2.09 | $ 1,319.60 | $ 1,317.91 |
| 1/27/2015 | $ 1,320.00 | $1,317.91 | 7/1/2014 | $2.09 | $ 1,321.69 | $ 1,317.91 |
| 3/26/2015 | $ 700.00 | $1,317.91 | 8/1/2014 | ($617.91) | $ 703.78 | $ 1,317.91 |
| 5/22/2015 | $ 1,050.00 | $1,317.91 | 9/1/2014 | ($267.91) | $ 435.87 | $ 1,317.91 |
| | | | 10/1/2014 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 11/1/2014 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 12/1/2014 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 1/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 2/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 3/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 4/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 5/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 6/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 7/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 8/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | | $0.00 | $ 435.87 | |
| | | | | $0.00 | $ 435.87 | |
| | | | | $0.00 | $ 435.87 | |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF TEXAS

IN RE:  CHERYL L DECLOUET        :      CASE NO. 14-30153
                                                  CHAPTER 13

DEBTOR(S)

## NOTICE OF CHANGE OF ADDRESS

<u>Federal National Mortgage Association ("Fannie Mae"), creditor c/o Seterus, Inc.,</u> hereby
provides Notice of a Change of Address as indicated below.

**NEW address for PAYMENT:**

Federal National Mortgage Association
("Fannie Mae), creditor c/o Seterus, Inc.
PO Box 1047
Hartford, CT 06143-1047

**NEW address for NOTICE:**

Federal National Mortgage Association
("Fannie Mae), creditor c/o Seterus, Inc.
PO Box 1047
Hartford, CT 06143-1047

Last 4 digits of account number: 5223

September 11 2015            By: _____

                                 Andrew Goldberg
                                 Authorized Agent for Creditor Federal National
                                 Mortgage Association ("Fannie Mae") c/o
                                 Seterus, Inc.
                                 51 E. Bethpage Rd.
                                 Plainview, NY 11803
                                 Phone: 516-741-2585
                                 Fax: 516-873-7244
                                 Bkmail@rosicki.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Notice of Change of Address has been
served electronically on the Chapter 13 Trustee and Debtor (s)' Attorney on the same day it was
filed with the Court.

_____

Betsy Tarr

Exhibit "K" - Page 1 of 1





CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 25, 2016**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                                                                CASE NO. 14-30153

CHERYL DECLOUET

DEBTOR(S)                                                    JUDGE: HARLIN D. HALE

### AGREED ORDER FINDING, DEEMING AND DETERMINING MORTGAGE TO BE CURRENT, OR DELINQUENT IN THE AMOUNT SET FORTH IN TRUSTEE'S "NOTICE OF AMOUNT DEEMED NECESSARY TO CURE"

 Pursuant to Local Bankruptcy Rule 3002-2(b), the Chapter 13 Trustee filed and served his "Notice of Amount Deemed Necessary to Cure" ("Notice") (Docket #36), on the below named mortgage creditor. Such Notice contained negative notice language as authorized by Local Bankruptcy Rule 9007-1, informing the mortgage creditor of their obligation to file and serve a Response within 60 days, or else the information contained in the Notice would be deemed unopposed and/or undisputed.

The below named mortgage creditor:

- Filed an untimely Response, disputing in whole or in part the amounts set forth in the Notice, and appeared at the pre-hearing conference.

The Debtor:

- Filed no Response, and has no opposition to the mortgage creditor's response as being untimely filed.

**IT IS ORDERED** that as of the date of the notice, the Debtor(s) plan payment delinquency was $313.77

**IT IS FURTHER ORDERED** that as of June 12, 2015, the principal amount due on any pre-petition and/or post-petition home mortgage <u>claim</u> by the below named mortgage creditor is as follows:

| Mortgage Creditor/Holder | Pre/Post | Court Claim # | Trustee Claim # | Amount |
|---|---|---|---|---|
| Seterus Inc. | Pre-petition | 13 | 13 | $6,404.49 |

**IT IS FURTHER ORDERED** that except as otherwise provided hereinabove, the HOME MORTGAGE REGULAR MONTHLY PAYMENT on the mortgage held by Seterus Inc., which is not being paid by the Chapter 13 Trustee is DELINQUENT in the amount of $14,061.14 as of August 26, 2015.

**IT IS FURTHER ORDERED** that the above named creditor shall be precluded from asserting any other pre-petition (cure) amounts or post-petition arrearages that allegedly accrued before the date of the Notice, June 12, 2015, in any Contested Matter or Adversary Proceeding in this case, or in any other manner, matter, or forum after discharge in this case, except as hereinabove set forth.

### ### End of Order ###

AGREED AS TO FORM:

/s/ Tara Tankersley
Tara Tankersley,
State Bar No. 19636900
Attorney For Tom Powers
125 E John Carpenter Freeway
Suite 1100 11th Floor
Irving, TX 75062
(214) 855-9200
Fax: (214) 965-0758
Email: tara.tankersley@dallasch13.com

/s/ Donna Wilkinson
Donna Wilkinson
Attorney for Wells Fargo Bank NA
15000 Surveyor Blvd Suite 100
Addison, Texas 75001
State Bar No 24084098
972-386-5040




/s/ Paul Wright
Herrin & Wright PLLC
State Bar No. IL 6298791
Attorney for Debtors
1328 Clearwater Drive
Grand Prairie, Texas 75052
214-810-5294

**Fill in this information to identify the case:**

Debtor 1    CHERYL LYNN DECLOUET

Debtor 2    _____
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern    District of   Texas
                                                             (State)

Case number   14-30153-HDH-13

## Official Form 410S2

# Notice of Postpetition Mortgage Fees, Expenses, and Charges    12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any fees, expenses, and charges incurred after the bankruptcy filing that you assert are recoverable against the debtor or against the debtor's principal residence.

File this form as a supplement to your proof of claim. See Bankruptcy Rule 3002.1.

**Name of creditor:**   FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC.     **Court claim no.** (if known):   13

**Last four digits** of any number you use to identify the debtor's account:    5   2   2   3

**Does this notice supplement a prior notice of postpetition fees, expenses, and charges?**

☒ No
☐ Yes. Date of the last notice: ____ ____ _____

## Part 1:   Itemize Postpetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges incurred on the debtor's mortgage account after the petition was filed. Do not include any escrow account disbursements or any amounts previously itemized in a notice filed in this case or ruled on by the bankruptcy court.

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | | (1) | $ |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ |
| 3. Attorney fees | 9/1/16 | (3) | $ 100.00 |
| 4. Filing fees and court costs | | (4) | $ |
| 5. Bankruptcy/Proof of claim fees | | (5) | $ |
| 6. Appraisal/Broker's price opinion fees | | (6) | $ |
| 7. Property inspection fees | 3/16/16, 4/13/16, 5/11/16, 6/15/16, 7/13/16, 8/1/ | (7) | $ 90.00 |
| 8. Tax advances (non-escrow) | | (8) | $ |
| 9. Insurance advances (non-escrow) | | (9) | $ |
| 10. Property preservation expenses. Specify: _____ | | (10) | $ |
| 11. Other. Specify: _____ | | (11) | $ |
| 12. Other. Specify: _____ | | (12) | $ |
| 13. Other. Specify: _____ | | (13) | $ |
| 14. Other. Specify: _____ | | (14) | $ |

The debtor or trustee may challenge whether the fees, expenses, and charges you listed are required to be paid.
See 11 U.S.C. § 1322(b)(5) and Bankruptcy Rule 3002.1.

Exhibit "M" - Page 1 of 3

Debtor 1   CHERYL LYNN DECLOUET                                Case number (if known)  14-30153-HDH-13
           First Name        Middle Name        Last Name

| Part 2: | Sign Here |

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your ddress and telephone number.

*Check the appropriate box.*

☐  I am the creditor.

☐  I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✘  /s/ JOHN R. CALLISON                                    Date  09 / 02 / 2016
   Signature

Print:    JOHN R.                     CALLISON           Title   ATTORNEY FOR CLAIMANT
          First Name    Middle Name    Last Name

Company   BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP

Address   4004 BELTLINE RD. SUITE 100
          Number         Street
          ADDISON, TEXAS 75001-4320
          City                State        ZIP Code

Contact phone  _____  _____  _____          Email  NDECF@BDFGROUP.COM

## CERTIFICATE OF SERVICE

I hereby certify that on September 02, 2016, a true and correct copy of the Notice of Post

Petition Mortgage Fees, Expenses and Charges was served via electronic means as listed on the

Court's ECF noticing system or by regular first class mail to the parties listed on the attached list.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

BY: /s/ JOHN R. CALLISON              09/02/2016
        JOHN R. CALLISON
        TX NO. 24076295
        4004 BELTLINE RD. SUITE 100
        ADDISON, TX 75001-4320
        Facsimile: (972) 661-7725
        E-mail: NDECF@BDFGROUP.COM
        ATTORNEY FOR CLAIMANT

**BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:**

**DEBTORS:**
CHERYL LYNN DECLOUET
1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX 75052

CHERYL LYNN DECLOUET
1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX 75052

**DEBTOR'S ATTORNEY:**
C. DANIEL HERRIN
4925 GREENVILLE AVE
SUITE 130
DALLAS, TX 75206

**TRUSTEE:**
THOMAS POWERS
125 E. JOHN CARPENTER FRWY.
SUITE 1100
IRVING, TX 75062-2288

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

IN RE: §
§     **CASE NO. 14-30153-HDH-13**
**CHERYL LYNN DECLOUET** §
    **DEBTOR** §

# TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| | |
|---|---|
| **Fay Servicing, LLC as servicing agent for PROF-2013-M4 Legal Title Trust II, by U.S. Bank National Association, as Legal Title Trustee** | **SETERUS INC., AS AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR C/O SETERUS, INC.** |
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:

    **Fay Servicing, LLC**
    **Bankruptcy Department**
    **939 W. North Avenue Suite 680**
    **Chicago, Illinois 60642**

Phone: 312-780-0011
Last Four Digits of Acct #: **xxxxxx8046**

Court Claim # (if known): 13-1
Amount of Claim: $116,815.44
Date Claim Filed: 05/13/2014

Phone:
Last Four Digits of Acct.#: 5223

Name and Address where transferee payments should be sent (if different from above):

    Fay Servicing, LLC
    Bankruptcy Department
    939 W. North Avenue Suite 680
    Chicago, Illinois 60642

Phone: 312-780-0011
Last Four Digits of Acct #: **xxxxxx8046**

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ John J. Rafferty
    Transferee/Transferee's Agent      Date:      11/15/2016

    Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

4590-N-1667

## CERTIFICATE OF SERVICE OF TRANSFER OF CLAIM

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest on or before November 15, 2016 via electronic notice unless otherwise stated:

**Debtor** *Via U.S. Mail*
Cheryl Lynn DeClouet
1328 Clearwater Drive
Grand Prairie, TX 75052


**Debtors' Attorney**
Daniel Herrin
Herrin Law, PLLC
4925 Greenville Ave
Suite 130
Dallas, TX 75206


**Chapter 13 Trustee**
Thomas Powers
125 E. John Carpenter Frwy., Suite 1100
Irving, TX 75062-2288


**U.S. Trustee**
United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242


Respectfully Submitted,

/s/ John J. Rafferty
_____
John J. Rafferty

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

**In RE:** CHERYL LYNN DECLOUET                    **Case No.**  14-30153

## NOTICE OF CREDITOR CHANGE OF ADDRESS

The creditor in the above entitled case hereby requests that the mailing address, pertaining to both notices and payments, listed in the above stated case be changed;

FROM:

Fay Servicing, LLC

939 W North Avenue,

Suite 680

Chicago, IL 60642

TO:

Fay Servicing, LLC

440 S. LaSalle Street,

Suite 2000

Chicago, IL 60605

Dated: 5/9/2017

/s/ Ashley Boswell

Creditor's Authorized Agent for Fay Servicing LLC

Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway Suite 1100 11th Floor
Irving, TX 75062
Telephone: (214) 855-9200   Facsimile: (214) 965-0758

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:

CHERYL LYNN DECLOUET (xxxxx1883)

**1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX 75052**

Debtor

**Case No. 14-30153-HDH-13
Hearing Date: 9/28/2017 8:30 AM**



**CHAPTER 13**

ATTENTION FAY SERVICING LLC, Court Claim No. 13

### NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARS
### (per Local Bankruptcy Rule 3002-2 regarding Trustee's Mid Case Audit of Plan and Mortgage)

### SCHEDULING ORDER

A Scheduling Order will be served by the Bankruptcy Clerk which will establish specific, important, and mandatory dates and deadlines concerning this Notice.  If there is any conflict between the Scheduling Order and this Notice, the Scheduling Order will control.

### RESPONSE REQUIRED

ON OR BEFORE 60 DAYS FROM THE SERVICE OF THIS NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARS, IF THE CREDITOR/HOLDER NAMED ABOVE DISPUTES THE INFORMATION IN THE NOTICE, THE CREDITOR/HOLDER MUST FILE WITH THE CLERK OF THE COURT AT U.S. BANKRUPTCY COURT, 1100 COMMERCE ST 14TH FLOOR, DALLAS, TEXAS, 75242, A WRITTEN RESPONSE AND SERVE IT ON THE DEBTOR, DEBTOR'S ATTORNEY, AND THE CHAPTER 13 TRUSTEE, PURSUANT TO LOCAL BANKRUPTCY RULE 3002-2(c), INDICATING WHETHER THE CREDITOR/HOLDER DISPUTES THE INFORMATION IN THIS NOTICE.

THE RESPONSE MUST ALSO ITEMIZE CURE AMOUNTS OR POST-PETITION ARREARS, IF ANY, THAT THE CREDITOR/HOLDER CONTENDS EXIST AS OF THE DATE OF THE RESPONSE.

FAILURE BY CREDITOR/HOLDER NAMED ABOVE TO RESPOND TIMELY TO THIS NOTICE MAY RESULT IN THE ENTRY OF A DEFAULT ORDER BY THE COURT DEEMING THE MORTGAGE TO BE CURRENT, OR DELINQUENT IN THE AMOUNT(S) SET FORTH IN THIS NOTICE.

THE ENTRY OF SUCH AN ORDER MAY PRECLUDE THE CREDITOR/HOLDER OF THE CLAIM FROM ASSERTING OTHER CURE AMOUNTS OR POST-PETITION ARREARS THAT ALLEGEDLY ACCRUED BEFORE THE DATE OF THIS NOTICE IN ANY CONTESTED MATTER OR ADVERSARY PROCEEDING IN THE CASE OR IN ANY OTHER MATTER, MANNER, OR FORUM AFTER DISCHARGE IN THIS CASE, UNLESS THE COURT DETERMINES, AFTER NOTICE AND HEARING, THAT THE FAILURE WAS SUBSTANTIALLY JUSTIFIED OR IS HARMLESS.

## NEGATIVE NOTICE
### (per Local Bankruptcy Rule 9007-1(c))

NO HEARING WILL BE CONDUCTED ON THIS NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARAGE UNLESS A WRITTEN RESPONSE TO THE CREDITOR/HOLDER NAMED ABOVE IS FILED BEFORE THE CLOSE OF BUSINESS AT LEAST 60 DAYS FROM THE DATE OF SERVICE HEREOF, OR UNLESS A WRITTEN RESPONSE TO THE DEBTOR IS FILED BEFORE THE CLOSE OF BUSINESS AT LEAST 90 DAYS FROM THE DATE OF SERVICE HEREOF, WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT U.S. BANKRUPTCY COURT, 1100 COMMERCE ST 14TH FLOOR, DALLAS, TEXAS, 75242.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON THE DEBTOR, COUNSEL FOR THE DEBTOR, IF ANY, THE CREDITOR/HOLDER, COUNSEL FOR THE CREDITOR/HOLDER, IF ANY, AND THE CHAPTER 13 TRUSTEE.

IF A RESPONSE IS TIMELY FILED BY CREDITOR/HOLDER OR THE DEBTOR, A PRE-HEARING CONFERENCE WILL BE HELD AT 8:30 AM ON 09/28/2017 AT THE OFFICE OF TOM POWERS, CHAPTER 13 TRUSTEE, 125 E JOHN CARPENTER FREEWAY STE 1100, IRVING, TEXAS 75062. ANY MATTERS UNRESOLVED AT THE TRUSTEE'S PRE-HEARING CONFERENCE WILL BE HEARD BY THE COURT AT 2:00 pm ON 09/28/2017.

IF NO RESPONSE IS TIMELY FILED, THE INFORMATION CONTAINED IN THIS NOTICE WILL BE DEEMED UNOPPOSED AND/OR UNDISPUTED, AND THE COURT WILL ISSUE AN ORDER BY DEFAULT, FINDING THE MORTGAGE TO BE CURRENT, OR DELINQUENT IN THE AMOUNT SET FORTH HEREIN, AS OF THE DATE OF THIS NOTICE.

Pursuant to Local Bankruptcy Rule 3002-2(b), the Chapter 13 Trustee, Tom Powers, files this Notice of Amount Deemed Necessary to Cure Mortgage Arrears ("Notice").

## PLAN ARREARAGE

To the Trustee's knowledge, the Debtor are current on their plan, or if not, the amount believed necessary to cure any default on the plan is $268.01.

# PRE‐PETITION MORTGAGE ARREARAGE

The amount believed necessary to cure any pre-petition home mortgage arrearage claim(s) (□cure amount□) is as follows

Name of Creditor:  FAY SERVICING LLC
Claim Type:  HOME MORTGAGE ARREARAGE

| Court Claim # | Trustee Claim# | Account Number | Claim Amount | Claim Allowed | | Amount Paid |
|---|---|---|---|---|---|---|
| 13 | 13 | 8046 | $7,331.15 | $7,331.15 | Principal + Interest | $7,331.15 $0.00 |
| | | | | | Total Amount Paid By Trustee: | $7,331.15 |

**PRINCIPAL AMOUNT NECESSAR□ TO CURE PRE‐PETITION MORTGAGE ARREARAGE CLAIM (TRUSTEE CLAIM □13) TO □E PAID □□ THE TRUSTEE, IF AN□□ $0.00**

## ONGOING □CURRENT□ MONTHL□ MORTGAGE PA□MENTS

Name of Creditor:  FAY SERVICING LLC
Claim Type:  HOME MORTGAGE REGULAR PAYMENT

| Court Claim # | Trustee Claim# | Account Number | Claim Amount | Claim Allowed |
|---|---|---|---|---|
| 13 | 21 | 8046 | $116,815.44 | $116,815.44 |

Total Amount Paid By Trustee:   - NONE

**THE ONGOING □CURRENT□ MONTHL□ MORTGAGE PA□MENTS ARE, ACCORDING TO THE PLAN, TO □E PAID DIRECT □□ THE DE□TOR.  THE TRUSTEE HAS NO □NOWLEDGE OF THE STATUS OF THOSE ONGOING PA□MENTS, OR AN□ POST‐PETITION ARREARS THEREON, E□CEPT AS NOTED A□OVE.  HOWEVER, THE HOLDER OF THE CLAIM MUST ITEMI□E IN ITS RESPONSE AN□ OTHER PRE□PETITION ARREARAGES OR AN□ POST□PETITION ARREARS THAT THE HOLDER CONTENDS E□IST AS OF THE DATE OF THE RESPONSE□OTHERWISE THE COURT WILL ISSUE AN ORDER □□ DEFAULT, FINDING THE MORTGAGE TO □E CURRENT AS OF THE DATE OF THIS NOTICE.**

Date□06/14/2017

RESPECTFULL□ SU□MITTED,

/s/ Thomas D. Powers
Thomas D. Powers, Trustee
State Bar No. 16218700
Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway Suite 1100 11th Floor
Irving, TX 75062
Telephone: (214) 855-9200   Facsimile: (214) 965-0758

## CERTIFICATE OF SERVICE

The undersigned does hereby ceritfy that a true and correct copy of the foregoing was sent to all parties as listed below on June 14, 2017, either electronically or via U.S. First Class Mail.

Debtor:       Cheryl Lynn Declouet, 1328 Clearwater Drive, Grand Prairie, Tx  75052
Attorney:     Herrin Law Pllc, 4925 Greenville Ave Suite 130, Dallas, Tx  75206**
Creditor(s):  Barrett Daffin Frappier Et Al, 15000 Surveyor Blvd Suite 100, Addison, Tx  75001**
             Butler & Hosch Pa, 13800 Montfort Dr Ste 300, Dallas, Tx  75240**
             County Of Dallas, Co Linebarger Goggan Blair Et Al, 2777 N Stemmons Fwy Ste 1000, Dallas, Tx  75207**
             Fay Servicing Llc, 440 S Lasalle St Suite 2000, Chicago, Il  60605
             Henry Oddo Austin And Fletcher Et Al, 1700 Pacific Ave Ste 2700, Dallas, Tx  75201**

**Indicates party has elected to receive all notifications via electronic service and was not served a copy via United States First Class Mail.

Date: 06/14/2017

RESPECTFULLY SUBMITTED,

/s/ Thomas D. Powers
Thomas D. Powers, Trustee
State Bar No. 16218700
Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway Suite 1100 11th Floor
Irving, TX 75062
Telephone: (214) 855-9200   Facsimile: (214) 965-0758

BTXN 220 (03/14)

<div align="center">

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

</div>

In Re: §
Cheryl Lynn DeClouet § Case No.:   14–30153–hdh13
§ Chapter No.:   13
Debtor(s) §

<div align="center">

### *SCHEDULING ORDER REGARDING MID–CASE NOTICE OF AMOUNT DEEMED NECESSARY TO CURE MORTGAGE ARREARAGE*

</div>

On *6/14/17*, the chapter 13 trustee filed and served a "Notice of Amount Deemed Necessary to Cure Mortgage Arrearage" (the *"Mortgage Notice"* ). This scheduling order shall govern any disputes over the Mortgage Notice.

*THE FOLLOWING DEADLINES APPLY IN THE CASE:*

The Mortgage Notice is set for pre–hearing conference on *9/28/17* at *8:30 AM* at *Thomas Powers, Ch. 13 Trustee, 125 E. John Carpenter Frwy., Suite 1100 Irving, TX 75062–2288*. The trustee is not required to send a seperate notice of the pre–hearing conference to any party.

If the debtor disputes the information in the Mortgage Notice, the lender must file a response (the *"Lender's Response"* ) on or before *8/13/17*. The Lender's Response must be served on the chapter 13 trustee, the debtor and the debtor's counsel, if the debtor has counsel. The Lender's Response must include an itemization of any cure amounts or post–petition arrearages the lender contends existed as of the date of the Lender's Response. If the lender fails to respond by the deadline provided herein or files a response stating that the lender agrees with the Mortgage Notice and the debtor does not timely file a Debtor's Reply as described herein, the lender is not required to attend the pre–hearing conference and the court will enter an order approving the amounts asserted in the Mortgage Notice.

If the debtor disputes the information in the Mortgage Notice or if the lender files a Lender's Response and the debtor disputes the information in the Lender's Response, the debtor must file a reply (the *"Debtor's Reply"* ) on or before *9/12/17*. The Debtor's Reply must admit or deny whether any pre– or post– petition delinquency exists and must provide specific information to contest any delinquency asserted by the trustee in the Mortgage Notice and/or the lender in the Lender's Response. If the debtor denies any asserted delinquency, a general denial will not suffice; rather, the Debtor's Reply must provide specific facts in support of the denial, such as the date and amount of any payment the debtor made that supports the debtor's denial of delinquency. If the Debtor's Reply does not contain such specific information, the trustee may grant the debtor an additional 14 days to provide specific information. If the debtor fails to provide the specific information within the 14–day period, the trustee may deem the Debtor's Reply to be a default under the terms of the order. The Debtor's Reply must be served on the chapter 13 trustee, the lender and the lender's counsel, if the lender has counsel. If the debtor fails to respond by the deadline provided herein or files a response stating that the debtor agrees with the Mortgage Notice and the Lender's Response (if any), the debtor is not required to attend the pre–hearing conference and the court will enter an order approving the amounts asserted in the Mortgage Notice, except as follows: if a timely filed Lender's Response asserts a different post–petition arrearage than that asserted in the Mortgage Notice, the post–petition arrearage in the Lender's Response shall control and be set forth in the order regarding the Mortgage Notice.

At the time set for the pre–hearing conference, if there are any unresolved disputes raised in either the Lender's Response or the Debtor's Reply, the disputing parties must attend the pre–hearing conference.

If the lender is a disputing party and the lender does not attend the pre–hearing conference and no timely Debtor's Reply is filed, the court will enter an order approving the amounts asserted by the trustee in the Mortgage Notice. If a Debtor's Reply is filed timely, the court will enter an order approving the amounts asserted in the Mortgage Notice except as follows: if the debtor asserts a different post–petition arrearage in the Debtor's Reply on that part of the mortgage claim being paid post–petition directly by the debtor to the mortgage holder, such post–petition arrearage asserted in the Debtor's Reply shall control and be set forth in the order regarding the Mortgage Notice.

If the debtor is a disputing party and the debtor does not appear at the pre–hearing conference, the court will enter an order approving the amounts asserted in the Mortgage Notice except as follows: if a timely filed Lender's Response asserts a different post–petition arrearage than that asserted in the Mortgage Notice on that part of the mortgage claim being paid post–petition directly by the debtor to the mortgage holder, such post–petition arrearage asserted in the Lender's Response shall control and be set forth in the order regarding the Mortgage Notice.

<div align="center">

Exhibit "Q" - Page 1 of 2

</div>

If the trustee is not a disputing party and the debtor and the lender are both disputing parties and neither the debtor nor the lender appear at the pre–hearing conference, the court will enter an order approving the amounts asserted in the Mortgage Notice except as follows: if the debtor asserts a different post–petition arrearage in a timely filed Debtor's Reply on that part of the mortgage claim being paid post–petition directly by the debtor to the mortgage holder, such post–petition arrearage asserted in the Debtor's Reply shall control and be set forth in the order regarding the Mortgage Notice.

If the matter is not resolved as of the time of the pre–hearing conference, the trustee shall either set the matter on the next regular chapter 13 court docket, or at the trustee's option, contact the courtroom deputy and obtain a special setting for an evidentiary hearing. The court will use its best efforts to provide an evidentiary hearing within 30 to 45 days after the pre–hearing conference. All witness and exhibit lists must be filed and exhibits must be exchanged at least three business days before the evidentiary hearing date.

Once the court enters an order on the Mortgage Notice, the debtor and the lender will be barred from contesting the amounts set out in the order in any contested matter or adversary proceeding in this case, or in any other matter, manner or forum after a discharge in the case, unless the court determines, after notice and a hearing, that the failure to respond or the failure to attend the pre–hearing conference was substantially justified or is harmless.

DATED:  6/15/17

FOR THE COURT:
Jed G. Weintraub, Clerk of Court

by: /s/Kara Hyden, Deputy Clerk

C. Daniel Herrin
State Bar No. 24065409
HERRIN LAW, PLLC
4925 Greenville Avenue, Suite 130
Dallas, Texas 75206
(469) 607-8551 Phone
(214) 722-0271 Fax
ATTORNEY FOR DEBTOR

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

</div>

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | **CASE NO. 14-30153-HDH** |
| **CHERYL LYNN DECLOUET** | § | |
| | § | **CHAPTER 13** |
| **Debtor** | § | |

<div align="center">

**MOTION TO OBTAIN APPROVAL MORTGAGE LOAN MODIFICATION**

</div>

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242-1496 BEFORE CLOSE OF BUSINESS ON AUGUST 28, 2017, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE JUDGE  OF THIS COURT:

COMES NOW, **Cheryl Lynn DeClouet,** (hereinafter, "Debtor"), who files this Motion to Obtain Approval of Mortgage Loan Modification, (hereinafter, "Motion"), and would respectfully show the Court as follows:

1.     This Court has jurisdiction over this matter pursuant to 11 U.S.C. §105(a), 28 U.S.C.

§157(b)(1), and 28 U.S.C. §1334. This matter constitutes a core proceeding as defined by 28 U.S.C. §157(b)(2)(D).

2.    Debtor filed the current petition for relief under Chapter 13 on January 6, 2014.

3.    Debtor has a mortgage with Fay Servicing, LLC.

4.    Debtor and Fay Servicing, LLC have reached an agreement concerning the current Mortgage Loan which is attached hereto and incorporated herein as Exhibit "A". The Debtor was not charged any fees by Fay Servicing, LLC in association with modifying the Mortgage Loan.

5.    Pursuant to the Mortgage Loan Modification, the mortgage arrears will be subsumed in the refinancing and a plan modification will be required to remove the arrears from the Debtor's Chapter 13 Plan.

6.    Pursuant to Clerk's Notice 09-03, the Debtor has filed amended schedules I & J, attached hereto and incorporated herein as Exhibit "B".

7.    This loan modification is in the Debtor's best interest. Debtor's prior mortgage contained an original principal balance of $123,950.00 financed over a term of 360 months with a fixed interest rate of 7.375%. The Debtor's prior mortgage payment totaled $1,326.84 which consisted of a principal and interest payment of $856.10 and an additional escrow payment of $470.74. Under the new Mortgage Loan Modification, the principal balance will be $129,308.15 amortized over a term of 480 months, payable over a term of 232 months, with a fixed interest rate of 7.000%. The Debtor's proposed new mortgage payment shall be $1,549.52 which contains a principal and interest payment of $850.94 and an escrow payment of $698.58.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully request the Court to enter an order granting Debtor's Motion and award attorney fees to Debtor's counsel, Herrin Law, PLLC of two hundred and fifty dollars ($250.00) for services rendered in filing this motion, to be paid direct by the Debtor.

Dated: <u>August 2, 2017</u>

Respectfully Submitted,

HERRIN LAW, PLLC

<u>/s/ C. Daniel Herrin</u>
C. Daniel Herrin
State Bar No. 24065409
4925 Greenville Avenue, Suite 130
Dallas, Texas 75206
(469) 607-8551 Phone
(214) 722-0271 Fax
ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2017, a true and correct copy of the

foregoing was served on all parties in interest below and on the attached mailing matrix via

electronic mail or first class mail.


**DEBTOR**:
Cheryl Lynn DeClouet
1328 Clearwater Drive
Grand Prairie, TX 75052

**STANDING CHAPTER 13 TRUSTEE**:
Thomas Powers
123 E. John Carpenter Fwy., Suite 1100
Irving, Texas 75062

**U.S. TRUSTEE**
Rm. 976
1100 Commerce Street
Dallas, TX 75242


By: /s/ C. Daniel Herrin
C. Daniel Herrin
State Bar No. 24065409

Prepared By & Return To:
**FAY SERVICING, LLC**
**MODIFICATION PROCESSING**
**DEPARTMENT**
**440 S. LASALLE ST., STE. 2000**
**CHICAGO, IL 60605**

Fay Servicing, LLC Loan No.:

_____[Space Above This Line For Recording Data]_____

MIN:

# LOAN MODIFICATION AGREEMENT
# (Providing for Fixed Interest Rate)

Borrowers ("Borrower"): **CHERYL DECLOUET**
Lender ("Lender"): **PROF-2013-M4 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE**
Mortgage Electronic Registration Sytems, Inc. ("MERS") P.O Box 2026, Flint, MI 48501-2025, tel (888) 679-MERS ("Mortgagee")
Date of first lien Security Instrument ("Security Instrument") and Note ("Note"): **July 27, 2006**
Property Address ("Property"): **1328 CLEARWATER DR, GRAND PRAIRIE, TX 75052**

This Loan Modification Agreement (the "Agreement"), amends and supplements the Security Instrument and Timely Payment Rewards Rider if any and the Note, bearing the same dates, and secured by the Security Instrument which covers the Property. Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

## RECITALS

WHEREAS, Borrower is prepared to make a principal payment of **$0.00** and desires a modification of the Loan Documents, as set forth herein; and

WHEREAS, Lender has agreed to modify the Loan Documents in accordance with the terms and conditions set forth in this Agreement upon receipt of **$0.00** from Borrower; and

Loan Modification Agreement
Proprietary W3078B

Page 1 of 7

Exhibit "A"

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated herein by this reference, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower agree as follows.

## COVENANTS AND CONDITIONS

1.  This Agreement shall become effective and binding upon Lender's receipt and acceptance of:

    a.  This Agreement, properly executed by Borrower, no later than **June 29, 2017**.

    b.  An ACH payment, certified check, money order, or personal check made payable to **Fay Servicing, LLC** in the amount of **$0.00** no later than **N/A** (the "Good Faith Payment").

2.  If the preconditions to the modification set forth in Section 1 have been met, Lender shall modify the Loan Documents as follows:

    a.  As of **July 1, 2017**, the amount payable under the Note and the Security Instrument will be reduced by **$0.00**. Thereafter, the remaining unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized will be **$129,308.15** (the "New Principal Balance").

    b.  Lender will amortize **$129,308.15** of the New Principal Balance (the "Amortized Principal Balance") and defer the remaining **$0.00** of the New Principal Balance until the Maturity Date (the "Deferred Principal Balance").

    c.  On **August 1, 2036** (the "Maturity Date"), Borrower promises to pay **$2,745.54** (the "Balloon Payment") and **$0.00** (the "Deferred Principal Balance") to the order of Lender. If on the Maturity Date, Borrower still owes any amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  Borrower promises to pay the Amortized Principal Balance, plus Interest, together with all payments of taxes, insurance premiums, assessments, impounds, and all other related payments (the "Escrowed Funds") to the order of Lender, beginning on **July 1, 2017**, and continuing thereafter on the first day of each succeeding month until the Amortized Principal Balance and Interest are paid in full. Interest will begin to accrue on the Amortized Principal Balance at the yearly rate of **7.000%**, beginning on **June 1, 2017**. The monthly payment will be **$850.94** for Principal and Interest, plus **$698.58** for Escrow for a total monthly payment of **$1,549.52**. Please note, however, that the amount of Borrower's Escrow payment may be adjusted periodically in

accordance with applicable law and, therefore, the total monthly payment may change accordingly.

4. Lender promises to maintain Borrower's Escrowed Funds in a separately managed account and to pay Borrower's related expenses with Borrower's Escrowed Funds. Lender hereby revokes any waiver as to payment of Borrower's Escrow related expenses.

5. If all of any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Loan Documents. Borrower will continue to be obligated under the Loan Documents unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

6. Borrower promises to comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date of this Agreement:

   a. All terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in the Timely Payment Rewards Addendum to Note and Timely Payment Rewards Rider.

By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

b. All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

a. If Borrower fails to fulfill the preconditions to the modification set forth in Section 1, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided under the Loan Documents.

b. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

c. All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender.

d. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents.

e. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

f. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement and in any Rider attached hereto and executed by Borrower simultaneously herewith.

_____ (Seal)
CHERYL DECLOUET                              -Borrower
                                            [Printed Name]

## ACKNOWLEDGMENT

State of _Texas_                    §
                                    §
County of _Dallas_                  §

This instrument was acknowledged before me on _June 24, 2017_ by CHERYL DECLOUET.

_____
Signature of Officer

_Sarah Wildes_
Printed Name

_Notary_
Title of Officer

My Commission Expires: _August 11, 2018_

SARAH WILDES
Notary Public, State of Texas
My Commission Expires
August 11, 2018

Loan Modification Agreement
Proprietary W3078B                          Page 5 of 7

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**PROF-2013-M4 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE
TRUSTEE**

By: _____      _____  _____
    **FAY SERVICING, LLC**                      -Lender    Date of Lender's Signature

## ACKNOWLEDGMENT

State of _____          §

County of _____        §
                             §

       This instrument was acknowledged before me on _____ by **FAY
SERVICING, LLC as MODIFICATION PROCESSING DEPARTMENT of PROF-2013-M4 LEGAL TITLE
TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE.**

_____
Signature of Notary Public

_____
Printed Name

_____
Title or Rank

(Seal)                         Serial Number, if any: _____

**Loan Modification Agreement
Proprietary W3078B**               **Page 6 of 7**

MERS

_____

Mortgage Electronic Registration Systems, Inc. - Nominee for Lender

## ACKNOWLEDGMENT

State of _____          §
                              §
County of _____         §

The foregoing instrument was acknowledged before me on _____ by

_____ , as _____ of _____

a _____ corporation, on behalf of the corporation.

_____
Signature of Person Taking Acknowledgment

_____
Printed Name

_____
Title or Rank

(Seal)          Serial Number, if any: _____

**Loan Modification Agreement**
**Proprietary W3078B**                    Page 7 of 7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-30153-HDH13 |
| CHERYL LYNN DECLOUET | § | |
| DEBTOR | § | CHAPTER 13 |
| | § | |

RESPONSE OF TO TRUSTEE'S MID-CASE NOTICE OF AMOUNT DEEMED
NECESSARY TO CURE MORTGAGE ARREARS
(68)

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW , FAY SERVICING, LLC AS SERVICING AGENT FOR PROF-2013-M4 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, ITS SUCCESSORS AND ASSIGNS (hereinafter, "Respondent"), and files this Statement in Response to Trustee's Mid-Case Notice of Amount Deemed Necessary to Cure Mortgage Arrears, filed as Docket No. 68 on or about June 14, 2017.

1.      Respondent **AGREES** that, as of the date of the Trustee's Notice, a total of **$7,331.15** has been disbursed towards Respondent's pre-petition arrears in the amount of $7,331.15, leaving $0.00 due and owing on Respondent's Claim No. 13

2.      Respondent **DISAGREES** that Debtors are current on their post-petition mortgage payments and, as of the date hereof, the loan is post-petition due for the 12/01/2015 payment.

12/01/2015 through 08/01/2017 payments are $1,326.84 each, minus a post-petition suspense balance of $376.77 for a total post-petition delinquency of **$27,486.87** through the date of this response. The post-petition payment history is attached as Exhibit "A".

Respectfully submitted,

*Codilis & Stawiarski, P.C.*
By: /s/ Jennine Hovell-Cox
Jennine Hovell-Cox SBOT 24002313
Thomas F. Jones III SBOT 10974400
650 N. Sam Houston Parkway East, Suite 450
Houston, Texas 77060
Telephone: (281) 925-5200
Facsimile: (281) 925-5300
**ATTORNEYS FOR RESPONDENT**

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 14, 2017</u>, a true and correct copy of the Response to Trustee's Notice of Amount Deemed Necessary to Cure Mortgage Arrears shall be served via electronic means, if available, otherwise by regular, first class mail to the following parties at the addresses indicated by deposit in the United States Mail, first class postage prepaid on <u>August 15, 2017</u>.

CHERYL LYNN DECLOUET
1328 CLEARWATER DRIVE
GRAND PRAIRIE, TX, 75052
**DEBTOR**

DANIEL HERRIN
4925 GREENVILLE AVE, SUITE 130
DALLAS, TX 75206
**ATTORNEY FOR DEBTOR**

THOMAS POWERS
125 E. JOHN CARPENTER FRWY., SUITE 1100
IRVING, TX 75062-2288
**CHAPTER 13 TRUSTEE**

*Codilis & Stawiarski, P.C.*

/s/ Jennine Hovell-Cox
Jennine Hovell-Cox SBOT 24002313
Thomas F. Jones III SBOT 10974400
**ATTORNEYS FOR RESPONDENT**

EXHIBIT A

BK Filed date: 1/6/14

Fay Servicing, LLC
Post Petition Payment Ledger

Debtor name: Declouet

| Pmt Due/Comments | Amt Due | Date Received | Amt Rec'd | Pmt Satisfied | To/From Suspense | Suspense Balance |
|---|---|---|---|---|---|---|
| | | | $ | | $ - | $ - |
| | | 3/14/2014 | $ 1,317.83 | | $ 1,317.83 | $ 1,317.83 |
| | $1,326.84 | 4/14/2014 | $ 1,317.83 | 2/1/2014 | $ (9.01) | $ 1,308.82 |
| | $1,326.84 | 6/9/2014 | $ 1,317.83 | 3/1/2014 | $ (9.01) | $ 1,299.81 |
| | $1,326.84 | 6/30/2014 | $ 1,317.83 | 4/1/2014 | $ (9.01) | $ 1,290.80 |
| | $1,326.84 | 8/12/2014 | $ 1,317.83 | 5/1/2014 | $ (9.01) | $ 1,281.79 |
| | $1,326.84 | 11/4/2014 | $ 1,320.00 | 6/1/2014 | $ (6.84) | $ 1,274.95 |
| | $1,326.84 | 1/27/2015 | $ 1,320.00 | 7/1/2014 | $ (6.84) | $ 1,268.11 |
| | $1,326.84 | 3/26/2015 | $ 700.00 | 8/1/2014 | $ (626.84) | $ 641.27 |
| | $1,326.84 | 5/22/2015 | $ 1,050.00 | 9/1/2014 | $ (276.84) | $ 364.43 |
| | $1,326.84 | 10/28/2015 | $ 1,360.00 | 10/1/2014 | $ 33.16 | $ 397.59 |
| | $1,326.84 | 1/21/2016 | $ 1,345.00 | 11/1/2014 | $ 18.16 | $ 415.75 |
| | $1,326.84 | 3/21/2016 | $ 1,000.00 | 12/1/2014 | $ (326.84) | $ 88.91 |
| | $1,326.84 | 5/23/2016 | $ 1,300.00 | 1/1/2015 | $ (26.84) | $ 62.07 |
| | $1,326.84 | 8/16/2016 | $ 1,300.00 | 2/1/2015 | $ (26.84) | $ 35.23 |
| | $1,326.84 | 10/14/2016 | $ 1,320.00 | 3/1/2015 | $ (6.84) | $ 28.39 |
| | $1,326.84 | 11/28/2016 | $ 1,318.00 | 4/1/2015 | $ (8.84) | $ 19.55 |
| | $1,326.84 | 12/28/2016 | $ 1,318.00 | 5/1/2015 | $ (8.84) | $ 10.71 |
| | $1,326.84 | 1/31/2017 | $ 1,318.00 | 6/1/2015 | $ (8.84) | $ 1.87 |
| | $1,326.84 | 3/7/2017 | $ 1,318.00 | 7/1/2015 | $ (8.84) | $ (6.97) |
| | $1,326.84 | 3/29/2017 | $ 1,541.99 | 8/1/2015 | $ 215.15 | $ 208.18 |
| | $1,326.84 | 4/27/2017 | $ 1,541.99 | 9/1/2015 | $ 215.15 | $ 423.33 |
| | $1,326.84 | 5/26/2017 | $ 1,541.99 | 10/1/2015 | $ 215.15 | $ 638.48 |
| Suspense Adjustment | | 6/10/2017 | $ 178.60 | | $ 178.60 | $ 817.08 |
| Principal Payment | $1,326.84 | 6/10/2017 | $ 661.38 | | $ (665.46) | $ 151.62 |
| | $1,326.84 | 7/14/2017 | $ 1,541.99 | 11/1/2015 | $ 215.15 | $ 366.77 |
| | | 7/22/2017 | $ 10.00 | | $ 10.00 | $ 376.77 |
| | | | | | $ - | $ 376.77 |
| 12/1/2015 | $1,326.84 | | | | $ (1,326.84) | $ (950.07) |
| 1/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (2,276.91) |
| 2/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (3,603.75) |
| 3/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (4,930.59) |
| 4/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (6,257.43) |
| 5/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (7,584.27) |
| 6/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (8,911.11) |
| 7/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (10,237.95) |
| 8/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (11,564.79) |
| 9/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (12,891.63) |
| 10/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (14,218.47) |
| 11/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (15,545.31) |
| 12/1/2016 | $1,326.84 | | | | $ (1,326.84) | $ (16,872.15) |
| 1/1/2017 | $1,326.84 | | | | $ (1,326.84) | $ (18,198.99) |
| 2/1/2017 | $1,326.84 | | | | $ (1,326.84) | $ (19,525.83) |
| 3/1/2017 | $1,326.84 | | | | $ (1,326.84) | $ (20,852.67) |
| 4/1/2017 | $1,326.84 | | | | $ (1,326.84) | $ (22,179.51) |

BK Filed date: 1/6/14

Debtor name:  Declouet

Fay Servicing, LLC

Post Petition Payment Ledger

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/1/2017 | $1,326.84 | | | | $ | (1,326.84) | $ (23,506.35) |
| 6/1/2017 | $1,326.84 | | | | $ | (1,326.84) | $ (24,833.19) |
| 7/1/2017 | $1,326.84 | | | | $ | (1,326.84) | $ (26,160.03) |
| 8/1/2017 | $1,326.84 | | | | $ | (1,326.84) | $ (27,486.87) |
| Arrearage Pending  Loan | | | | | $ | - | $ (27,486.87) |
| Mod Approval | | | | | | | $ (27,486.87) |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

IN RE:

    CHERYL LYNN DECLOUET

                                            Case no: 14-30153

                                            Chapter: 13

### NOTICE OF TRANSFER OF SERVICING OR NAME CHANGE OR CHANGE OF ADDRESS

        PLEASE TAKE NOTICE that the servicing of the Mortgage Loan as set out in Proof of Claim No. _13___ filed on 05/13/2014___ in the amount of $116815.44___ by Fay Servicing, LLC. ("Transferor"), with the address of 440 S. LaSalle St. Suite 2000 Chicago, IL 60605 has been transferred OR the name of the Mortgage Lender has changed OR the address for payment has been changed. The new information is set out below:

Servicer Name (if changed):  Fay Servicing, LLC.

Address:  3000 Kellway Dr. Ste 150 Carrollton, TX 75006

Contact Person:  Bankruptcy Department

Telephone Number:  312-291-3781              Fax Number:

E-mail:  bkprocessing@fayservicing.com

Effective Date:  08/29/2017

Mortgage Lender name, address, and phone/fax

                                      Date:  08/29/2017

Fay Servicing, LLC
3000 Kellway Dr. Ste 150 Carrollton, TX 75006
312-291-3781

        /s/ Padma Vaghela
        [signature of authorized individual]

Its:   Claims Processor
        [title of authorized individual]



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 14, 2017**

_Honlin De Wayne Hale_

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | **CASE NO. 14-30153-HDH** |
| **CHERYL LYNN DECLOUET** | § | |
| | § | **CHAPTER 13** |
| Debtor | § | |

### ORDER GRANTING DEBTOR'S MOTION TO
### OBTAIN APPROVAL OF MORTGAGE LOAN MODIFICATION

CAME ON BEFORE THE COURT, Debtor's Motion to Obtain Approval of Mortgage

Loan Modification (the "Motion") filed on August 2, 2017 and having considered its merits the

Court finds that good cause exists and the Motion should be granted. It is therefore:

ORDERED, ADJUDGED, DECREED, that the Loan Modification between Debtor and

Fay Servicing, LLC, as further detailed in the attached Exhibit "A" to the Motion  is

APPROVED.

IT IS FURTHER ORDERED, that Herrin Law, PLLC is awarded $400.00 in attorney fees to be paid direct by the Debtor.

### END OF ORDER ###

Prepared and submitted by:

/s/ C. Daniel Herrin
C. Daniel Herrin
State Bar No. 24065409
HERRIN LAW, PLLC
4925 Greenville Avenue, Suite 130
Dallas, Texas 75206
(469) 607-8551 Phone
(214) 722-0271 Fax
ATTORNEY FOR DEBTOR

B2100B (Form 2100B) (12/15)

# United States Bankruptcy Court

NORTHERN _____ District Of TEXAS _____

In re CHERYL LYNN DECLOUET _____,    Case No. 14-30153-HDH-13

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

Claim No. 13-1 (if known) was filed or deemed filed under 11 U.S.C. § 1111(a) in this case by the alleged transferor. As evidence of the transfer of that claim, the transferee filed a Transfer of Claim Other than for Security in the clerk's office of this court on 10/4/17 (date).

Name of Alleged Transferor

Fay Servicing, LLC as servicing agent for PROF-2013-M4 Legal Title Trust II, by U.S. Bank National Association, as Legal Title Trustee

Address of Alleged Transferor:

c/o Fay Saervicing, LLC
939 W. North Avenue, Ste. 680
Chicago, IL 60642

Name of Transferee

U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust

Address of Transferee:

c/o BSI Financial Services
1425 Greenway Drive, Ste 400
Irving, TX 75038

| ~~DEADLINE TO OBJECT TO TRANSFER~~ |
|---|

The alleged transferor of the claim is hereby notified that objections must be filed with the court within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court.

Date:_____

_____
**CLERK OF THE COURT**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 4, 2017**



**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In Re: CHERYL LYNN DECLOUET   Case № 14-30153-HDH-13

            Chapter 13

Debtor         JUDGE HARLIN D. HALE

___

## ORDER FINDING, DEEMING AND DETERMINING MORTGAGE TO BE CURRENT, OR DELINQUENT IN THE AMOUNT SET FORTH IN TRUSTEE'S "NOTICE OF AMOUNT DEEMED NECESSARY TO CURE"

___

Pursuant to Local Bankruptcy Rule 3002-2(b), the Chapter 13 Trustee filed and served his "Notice of Amount Deemed Necessary to Cure" ("Notice") (Docket# 68 ), on the below named mortgage creditor. Such Notice contained negative notice language as authorized by Local Bankruptcy Rule 9007-1, informing the mortgage creditor of their obligation to file and serve a Response within 60 days, or else the information contained in the Notice would be deemed unopposed and/or undisputed

The Mortgage Creditor:

 - Filed a timely Response, disputing in whole or in part the amounts set forth in the Trustee's Notice.

The Debtor:

 - Did not file a Reply and is wholly defaulted.  Therefore, the amounts set forth in the Creditor's Response are deemed correct and the amounts are approved.

**THEREFORE, IT IS ORDERED** that as of **06/14/2017**, the principal amount due on any pre-petition and/or post-petition home mortgage arrearage <u>claim</u> by the below named mortgage creditor to be paid by the Trustee is as follows:

| MORTGAGE CREDITOR/HOLDER | PRE/POST | COURT CLAIM | TRUSTEE CLAIM | AMOUNT |
|---|---|---|---|---|
| FAY SERVICING LLC | PRE-PETITION MORTGAGE ARREARAGE | 13 | 13 | $0.00 |

**IT IS FURTHER ORDERED** that except as otherwise provided hereinabove, the **HOME MORTGAGE REGULAR MONTHLY PAYMENT** on the mortgage held by FAY SERVICING LLC, which is not being paid by the Chapter 13 Trustee is DELINQUENT $27,486.87 as of 08/14/2017.

**IT IS FURTHER ORDERED** that the above named creditor shall be precluded from asserting any other pre-petition (cure) amounts or post-petition arrearages that allegedly accrued before the date of the Notice, 06/14/2017, in any Contested Matter or Adversary Proceeding in this case, or in any other manner, matter, or forum after a discharge in this case, unless the Court determines, after notice and a hearing that the failure to timely file a Response was substantially justified or is harmless.

**IT IS FURTHER ORDERED** that as of Date of Notice the DEBTOR(S) PLAN PAYMENT DELINQUENCY WAS **$268.01.**

**◊◊◊ End of Order ◊◊◊**

Approved by:

<u>/s/ Tom Powers</u>
Standing Chapter 13 Trustee
State Bar No. 16218700
125 E John Carpenter Freeway
Suite 1100 11th Floor
Irving, TX  75062
(214) 855-9200
Fax: (214) 965-0758
Email: tomp@dallasch13.com

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS – (DALLAS) DIVISION

In Re:                                    ) Case No.: 14-30153
                                          )
CHERYL LYNN DeCLOUET,                     ) CHAPTER 13
                                          )
    Debtor.                               ) **REQUEST FOR NOTICE**
                                          )
                                          )
                                          )
                                          )
                                          )
                                          )
─────────────────────────────────────────)

**REQUEST OF BSI FINANICAL SERVICES FOR SERVICE OF NOTICES**

**PURSUANT TO FED. R. BANKR. P. 2002(g)**

TO:    UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS, AND ALL

       INTERESTED PARTIES

       **PLEASE TAKE NOTICE** that BSI FINANCIAL SERVICES as servicer for U.S.

Bank Trust National Association, as Trustee of the Igloo Series III Trust ("BSI"), a creditor in

the above – captioned bankruptcy case, hereby requests notice of all events, pleadings, or

documents filed in the above-referenced bankruptcy, including all pleadings or notices under

Federal Rules of Bankruptcy Procedure, Rule 2002 and 9007, the commencement of any

adversary proceedings, the filing of any requests for hearing, objections, and/or notices of

motion, or any other auxiliary filings, as well as notice of all matters which must be noticed to

creditors, creditors' committees and parties-in-interest and other notices as required by the

United States Bankruptcy Code and Rules and/or Local Rules of the above-referenced

bankruptcy court.

1        BSI requests that for all notice purposes and for inclusion in the Master Mailing List in

2   this case, the following address be used:

3       **PHYSICAL ADDRESS:**             **EMAIL ADDRESS:**

4       BSI Financial Services              prpbk@bsifinancial.com
1425 Greenway Drive, Ste. 400

5   Irving, TX  75038

8   Dated:  October 09, 2017     By: /s/ Karin Murphy

9                           Karin Murphy

                           c/o BSI Financial Services

10                      Assistant Vice President, Foreclosure and
Bankruptcy

11                      1425 Greenway Drive, Ste. 400
Irving, TX  75038

12                      972.347.4350
prpbk@bsifinancial.com

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS – (DALLAS) DIVISION

| | |
|---|---|
| In Re: | ) Case No.: 14-30153 |
| | ) |
| CHERYL LYNN DeCLOUET, | ) CHAPTER 13 |
| | ) |
| Debtors. | ) **CERTIFICATE OF SERVICE** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is: 5120 E. La Palma Ave., Ste. 206, Anaheim, CA 92807.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

1

On October 16, 2017 I served the following documents described as:

- **REQUEST FOR NOTICE**

on the interested parties in this action by placing a true and correct copy thereof in a sealed

envelope addressed as follows:

(Via United States Mail)

| **Debtor** | **Chapter 13 Trustee** |
|---|---|
| Cheryl Lynn DeClouet | Thomas Powers |
| 1328 Clearwater Drive | 125 E. John Carpenter Frwy., Suite 1100 |
| Grand Prairie, TX 75052 | Irving, TX 75062-2288 |
| | |
| **Debtor's Counsel** | **U.S. Trustee** |
| Daniel Herrin | United States Trustee |
| Herrin Law, PLLC | 1100 Commerce Street |
| 4925 Greenville Avenue Suite 130 | Room 976 |
| Dallas, TX 75206 | Dallas, TX 75242 |
| | |
| **Michael Paul Wright** | |
| MP Wright Law Group, PLLC | |
| 3500 Maple Ave, Ste 420 | |
| Dallas, TX 75219 | |

_xx___(By First Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

__xx__(Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2017 at Anaheim, California

_/s/ Jennifer Londo_
Jennifer Londo

2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION DIVISION

IN RE:                                          CASE NO. 14-30153-HDH-13
                                                CHAPTER 13
CHERYL LYNN DECLOUET
                                                JUDGE HARLIN D. HALE

DEBTOR                                          **NOTICE OF FINAL CURE PAYMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f), the Chapter 13 Trustee, Thomas D. Powers files this Notice of Final Cure Payment. The amount required to cure the default in the claim listed below has been paid in full.

**Name of Creditor:** US BANK TRUST NA

---

**Final Cure Amount**

| Court Claim # | Account Number | Claim Asserted | Claim Allowed | Amount Paid |
|---|---|---|---|---|
| 13 | 8046 | $7,331.15 | $7,331.15 | $7,331.15 |
| Total Amount Paid by Trustee | | | | $7,331.15 |

---

**Monthly Ongoing Mortgage Payment**

Mortgage is Paid:

__ Through the Chapter 13 Conduit          ☐ Direct by the Debtor

---

Within 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a Statement as a supplement to the holder's proof of claim on the Debtor, Debtor's Counsel and the Chapter 13 Trustee, pursuant to Fed.R.Bank.P.3002.1(g), indicating 1) whether it agrees that the Debtor has paid in full the amount required to cure the default on the claim and 2) whether the Debtor is otherwise current on all payments consistent with 11 U.S.C. §1322(b)(5).

The statement shall itemize the required cure or post-petition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f). Failure to notify may result in sanctions.

CASE NO. 14-30153-HDH-13

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Notice of Final Cure Payment was served on the parties listed below by ordinary U.S. Mail or served electronically through the Court☐s ECF System at the e-mail address registered with the Court on this 26th day of October, 2017.

CHERYL LYNN DECLOUET, 1328 CLEARWATER DRIVE, GRAND PRAIRIE, TX 75052

ELECTRONIC SERVICE - HERRIN LAW PLLC, 4925 GREENVILLE AVE SUITE 130, DALLAS, TX 75206

US BAN☐ TRUST NA, CO BSI FINANCIAL SERVICES, 1425 GREENWAY DRIVE SUITE 400, IRVING, TX 75038

ELECTRONIC SERVICE - United States Trustee

Date: October 26, 2017

/s/ Thomas D. Powers
_____
Thomas D. Powers
Chapter 13 Trustee
125 E John Carpenter Freeway
Suite 1100 11th Floor
Irving, TX 75062

Office of the Standing Chapter 13 Trustee
125 E John Carpenter Freeway
Suite 1100 11th Floor
Irving, TX  75062
(214) 855-9200

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:                                                          CASE NO:  14-30153-HDH-13
CHERYL LYNN DECLOUET
        DEBTOR

---

### Trustee's Certificate of Chapter 13 Plan Payment Completion

TO THE HONORABLE HARLIN D. HALE, UNITED STATES BANKRUPTCY JUDGE;

    Comes now, Thomas D. Powers, Standing Chapter 13 Trustee, and would show unto the Court that the above referenced Debtor has completed all payments payable to the Trustee.

Respectfully submitted,
THOMAS D. POWERS, CHAPTER 13 TRUSTEE

By: /s/ Thomas D. Powers

Thomas D. Powers
State Bar No. 16218700
125 E John Carpenter Freeway
Suite 1100 11Th Floor
Irving, TX  75062
(214) 855-9200

**Trustee's Certificate of Chapter 13 Plan Payment Completion**
**Page 2**
**Case # 14-30153-HDH-13**
**CHERYL LYNN DECLOUET**

<u>Certificate of Service</u>

I hereby certify that copy of the foregoing "Trustee's Certificate of Chapter 13 Plan Payment Completion" has bee served on the Debtor and Debtor's Counsel and on the other parties by United States First Class Mail or by electronic service.

| | |
|---|---|
| Debtor: | CHERYL LYNN DECLOUET, 1328 CLEARWATER DRIVE, GRAND PRAIRIE, TX 75052 |
| Attorney: | HERRIN LAW PLLC, 4925 GREENVILLE AVE SUITE 130, DALLAS, TX 75206** |
| Notice Creditor(s): | BARRETT DAFFIN FRAPPIER ET AL, 15000 SURVEYOR BLVD SUITE 100, ADDISON, TX 75001** |
| | BSI FINANCIAL SERVICES, 1425 GREENWAY DR STE 400, IRVING, TX 75038 |
| | BUTLER & HOSCH PA, 13800 MONTFORT DR STE 300, DALLAS, TX 75240** |
| | COUNTY OF DALLAS, CO LINEBARGER GOGGAN BLAIR ET AL, 2777 N STEMMONS FWY STE 1000, DALLAS, TX 75207** |
| | HENRY ODDO AUSTIN AND FLETCHER ET AL, 1700 PACIFIC AVE STE 2700, DALLAS, TX 75201** |

**Indicates party has elected to receive all notifications via electronic service and was not served a copy via United States First Class Mail.

Dated: 10/26/2017

Respectfully submitted,
THOMAS D. POWERS, CHAPTER 13 TRUSTEE

By: /s/ Thomas D. Powers

Thomas D. Powers
State Bar No. 16218700
125 E John Carpenter Freeway
Suite 1100 11Th Floor
Irving, TX 75062
(214) 855-9200

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

In Re: **CHERYL LYNN DECLOUET**                              Case # 14-30953-HDH-13

### Debtor's Certification and Motion for Entry of Discharge
### Pursuant to U.S.C. Section 1328(a)

The Debtor moves for entry of discharge under 11 U.S.C. Section 1328(a) of the Bankruptcy Code.

1.  By signing below, the Debtor certifies under penalty of perjury under the laws of the United States of America that the following statements are true and correct.

    A.  I have completed the personal financial management instructional course from an agency approved by the United States Trustee. A copy of Official Form 23 is attached as Exhibit 1.

    B.  If I owe a debt arising from (a) any violation of any state or federal securities laws, regulations or orders; (b) fraud, deceit or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security; (c) a civil remedy under Section 1964 of title 18; or (d) a criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding five years, then I have not claimed an exemption for my residence in an amount in excess of $125,000.

    C.  All amounts payable by me on a domestic support obligation, that are due through this date (including amounts due before the petition was filed in this case, but only to the extent provided for by the plan) have been paid.

    D.  I have not received a discharge in a case filed under Chapter 7, 11 or 12 of the Bankruptcy Code during the four-year period before the date that my petition was filed in this case.

    E.  I have not received a discharge in a case filed Under Chapter 13 of the Bankruptcy Code during the two-year period before the date that my petition was filed in this case.

    F.  No criminal proceeding is pending against me alleging that I am guilty of a felony.

    G.  No civil case is pending against me alleging that I am liable for any (a) violation of the Federal securities laws, and State securities laws, or any regulation or order issued under Federal securities laws or State securities laws; (b) fraud, deceit or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security; (c) civil remedy under section 1964 of title 18; or (d) criminal act, intentional tort, or willful reckless misconduct that caused serious physical injury or death to another individual in the preceding five years.

2.  I have made all payments required by my confirmed chapter 13 plan.

Signed: _Cheryl L DeClouet_          _C. Daniel Herrin_
      Debtor                                Attorney for Debtor

Exhibit "AA" - Page 1 of 4

**Debtor's Certification and Motion for Entry of Chapter 13 Discharge**
**Page 2**
**Case # 14-30153-HDH-13**

### NOTICE

A HEARING MAY NOT BE CONDUCTED UNLESS A RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES COURT, 1100 COMMERCE STREET, ROOM 1254, DALLAS, TX 75242-1496 BEFORE CLOSE OF BUSINESS TWENTY ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.

ANY RESPONSE MUST BE FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING WILL BE HELD WITH NOTICE TO (1) THE DEBTOR AND DEBTOR'S ATTORNEY; (2) THE OFFICE OF THE U.S. TRUSTEE; (3) ANY TRUSTEE AND THE TRUSTEE'S ATTORNEY; (4) THE MEMBERS OF ANY OFFICIAL COMMITTEE, OR THE ATTORNE FOR ANY OFFICIAL COMMITTEE IF ANY ATTORNEY HAS BEEN EMPLOYED; OR IF THERE IS NO COMMITTEE, THE TWENTY (20) LARGEST UNSECURED CREDITORS; (5) ANY PARTY NAMED O A COURT-APPROVED ALTERNATIVE SERVICE LIST; (6) ALL PARTIES REQUESTING NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 2002-1(J); (7) THE RESPONDING PARTIES; AND AN OTHER AFFECTED ENTITY.

IF NO HEARING ON SUCH NOTICE OR MOTION INITIATING A CONTESTED MATTER IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION M BE TAKEN.

**Debtor's Certification and Motion for Entry of Chapter 13 Discharge**
Page 3
Case # 14-30153-HDH-13

## Certificate of Service

I hereby certify that a copy of the foregoing "Debtor's Certification and Motion for Entry of Chapter 13 Discharge Pursuant to 11 U.S.C. Section 1328(a)" has been served by electronic notice and/or United States First Class

| | |
|---|---|
| Debtor: | Cheryl Lynn Declouet, 1328 Clearwater Drive, Grand Prairie, Tx 75052 |
| Attorney: | Herrin & Wright Pllc, 4925 Greenville Avenue, Suite 130, Dallas, Tx 75206 |
| | Herrin Law Pllc, 4925 Greenville Ave Suite 130, Dallas, Tx 75206 |
| Creditor(s): | Altair Oh Xiii Llc, Weinstein Riley Et Al, 2001 Western Ave Ste 400, Seattle, Wa 98121 |
| | Altair Oh Xiii Llc, Weinstein Riley Et Al, Po Box 3978, Seattle, Wa 98124-3978 |
| | American Express Bank Fsb, Co Becket And Lee Llp, Po Box 3001, Malvern, Pa 19355-0701 |
| | American Express Centurion, Becket And Lee Llp, Po Box 3001, Malvern, Pa 19355-0701 |
| | American Infosource Lp, Methodist Health System, Po Box 248838, Oklahoma City, Ok 73124 |
| | Attorney General Of Texas, Po Box 12548, Austin, Tx 78711-2548 |
| | Barrett Daffin Frappier Et Al, 15000 Surveyor Blvd Suite 100, Addison, Tx 75001 |
| | Bsi Financial Services, 1425 Greenway Dr Ste 400, Irving, Tx 75038 |
| | Butler & Hosch Pa, 13800 Montfort Dr Ste 300, Dallas, Tx 75240 |
| | Cach Llc, Po Box 10587, Greenville, Sc 29603-0587 |
| | Cavalry Spv I Llc, 500 Summit Lake Dr Ste 400, Valhalla, Ny 10595 |
| | Cavalry Spv I Llc, Po Box 27288, Tempe, Az 85282 |
| | Chase, Po Box 15298, Wilmington, De 19850 |
| | County Of Dallas, Co Linebarger Goggan Blair Et Al, 2777 N Stemmons Fwy Ste 1000, Dallas, Tx 75207 |
| | Escallate Llc, 5200 Stoneham Rd, North Canton, Oh 44720 |
| | Henry Oddo Austin And Fletcher Et Al, 1700 Pacific Ave Ste 2700, Dallas, Tx 75201 |
| | Internal Revenue Service, Po Box 7317, Philadelphia, Pa 19101-7317 |
| | Internal Revenue Service, Po Box 7346, Philadelphia, Pa 19101-7346 |
| | Marsinc, 5810 E Skelly Dr, Tulsa, Ok 74135 |
| | Portfolio Recovery Associates, By Pra Receivables Management, Po Box 12914, Norfolk, Va 23541 |
| | Portfolio Recovery Associates, By Pra Receivables Management, Po Box 41067, Norfolk, Va 23541 |
| | Quantum3 Group Llc, Po Box 788, Kirkland, Wa 98083-0788 |
| | Texas Comptroller Of Public Accounts, Revenue Accounting Div - Bankruptcy Sect, Po Box 13528, Austin, Tx 78711-3528 |
| | Us Bank Home Mortgage, 4801 Frederica Street, Owensboro, Ky 42301 |
| | Us Bank Na, 4801 Frederica Street, Owensboro, Ky 42301 |
| | Us Bank Trust Na, Co Bsi Financial Services, 1425 Greenway Drive Suite 400, Irving, Tx 75038 |
| | Us Bank Trust Na, Co Bsi Financial Services, Po Box 679002, Dallas, Tx 75267-9002 |
| | Victorias Secret, Attention: Bankruptcy, Po Box 182125, Columbus, Oh 43218 |
| | Wells Fargo Bank Na, Home Equity Group, X2303 01A 1 Home Campus, Des Moines, Ia 50328 0001 |
| | Wells Fargo Bank Na, Wells Fargo Operations Center, Po Box 31557 Mac B6955 01B, Billings, Mt 59107 |

Dated: 11/17/2017 _____          _____

HERRIN LAW PLLC



17572-TXN-DE-029736579

# CERTIFICATE OF DEBTOR EDUCATION

I CERTIFY that on <u>August 15, 2017</u>, at <u>4:01</u> o'clock <u>PM PDT</u>, <u>Cheryl L Declouet</u> completed a course on personal financial management given <u>by internet</u> by <u>Dollar Learning Foundation, Inc.</u>, a provider approved pursuant to 11 U.S.C. § 111 to provide an instructional course concerning personal financial management in the <u>Northern District of Texas</u>.

Date: <u>August 15, 2017</u>          By:     <u>/s/Judy Alexander</u>

Name:  <u>Judy Alexander</u>

Title:   <u>Counselor</u>

Fill in this information to identify the case.

| | |
|---|---|
| Debtor 1 | Cheryl Lynn Declouet |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NORTHERN District of TEXAS (State) |
| Case number | 14-30153-HDH-13 |

# Form 4100R

# Response to Notice of Final Cure Payment

10/15

According to Bankruptcy Rule 3002.1(g), the creditor responds to the trustee's notice of final cure payment.

## Part 1: Mortgage Information

**Name of creditor:** U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust

**Court claim no.** (if known): 13-1

**Last 4 digits** of any number you use to identify the debtor's account: 8 0 4 6

**Property address:** 1328 Clearwater Drive
Number        Street

Grand Prairie        TX        75052
City        State        ZIP Code

## Part 2: Prepetition Default Payments

*Check one:*

☑ Creditor agrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim.

☐ Creditor disagrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim. Creditor asserts that the total prepetition amount remaining unpaid as of the date of this response is:        $ _____

## Part 3: Postpetition Mortgage Payment

*Check one:*

☐ Creditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

The next postpetition payment from the debtor(s) is due on: ___/___/___
MM / DD / YYYY

☑ Creditor states that the debtor(s) are not current on all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

Creditor asserts that the total amount remaining unpaid as of the date of this response is:

a. Total postpetition ongoing payments due:        (a) $ 29,860.98

b. Total fees, charges, expenses, escrow, and costs outstanding:        + (b) $ 0.00

c. **Total.** Add lines a and b.        (c) $ 29,860.98

Creditor asserts that the debtor(s) are contractually obligated for the postpetition payment(s) that first became due on:        03/01/2016
MM / DD / YYYY

Debtor 1    **Cheryl Lynn Declouet**                                    Case number *(if known)*    14-30153-hdh-13

 First Name    Middle Name    Last Name

---

| **Part 4:** | **Itemized Payment History** |
|---|---|

If the creditor disagrees in Part 2 that the prepetition arrearage has been paid in full or states in Part 3 that the debtor(s) are not current with all postpetition payments, including all fees, charges, expenses, escrow, and costs, the creditor must attach an itemized payment history disclosing the following amounts from the date of the bankruptcy filing through the date of this response:

- all payments received;
- all fees, costs, escrow, and expenses assessed to the mortgage; and
- all amounts the creditor contends remain unpaid.

---

| **Part 5:** | **Sign Here** |
|---|---|

**The person completing this response must sign it. The response must be filed as a supplement to the creditor's proof of claim.**

*Check the appropriate box::*

☐ I am the creditor.

☑ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this response is true and correct to the best of my knowledge, information, and reasonable belief.**

Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this response applies.

**✗ /s/ Brian Sindell**                                         Date  11  27  2017
 Signature                                                         ___/___/___

Print    **Brian**              **Sindell**                Title    Assistant Vice President
 First Name    Middle Name    Last Name

Company    **BSI Financial Services**

If different from the notice address listed on the proof of claim to which this response applies:

Address    **1425 Greenway Drive, Suite 400**
 Number       Street

 **Irving**                        **TX**    75038
 City                              State    ZIP Code

Contact phone  **949  679  6696**              Email  mcampos@bsifinancial.com
 (_____) _____–

---

PAGE : 1

| ACCOUNT NUMBER | ████████ | | | | QUOTE NUMBER | | 1 |
|---|---|---|---|---|---|---|---|
| QUOTE PURPOSE | | | | | GOOD THROUGH DATE | | 11/30/17 |
| QUOTE TYPE | BANKRUPTCY | | | | CREATED DATE | | 11/27/17 |

| PAYMENT ADJUSTED DUE DATE | PRINCIPAL & INTEREST | ESCROW | CREDIT INSURANCE | ANCILLARY | PARTIAL PYMT SHRT | ADJUSTMENTS | TOTAL |
|---|---|---|---|---|---|---|---|
| 03/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 04/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 05/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 06/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 07/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 08/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 09/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 10/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 11/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 12/01/16 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 01/01/17 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 02/01/17 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 03/01/17 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 04/01/17 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 05/01/17 | 856.10 | 470.74 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.84 |
| 06/01/17 | 856.10 | 803.63 | 0.00 | 0.00 | 0.00 | 0.00 | 1,659.73 |
| 07/01/17 | 856.10 | 803.63 | 0.00 | 0.00 | 0.00 | 0.00 | 1,659.73 |
| 08/01/17 | 856.10 | 803.63 | 0.00 | 0.00 | 0.00 | 0.00 | 1,659.73 |
| 09/01/17 | 856.10 | 803.63 | 0.00 | 0.00 | 0.00 | 0.00 | 1,659.73 |
| 10/01/17 | 856.10 | 803.63 | 0.00 | 0.00 | 0.00 | 0.00 | 1,659.73 |
| 11/01/17 | 856.10 | 803.63 | 0.00 | 0.00 | 0.00 | 0.00 | 1,659.73 |

| PRINCIPAL & INTEREST | ESCROW | CREDIT INSURANCE | ANCILLARY | PARTIAL PYMT SHRT | TOTAL | ADJUSTMENTS | TOTAL |
|---|---|---|---|---|---|---|---|
| 17,978.10 | 11,882.88 | 0.00 | 0.00 | 0.00 | 29,860.98 | 0.00 | 29,860.98 |

ADDITIONAL PAYMENTS:

| GRAND TOTAL | | | | | 29,860.98 | 0.00 | 29,860.98 |
|---|---|---|---|---|---|---|---|



| Payment Changes | | | |
|---|---|---|---|
| Date | P&I | Escrow | Total |
| POC | | | 1317.91 |
| N/A | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Loan Information | |
|---|---|
| Loan # | |
| Borrower | Declouet |
| Date Filed | 1/6/2014, 14 30153 |
| First Post Petition | |
| Due Date | 2/1/2014 |
| POC Covers | 8/1/13 - 1/6/14 |

☐ - Need copy of prior servicers payment history to confirm application

| Date | Amount Rcvd | Post Pet Due Date | Amt Due | Over/Short | | Suspense Debit | POC Arrears Credit | POC Debit | POC Suspense Balance | POC Paid to Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/31/2015 | $236.92 | | | $236.92 | | | $236.92 | | $236.92 | $236.92 |
| 4/24/2015 | $344.87 | | | $581.79 | | | $344.87 | | $344.87 | $344.87 |
| 5/22/2015 | $344.87 | | | $926.66 | | | $344.87 | | $344.87 | $581.79 |
| 6/26/2015 | $347.68 | | | $1,274.34 | | | $347.68 | | $347.68 | $929.47 |
| 7/24/2015 | $350.50 | | | $1,624.84 | | | $350.50 | | $350.50 | $1,279.97 |
| 8/28/2015 | $529.48 | | | $2,154.32 | | | $529.48 | | $529.48 | $1,809.45 |
| 9/25/2015 | $357.98 | | | $2,512.30 | | | $357.98 | | $357.98 | $2,167.43 |
| 10/23/2015 | $350.11 | | | $2,862.41 | | | $350.11 | | $350.11 | $2,517.54 |
| 11/20/2015 | $342.23 | | | $3,200.25 | | | $342.23 | | $342.23 | $2,859.77 |
| 12/18/2015 | $342.24 | | | $4,518.25 | | | $342.24 | | $342.24 | $3,202.01 |
| 1/22/2016 | $342.23 | | | $4,856.09 | | | $342.23 | | $342.23 | $3,544.24 |
| 2/26/2016 | $513.35 | | | $6,174.09 | | | $513.35 | | $513.35 | $4,057.59 |
| 3/25/2016 | $342.24 | | | $6,217.63 | | | $342.24 | | $342.24 | $4,399.83 |
| 4/22/2016 | $342.23 | | | $7,535.63 | | | $342.23 | | $342.23 | $4,742.06 |
| 5/27/2016 | $342.24 | | | $8,853.63 | | | $342.24 | | $342.24 | $5,084.30 |
| 6/24/2016 | $339.80 | | | $10,171.54 | | | $339.80 | | $339.80 | $5,424.10 |
| 7/22/2016 | $337.37 | | | $11,489.45 | | | $337.37 | | $337.37 | $5,761.47 |
| 8/26/2016 | $506.06 | | | $12,816.29 | | | $506.06 | | $506.06 | $6,267.53 |
| 9/23/2016 | $337.37 | | | $14,143.13 | | | $337.37 | | $337.37 | $6,604.90 |
| 10/14/2016 | $1,320.00 | 3/1/2015 | $1,317.91 | $14,152.06 | | $2.09 | | | $0.00 | $6,604.90 |
| 10/27/2016 | $337.84 | | | $14,528.83 | | | | $337.37 | $0.00 | $6,942.27 |
| 11/28/2016 | $1,318.00 | 4/1/2015 | $1,317.91 | $13,433.60 | | $0.09 | | | $0.00 | $6,942.27 |
| 12/13/2016 | $337.84 | | | $14,983.60 | | | | $337.84 | $0.00 | $7,280.11 |
| 12/28/2016 | $1,318.00 | 5/1/2015 | $1,317.91 | $15,215.69 | | $0.09 | | | $0.00 | $7,280.11 |
| 1/20/2017 | $43.54 | | | $15,215.69 | | | | $43.54 | $43.54 | $7,323.65 |
| 1/31/2017 | $1,318.00 | 6/1/2015 | $1,317.91 | $13,897.78 | | $0.09 | | | $0.00 | $7,323.65 |
| 3/7/2017 | $1,318.00 | 7/1/2015 | $1,317.91 | $12,579.87 | | $0.09 | | | $0.00 | $7,323.65 |
| 3/30/2017 | $1,317.91 | 8/1/2015 | $1,317.91 | $11,261.96 | | | | | $0.00 | $7,323.65 |
| 4/29/2017 | $1,317.91 | 9/1/2015 | $1,317.91 | $9,944.05 | | | | | $0.00 | $7,323.65 |
| 5/30/2017 | $1,326.84 | 10/1/2015 | $1,317.91 | $8,626.14 | | | | | $0.00 | $7,323.65 |
| 7/17/2017 | $1,326.84 | 11/1/2015 | $1,317.91 | $7,308.23 | | | | | $0.00 | $7,323.65 |
| 8/16/2017 | $1,326.84 | 12/1/2015 | $1,317.91 | $5,990.32 | | | | | $0.00 | $7,323.65 |
| 9/22/2017 | $376.77 | | | $5,990.32 | | $376.77 | | | $0.00 | $7,323.65 |
| 9/22/2017 | $222.68 | | | $5,990.32 | | $222.68 | | | $0.00 | $7,323.65 |
| 9/22/2017 | $1,550.00 | 1/1/2016 | $1,317.91 | $4,672.41 | | $223.16 | | | $0.00 | $7,323.65 |
| 10/17/2017 | $1,550.00 | 2/1/2016 | $1,317.91 | $3,354.50 | | $223.16 | | | $0.00 | $7,323.65 |
| | | | | $3,354.50 | | | | | $0.00 | $7,323.65 |
| | | | | $3,354.50 | | | | | $0.00 | $7,323.65 |
| | | | | $3,354.50 | | | | | $0.00 | $7,323.65 |

# POST-PETITION PAYMENT HISTORY

**Name:** Cheryl Declouet
**Loan #:** ▬▬▬▬►
**Case #:** 14-30153
**Date Filed:** 1/6/14

| Date Received | Amount Received | $ Applied To Payment | Post-Petition Date Paid | Paid To Suspense | Running Suspense Total | Post Petition Payment Amount Due |
|---|---|---|---|---|---|---|
| | | | | | $ - | |
| | | | | | $ - | |
| 3/14/2014 | $ 1,317.83 | | | $1,317.83 | $ 1,317.83 | |
| 4/14/2014 | $ 1,317.83 | $1,317.91 | 2/1/2014 | ($0.08) | $ 1,317.75 | $ 1,317.91 |
| 6/9/2014 | $ 1,317.83 | $1,317.91 | 3/1/2014 | ($0.08) | $ 1,317.67 | $ 1,317.91 |
| 6/30/2014 | $ 1,317.83 | $1,317.91 | 4/1/2014 | ($0.08) | $ 1,317.59 | $ 1,317.91 |
| 8/12/2014 | $ 1,317.83 | $1,317.91 | 5/1/2014 | ($0.08) | $ 1,317.51 | $ 1,317.91 |
| 11/4/2014 | $ 1,320.00 | $1,317.91 | 6/1/2014 | $2.09 | $ 1,319.60 | $ 1,317.91 |
| 1/27/2015 | $ 1,320.00 | $1,317.91 | 7/1/2014 | $2.09 | $ 1,321.69 | $ 1,317.91 |
| 3/26/2015 | $ 700.00 | $1,317.91 | 8/1/2014 | ($617.91) | $ 703.78 | $ 1,317.91 |
| 5/22/2015 | $ 1,050.00 | $1,317.91 | 9/1/2014 | ($267.91) | $ 435.87 | $ 1,317.91 |
| | | | 10/1/2014 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 11/1/2014 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 12/1/2014 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 1/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 2/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 3/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 4/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 5/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 6/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 7/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | 8/1/2015 | $0.00 | $ 435.87 | $ 1,317.91 |
| | | | | $0.00 | $ 435.87 | |
| | | | | $0.00 | $ 435.87 | |
| | | | | $0.00 | $ 435.87 | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Response was served on the 28th day of November, 2017. Said Response was filed electronically. Service was accomplished by the method and to the following as indicated.

By: <u>/s/ Richard Anderson</u>
      RICHARD E. ANDERSON

BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL, POSTAGE PREPAID:

<u>DEBTOR</u>
Cheryl Lynn DeClouet
1328 Clearwater Drive  (Property)
Grand Prairie, Texas 75052

1328 Clearwater Drive  (Mailing)
Grand Prairie, Texas 75052

<u>DEBTOR'S ATTORNEY</u>
C. Daniel Herrin
Herrin Law, PLLC
4925 Greenville Avenue, Suite 130,  ecf@herrinlaw.com
Dallas, Texas 75206

<u>TRUSTEE</u>
Thomas Powers
125 E. John Carpenter Frwy., Suite 1100
Irving, Texas 75062

<u>U.S. TRUSTEE</u>
U.S. Trustee
1000 Commerce Street, Room 976
Dallas, Texas 75242

CREDITOR ATTORNEY

**Judd A. Austin, Jr.**
Henry, Oddo, Austin & Fletcher, PC
1700 Pacific Avenue
Suite 2700
Dallas, TX 75201
(214) 658-1900
(214) 658-1919 (fax)
jaamex@hoaf.com
 *Assigned: 01/04/2017*

representing

**Grand Prairie Lakewood
Homeowners Association, Inc**
c/o SBB Management Company
8360 LBJ Freeway, Suite 300
Dallas, TX 75243
*(Creditor)*

**John R. Callison**
Barrett Daffin Frappier Turner &
Engel
15000 Surveyor Boulevard
Addison, TX 75001
(972) 386-5040
(972) 661-7725 (fax)
ndecf@bdfgroup.com
 *Assigned: 09/02/2016*

representing

**Federal National Mortgage
Association -Fannie Mae, Creditor
CO Seterus, Inc.**
*(Creditor)*

**Alonzo Zachary Casas**
Aldridge Pite, LLP
4375 Jutland Drive
San Diego, CA 92117
(858) 750-7600
(619) 590-1385 (fax)
ecftxnb@aldridgepite.com
 *Assigned: 08/25/2017*

representing

**WELLS FARGO BANK, N.A.**
*(Creditor)*

**Craig Andrew Edelman**
Buckley Madole, P.C.
PO Box 9013
Addison, TX 75001
713-621-8673
972-661-7702 (fax)
Craig.Edelman@buckleymadole.com
 *Assigned: 04/10/2015*

representing

**U.S. BANK NATIONAL
ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**Andrew David Goldberg**
Rosicki Rosicki & Associates, P.C.
51 East Bethpage Road
Plainview, NY 11803

Representing

**Federal National Mortgage
Association -Fannie Mae, Creditor
CO Seterus, Inc.**
*(Creditor)*

516-741-2585
(516) 873-7244 (fax)
Bkmail@rosicki.com
 *Assigned: 09/21/2015*

**Gordon Green**
Aldridge Pite, LLP
4375 Jutland Drive
San Diego, CA 92117          representing          **WELLS FARGO BANK, N.A.**
(972) 499-8068                                    *(Creditor)*
(858) 412-2683 (fax)
ecftxnb@aldridgepite.com
 *Assigned: 08/11/2017*

**Beatrice Grevel**
Butler & Hosch, P.A.                              **U.S. Bank National Association**
13800 Montfort Drive, Suite 300                   Butler & Hosch, PA
Dallas, TX 75240              representing         3185 S. Conway Rd., Suite E
(972) 233-2500 x1354                              Orlando, FL 32812
(972) 716-2014 (fax)                              *(Creditor)*
beatriceg@butlerandhosch.com
 *Assigned: 05/06/2014*

**Jennine Hovell-Cox**
Codilis & Stawiarski, PC                          **Fay Servicing, LLC As Servicing**
400 N. Sam Houston Parkway E., Sute               **agent for PROF-2013-M4 Legal Title**
900A                                              **Trust II, by U.S. Bank National**
Houston, TX 77060            representing          **Association, as Legal Title Trustee**
(281) 925-5239                                    *(Creditor)*
(281) 925-5339 (fax)
jennine.hovell-cox@tx.cslegal.com
 *Assigned: 08/14/2017*

**Sherrel K. Knighton**
Linebarger, Goggan, Blair & Sampson, LLP
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207
(214)880-0089
469-221-5003 (fax)
Sherrel.Knighton@lgbs.com
*Assigned: 02/24/2014*

representing

**Dallas County**
Linebarger Goggan Blair & Sampson
2777 N. Stemmons Freeway ste. 1000
Dallas, TX 75207
*(Creditor)*

**John Rafferty**
Buckley Madole, P.C.
P.O. Box 9013
Addison, TX 75001
(214) 550-3967
(214) 550-3967 (fax)
John.Rafferty@BuckleyMadole.com
*Assigned: 03/21/2017*

*Assigned: 07/31/2017*

representing

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

representing

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**LynAlise Tannery**
Buckley Madole, P.C.
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
(214) 550-4124
(214) 550-4124 (fax)
lynalise.tannery@buckleymadole.com
*Assigned: 08/26/2016*

*Assigned: 09/27/2016*

representing

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

representing

**U.S. Bank National Association**
14841 Dallas Parkway, Suite 300
DALLAS, TX 75254
*(Creditor)*

**Steve Turner**
Barrett Daffin Frappier Turner &
Engel
3809 Juniper Trace, Suite 205
Austin, TX 78738
512-687-2500
512-477-1112 (fax)
ndecf@BDFGROUP.com
 *Assigned: 04/02/2014*

representing **Federal National Mortgage Association -
Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

**Donna Marie Wilkinson**
Barrett Daffin Frappier Turner &
Engel
15000 Surveyor Blvd.
Addison, TX 75001
(972) 341-3151
(972) 341-0526 (fax)
ndecf@bdfgroup.com
 *Assigned: 08/26/2015*

representing **Federal National Mortgage Association -
Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

Richard E. Anderson
Texas Bar No. 01209010
4920 Westport Drive
The Colony, Texas 75056
Tel. (214) 276-1545
Fax. (214) 276-1546
RAnderson@AndersonVela.com
ANDERSON VELA, LLP
Attorney for Creditor

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 14-30153-hdh 13 |
| Cheryl Lynn DeClouet | § | CHAPTER 13 |
| Debtor, | § | |

### NOTICE OF APPEARANCE AND REQUEST
### FOR SERVICE OF NOTICES AND PLEADINGS

PLEASE TAKE NOTICE that the undersigned hereby enters an appearance on behalf of:

U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust, secured creditor in

the above-referenced proceedings. The undersigned hereby requests notice and copies of all

motions notices, reports, briefs, applications, adversary proceedings, proposed orders, confirmed

copies of orders, any proposed disclosure statement or plan of reorganization that has been filed

with the court, any other documents or instruments filed in the above-referenced proceedings and

any other matter in which notice is required pursuant to 11 U.S.C. Sec. 1109(b) and Bankruptcy

Rules 2002(a) and (b), 3017(a), and 9013 of the Federal Rules of Bankruptcy Procedure.

---

NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND
PLEADINGS                                                                    PAGE 1

Respectfully submitted,

**ANDERSON VELA, L.L.P.**
4920 Westport Drive
The Colony, Texas 75056
214.276.1545 - Telephone
214.276.1546 - Fax
Email: randerson@AndersonVela.com
**ATTORNEYS FOR MOVANT**

By: /s/ Richard Anderson
    RICHARD E. ANDERSON
    State Bar No. 01209010

---

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND
PLEADINGS                                                    PAGE 2**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appearance was served on the 28th day of November, 2017.  Said Notice was filed electronically.  Service was accomplished by the method and to the following as indicated.

By: /s/ Richard Anderson
    RICHARD E. ANDERSON

BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL, POSTAGE PREPAID:

DEBTOR
Cheryl Lynn DeClouet
1328 Clearwater Drive  (Property)
Grand Prairie, Texas 75052

1328 Clearwater Drive  (Mailing)
Grand Prairie, Texas 75052

DEBTOR'S ATTORNEY
C. Daniel Herrin
Herrin Law, PLLC
4925 Greenville Avenue, Suite 130,  ecf@herrinlaw.com
Dallas, Texas 75206

TRUSTEE
Thomas Powers
125 E. John Carpenter Frwy., Suite 1100
Irving, Texas 75062

U.S. TRUSTEE
U.S. Trustee
1000 Commerce Street, Room 976
Dallas, Texas 75242

---

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND PLEADINGS**     **PAGE 3**

CREDITOR ATTORNEY

**Judd A. Austin, Jr.**
Henry, Oddo, Austin & Fletcher, PC
1700 Pacific Avenue
Suite 2700
Dallas, TX 75201                            representing
(214) 658-1900
(214) 658-1919 (fax)
jaamex@hoaf.com
 *Assigned: 01/04/2017*

**Grand Prairie Lakewood Homeowners Association, Inc**
c/o SBB Management Company
8360 LBJ Freeway, Suite 300
Dallas, TX 75243
*(Creditor)*

**John R. Callison**
Barrett Daffin Frappier Turner &
Engel
15000 Surveyor Boulevard
Addison, TX 75001                           representing
(972) 386-5040
(972) 661-7725 (fax)
ndecf@bdfgroup.com
 *Assigned: 09/02/2016*

**Federal National Mortgage Association -Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

**Alonzo Zachary Casas**
Aldridge Pite, LLP
4375 Jutland Drive
San Diego, CA 92117                          representing
(858) 750-7600
(619) 590-1385 (fax)
ecftxnb@aldridgepite.com
 *Assigned: 08/25/2017*

**WELLS FARGO BANK, N.A.**
*(Creditor)*

**Craig Andrew Edelman**
Buckley Madole, P.C.
PO Box 9013
Addison, TX 75001                           representing
713-621-8673
972-661-7702 (fax)
Craig.Edelman@buckleymadole.com
 *Assigned: 04/10/2015*

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

---

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND PLEADINGS                                    PAGE 4**

| | | |
|---|---|---|
| **Andrew David Goldberg**<br>Rosicki Rosicki & Associates, P.C.<br>51 East Bethpage Road<br>Plainview, NY 11803<br>516-741-2585<br>(516) 873-7244 (fax)<br>Bkmail@rosicki.com<br>*Assigned: 09/21/2015* | Representing | **Federal National Mortgage Association -Fannie Mae, Creditor CO Seterus, Inc.**<br>*(Creditor)* |
| **Gordon Green**<br>Aldridge Pite, LLP<br>4375 Jutland Drive<br>San Diego, CA 92117<br>(972) 499-8068<br>(858) 412-2683 (fax)<br>ecftxnb@aldridgepite.com<br>*Assigned: 08/11/2017* | representing | **WELLS FARGO BANK, N.A.**<br>*(Creditor)* |
| **Beatrice Grevel**<br>Butler & Hosch, P.A.<br>13800 Montfort Drive, Suite 300<br>Dallas, TX 75240<br>(972) 233-2500 x1354<br>(972) 716-2014 (fax)<br>beatriceg@butlerandhosch.com<br>*Assigned: 05/06/2014* | representing | **U.S. Bank National Association**<br>Butler & Hosch, PA<br>3185 S. Conway Rd., Suite E<br>Orlando, FL 32812<br>*(Creditor)* |
| **Jennine Hovell-Cox**<br>Codilis & Stawiarski, PC<br>400 N. Sam Houston Parkway E., Sute 900A<br>Houston, TX 77060<br>(281) 925-5239<br>(281) 925-5339 (fax)<br>jennine.hovell-cox@tx.cslegal.com<br>*Assigned: 08/14/2017* | representing | **Fay Servicing, LLC As Servicing agent for PROF-2013-M4 Legal Title Trust II, by U.S. Bank National Association, as Legal Title Trustee**<br>*(Creditor)* |

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND PLEADINGS**                                          **PAGE 5**

**Sherrel K. Knighton**
Linebarger, Goggan, Blair & Sampson,
LLP
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207
(214)880-0089
469-221-5003 (fax)
Sherrel.Knighton@lgbs.com
*Assigned: 02/24/2014*

representing

**Dallas County**
Linebarger Goggan Blair &
Sampson
2777 N. Stemmons Freeway
ste. 1000
Dallas, TX 75207
*(Creditor)*

**John Rafferty**
Buckley Madole, P.C.
P.O. Box 9013
Addison, TX 75001
(214) 550-3967
(214) 550-3967 (fax)
John.Rafferty@BuckleyMadole.com
*Assigned: 03/21/2017*

representing

**U.S. BANK NATIONAL
ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

*Assigned: 07/31/2017*

representing

**U.S. BANK NATIONAL
ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**LynAlise Tannery**
Buckley Madole, P.C.
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
(214) 550-4124
(214) 550-4124 (fax)
lynalise.tannery@buckleymadole.com
*Assigned: 08/26/2016*

representing

**U.S. BANK NATIONAL
ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

*Assigned: 09/27/2016*

representing

**U.S. Bank National Association**
14841 Dallas Parkway, Suite 300
DALLAS, TX 75254
*(Creditor)*

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND
PLEADINGS** **PAGE 6**

**Steve Turner**
Barrett Daffin Frappier Turner &
Engel
3809 Juniper Trace, Suite 205
Austin, TX 78738
512-687-2500
512-477-1112 (fax)
ndecf@BDFGROUP.com
 *Assigned: 04/02/2014*

representing

**Federal National Mortgage Association -
Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

**Donna Marie Wilkinson**
Barrett Daffin Frappier Turner &
Engel
15000 Surveyor Blvd.
Addison, TX 75001
(972) 341-3151
(972) 341-0526 (fax)
ndecf@bdfgroup.com
 *Assigned: 08/26/2015*

representing

**Federal National Mortgage Association -
Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

---

**NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF NOTICES AND
PLEADINGS**                                                    **PAGE 7**

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Cheryl Lynn DeClouet |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Northern    District of    TX (State) |
| Case number | 14-30153-hdh13 |

## Official Form 410S1

# Notice of Mortgage Payment Change                            12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** US Bank Trust National Association as Trustee of the Igloo Series III Trust.

**Court claim no.** (if known): 13-1

**Last 4 digits** of any number you use to identify the debtor's account:    8  0  4  6

**Date of payment change:**
Must be at least 21 days after date of this notice    01 / 01 / 2018

**New total payment:**    $ 1595.50
Principal, interest, and escrow, if any

---

| Part 1: | Escrow Account Payment Adjustment |
|---|---|

1. **Will there be a change in the debtor's escrow account payment?**

   ☐ No
   ☑ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment:  $ 803.63          New escrow payment:  $ 739.40

---

| Part 2: | Mortgage Payment Adjustment |
|---|---|

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**

   ☑ No
   ☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: _____%          New interest rate: _____%

   Current principal and interest payment: $ _____          New principal and interest payment: $ _____

---

| Part 3: | Other Payment Change |
|---|---|

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☑ No
   ☐ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement.
   (*Court approval may be required before the payment change can take effect.*)

   Reason for change: _____

   Current mortgage payment: $ _____          New mortgage payment: $ _____

---

Official Form 410S1                    Notice of Mortgage Payment Change                    page 1

Exhibit "DD" - Page 1 of 6

| Debtor 1 | Cheryl Lynn DeClouet | | | Case number (if known) | 14-30153-hdh13 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| Part 4: | Sign Here |
|---|---|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor.

☒ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✖ /s/ Michelle R. Ghidotti-Gonsalves                    Date 12 / 11 / 2017
  Signature

Print:  Michelle R. Ghidotti-Gonsalves                    Title AUTHORIZED AGENT
       First Name     Middle Name     Last Name

Company  The Law Offices of Michelle Ghidotti

Address  5120 E. La Palma Ave., Ste. 206
      Number      Street
      Anaheim Hills, CA 92807
      City         State     ZIP Code

Contact phone  ( 949 ) 354 _ 2601    Email mghidotti@ghidottilaw.com

Exhibit "DD" - Page 2 of 6



## BSI Financial Services

314 S. Franklin Street, 2nd Floor
P.O. Box 517
Titusville, PA 16354
1-800-327-7861
https://myloanweb.com/BSI

**Annual Escrow Account Disclosure Statement**

004

ACCOUNT NUMBER: REDACTION

DATE: 11/22/17

98

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

PROPERTY ADDRESS

1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED. THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS REFUNDS, OR SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED ESCROW ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING 01/01/2018 THROUGH 12/31/2018.

### -------- ANTICIPATED PAYMENTS FROM ESCROW 01/01/2018 TO 12/31/2018 ---------

| | |
|---|---|
| HOMEOWNERS INS | $2,298.62 |
| COUNTY TAX | $4,487.32 |
| TOTAL PAYMENTS FROM ESCROW | $6,785.94 |
| MONTHLY PAYMENT TO ESCROW | $565.49 |

### ------ ANTICIPATED ESCROW ACTIVITY 01/01/2018 TO 12/31/2018 ---------

| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | ANTICIPATED | REQUIRED |
|---|---|---|---|---|---|
| | | | STARTING BALANCE --> | $2,965.88 | $5,052.81 |
| JAN | $565.49 | $4,487.32 | COUNTY TAX  L1-> | $955.95- | L2-> $1,130.98 |
| FEB | $565.49 | | | $390.46- | $1,696.47 |
| MAR | $565.49 | | | $175.03 | $2,261.96 |
| APR | $565.49 | | | $740.52 | $2,827.45 |
| MAY | $565.49 | | | $1,306.01 | $3,392.94 |
| JUN | $565.49 | | | $1,871.50 | $3,958.43 |
| JUL | $565.49 | $2,298.62 | HOMEOWNERS INS | $138.37 | $2,225.30 |
| AUG | $565.49 | | | $703.86 | $2,790.79 |
| SEP | $565.49 | | | $1,269.35 | $3,356.28 |
| OCT | $565.49 | | | $1,834.84 | $3,921.77 |
| NOV | $565.49 | | | $2,400.33 | $4,487.26 |
| DEC | $565.49 | | | $2,965.82 | $5,052.75 |

### --------- DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE --------

IF THE ANTICIPATED LOW POINT BALANCE (L1) IS LESS THAN THE REQUIRED BALANCE (L2), THEN YOU HAVE AN ESCROW SHORTAGE. **YOUR ESCROW SHORTAGE IS $2,086.93.**

### CALCULATION OF YOUR NEW PAYMENT

| | |
|---|---|
| PRIN & INTEREST | $856.10 |
| ESCROW PAYMENT | $565.49 |
| SHORTAGE PYMT | $173.91 |
| **NEW PAYMENT EFFECTIVE 01/01/2018** | **$1,595.50** |

YOUR ESCROW CUSHION FOR THIS CYCLE IS $1,130.98.

********** Continued on reverse side *************

---

## BSI Financial Services

Loan Number: REDACTIO
Statement Date: 11/22/17
Escrow Shortage: $2,086.93

Important: Please return this coupon with your check.

BSI FINANCIAL SERVICES
314 S. Franklin Street, 2nd Floor
P.O. Box 517
Titusville, PA 16354

### Escrow Payment Options

I understand that my taxes and/or insurance has increased and that my escrow account is short $2,086.93. I have enclosed a check for:

☐ **Option 1:** $2,086.93, the total shortage amount. I understand that if this is received by 01/01/2018 my monthly mortgage payment will be $1,421.59 starting 01/01/2018.

☐ **Option 2:** $_____ , part of the shortage. I understand that the rest of the shortage will be divided evenly and added to my mortgage payment each month.

☐ **Option 3:** You do not need to do anything if you want to have all of your shortage divided evenly among the next 12 months.

Please make you check payable to: **BSI FINANCIAL SERVICES** and please include your loan number on your check.

**Licensed as Servis One, Inc. dba BSI Financial Services.** BSI Financial Services NMLS# 38078. Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).

********** Continued from front **********

| ACCOUNT HISTORY |
|---|

THIS HISTORY STATEMENT COMPARES YOUR PRIOR ANALYSIS CYCLE PROJECTED ESCROW ACTIVITY TO THE ACTUAL ESCROW ACTIVITY BEGINNING 01/01/2017 AND ENDING 12/31/2017. IF YOUR LOAN WAS PAID-OFF, ASSUMED OR TRANSFERRED DURING THIS PRIOR CYCLE, OR THE COMPUTATION YEAR IS BEGING CHANGED, ACTUAL ACTIVITY STOPS AT THAT POINT.  THIS STATEMENT IS INFORMATION ONLY AND REQUIRES NO ACTION ON YOUR PART.

YOUR PAYMENT BREAKDOWN AS OF 01/01/2017 IS:

```
PRIN & INTEREST                              $856.10
ESCROW PAYMENT                               $803.63
BORROWER PAYMENT                           $1,659.73
```

| | PAYMENTS TO ESCROW | | PAYMENTS FROM ESCROW | | ESCROW BALANCE | | |
|---|---|---|---|---|---|---|---|
| MONTH | PRIOR PROJECTED | ACTUAL | PRIOR PROJECTED | ACTUAL | DESCRIPTION | PRIOR PROJECTED | ACTUAL |
| | | | | | STARTING BALANCE | $0.00 | $0.00 |
| AUG | $0.00 | $10,662.11 * | | | | $0.00 | A-> $10,662.11- |
| SEP | $0.00 | $470.74 * | | | | $0.00 | $10,191.37- |
| OCT | $0.00 | $470.74 * | | | | $0.00 | $9,720.63- |
| | $0.00 | $9,720.63 | $0.00 | $0.00 | | | |

UNDER FEDERAL LAW, WHEN YOUR ACTUAL ESCROW BALANCE REACHED THE LOWEST POINT, THAT BALANCE WAS TARGETED NOT TO EXCEED 1/6TH OF THE ANNUAL PROJECTED DISBURSEMENTS.  YOUR LOAN DOCUMENTS OR STATE LAW MAY SPECIFY THAT YOUR LOWEST BALANCE MUST BE A LOWER AMOUNT THAN THE FEDERAL LAW ALLOWS.

UNDER YOUR MORTGAGE CONTRACT OR STATE OR FEDERAL LAW, YOUR TARGETED LOW POINT BALANCE (T) WAS $0.00.  YOUR ACTUAL LOW POINT ESCROW BALANCE (A) WAS $10,662.11-.

BY COMPARING THE ANTICIPATED ESCROW TRANSACTIONS WITH THE ACTUAL TRANSACTIONS YOU CAN DETERMINE WHERE A DIFFERENCE MAY HAVE OCCURRED.  AN ASTERISK (*) INDICATES A DIFFERENCE IN EITHER THE AMOUNT OR DATE OF THE PROJECTED ACTIVITY THAT HAS NOT YET OCCURRED DUE TO THE DATE OF THIS STATEMENT.

IF THERE ARE NO PRIOR PAYMENTS TO OR FROM ESCROW SHOWN,  THERE WAS NO PRIOR PROJECTION TO WHICH THE ACTUAL ACTIVITY COULD BE COMPARED.

## Determining your Shortage or Surplus
**Shortage**:
Any shortage in your escrow account is usually caused by one the following items:
- An increase, if any, in what was paid for insurance and/or taxes from your escrow account.
- A projected increase in taxes for the upcoming year.
- The number of months elapsed from the time of these disbursements to the new payment effective date.

Shortages are divided evenly of the next twelve months.  To reduce the increase in your monthly payment, the shortage can be paid either partially or in full.

**Surplus**:
A surplus in your escrow account is usually caused by one the following items:
- The insurance/taxes paid during the past year were lower than projected.
- A refund was received from the taxing authority or insurance carrier.
- Additional funds were applied to your escrow account.

If your surplus is $50.00 or greater and your loan was contractually current at the time when the analysis was run or calculated, a check will be sent to you.  If your surplus is less than $50.00, the funds will be retained in your escrow account.

If you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If that is the case, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired

1  14Michelle R. Ghidotti-Gonsalves, Esq. (SBN 232837)
Jennifer R. Bergh, Esq. (SBN 305219)
2  LAW OFFICES OF MICHELLE GHIDOTTI
3  5120 E. LaPalma Ave., Suite 206
Anaheim, CA 92807
4  Ph: (949) 354-2601
Fax: (949) 200-4381
5  mghidotti@ghidottilaw.com

6
Attorney for Creditor
7  U.S. Bank Trust National Association, as
Trustee of the Igloo Series III Trust
8

9
UNITED STATES BANKRUPTCY COURT
10
NORTHERN DISTRICT OF TEXAS –DALLAS DIVISION
11

| 12 | In Re: | ) | CASE NO.: 14-30153-hdh13 |
| 13 | | ) | |
| | Cheryl Lynn DeClouet, | ) | CHAPTER 13 |
| 14 | | ) | |
| 15 | Debtors. | ) | **CERTIFICATE OF SERVICE** |
| | | ) | |
| 16 | | ) | |
| 17 | | ) | |
| | | ) | |
| 18 | | ) | |
| 19 | | ) | |
| | | ) | |
| 20 | | | |

21                **CERTIFICATE OF SERVICE**

22

23        I am employed in the County of Orange, State of California.  I am over the age of

24  eighteen and not a party to the within action.  My business address is: 5120 E. LaPalma Ave.,

25  Ste. 206, Anaheim, CA 92807.

26        I am readily familiar with the business's practice for collection and processing of

27  correspondence for mailing with the United States Postal Service; such correspondence would

28

1
CERTIFICATE OF SERVICE

1  be deposited with the United States Postal Service the same day of deposit in the ordinary

2  course of business.

3  On December 11, 2017 I served the following documents described as:

4

5  · **NOTICE OF MORTGAGE PAYMENT CHANGE**

6  on the interested parties in this action by placing a true and correct copy thereof in a sealed

7  envelope addressed as follows:

8  (Via United States Mail)

| **Debtor** | **Chapter 13 Trustee** |
|---|---|
| Cheryl Lynn DeClouet | Thomas Powers |
| 1328 Clearwater Drive | 125 E. John Carpenter Frwy., Suite 1100 |
| Grand Prairie, TX 75052 | Irving, TX 75062-2288 |
| | |
| **Debtor's Counsel** | **U.S. Trustee** |
| C. Daniel Herrin | United States Trustee |
| Herrin Law, PLLC | 1100 Commerce Street |
| 4925 Greenville Ave | Room 976 |
| Suite 130 | Dallas, TX 75242 |
| Dallas, TX 75206 | |

16  _xx___(By First Class Mail) At my business address, I placed such envelope for deposit with
17  the United States Postal Service by placing them for collection and mailing on that date
   following ordinary business practices.

18
19  _____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the
   Eastern District of California

20
21  __xx_(Federal) I declare under penalty of perjury under the laws of the United States of
   America that the foregoing is true and correct.

22
23        Executed on December 11, 2017 at Anaheim, California

24  /s/ Krystle Miller
   Krystle Miller

25

26

27

28

2

Fill in this information to identify the case:

Debtor 1     Cheryl Lynn Declouet

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   NORTHERN   District of   TEXAS
                                                                    (State)

Case number    14-30153-HDH-13

## Form 4100R  Amends Response filed Doc. # 106

# Amended Response to Notice of Final Cure Payment                    10/15

According to Bankruptcy Rule 3002.1(g), the creditor responds to the trustee's notice of final cure payment.

| Part 1: | Mortgage Information |
| --- | --- |

**Name of creditor:**  U.S. Bank Trust National Association, as Trustee of the Igloo Series III Trust

**Court claim no.** (if known):  13-1

**Last 4 digits** of any number you use to identify the debtor's account:   8  0  4  6

**Property address:**   1328 Clearwater Drive
                        Number      Street

                        Grand Prairie          TX          75052
                        City                   State       ZIP Code

| Part 2: | Prepetition Default Payments |
| --- | --- |

*Check one:*

☑ Creditor agrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim.

☐ Creditor disagrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim. Creditor asserts that the total prepetition amount remaining unpaid as of the date of this response is:                 $ _____

| Part 3: | Postpetition Mortgage Payment |
| --- | --- |

*Check one:*

☑ Creditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

The next postpetition payment from the debtor(s) is due on:   04 / 01 / 2018
                                                              MM / DD / YYYY

☐ Creditor states that the debtor(s) are not current on all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

Creditor asserts that the total amount remaining unpaid as of the date of this response is:

a.  Total postpetition ongoing payments due:                              (a)  $ _____

b.  Total fees, charges, expenses, escrow, and costs outstanding:      +  (b)  $ _____

c.  **Total**. Add lines a and b.                                          (c)  $ _____

Creditor asserts that the debtor(s) are contractually obligated for the postpetition payment(s) that first became due on:      ___ / ___ / ___
                                                                          MM / DD / YYYY

Exhibit "EE" - Page 1 of 7

Debtor 1    Cheryl Lynn Declouet                                    Case number (if known) 14-30153-hdh-13
            First Name        Middle Name        Last Name

---

| Part 4: | Itemized Payment History |

If the creditor disagrees in Part 2 that the prepetition arrearage has been paid in full or states in Part 3 that the debtor(s) are not current with all postpetition payments, including all fees, charges, expenses, escrow, and costs, the creditor must attach an itemized payment history disclosing the following amounts from the date of the bankruptcy filing through the date of this response:

- all payments received;
- all fees, costs, escrow, and expenses assessed to the mortgage; and
- all amounts the creditor contends remain unpaid.

---

| Part 5: | Sign Here |

**The person completing this response must sign it.  The response must be filed as a supplement to the creditor's proof of claim.**

*Check the appropriate box::*

☐ I am the creditor.
☑ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this response is true and correct to the best of my knowledge, information, and reasonable belief.**

Sign and print your name and your title, if any, and state your address and telephone number if different from the notice address listed on the proof of claim to which this response applies.

**✗ /s/ Brian Sindell**                                    Date  03  23  2018
 Signature                                                       ___/___/___

Print   **Brian**              **Sindell**           Title  **Vice President**
        First Name    Middle Name    Last Name

Company  **BSI Financial Services**

If different from the notice address listed on the proof of claim to which this response applies:

Address  **1425 Greenway Drive, Suite 400**
          Number        Street

        **Irving**                    **TX**    75038
          City                        State    ZIP Code

Contact phone  **888**  **738**  **5873**        Email  bankruptcy@bsifinancial.com
                (_____) _____–

---

Exhibit "EE" - Page 2 of 7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing amended response was served on the 28th day of March, 2018.  Said Response was filed electronically.  Service was accomplished by the method and to the following as indicated.

By: /s/ Richard Anderson
   RICHARD E. ANDERSON

BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL, POSTAGE PREPAID:

DEBTOR
Cheryl Lynn DeClouet
1328 Clearwater Drive
Grand Prairie, Texas 75052

DEBTOR'S ATTORNEY
C. Daniel Herrin
Herrin Law, PLLC
4925 Greenville Avenue, Suite 130,  ecf@herrinlaw.com
Dallas, Texas 75206

TRUSTEE
Thomas Powers
125 E. John Carpenter Frwy., Suite 1100
Irving, Texas 75062

U.S. TRUSTEE
U.S. Trustee
1000 Commerce Street, Room 976
Dallas, Texas 75242

## CREDITOR ATTORNEY

**Judd A. Austin, Jr.**
Henry, Oddo, Austin & Fletcher, PC
1700 Pacific Avenue
Suite 2700
Dallas, TX 75201
(214) 658-1900
(214) 658-1919 (fax)
jaamex@hoaf.com
*Assigned: 01/04/2017*

representing

**Grand Prairie Lakewood Homeowners Association, Inc**
c/o SBB Management Company
8360 LBJ Freeway, Suite 300
Dallas, TX 75243
*(Creditor)*

**John R. Callison**
Barrett Daffin Frappier Turner & Engel
15000 Surveyor Boulevard
Addison, TX 75001
(972) 386-5040
(972) 661-7725 (fax)
ndecf@bdfgroup.com
*Assigned: 09/02/2016*

representing

**Federal National Mortgage Association -Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

**Alonzo Zachary Casas**
Aldridge Pite, LLP
4375 Jutland Drive
San Diego, CA 92117
(858) 750-7600
(619) 590-1385 (fax)
ecftxnb@aldridgepite.com
*Assigned: 08/25/2017*

representing

**WELLS FARGO BANK, N.A.**
*(Creditor)*

**Craig Andrew Edelman**
Buckley Madole, P.C.
PO Box 9013
Addison, TX 75001
713-621-8673
972-661-7702 (fax)
Craig.Edelman@buckleymadole.com
*Assigned: 04/10/2015*

representing

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**Andrew David Goldberg**
Rosicki Rosicki & Associates, P.C.
51 East Bethpage Road
Plainview, NY 11803

Representing

**Federal National Mortgage Association -Fannie Mae, Creditor CO Seterus, Inc.**
*(Creditor)*

516-741-2585
(516) 873-7244 (fax)
Bkmail@rosicki.com
 *Assigned: 09/21/2015*

**Gordon Green**
Aldridge Pite, LLP
4375 Jutland Drive
San Diego, CA 92117
(972) 499-8068
(858) 412-2683 (fax)
ecftxnb@aldridgepite.com
 *Assigned: 08/11/2017*

representing

**WELLS FARGO BANK, N.A.**
*(Creditor)*

**Beatrice Grevel**
Butler & Hosch, P.A.
13800 Montfort Drive, Suite 300
Dallas, TX 75240
(972) 233-2500 x1354
(972) 716-2014 (fax)
beatriceg@butlerandhosch.com
 *Assigned: 05/06/2014*

representing

**U.S. Bank National Association**
Butler & Hosch, PA
3185 S. Conway Rd., Suite E
Orlando, FL 32812
*(Creditor)*

**Jennine Hovell-Cox**
Codilis & Stawiarski, PC
400 N. Sam Houston Parkway E., Sute 900A
Houston, TX 77060
(281) 925-5239
(281) 925-5339 (fax)
jennine.hovell-cox@tx.cslegal.com
 *Assigned: 08/14/2017*

representing

**Fay Servicing, LLC As Servicing agent for PROF-2013-M4 Legal Title Trust II, by U.S. Bank National Association, as Legal Title Trustee**
*(Creditor)*

**Sherrel K. Knighton**
Linebarger, Goggan, Blair & Sampson, LLP
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207
(214)880-0089
469-221-5003 (fax)
Sherrel.Knighton@lgbs.com
 *Assigned: 02/24/2014*

representing

**Dallas County**
Linebarger Goggan Blair & Sampson
2777 N. Stemmons Freeway ste. 1000
Dallas, TX 75207
*(Creditor)*

**John Rafferty**
Buckley Madole, P.C.
P.O. Box 9013
Addison, TX 75001
(214) 550-3967
(214) 550-3967 (fax)
John.Rafferty@BuckleyMadole.com
 *Assigned: 03/21/2017*

 *Assigned: 07/31/2017*

representing

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**LynAlise Tannery**
Buckley Madole, P.C.
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
(214) 550-4124
(214) 550-4124 (fax)
lynalise.tannery@buckleymadole.com
 *Assigned: 08/26/2016*

 *Assigned: 09/27/2016*

representing

**U.S. BANK NATIONAL ASSOCIATION**
14841 Dallas Parkway, Suite 300
Dallas, TX 75254
*(Creditor)*

**U.S. Bank National Association**
14841 Dallas Parkway, Suite 300
DALLAS, TX 75254
*(Creditor)*

**Steve Turner**
Barrett Daffin Frappier Turner &
Engel
3809 Juniper Trace, Suite 205
Austin, TX 78738    representing     **Federal National Mortgage Association -**
512-687-2500     **Fannie Mae, Creditor CO Seterus, Inc.**
512-477-1112 (fax)     *(Creditor)*
ndecf@BDFGROUP.com
 *Assigned: 04/02/2014*

**Donna Marie Wilkinson**
Barrett Daffin Frappier Turner &
Engel
15000 Surveyor Blvd.
Addison, TX 75001    representing     **Federal National Mortgage Association -**
(972) 341-3151     **Fannie Mae, Creditor CO Seterus, Inc.**
(972) 341-0526 (fax)     *(Creditor)*
ndecf@bdfgroup.com
 *Assigned: 08/26/2015*





CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 6, 2018**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**In Re:** CHERYL LYNN DECLOUET

**AKA:**

**DBA:**

**SSN:** Debtor 1 SSN: XXX-XX-1?3?

**Case #** 14-30153-HDH-13

04/05/2018

## DISCHARGE OF DEBTOR(S) AFTER COMPLETION OF CHAPTER 13 PLAN

It appearing that the Debtor(s) is/are entitled to a discharge,

**IT IS ORDERED:**

The Debtor(s) is/are granted a discharge under Section 1328(a).

**??? End of Order ???**

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION**

*Set forth all names, including trade names, used by the debtor within the last 8 years. For joint debtors, set forth the last four digits of both Social Security numbers or individual taxpayer-identification numbers.

Thomas D. Powers
105 Decker Ct
Suite 1150 11th Floor
Irving, TX 75062
(214) 655-8200 / (214) 655-1555 (Fax)

**EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 13 CASE**

This court order grants a discharge to the person named as the debtor after the debtor has completed all payments under the chapter 13 plan.  It is not a dismissal of the case.

**Collection of Discharged Debts Prohibited**
The discharge prohibits any attempt to collect from the debtor a debt that has been discharged.  For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor.  (In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.)  A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.  Also, a debtor may voluntarily pay any debt that has been discharged.

**Debts That Are Discharged**
The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged.  Most, but not all, types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to section 502 of the Bankruptcy Code.

**Debts That Are Not Discharged**
Some of the common types of debts which are NOT discharged in a chapter 13 case are:

a.  Domestic support obligations;

b.  Debts for most student loans;

c.  Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

d.  Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

e.  Debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or death of an individual (in a case filed on or after October 17, 2005);

f.  Debts provided for under section 1322(b)(5) of the Bankruptcy Code and on which the last payment is due after the date on which the final payment under the plan was due;

g.  Debts for certain consumer purchases made after the bankruptcy case was filed if prior approval by the trustee of the debtor's incurring the debt was practicable but was not obtained;

h.  Debts for certain taxes to the extent not paid in full under the plan (in a case filed on or after October 17, 2005);

i.  Some debts which were not properly listed by the debtor (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge.  There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

**BSI**

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

98995-2.2 1 2073-1.2  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

**Mortgage Statement**

| | |
|---|---|
| STATEMENT DATE | 04/19/18 |

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

| | |
|---|---|
| Account Number: | 1461138046 |
| Payment Due Date: | 05/01/18 |
| **Amount Due:** | **$5,765.29** |

If payment is received after 05/16/18, $.00 late fee will be charged

| | |
|---|---|
| Principal: | $102.43 |
| Interest: | $748.51 |
| Escrow (Taxes and/or Insurance) | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,540.53 |
| Overdue Payments: | $1,612.38 |
| **Total Amount Due:** | **$5,765.29** |

| | | |
|---|---|---|
| * Outstanding Principal: | $128,417.80 | |
| Interest Rate (Until Maturity): | 7.00000% | Prepayment Penalty: |
| Escrow Balance: | $-1,596.62 | NO |

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 01/18/18 | Payment Received | $1,600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,600.00 |
| 02/15/18 | Payment Received | $1,600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,600.00 |
| 02/23/18 | Short Payment Reversal | $-1,600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $-1,600.00 |
| 02/26/18 | Payment Received | $1,600.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,600.00 |
| 02/28/18 | Payment Received | $3,150.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/28/18 | Payment Received | $0.00 | $96.64 | $754.30 | $589.50 | $0.00 | $-1,440.44 |
| 02/28/18 | Payment Received | $0.00 | $97.21 | $753.73 | $589.50 | $0.00 | $-1,440.44 |
| 02/28/18 | Payment Received | $0.00 | $97.77 | $753.17 | $589.50 | $0.00 | $-1,440.44 |
| 02/28/18 | Payment Received | $1,440.44 | $98.34 | $752.60 | $589.50 | $0.00 | $0.00 |
| 02/28/18 | Payment Received | $1,440.44 | $98.92 | $752.02 | $589.50 | $0.00 | $0.00 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $24,674.31 | $890.35 |
| Interest | $6,768.11 | $6,768.11 |
| Escrow (Taxes and/or Insurance) | $5,948.18 | $5,477.44 |
| Late Charges | $0.00 | $0.00 |
| Fees | $20.00 | $20.00 |
| Partial Payments (Unapplied)* | $63.55 | $-6,735.90 |
| **Total** | **$37,474.15** | **$6,420.00**** |

Your loan is currently due
for the 04/01/18 payment.

We appreciate and value your business!

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

**IMPORTANT BANKRUPTCY INFORMATION**

**For Informational Purposes Only.** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

Important Messages

Keep upper portion for your records. See reverse for important information.

**3Si**

P.O. Box 679002
Dallas, TX 75267-9002
1-800-327-7861

**Past Due Notice**

**Notice Date:** 04/20/2018
**Property Address:** 1328 CLEARWATER DR, GRAND PRAIRIE TX

| DATE OF UNPAID PAYMENT | | LOAN NUMBER | |
|---|---|---|---|
| 04/01/2018 | | 1461138046 | |

| AMOUNT PAST DUE | |
|---|---|
| $1,612.38 | |

99006-1.5 1 915-1.1  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

**PAY THIS AMOUNT**

| TOTAL UNPAID LATE FEES | TOTAL AMOUNT DUE NOW |
|---|---|
| 0.00 | $1,612.38 |

Dear CHERYL L DECLOUET,

**IF YOUR PAYMENT HAS BEEN MADE PLEASE ACCEPT OUR THANKS AND DISREGARD THIS NOTICE.**

Our records indicate you are past due in the amount shown above. We are reminding you that payments are to be received by the Due Date to avoid late fees being assessed. If you have been assessed a late fee, both the late fee and the payment are now due. Please enclose a payment coupon with your remittance. Additional payment options are listed on the reverse side of this notice.

We remain committed to helping homeowners. If you find making your monthly payments is challenging, contact us right away at 1-800-327-7861 during our office hours, Monday - Friday 8:00 am to 11:00 pm (ET) and Saturday 8:00 am to 12:00 pm (ET). You can also get free budgeting and financial counseling through a HUD-approved housing counseling agency at www.HUD.gov or by calling 1-800-569-4287. Additional educational resources are available at Fannie Mae and Freddie Mac's Know Your Options web sites located at www.myhome.freddiemac.com or Fannie Mae's www.KnowYourOptions.com.

This is an attempt to collect a debt and any information obtained will be used for that purpose. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults may be reflected in your credit report.

**IMPORTANT BANKRUPTCY INFORMATION**
**For Informational Purposes Only:** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

---

**3Si**

P.O. Box 679002
Dallas, TX 75267-9002
1-800-327-7861

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

| Amount Due | |
|---|---|
| Due By 04/01/2018 | $1,612.38 |

| Total Amount Enclosed | $ |
|---|---|

**Account Number:** 1461138046
**Property Address:** 1328 CLEARWATER DR, GRAND PRAIRIE TX

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

**BSI Financial Services**
**P.O. Box 679002**
**Dallas, TX 75267-9002**

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

1461138046 000001612385




458



314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
800-327-7861
814-217-1366 Fax
https://myloanweb.com/BSI

2018-06-11

RE: Mortgage Loan Number: 1461138046
Property Address: 1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

102241-1.6 0 56-1.10  3oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

Dear CHERYL L DECLOUET,

Your mortgage payment is now 30 days or more past due and you are in default under the terms of the documents evidencing and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"). As of the above date, the delinquent balance on your mortgage is $5,850.37. This figure includes past due mortgage payments, late fees and any additional charges.

If you are unable to bring your account current, BSI Financial Services offers loss mitigation options designed to help resolve delinquencies and avoid foreclosure. We understand that sometimes life's circumstances require a little help and understanding. If you need help, the following options may be available (most are subject to eligibility and lender/investor approval):

- Refinance your loan with another lender;
- Modify your loan terms with us;
- Repayment, which provides you a plan to pay past due amounts and bring your loan current; or,
- If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. As an alternative to foreclosure, you may be able to enter into a short sale by selling your home and using the proceeds to pay off your current loan or to deliver to us a deed-in-lieu of foreclosure.

Requesting help is the first step. Start by contacting PATTY VERA toll-free at 888-738-5873 or by providing the information and required documentation needed to help us understand the challenges you are facing. To do this, follow the detailed instructions on the enclosed Borrower's Assistance Form to complete and submit your documentation to us. Once we have received and evaluated your information, we will contact you regarding your available options and next steps.

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp/ or the U.S. Department of Housing and Urban Development at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling HUD directly at 1-800-569-4287.

If you would like to learn more about your options or if you have any questions about this notice, please contact PATTY VERA at 888-738-5873 during our office hours Monday- Friday, 8:00 a.m. to 11:00 p.m. (ET), and Saturday 8:00 a.m. to 12:00 p.m. (ET).

Sincerely,

PATTY VERA
BSI Financial Services NMLS #38078; #126672

**This is an attempt to collect a debt. All information obtained will be used for that purpose.**
If you are represented by an attorney, please refer this letter to your attorney and provide us with your attorney name, address and phone number.

*Enclosures:*
Loss Mitigation Application
Borrower Authorization Form
Servicemembers Civil Relief Act ("SCRA") Disclosures

Licensed as Servis One, Inc. dba BSI Financial Services BSI Financial Services BSI NMLS # 38078
Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 9:00 am to 12:00 pm (ET)
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



**Mortgage Statement**

| | |
|---|---|
| STATEMENT DATE | 06/15/18 |

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

102430-4.5 1 5682-1.1  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 07/01/18 |
| **Payment Amount;** | **$5,850.37** |

If payment is received after 07/16/18 $42.54 late fee will be charged.

| | |
|---|---|
| Principal: | $103.63 |
| Interest: | $747.31 |
| Escrow (Taxes and/or Insurance) | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,625.61 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$5,850.37** |

| | | |
|---|---|---|
| Outstanding Principal: | $128,213.53 | |
| Interest Rate (Until Maturity): | 7.00000% | |
| Escrow Balance: | $-73.74 | Prepayment Penalty: NO |

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 06/15/18 | Payment | $1,612.38 | $102.43 | $748.51 | $761.44 | $0.00 | $0.00 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $102.43 | $1,094.62 |
| Interest | $748.51 | $8,265.72 |
| Escrow (Taxes and/or Insurance) | $761.44 | $7,000.32 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,735.90 |
| **Total** | **$1,612.38** | **$9,644.76**** |

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

Your loan is currently due
for the 06/01/18 payment.

We appreciate and value your business!

**For Informational Purposes Only.** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for informational purposes only.

**IMPORTANT BANKRUPTCY INFORMATION**

Keep upper portion for your records. See Page 4 for important information.

Aug 07 18 08:44a   Askew Transport   972-623-0996   p.5   Exhibit "GG"

**BSI**

# Past Due Notice

P.O. Box 679002
Dallas, TX 75287-9002
1-800-327-7861

**Notice Date:** 06/17/2018
**Property Address:** 1328 CLEARWATER DR, GRAND PRAIRIE TX

| 06/01/2018 | 1461138046 |
| --- | --- |

102427-2.7 1 2202-1.1  1oz

| | $1,612.38 |
| --- | --- |

**PAY THIS AMOUNT**

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| 42.54 | $1,654.92 |
| --- | --- |

Dear CHERYL L DECLOUET,

## IF YOUR PAYMENT HAS BEEN MADE PLEASE ACCEPT OUR THANKS AND DISREGARD THIS NOTICE.

Our records indicate you are past due in the amount shown above. We are reminding you that payments are to be received by the Due Date to avoid late fees being assessed. If you have been assessed a late fee, both the late fee and the payment are now due. Please enclose a payment coupon with your remittance. Additional payment options are listed on the reverse side of this notice.

We remain committed to helping homeowners. If you find making your monthly payments is challenging, contact us right away at 1-800-327-7861 during our office hours, Monday - Friday 8:00 am to 11:00 pm (ET) and Saturday 8:00 am to 12:00 pm (ET). You can also get free budgeting and financial counseling through a HUD-approved housing counseling agency at www.HUD.gov or by calling 1-800-569-4287. Additional educational resources are available at Fannie Mae and Freddie Mac's Know Your Options web sites located at www.myhome.freddiemac.com or Fannie Mae's www.KnowYourOptions.com.

This is an attempt to collect a debt and any information obtained will be used for that purpose. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults may be reflected in your credit report.

## IMPORTANT BANKRUPTCY INFORMATION
**For Informational Purposes Only:** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

---

**BSI**

P.O. Box 679002
Dallas, TX 75287-9002
1-800-327-7861

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

| Due By 06/01/2018 | $1,654.92 |
| --- | --- |

| Total Amount Enclosed | $ |
| --- | --- |

**Account Number:** 1461138046
**Property Address:** 1328 CLEARWATER DR, GRAND PRAIRIE TX

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

**BSI Financial Services**
**P.O. Box 679002**
**Dallas, TX 75267-9002**

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

1461138046  000001654924



1102

p.8            972-623-0996            Askew Transport            Aug 07 18 08:55a



314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA. 16354
800-327-7861
814-217-1366 Fax
https://myloanweb.com/BSI

2018-07-11

RE: Mortgage Loan Number: 1461138046
Property Address: 1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

104000-1.6 0 184-1.10 3oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

Dear CHERYL L DECLOUET,

Your mortgage payment is now 30 days or more past due and you are in default under the terms of the documents evidencing and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"). As of the above date the delinquent balance on your mortgage is $5,892.91. This figure includes past due mortgage payments, late fees and any additional charges.

If you are unable to bring your account current, BSI Financial Services offers loss mitigation options designed to help resolve delinquencies and avoid foreclosure. We understand that sometimes life's circumstances require a little help and understanding. If you need help, the following options may be available (most are subject to eligibility and lender/investor approval):

- Refinance your loan with another lender;
- Modify your loan terms with us;
- Repayment, which provides you a plan to pay past due amounts and bring your loan current; or,
- If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. As an alternative to foreclosure, you may be able to enter into a short sale by selling your home and using the proceeds to pay off your current loan or to deliver to us a deed-in- lieu of foreclosure.

Requesting help is the first step. Start by contacting PATTY VERA toll-free at 888-738-5873 or by providing the information and required documentation needed to help us understand the challenges you are facing. To do this, follow the detailed instructions on the enclosed Borrower's Assistance Form to complete and submit your documentation to us. Once we have received and evaluated your information, we will contact you regarding your available options and next steps.

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp/ or the U.S. Department of Housing and Urban Development at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling HUD directly at 1-800- 569-4287.

If you would like to learn more about your options or if you have any questions about this notice, please contact PATTY VERA at 888-738-5873 during our office hours Monday- Friday, 8:00 a.m. to 11:00 p.m. (ET), and Saturday 8:00 a.m. to 12:00 p.m. (ET).

Sincerely,

PATTY VERA
BSI Financial Services NMLS #38078; #126672

**This is an attempt to collect a debt. All information obtained will be used for that purpose.**
If you are represented by an attorney, please refer this letter to your attorney and provide us with your attorney name, address and phone number.

*Enclosures:*
Loss Mitigation Application
Borrower Authorization Form
Servicemembers Civil Relief Act ("SCRA") Disclosures

Licensed as Servis One, Inc. dba BSI Financial Services BSI Financial Services BSI NMLS # 38078
Customer Care Hours: Mon – Fri 8:00 am to 11:00 pm (ET) and Sat 8:00 am to 12:00 pm (ET)
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not, and should not be construed to be a demand for payment from you personally. Unless the bankruptcy court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



663

p.3      9660-623-276 972-623-0996      Askew Transport      Aug 07 18 08:40a

# Mortgage Statement

STATEMENT DATE     07/13/18

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

**104127-2.2 1 2003-1.1  1oz**

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 08/01/18 |
| **Payment Amount:** | **$5,892.91** |

*If payment is received after 08/16/18, $9.54 late fee will be charged.*

| | |
|---|---|
| Principal: | $104.23 |
| Interest: | $746.71 |
| Escrow (Taxes and/or Insurance): | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,668.15 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$5,892.91** |

| | | | |
|---|---|---|---|
| * Outstanding Principal: | $128,110.50 | | |
| Interest Rate (Until Maturity): | 7.00000% | Prepayment Penalty: | NO |
| Escrow Balance: | $-2,112.12 | | |

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 07/12/18 | Hazard/Flood Insurance Disbursement | $-2,799.82 | $0.00 | $0.00 | $-2,799.82 | $0.00 | $0.00 |
| 07/13/18 | Payment | $1,612.38 | $103.03 | $747.91 | $761.44 | $0.00 | $0.00 |
| 07/13/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $103.03 | $1,197.65 |
| Interest | $747.91 | $9,013.63 |
| Escrow (Taxes and/or Insurance) | $761.44 | $7,761.76 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $2.62 | $-6,733.28 |
| **Total** | **$1,615.00** | **$11,269.76**\*\* |

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
\*\* These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

Your loan is currently due
for the 07/01/18 payment.

We appreciate and value your business!

## IMPORTANT BANKRUPTCY INFORMATION

**For Informational Purposes Only**, If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for informational purposes only.

Exhibit GG - Page 7 of 18

**Past Due Notice**

P.O. Box 679002
Dallas, TX 75207-9002
1-800-327-7861

**Notice Date:** 07/17/2018
**Property Address:** 1328 CLEARWATER DR, GRAND PRAIRIE TX

| | |
|---|---|
| 07/01/2018 | 1461138046 |

| | |
|---|---|
| | $1,612.38 |

**PAY THIS AMOUNT**

| | |
|---|---|
| 42.54 | $1,654.92 |

104195-3.7 1 3628-1.1  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

Dear CHERYL L DECLOUET,

**IF YOUR PAYMENT HAS BEEN MADE PLEASE ACCEPT OUR THANKS AND DISREGARD THIS NOTICE.**

Our records indicate you are past due in the amount shown above. We are reminding you that payments are to be received by the Due Date to avoid late fees being assessed. If you have been assessed a late fee, both the late fee and the payment are now due. Please enclose a payment coupon with your remittance. Additional payment options are listed on the reverse side of this notice.

We remain committed to helping homeowners. If you find making your monthly payments is challenging, contact us right away at 1-800-327-7861 during our office hours, Monday - Friday 8:00 am to 11:00 pm (ET) and Saturday 8:00 am to 12:00 pm (ET). You can also get free budgeting and financial counseling through a HUD-approved housing counseling agency at www.HUD.gov or by calling 1-800-569-4287. Additional educational resources are available at Fannie Mae and Freddie Mac's Know Your Options web sites located at www.myhome.freddiemac.com or Fannie Mae's www.KnowYourOptions.com.

This is an attempt to collect a debt and any information obtained will be used for that purpose. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults may be reflected in your credit report.

**IMPORTANT BANKRUPTCY INFORMATION**
**For Informational Purposes Only:** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.



P.O. Box 679002
Dallas, TX 75267-9002
1-800-327-7861

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.
☐ Payoff Proceeds Enclosed

| Due By 07/01/2018 | $1,654.92 |
|---|---|

| Total Amount Enclosed $ | |
|---|---|

**Account Number:** 1461138046
**Property Address:** 1328 CLEARWATER DR, GRAND PRAIRIE TX

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

**BSI Financial Services**
**P.O. Box 679002**
**Dallas, TX 75267-9002**

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

1461138046  000001654924



1815

6:d          9660-829-226          Hodsuⱅ⅃ Mǝᴚsⱅ          ᴇ88:80 8⅃ ꓘ0 bn∀



314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
800-327-7861
814-217-1366 Fax
https://myloanweb.com/BSI

2018-08-10

RE: Mortgage Loan Number: 1461138046
Property Address: 1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

**105799-2.6 0 214-1.10  3oz**

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

Dear CHERYL L DECLOUET,

Your mortgage payment is now 30 days or more past due and you are in default under the terms of the documents evidencing and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"). As of the above date, the delinquent balance on your mortgage is $5,935.45. This figure includes past due mortgage payments, late fees and any additional charges.

If you are unable to bring your account current, BSI Financial Services offers loss mitigation options designed to help resolve delinquencies and avoid foreclosure. We understand that sometimes life's circumstances require a little help and understanding. If you need help, the following options may be available (most are subject to eligibility and lender/investor approval):

- Refinance your loan with another lender;
- Modify your loan terms with us;
- Repayment, which provides you a plan to pay past due amounts and bring your loan current; or,
- If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. An alternative to foreclosure, you may be able to enter into a short sale by selling your home and using the proceeds to pay off your current loan or to deliver to us a deed-in-lieu of foreclosure.

Requesting help is the first step. Start by contacting PATTY VERA toll-free at 888-738-5873 or by providing the information and required documentation needed to help us understand the challenges you are facing. To do this, follow the detailed instructions on the enclosed Borrower's Assistance Form to complete and submit your documentation to us. Once we have received and evaluated your information we will contact you regarding your available options and next steps.

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp/ or the U.S. Department of Housing and Urban Development at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling HUD directly at 1-800- 569-4287.

If you would like to learn more about your options or if you have any questions about this notice, please contact PATTY VERA at 888-738-5873 during our office hours Monday- Friday, 8:00 a.m. to 11:00 p.m. (ET), and Saturday 8:00 a.m. to 12:00 p.m. (ET).

Sincerely,

PATTY VERA
BSI Financial Services NMLS #38078; #126672

**This is an attempt to collect a debt. All information obtained will be used for that purpose.**
If you are represented by an attorney, please refer this letter to your attorney and provide us with your attorney name, address and phone number.

*Enclosures:*
Loss Mitigation Application
Borrower Authorization Form
Servicemembers Civil Relief Act ("SCRA") Disclosures

Licensed as Servis One, Inc. dba BSI Financial Services BSI Financial Services BSI NMLS # 38078
Customer Care Hours: Mon – Fri, 8:00 am to 11:00 pm (ET) and Sat, 8:00 am to 12:00 pm (ET)
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If in either of these circumstances apply to, the notice is not and should not be construed to be a demand for payment from you personally. Unless the bankruptcy court has ordered otherwise, please also note that, despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



947

Exhibit "GG" - Page 9 of 18

Dear CLIENT DECISION.

Enclosed you will find the financial hardship package. Please complete this Loss Mitigation Application in its entirety and send it back with the supporting documentation listed below so that we can properly review your current financial situation. **The Loss Mitigation Application and the information you provide to us must be complete and accurate and must be dated & signed by all borrowers.**

### Required Documentation for Loss Mitigation Options (Required from Borrower & Co-Borrower)

- Completed and signed Loss Mitigation Application
- Your last two (2) years Federal tax returns filed (signed and dated with all schedules and forms)
- Completed and signed 3rd. party authorization form (if applicable)
- Copy of current photo ID (must be legible)

### Hardship Documentation:

- Signed and dated hardship letter, detailing the exact reason that prevents you from paying your mortgage loan(s) and information about your intentions to either keep or transition out of your property.

### Employment Income for all borrowers:

- Your two (2) most recent pay stubs with year-to-date earnings
- If you are self-employed or an independent contractor, send your most recent signed and dated quarterly or year-to-date Profit & Loss Statement with company name and date; send all statement pages, even if a page is blank.

### Other Income Sources for all borrowers:

- If you receive Social Security, disability or death benefits, pension, public assistance or unemployment income, send your benefits statement; proof of monthly insurance benefits or government assistance (if applicable) or letter from the provider with the amount, frequency and duration of the benefit AND two most recent bank statements showing receipt of payment; send all statement pages, even if a page is blank.
- Documents showing additional income you'd like us to consider

### Financial Statements for all borrowers:

- Your two (2) most recent personal checking, savings, money market, mutual fund, stock and bond statements; send all statement pages, even if a page is blank

### Legal Documents (if applicable)

### Divorce or legal separation:

- Your divorce decree or separation agreement signed by Court AND recorded quitclaim deed evidencing that the non-occupying borrower or co-borrower has relinquished all rights to the property
- Legal documents showing the amount, frequency and duration of child support, alimony or separation maintenance income if you'd like us to consider it as qualifying income AND your two most recent bank statements showing receipt of the payment; send all statement pages, even if a page is blank. **Please note: You aren't required to disclose child support, alimony or separation maintenance income, unless you want us to consider it as qualifying income.**

### Death of a borrower:

Copy of the death certificate and at least **one (1)** of the following:

- Copy of the last will and testament
- Trust documents
- Probate documents
- Certified copy of court appointment of executor or legal representative
- Court Order or Judgment determining succession to real property
- Letter of succession with a copy of the successor's identification (a signed and notarized document explaining who the parties are claiming to be a successor in interest in the property)

### Income from rental properties:

- Copy of one (1) of these documents showing rental income: current rental agreement(s) or handwritten lease agreement(s)/contract(s)
- Copies of two canceled checks or two most recent bank statements showing rental and/or boarder income (we won't accept handwritten receipts); send all statement pages, even if a page is blank
- Copies of two (2) most recent mortgage statements for the rental property

### Documents related to your property:

If you pay your property taxes and/or insurance directly to the provider and not into an escrow account as part of your monthly mortgage payment:

- Copy of current property tax bill and proof of payment, such as a canceled check
- Proof of payment of homeowners/property insurance, such as a canceled check and/or declarations page showing amount due



847

p.3          9960-623-279          Askew Transport          Aug 17 18 06:18a



# Mortgage Statement

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

105974-4.5 1 5636-1.1  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 09/01/18 |
| **Payment Amount:** | **$5,935.45** |
| *If payment is received after 09/15/18, $22.54 late fee will be charged.* | |

| | |
|---|---|
| Principal: | $104.84 |
| Interest: | $746.10 |
| Escrow (Taxes and/or Insurance) | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,710.69 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$5,935.45** |

| | |
|---|---|
| * Outstanding Principal: | $126,006.87 |
| Interest Rate (Until Maturity): | 7.00000% |
| Escrow Balance: | $-1,350.68 |

Prepayment Penalty:     NO

*The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.*

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 08/15/18 | Payment | $1,609.76 | $103.63 | $747.31 | $761.44 | $0.00 | $-2.62 |
| 08/15/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $103.63 | $1,301.28 |
| Interest | $747.31 | $9,760.94 |
| Escrow (Taxes and/or Insurance) | $761.44 | $8,523.20 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,733.28 |
| **Total** | **$1,612.38** | **$12,872.14**\*\* |

*Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.*
*\*\* These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.*

Your loan is currently due
for the 08/01/18 payment.

We appreciate and value your business!

### IMPORTANT BANKRUPTCY INFORMATION

**For Informational Purposes Only.** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for informational purposes only.



SAVE A TREE, GO PAPERLESS!

Keep upper portion for your records. See reverse for important information.
Please return this portion with your payment

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.
☐ Payoff Proceeds Enclosed

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

**Account Number:** 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 09/01/18 |
| Payment Amount: | $5,935.45 |
| *If payment is received after 09/15/18, $22.54 late fee will be charged.* | |
| *All amounts due must be paid in full before additional principal reduction can be made.* | |
| Additional Principal: | $ |
| Additional Escrow: | $ |
| **Total Amount Enclosed** | $ |

Please write your loan number on your check and make payable to:
BSI FINANCIAL SERVICES

BSI Financial Services
PO BOX 679002
Dallas TX 75267-9002

1461138046 000005935451



Exhibit "GG" - Page 11 of 18

# Mortgage Statement

STATEMENT DATE     08/15/18

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

105974-4.5 1 5636-1.1  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 09/01/18 |
| **Payment Amount:** | **$5,935.45** |

*If payment is received after 09/16/18, $42.54 late fee will be charged.*

| | |
|---|---|
| Principal: | $104.84 |
| Interest: | $746.10 |
| Escrow (Taxes and/or Insurance): | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,710.69 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$5,935.45** |

| | | | |
|---|---|---|---|
| * Outstanding Principal: | $128,006.87 | | |
| Interest Rate (Until Maturity): | 7.00000% | Prepayment Penalty: | NO |
| Escrow Balance: | $-1,350.68 | | |

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 09/15/18 | Payment | $1,609.76 | $103.63 | $747.31 | $761.44 | $0.00 | $-2.62 |
| 08/15/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $103.63 | $1,301.28 |
| Interest | $747.31 | $9,760.54 |
| Escrow (Taxes and/or Insurance) | $761.44 | $8,523.20 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,733.28 |
| **Total** | **$1,612.38** | **$12,872.14**** |

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments due to a prior servicer if your loan servicing was transferred this year.

Your loan is currently due
for the 08/01/18 payment.

We appreciate and value your business!

## IMPORTANT BANKRUPTCY INFORMATION

**For Informational Purposes Only.** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, then this communication is not and should not be construed to be a demand for payment from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

SAVE A TREE. GO PAPERLESS!

Keep upper portion for your records. See reverse for important information.
Please return this portion with your payment

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7661
https://myloanweb.com/BSI

**Account Number:** 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| **Payment Date:** | **09/01/18** |
| **Payment Amount:** | **$5,935.45** |

*If payment is received after 09/16/18, $42.54 late fee will be charged.*

*All amounts due must be paid in full before additional principal reduction can be made.
| Additional Principal: | $_____ |
| Additional Escrow: | $_____ |

| **Total Amount Enclosed** | **$_____** |

**BSI Financial Services**
PO BOX 679002
Dallas TX 75267-9002

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

1461138046 000005935451

**Mortgage Statement**

STATEMENT DATE    09/13/18

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

| Payment Date: | 10/01/18 |
|---|---|
| **Payment Amount:** | **$5,977.99** |

*If payment is received after 10/16/18, $42.54 late fee will be charged.*

107620-2.2 1 2209-1.1 1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Principal: | $105.45 |
| Interest: | $745.49 |
| Escrow (Taxes and/or Insurance): | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,753.23 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$5,977.99** |

| | |
|---|---|
| * Outstanding Principal: | $127,902.64 |
| Interest Rate (Until Maturity): | 7.00000% |
| Escrow Balance: | $-589.24 |

Prepayment Penalty:    NO

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 09/13/18 | Payment | $1,609.76 | $104.23 | $746.71 | $761.44 | $0.00 | $-2.62 |
| 09/13/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $104.23 | $1,405.51 |
| Interest | $746.71 | $10,507.65 |
| Escrow (Taxes and/or Insurance) | $761.44 | $9,284.64 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,733.28 |
| **Total** | **$1,612.38** | **$14,494.52**\*\* |

Your loan is currently due
for the 09/01/18 payment.

We appreciate and value your business!

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments made into a prior servicer if your loan servicing was transferred this year.

**IMPORTANT BANKRUPTCY INFORMATION**

For Informational Purposes Only. If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

Keep upper portion for your records. See reverse for important information.

Please return this portion with your payment

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

Account Number: 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| Payment Date: | 10/01/18 |
|---|---|
| **Payment Amount:** | **$5,977.99** |

*If payment is received after 10/16/18, $42.54 late fee will be charged.*

*All amounts due must be paid in full before additional principal reduction can be made.*

| Additional Principal: | $ |
|---|---|
| Additional Escrow: | $ |

| **Total Amount Enclosed** | $ |
|---|---|

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

**BSI Financial Services**
**PO BOX 679002**
**Dallas TX 75267-9002**

1461138046 000005977990

**Mortgage Statement**

STATEMENT DATE  10/13/18

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

109400-1.2 1 1279-1.1 1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 11/01/18 |
| **Payment Amount:** | **$6,020.53** |

If payment is received after 11/16/18, $42.54 late fee will be charged.

| | |
|---|---|
| Principal: | $106.07 |
| Interest: | $744.87 |
| Escrow (Taxes and/or Insurance): | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,795.77 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$6,020.53** |

| | | | |
|---|---|---|---|
| * Outstanding Principal: | $127,797.80 | | |
| Interest Rate (Until Maturity): | -7.00000% | - Prepayment Penalty: — | NO |
| Escrow Balance: | $172.20 | | |

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 10/13/18 | Payment | $1,609.76 | $104.84 | $746.10 | $761.44 | $0.00 | $-2.62 |
| 10/13/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $104.84 | $1,510.35 |
| Interest | $746.10 | $11,253.75 |
| Escrow (Taxes and/or Insurance) | $761.44 | $10,046.08 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,733.28 |
| **Total** | **$1,612.38** | **$16,096.90**\*\* |

Your loan is currently due
for the 10/01/18 payment.

We appreciate and value your business!

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
\*\* These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

**IMPORTANT BANKRUPTCY INFORMATION**

For Informational Purposes Only. If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

Keep upper portion for your records. See reverse for important information.

Please return this portion with your payment

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

Account Number: 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 11/01/18 |
| **Payment Amount:** | **$6,020.53** |

If payment is received after 11/16/18, $42.54 late fee will be charged.

*All amounts due must be paid in full before additional principal reduction can be made.*

Additional Principal: $ _____
Additional Escrow: $ _____

**Total Amount Enclosed** $ _____

Please write your loan number on your check and make payable to:

**BSI FINANCIAL SERVICES**

**BSI Financial Services**
PO BOX 679002
**Dallas TX 75267-9002**

1461138046 000006020535

Exhibit "GG" - Page 14 of 18

840

**Mortgage Statement**

STATEMENT DATE    11/14/18

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

11124-4.5 1 5656-1.1 1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---:|
| Payment Date: | 12/01/18 |
| **Payment Amount:** | **$6,063.07** |

*If payment is received after 12/16/18, $42.54 late fee will be charged.*

| | |
|---|---:|
| Principal: | $106.69 |
| Interest: | $744.25 |
| Escrow (Taxes and/or Insurance): | $761.44 |
| **Current Monthly Payment:** | **$1,612.38** |
| Total Fees and Other Charges: | $2,838.31 |
| Overdue Payments: | $1,612.38 |
| **Total Payment Amount:** | **$6,063.07** |

| | |
|---|---:|
| * Outstanding Principal: | $127,692.35 |
| Interest Rate (Until Maturity): | 7.00000% |
| Escrow Balance: | $933.64 |

Prepayment Penalty:    NO.

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 11/14/18 | Payment | $1,609.76 | $105.45 | $745.49 | $761.44 | $0.00 | $-2.62 |
| 11/14/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $105.45 | $1,615.80 |
| Interest | $745.49 | $11,999.24 |
| Escrow (Taxes and/or Insurance) | $761.44 | $10,807.52 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,733.28 |
| **Total** | $1,612.38 | $17,709.28** |

Your loan is currently due
for the 11/01/18 payment.

We appreciate and value your business!

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage
** These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

**IMPORTANT BANKRUPTCY INFORMATION**

**For Informational Purposes Only:** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

Keep upper portion for your records. See reverse for important information.

Please return this portion with your payment

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

Account Number: 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

| | |
|---|---:|
| Payment Date: | 12/01/18 |
| Payment Amount: | $6,063.07 |

*If payment is received after 12/16/18, $42.54 late fee will be charged.*

*All amounts due must be paid in full before additional principal reduction can be made.*

| | |
|---|---|
| Additional Principal: | $ |
| Additional Escrow: | $ |
| **Total Amount Enclosed** | $ |

**BSI Financial Services**
**PO BOX 679002**
**Dallas TX 75267-9002**

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

1461138046 000006063071

2529

**Mortgage Statement**

STATEMENT DATE    12/18/18

Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

**BSI Financial Services**

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

112922-1.4 1 1492-1.1  1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 01/01/19 |
| **Payment Amount:** | **$7,841.08** |

If payment is received after 01/16/19, $42.54 late fee will be charged.

| | |
|---|---|
| Principal: | $107.31 |
| Interest: | $743.63 |
| Escrow (Taxes and/or Insurance): | $841.99 |
| **Current Monthly Payment:** | **$1,692.93** |
| Total Fees and Other Charges: | $2,923.39 |
| Overdue Payments: | $3,224.76 |
| **Total Payment Amount:** | **$7,841.08** |

| | |
|---|---|
| * Outstanding Principal: | $127,692.35 |
| Interest Rate (Until Maturity): | 7.00000% |
| Escrow Balance: | $-4,365.52 |
| Prepayment Penalty: | NO |

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 12/03/18 | Tax Disbursement | $-5,299.16 | $0.00 | $0.00 | $-5,299.16 | $0.00 | $0.00 |
| 11/17/18 | Late Fee (charged because full payment not received by 11-16-2018) | $-42.54 | $0.00 | $0.00 | $0.00 | $-42.54 | $0.00 |
| 12/17/18 | Late Fee (charged because full payment not received by 12-16-2018) | $-42.54 | $0.00 | $0.00 | $0.00 | $-42.54 | $0.00 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $1,615.80 |
| Interest | $0.00 | $11,999.24 |
| Escrow (Taxes and/or Insurance) | $0.00 | $10,807.52 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $20.00 |
| Partial Payments (Unapplied)* | $0.00 | $-6,733.28 |
| **Total** | **$0.00** | **$17,709.28**** |

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 12/18/18 you are 47 days delinquent on your mortgage loan.
Date of Default: 11/01/2018
Recent Account History
* Payment Due 07/01/18: Paid on 08/15/18
* Payment Due 08/01/18: Paid on 09/13/18
* Payment Due 09/01/18: Paid on 10/13/18
* Payment Due 10/01/18: Paid on 11/14/18
* Payment Due 11/01/18: Unpaid balance of $1,654.92
* Payment Due 12/01/18: Unpaid balance of $1,654.92
* Current Payment Date 01/01/19: $1,692.93

* **Total: $7,841.08** unpaid amount that, if paid, would bring your loan current.

**If you are Experiencing Financial Difficulty:** See back for information about mortgage counseling or assistance.

**IMPORTANT BANKRUPTCY INFORMATION**

**For Informational Purposes Only:** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

Keep upper portion for your records. See reverse for important information.

Please return this portion with your payment

**BSI Financial Services**

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

**Account Number:** 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 01/01/19 |
| Payment Amount: | $7,841.08 |

If payment is received after 01/16/19, $42.54 late fee will be charged.

*All amounts due must be paid in full before additional principal reduction can be made.

| | |
|---|---|
| Additional Principal: | $ |
| Additional Escrow: | $ |
| **Total Amount Enclosed** | **$** |

Please write your loan number on your check and make payable to:
BSI FINANCIAL SERVICES

**BSI Financial Services**
PO BOX 679002
Dallas TX 75267-9002

1461138046 000007841087



Exhibit "GG" - Page 16 of 18

**Mortgage Statement**

STATEMENT DATE    01/15/19
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

114536-1.3 1 946-1.1 1oz

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 02/01/19 |
| **Payment Amount:** | **$6,309.25** |

*If payment is received after 02/16/19, $42.54 late fee will be charged.*

| | |
|---|---|
| Principal: | $107.94 |
| Interest: | $743.00 |
| Escrow (Taxes and/or Insurance): | $841.99 |
| **Current Monthly Payment:** | **$1,692.93** |
| Total Fees and Other Charges: | $2,923.39 |
| Overdue Payments: | $1,692.93 |
| **Total Payment Amount:** | **$6,309.25** |

| | |
|---|---|
| * Outstanding Principal: | $127,479.59 |
| Interest Rate (Until Maturity): | 7.00000% |
| Escrow Balance: | $-2,842.64 |

Prepayment Penalty:          NO

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 12/22/18 | Payment | $1,609.76 | $106.07 | $744.87 | $761.44 | $0.00 | $-2.62 |
| 12/22/18 | Payment | $2.62 | $0.00 | $0.00 | $0.00 | $0.00 | $2.62 |
| 12/26/18 | Payment | $42.54 | $0.00 | $0.00 | $0.00 | $0.00 | $42.54 |
| 01/15/19 | Payment | $1,567.22 | $106.69 | $744.25 | $761.44 | $0.00 | $-45.16 |
| 01/15/19 | Payment | $125.78 | $0.00 | $0.00 | $0.00 | $0.00 | $125.78 |

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $212.76 | $106.69 |
| Interest | $1,489.12 | $744.25 |
| Escrow (Taxes and/or Insurance) | $1,522.88 | $761.44 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payments (Unapplied) * | $123.16 | $80.52 |
| **Total** | **$3,347.92** | **$1,693.00**** |

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.

Your loan is currently due
for the 01/01/19 payment.

We appreciate and value your business!

**IMPORTANT BANKRUPTCY INFORMATION**

For Informational Purposes Only. If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

Keep upper portion for your records. See reverse for important information.
Please return this portion with your payment

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

**Account Number:** 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

| | |
|---|---|
| Payment Date: | 02/01/19 |
| Payment Amount: | $6,309.25 |

*If payment is received after 02/16/19, $42.54 late fee will be charged.*

*All amounts due must be paid in full before additional principal reduction can be made.*

| Additional Principal: | $_____ |
|---|---|
| Additional Escrow: | $_____ |

| **Total Amount Enclosed** | $_____ |
|---|---|

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**

**BSI Financial Services**
**PO BOX 679002**
**Dallas TX 75267-9002**

1461138046   000006309250


474

Exhibit "GG" - Page 17 of 18



**BSI Financial Services**

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

## Mortgage Statement

STATEMENT DATE        06/15/19
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

| Account Number: | 1461138046 |
| Payment Date: | 07/01/19 |
| **Payment Amount:** | **$6,521.95** |

*If payment is received after 07/16/19, $42.54 late fee will be charged.*

123602-5.5 1 6820-1.1  1oz



CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

### Explanation of Amount

| | |
|---|---:|
| Principal: | $111.12 |
| Interest: | $739.82 |
| Escrow (Taxes and/or Insurance): | $841.99 |
| **Current Monthly Payment:** | **$1,692.93** |
| Total Fees and Other Charges: | $3,136.09 |
| Overdue Payments: | $1,692.93 |
| **Total Payment Amount:** | **$6,521.95** |

### Account Information

| | |
|---|---:|
| * Outstanding Principal: | $126,936.75 |
| Interest Rate (Until Maturity): | 7.00000% |
| Escrow Balance: | $1,367.31 |

Prepayment Penalty: ............................  NO

* The outstanding principal balance does not represent the payoff of your loan. Please see reverse for more information.

### Transaction Activity (05/15/19 to 0...)

| Date | Description | Transaction Amount | Principal | Interest | Escrow | Late Charges & Fees | Unapplied Amount |
|---|---|---|---|---|---|---|---|
| 06/15/19 | Payment | $1,567.15 | $109.83 | $741.11 | $841.99 | $0.00 | -$125.78 |
| 06/15/19 | Payment | $125.78 | $0.00 | $0.00 | $0.00 | $0.00 | $125.78 |

### Past Pa...

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $109.83 | $649.53 |
| Interest | $741.11 | $4,456.11 |
| Escrow (Taxes and/or Insurance) | $841.99 | $4,971.39 |
| Late Charges | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payments (Unapplied)* | $0.00 | $80.62 |
| **Total** | **$1,692.93** | **$10,157.65**** |

* Partial Payments: Any partial payments that you make may not be applied to your mortgage, but are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
** These amounts may not reflect payments made to a prior servicer if your loan servicing was transferred this year.



Your loan is currently due
for the 06/01/19 payment.

We appreciate and value your business!

---

### IMPORTANT BANKRUPTCY INFORMATION

**For Informational Purposes Only.** If you have filed a bankruptcy petition and there is an "automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

### Important Messages

Keep upper portion for your records.  See reverse for important information.

---

Please return this portion with your payment



**BSI Financial Services**

314 S Franklin St. / Second Floor
PO Box 517
Titusville PA 16354
Customer Care: 800-327-7861
https://myloanweb.com/BSI

**Account Number:** 1461138046
Property Address: 1328 CLEARWATER DR, GRAND PRAIRIE TX 75052

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

☐ Please check box if mailing address or phone number has changed. Write changes on back of payment stub.

☐ Payoff Proceeds Enclosed

### Payment Amount

| | |
|---|---:|
| Payment Date: | 07/01/19 |
| Payment Amount: | $6,521.95 |

*If payment is received after 07/16/19, $42.54 late fee will be charged.*

*All amounts due must be paid in full before additional principal reduction can be made.*

| Additional Principal: | $ |
| Additional Escrow: | $ |

| **Total Amount Enclosed** | **$** |

**BSI Financial Services**
PO BOX 679002
**Dallas TX 75267-9002**

Please write your loan number on your check and make payable to:
**BSI FINANCIAL SERVICES**


1461138046  000006521953



October 17, 2018

BSI Financial Services                       ***VIA CERTIFIED MAIL RRR***
ATTN:  Qualified Written Request             ***No.  7014 2870 0000 8992 4720 and***
1425 Greenway Drive, Suite 400               ***VIA FIRST CLASS MAIL***
Irving, Texas 75038

     RE:    Debtor:           Cheryl Lynn DeClouet
                Case No.:       14-30153-HDH
                Account No.:    1461138046
                Property Address:  1328 Clearwater Drive
                                  Grand Prairie, TX 75052

---

### R.E.S.P.A.: NOTICE OF ERROR and

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

---

Dear Sir or Madam:

Please be advised that I represent the above-referenced borrower with respect to the mortgage loan you are servicing on the above-referenced property.  My client has authorized me to send this request on his behalf.  Specifically, my client is concerned with the following:

- Ms. DeClouet filed a petition for bankruptcy relief under Chapter 13 on January 6, 2014.
- The Chapter 13 Trustee filed his Notice of Plan Completion and Notice of Final Cure on June 26, 2017.
- Ms. DeClouet filed her Certification and Motion for Entry of Discharge on November 17, 2017.
- A Notice of Mortgage Payment Change was filed by BSI Financial Services on December 11, 2017 which stated that the mortgage payments would be $1,595.50 effective January 1, 2018.
- BSI Financial Services filed its Amended Response to Notice of Final Cure on March 28, 2018 stating that Ms. DeClouet was current with all post-petition mortgage payments and the next post-petition payment due was April 1, 2018.
- Since that time, Ms. DeClouet has made payments totaling over $9,500 which is more than sufficient to cover the monthly mortgage payments due between April 1, 2018 through September 1, 2018.  However, each monthly statement that is sent to Ms. DeClouet reflects a past due balance as well as over $2,000 in fees and costs assessed on the loan.

www.herrinlaw.com



- Furthermore, it appears from the statements that the payments applied have not been applied correctly for several months.

BSI Financial needs to explain how it is possible for Ms. DeClouet to be delinquent on the mortgage payments and how there remain fees/costs on the mortgage loan after the Debtor received a Discharge from her Chapter 13 Case.

## R.E.S.P.A.: NOTICE OF ERROR

As servicer of my client's mortgage loan, please treat this letter as a "Notice of Error" under the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. §1024.35; and, as pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, Subpart C, 12 C.F.R. §1024.30 to 12 C.F.R. §1024.41.

Pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection and pursuant to 12 C.F.R. §1024.35(a) please respond to this written notice asserting the following errors:

1. Failure to properly audit borrower's account ensuring that all pre-petition payments are reconciled in accordance with the Chapter 13 Plan.

2. Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt.

3. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

4. Failure to provide an accurate reinstatement amount upon a borrower's request.

5. Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure.

6. Failure to transfer accurate and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

7. Any other error relating to the servicing of a mortgage loan.

Please provide your written responses, as required by law, to the address listed on the bottom of this letterhead within the statutory period allowed under 12 C.F.R. §1024.35(d) and 12 C.F.R. §1024.35(e).

www.herrinlaw.com



**You should be advised that within FIVE (5) DAYS, excluding legal public holidays and weekends, you must send us a letter stating that you received this letter. 12 C.F.R. §1024.35(d). After you have confirmed receipt, you should be aware of the time in which to respond to the notice: THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress pursuant to 12 C.F.R. § 1024.35(e)(3)(c), generally; THIRTY (30) DAYS OR PRIOR TO THE FORECLOSURE DATE, WHICHEVER IS EARLIER if the asserted error falls under 12 C.F.R. §1024.35(b)(9)-(10); and within SEVEN (7) DAYS if the asserted error falls under 12 C.F.R. §1024.35(b)(6).**

**You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.**

---

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

---

As servicer of my client's mortgage loan, please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2605(e); and, as a "request for information" pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, 12 C.F.R. § 1024.36(d)(2)(i)(B).

Pursuant to "Subtitle E Mortgage Servicing" of the Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1), please provide:

1. A complete life of loan history from the date of the alleged note origination to the date of your response to this request, prepared by the Servicer from its own records using its own system and default servicing personnel. This transaction history should include the dates, amounts, and breakdown of the specific application of all transactions on the loan including applications to and from internal accounts (i.e. principal, interest, escrow, suspense, corporate advances, etc.).

2. A copy of your Key Loan Transaction history, bankruptcy work form, XLS spreadsheet, or any other manually-prepared spreadsheet or record of all accounts associated with this loan (this would include both recoverable, non-recoverable, restricted and non-restricted accounts).

3. Please identify the mortgage servicing software you use in connection with this loan (i.e. MSP, LSAMS, Fiserv, etc.).

www.herrinlaw.com



4.  A full and complete plain-English definitional dictionary of all transaction codes and other similar terms used in the records requested above or any of the other documents or records requested or referred to herein.

5.  A full and complete itemized statement of any and all advances or charges against the loan (this would include both recoverable, non-recoverable, restricted and non-restricted accounts) from the date of the alleged note origination to the date of your response to this request.

6.  Copies of any and all invoices and proof of payments by the servicer to any third party vendor or entity relating the advances or charges against the loan, from the date of the alleged note origination to the date of your response to this request.

7.  A full and complete itemized statement of any and all fees and costs charged against the loan or related to the loan in any way, from the date of the alleged note origination to the date of your response to this request.  This should include payment dates, purpose of payments, and recipient of any and all foreclosure fees and costs that have been charged to the loan.

8.  Copies of any and all invoices and proof of payments by the servicer to any third party vendor or entity in relation to any fee or costs charged against the loan, from the date of the alleged note origination to the date of your response to this request.

9.  A full and complete itemized statement of any late charges added to the loan from the date of the alleged note origination to the date of your response to this request.

10. A complete and itemized statement from the date of the alleged note origination to the date of your response to this request of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

11. Copies of any and all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof.

12. A full and complete copy of any transaction reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the alleged note origination to the date of your response to this request.

13. A full and complete and itemized statement of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan, from the date of the alleged note origination to the date of your response to this request.

www.herrinlaw.com

**Dallas**
906 Greenville Ave., Suite 133
Dallas, Texas 75206
Tel: (469)-857-8551
Fax: (214)-722-0271   Exhibit "HH" - Page 4 of 10



14. A statement/provision under the security instrument and/or note that authorizes charging any such fee against the loan.

15. Copies of any and all notes, statements, correspondence or other written documentation regarding the force placed implementation of an escrow account on the loan. Said information should also provide an explanation regarding Servicer's reason and justification for said implementation of an escrow account.

16. A full and complete itemized statement of the escrow for this loan from the date of the alleged note origination to the date of your response to this request.

17. Copies of any and all escrow statements, reviews, trial analyzes, or disclosures and any and all notices of shortage, deficiency, or surplus for this loan from the date of the alleged note origination to the date of your response to this request.

18. Copies of any and all notes, statements, correspondence, or other written documentation regarding the calculation of the current escrow payment. This should include a written explanation regarding the calculations used to derive the escrow payment amount for any increases upon the escrow being analyzed on an annual basis.

19. Please provide the current escrow analysis schedule for the loan, including the scheduled date that the annual analysis will be performed, together with the scheduled effective date of any payment changes.

20. Copies of any and all invoices and copies of any and all checks or other proof of payments by the servicer for any and all escrow related items (i.e. county taxes, city taxes, insurance, etc.) in which the servicer has advanced funds on behalf of the borrower, from the alleged date of loan origination to the date of your response to this request.

21. Have you purchased and charged to the account any Force-Placed Insurance?

22. A complete and itemized statement from the date of the alleged loan origination to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

23. A full and complete itemized statement of the full amount needed to reinstate the loan as of the date of your response to this request. This should also include an itemized statement of the full amount necessary to satisfy in full the terms of the note obligation.

www.herrinlaw.com

**Dallas**
905 Greenville Ave., Suite 111
Dallas, Texas 75206
Tel: (469)-887-8551
Fax: (214)-722-0271    Exhibit "HH" - Page 5 of 10



24. Copies of any and all collection notes, collection records, communication files or any other form of recorded data with respect to any default, acceleration of the note, or foreclosure regarding this property, from the date of the alleged note origination to the date of your response to this request.

25. Copies of any and all loan servicing notes, including contacts with any previous server if this loan has been transferred to your company for servicing.

26. Copies of any and all internal records and correspondence with the borrower regarding potential loss mitigation options, including the borrower's application for a loan modification and any subsequent documents produced as a result of that application.

27. Copies of all written or recorded communications between you and any non-lawyer third parties regarding this mortgage (including but not limited to LPS Desktop communiques, NewTrak communications, NewInvoice transmittals, NewImage transmittals, electronic communications by email or otherwise, collection notes, and any other form of written or electronic document related to the servicing of or ownership of this loan).

28. Verification of any notification provided to me of a change in servicer.

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the ''Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

**You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.**

www.herrinlaw.com

**Dallas**
806 Greenville Ave., Suite 433
Dallas, Texas 75206
Tel: (469)-387-8751
Fax: (214)-722-0271    Exhibit "HH" - Page 6 of 10



## TRUTH – IN-LENDING ACT § 131(f)(2)

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the current owner(s) of the mortgage and the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action. *15 USC 1641***

Kind regards,

C. Daniel Herrin

Dallas
3925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel: (469)-607-8551
Fax: (214)-722-0271    Exhibit "HH" - Page 7 of 10



US POSTAGE $00.47⁰
First-Class
Mailed From 75206
10/17/2018
032A 0067852421

BSI Financial Service
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038



Herrin Law
4925 Greenville Ave.
Suite 455
Dallas TX 75206

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BSI Financial Service
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7014 2870 0000 8992 4720

PS Form 3811, July 2013     Domestic Return Receipt



US POSTAGE
**$ 06.67⁰**
First-Class
Mailed From 75206
10/17/2018
032A 0061852421

CERTIFIED MAIL®

7014 2870 0000 8992 4720



BSI Financial Service
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038



Herrin Law
4925 Greenville Ave.
Suite 455
Dallas TX 75206



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

<u>Sent via First Class Mail</u>

November 26, 2018

Herrin Law
Attn: C. Daniel Herrin
4925 Greenville Ave.
Suite 455
Dallas, TX 75206

DEC – 3 2018

RE:    Borrower Name:    Cheryl L. DeClouet
       Account Number:   1461138046
       Property Address: 1328 Clearwater Dr., Grand Prairie, TX 75052
       Certified Mail #:  7014 2870 0000 8992 4720

Dear C. Daniel Herrin,

We received your letter on October 19, 2018, regarding the above-referenced loan, addressed to BSI Financial Services (BSI), which was forwarded to my attention for review and response.

After review of your Qualified Written Request and its corresponding requests for information, BSI has determined that the request for information is overbroad and unduly burdensome. You have requested that we provide an unreasonable volume of documents or information, BSI is servicing your loan in accordance to your loan origination documents, the requirements set by the owner of the note and all Mortgage Regulations/Laws. The volume of requested documents is beyond the scope of what a Qualified Written Request encompasses.

Servicers may reject requests for information that are overbroad or unduly burdensome.  12 C.F.R. § 1026.36(f)(1)(iv).  A request for information request is unduly burdensome if a diligent servicer could not respond to the request without either exceeding the maximum time limits under Regulation X § 1024.36(d)(2) for responding to the request or incurring costs or dedicating resources that would be unreasonable in light of the circumstances.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

The Official Bureau Interpretation to Regulation X provides the following examples of an overbroad or unduly burdensome request for information:

• Requests that seek documents regarding substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents.

Despite the foregoing, BSI is providing the following documents, which it deems reasonable to produce: BSI payment history; Deed of Trust; Reinstatement Quote; Notice of Servicing Transfer; Note; Annual Escrow Account Disclosure Statements dated November 22, 2017 and February 27, 2018; Loan Modification Agreement; copy of the owner of note letter sent under separate cover; copy of the payoff letter sent under separate cover.

If you require further assistance, or have further concerns regarding this letter, please address your letter to:

      BSI Financial Services
      Attn: Qualified Written Requests
      PO Box 517
      314 S Franklin Street
      Titusville, PA 16354

If you would prefer to speak with a Customer Care representative, please contact BSI Financial Services toll-free at 1-800-327-7861 Monday through Friday 8:00 am to 11:00 pm (ET) or Saturday 8:00 am to 12:00 pm (ET).

Sincerely,

Jason W. Kuhn
Complaint Resolution Specialist
BSI Financial Services
NMLS # 38078; # 126672

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



October 17, 2018

BSI Financial Services
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038

*VIA CERTIFIED MAIL RRR*
*No. 7014 2870 0000 8992 4720 and*
*VIA FIRST CLASS MAIL*

| | RE: | Debtor: | Cheryl Lynn DeClouet |
|---|---|---|---|
| | | Case No.: | 14-30153-HDH |
| | | Account No.: | 1461138046 |
| | | Property Address: | 1328 Clearwater Drive |
| | | | Grand Prairie, TX 75052 |

### R.E.S.P.A.: NOTICE OF ERROR and

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

Dear Sir or Madam:

Please be advised that I represent the above-referenced borrower with respect to the mortgage loan you are servicing on the above-referenced property. My client has authorized me to send this request on his behalf. Specifically, my client is concerned with the following:

- Ms. DeClouet filed a petition for bankruptcy relief under Chapter 13 on January 6, 2014.
- The Chapter 13 Trustee filed his Notice of Plan Completion and Notice of Final Cure on June 26, 2017.
- Ms. DeClouet filed her Certification and Motion for Entry of Discharge on November 17, 2017.
- A Notice of Mortgage Payment Change was filed by BSI Financial Services on December 11, 2017 which stated that the mortgage payments would be $1,595.50 effective January 1, 2018.
- BSI Financial Services filed its Amended Response to Notice of Final Cure on March 28, 2018 stating that Ms. DeClouet was current with all post-petition mortgage payments and the next post-petition payment due was April 1, 2018.
- Since that time, Ms. DeClouet has made payments totaling over $9,500 which is more than sufficient to cover the monthly mortgage payments due between April 1, 2018 through September 1, 2018. However, each monthly statement that is sent to Ms. DeClouet reflects a past due balance as well as over $2,000 in fees and costs assessed on the loan.

www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



- Furthermore, it appears from the statements that the payments applied have not been applied correctly for several months.

BSI Financial needs to explain how it is possible for Ms. DeClouet to be delinquent on the mortgage payments and how there remain fees/costs on the mortgage loan after the Debtor received a Discharge from her Chapter 13 Case.

## R.E.S.P.A.: NOTICE OF ERROR

As servicer of my client's mortgage loan, please treat this letter as a "Notice of Error" under the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. §1024.35; and, as pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, Subpart C, 12 C.F.R. §1024.30 to 12 C.F.R. §1024.41.

Pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection and pursuant to 12 C.F.R. §1024.35(a) please respond to this written notice asserting the following errors:

1. Failure to properly audit borrower's account ensuring that all pre-petition payments are reconciled in accordance with the Chapter 13 Plan.

2. Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt.

3. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

4. Failure to provide an accurate reinstatement amount upon a borrower's request.

5. Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure.

6. Failure to transfer accurate and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

7. Any other error relating to the servicing of a mortgage loan.

Please provide your written responses, as required by law, to the address listed on the bottom of this letterhead within the statutory period allowed under 12 C.F.R. §1024.35(d) and 12 C.F.R. §1024.35(e).  www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



You should be advised that within FIVE (5) DAYS, excluding legal public holidays and weekends, you must send us a letter stating that you received this letter. 12 C.F.R. §1024.35(d). After you have confirmed receipt, you should be aware of the time in which to respond to the notice: THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress pursuant to 12 C.F.R. § 1024.35(e)(3)(c), generally; THIRTY (30) DAYS OR PRIOR TO THE FORECLOSURE DATE, WHICHEVER IS EARLIER if the asserted error falls under 12 C.F.R. §1024.35(b)(9)-(10); and within SEVEN (7) DAYS if the asserted error falls under 12 C.F.R. §1024.35(b)(6).

You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

As servicer of my client's mortgage loan, please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2605(e); and, as a "request for information" pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, 12 C.F.R. § 1024.36(d)(2)(i)(B).

Pursuant to "Subtitle E Mortgage Servicing" of the Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1), please provide:

1. A complete life of loan history from the date of the alleged note origination to the date of your response to this request, prepared by the Servicer from its own records using its own system and default servicing personnel. This transaction history should include the dates, amounts, and breakdown of the specific application of all transactions on the loan including applications to and from internal accounts (i.e. principal, interest, escrow, suspense, corporate advances, etc.).

2. A copy of your Key Loan Transaction history, bankruptcy work form, XLS spreadsheet, or any other manually-prepared spreadsheet or record of all accounts associated with this loan (this would include both recoverable, non-recoverable, restricted and non-restricted accounts).

3. Please identify the mortgage servicing software you use in connection with this loan (i.e. MSP, LSAMS, Fiserv, etc.). www.herrinlaw.com

**Dallas**
1925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



4. A full and complete plain-English definitional dictionary of all transaction codes and other similar terms used in the records requested above or any of the other documents or records requested or referred to herein.

5. A full and complete itemized statement of any and all advances or charges against the loan (this would include both recoverable, non-recoverable, restricted and non-restricted accounts) from the date of the alleged note origination to the date of your response to this request.

6. Copies of any and all invoices and proof of payments by the servicer to any third party vendor or entity relating the advances or charges against the loan, from the date of the alleged note origination to the date of your response to this request.

7. A full and complete itemized statement of any and all fees and costs charged against the loan or related to the loan in any way, from the date of the alleged note origination to the date of your response to this request. This should include payment dates, purpose of payments, and recipient of any and all foreclosure fees and costs that have been charged to the loan.

8. Copies of any and all invoices and proof of payments by the servicer to any third party vendor or entity in relation to any fee or costs charged against the loan, from the date of the alleged note origination to the date of your response to this request.

9. A full and complete itemized statement of any late charges added to the loan from the date of the alleged note origination to the date of your response to this request.

10. A complete and itemized statement from the date of the alleged note origination to the date of your response to this request of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

11. Copies of any and all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof.

12. A full and complete copy of any transaction reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the alleged note origination to the date of your response to this request.

13. A full and complete and itemized statement of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan, from the date of the alleged note origination to the date of your response to this request.

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



14. A statement/provision under the security instrument and/or note that authorizes charging any such fee against the loan.

15. Copies of any and all notes, statements, correspondence or other written documentation regarding the force placed implementation of an escrow account on the loan. Said information should also provide an explanation regarding Servicer's reason and justification for said implementation of an escrow account.

16. A full and complete itemized statement of the escrow for this loan from the date of the alleged note origination to the date of your response to this request.

17. Copies of any and all escrow statements, reviews, trial analyzes, or disclosures and any and all notices of shortage, deficiency, or surplus for this loan from the date of the alleged note origination to the date of your response to this request.

18. Copies of any and all notes, statements, correspondence, or other written documentation regarding the calculation of the current escrow payment. This should include a written explanation regarding the calculations used to derive the escrow payment amount for any increases upon the escrow being analyzed on an annual basis.

19. Please provide the current escrow analysis schedule for the loan, including the scheduled date that the annual analysis will be performed, together with the scheduled effective date of any payment changes.

20. Copies of any and all invoices and copies of any and all checks or other proof of payments by the servicer for any and all escrow related items (i.e. county taxes, city taxes, insurance, etc.) in which the servicer has advanced funds on behalf of the borrower, from the alleged date of loan origination to the date of your response to this request.

21. Have you purchased and charged to the account any Force-Placed Insurance?

22. A complete and itemized statement from the date of the alleged loan origination to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

23. A full and complete itemized statement of the full amount needed to reinstate the loan as of the date of your response to this request. This should also include an itemized statement of the full amount necessary to satisfy in full the terms of the note obligation.

www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



24. Copies of any and all collection notes, collection records, communication files or any other form of recorded data with respect to any default, acceleration of the note, or foreclosure regarding this property, from the date of the alleged note origination to the date of your response to this request.

25. Copies of any and all loan servicing notes, including contacts with any previous server if this loan has been transferred to your company for servicing.

26. Copies of any and all internal records and correspondence with the borrower regarding potential loss mitigation options, including the borrower's application for a loan modification and any subsequent documents produced as a result of that application.

27. Copies of all written or recorded communications between you and any non-lawyer third parties regarding this mortgage (including but not limited to LPS Desktop communiques, NewTrak communications, NewInvoice transmittals, NewImage transmittals, electronic communications by email or otherwise, collection notes, and any other form of written or electronic document related to the servicing of or ownership of this loan).

28. Verification of any notification provided to me of a change in servicer.

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

**You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.**

www.herrinlaw.com

**Dallas**
1925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



## TRUTH – IN-LENDING ACT § 131(f)(2)

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the current owner(s) of the mortgage and the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action. *15 USC 1641***

Kind regards,

C. Daniel Herrin

www.herrinlaw.com

**Dallas**
1925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



CERTIFIED MAIL

7014 2870 0000 8992 4720

Herrin Law
4925 Greenville Ave.
Suite 455
Dallas TX 75206

BSI Financial Service
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038

RECEIVED
OCT 19 2018
BY:

11/21/18

CHERYL L DECLOUET                                        Account Number 1461138046

1328 CLEARWATER DR

GRAND PRAIRIE        TX 75052

Collateral

| | | | | | |
|---|---|---|---|---|---|
| Original Balance | 123950.00 | P&I Payment | 850.94 | Next Due Date | 11/01/18 |
| Current Balance | 127692.35 | Escrow Payment | 761.44 | Last Payment Date | 11/14/18 |
| Escrow Balance | 933.64 | Opt Ins Payment | 0.00 | Current Interest Rate | 7.00000 |
| Unapplied Balance | 2.62 | Buydown | 0.00 | | |
| Fee Balance | -2540.53 | Total Payment | 1612.38 | | |

History from 08/17/17 through 11/21/18  Beginning statement balance      105524.19      Ending statement balance      127692.35

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/23/17 | 08/23/17 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | -11132.85 | 0.00 | 0.00 | |
| 08/23/17 | 08/23/17 | 12/01/15 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1611.46 | F |
| 08/28/17 | 08/28/17 | 12/01/15 | MISC RECEIPT | 1070.19 | 0.00 | 0.00 | 470.74 | 0.00 | 599.45 | N |
| 09/19/17 | 09/15/17 | 12/01/15 | MISC RECEIPT | 1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1550.00 | N |
| 09/22/17 | 08/28/17 | 12/01/15 | MISC RECEIPT | 376.77 | 0.00 | 0.00 | 0.00 | 0.00 | 376.77 | N |
| 09/22/17 | 09/22/17 | 12/01/15 | MISC RECEIPT | -376.77 | 0.00 | 0.00 | 0.00 | 0.00 | -376.77 | N |
| 09/22/17 | 08/28/17 | 12/01/15 | MISC RECEIPT | 222.68 | 0.00 | 0.00 | 0.00 | 0.00 | 222.68 | N |
| 09/22/17 | 09/22/17 | 12/01/15 | MISC RECEIPT | -222.68 | 0.00 | 0.00 | 0.00 | 0.00 | -222.68 | N |
| 09/22/17 | 09/15/17 | 01/01/16 | PAYMENT | 1326.84 | 207.57 | 648.53 | 470.74 | 0.00 | 0.00 | |
| 09/22/17 | 09/15/17 | 01/01/16 | MISC RECEIPT | 223.16 | 0.00 | 0.00 | 0.00 | 0.00 | 223.16 | N |
| 09/22/17 | 09/22/17 | 01/01/16 | MISC RECEIPT | -1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1550.00 | N |
| 10/17/17 | 10/13/17 | 02/01/16 | PAYMENT | 1326.84 | 208.84 | 647.26 | 470.74 | 0.00 | 0.00 | |
| 10/17/17 | 10/13/17 | 02/01/16 | MISC RECEIPT | 223.16 | 0.00 | 0.00 | 0.00 | 0.00 | 223.16 | N |
| 11/14/17 | 11/14/17 | 02/01/16 | MISC RECEIPT | 1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1550.00 | N |
| 11/29/17 | 10/13/17 | 01/01/16 | PAYMENT | -1326.84 | -208.84 | -647.26 | -470.74 | 0.00 | 0.00 | |
| 11/29/17 | 11/29/17 | 01/01/16 | MISC RECEIPT | 1326.84 | 0.00 | 0.00 | 0.00 | 0.00 | 1326.84 | N |
| 11/29/17 | 09/15/17 | 12/01/15 | PAYMENT | -1326.84 | -207.57 | -648.53 | -470.74 | 0.00 | 0.00 | |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | 1326.84 | 0.00 | 0.00 | 0.00 | 0.00 | 1326.84 | N |

B= *Buydown/Subsidy*          F= *Fee Payment*          L= *Late Charges*          N= *Unapplied*

11/21/18                                    Account Number 1461138046

CHERYL L DECLOUET

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | -222.68 | 0.00 | 0.00 | 0.00 | 0.00 | -222.68 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | 222.68 | 0.00 | 0.00 | 0.00 | 0.00 | 222.68 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | -376.77 | 0.00 | 0.00 | 0.00 | 0.00 | -376.77 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | 376.77 | 0.00 | 0.00 | 0.00 | 0.00 | 376.77 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | ESCROW DISBURSEMENT | -4775.44 | 0.00 | 0.00 | -4775.44 | 0.00 | 0.00 | |
| 11/30/17 | 11/30/17 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 15437.55 | 0.00 | 0.00 | |
| 11/30/17 | 02/01/16 | 12/01/15 | MISC RECEIPT | -5249.45 | 0.00 | 0.00 | 0.00 | 0.00 | -5249.45 | N |
| 11/30/17 | 02/01/16 | 12/01/15 | MISC RECEIPT | 5249.45 | 0.00 | 0.00 | 0.00 | 0.00 | 5249.45 | N |
| 11/30/17 | 11/30/17 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | -15437.55 | 0.00 | 0.00 | |
| 12/01/17 | 12/01/17 | 12/01/15 | MISC RECEIPT | 10188.10 | 0.00 | 0.00 | 15437.55 | 0.00 | -5249.45 | N |
| 12/01/17 | 12/01/17 | 12/01/15 | MISC RECEIPT | -10188.10 | 0.00 | 0.00 | -15437.55 | 0.00 | 5249.45 | N |
| 12/01/17 | 12/01/15 | 12/01/15 | MISC RECEIPT | 10188.10 | 0.00 | 0.00 | 15437.55 | 0.00 | -5249.45 | N |
| 12/01/17 | 12/01/15 | 12/01/15 | MISC RECEIPT | -10188.10 | 0.00 | 0.00 | -15437.55 | 0.00 | 5249.45 | N |
| 12/04/17 | 12/04/17 | 12/01/15 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 514.67 | F |
| 12/08/17 | 10/13/17 | 12/01/15 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 12/12/17 | 12/12/17 | 12/01/15 | MISC RECEIPT | 1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1550.00 | N |
| 01/18/18 | 01/14/18 | 12/01/15 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 02/15/18 | 02/15/18 | 12/01/15 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 02/16/18 | 02/16/18 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | -23783.96 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/16/18 | 02/16/18 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 8363.49 | 0.00 | 0.00 | |
| 02/23/18 | 02/23/18 | 06/01/17 | MISC RECEIPT | -1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1600.00 | N |
| 02/26/18 | 02/24/18 | 06/01/17 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 02/28/18 | 02/28/18 | 06/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/28/18 | 02/24/18 | 07/01/17 | PAYMENT | 0.00 | 96.64 | 754.30 | 589.50 | 0.00 | -1440.44 | N |
| 02/28/18 | 02/24/18 | 08/01/17 | PAYMENT | 0.00 | 97.21 | 753.73 | 589.50 | 0.00 | -1440.44 | N |
| 02/28/18 | 02/24/18 | 09/01/17 | PAYMENT | 0.00 | 97.77 | 753.17 | 589.50 | 0.00 | -1440.44 | N |
| 02/28/18 | 02/28/18 | 09/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/28/18 | 02/28/18 | 09/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 10/01/17 | PAYMENT | 1440.44 | 98.34 | 752.60 | 589.50 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 11/01/17 | PAYMENT | 1440.44 | 98.92 | 752.02 | 589.50 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 12/01/17 | PAYMENT | 1440.44 | 99.49 | 751.45 | 589.50 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 12/01/17 | MISC RECEIPT | 1356.81 | 0.00 | 0.00 | 0.00 | 0.00 | 1356.81 | N |
| 02/28/18 | 02/28/18 | 12/01/17 | MISC RECEIPT | -5678.13 | 0.00 | 0.00 | 0.00 | 0.00 | -5678.13 | N |
| 03/15/18 | 03/15/18 | 12/01/17 | MISC RECEIPT | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | N |
| 03/15/18 | 03/15/18 | 12/01/17 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |

B= *Buydown/Subsidy*          F= *Fee Payment*          L= *Late Charges*          N= *Unapplied*

11/21/18                                    Account Number 1461138046

CHERYL L DECLOUET

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/16/18 | 03/16/18 | 12/01/17 | MISC RECEIPT | -20.00 | 0.00 | 0.00 | 0.00 | 0.00 | -20.00 | N |
| 03/16/18 | 03/16/18 | 12/01/17 | FEE PAID | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | F |
| 03/16/18 | 03/16/18 | 12/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03/19/18 | 03/15/18 | 01/01/18 | PAYMENT | 0.00 | 100.07 | 750.87 | 589.50 | 0.00 | -1440.44 | N |
| 03/22/18 | 03/15/18 | 12/01/17 | PAYMENT | 0.00 | -100.07 | -750.87 | -589.50 | 0.00 | 1440.44 | N |
| 03/22/18 | 03/22/18 | 12/01/17 | MISC RECEIPT | -1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1600.00 | N |
| 03/22/18 | 03/22/18 | 12/01/17 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | F |
| 03/23/18 | 03/23/18 | 12/01/17 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 03/23/18 | 03/23/18 | 12/01/17 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 384.40 | F |
| 03/26/18 | 03/26/18 | 12/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03/28/18 | 03/26/18 | 01/01/18 | PAYMENT | 0.00 | 100.07 | 750.87 | 589.50 | 0.00 | -1440.44 | |
| 04/16/18 | 03/26/18 | 02/01/18 | PAYMENT | 1440.44 | 100.66 | 750.28 | 589.50 | 0.00 | 0.00 | |
| 04/16/18 | 03/26/18 | 02/01/18 | MISC RECEIPT | -1280.88 | 0.00 | 0.00 | 0.00 | 0.00 | -1280.88 | N |
| 04/16/18 | 04/16/18 | 02/01/18 | MISC RECEIPT | -159.56 | 0.00 | 0.00 | 0.00 | 0.00 | -159.56 | N |
| 04/17/18 | 04/14/18 | 03/01/18 | PAYMENT | 1612.38 | 101.25 | 749.69 | 761.44 | 0.00 | 0.00 | |
| 04/17/18 | 04/14/18 | 03/01/18 | MISC RECEIPT | -12.38 | 0.00 | 0.00 | 0.00 | 0.00 | -12.38 | N |
| 05/15/18 | 05/15/18 | 04/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 05/15/18 | 05/15/18 | 04/01/18 | PAYMENT | 1612.38 | 101.84 | 749.10 | 761.44 | 0.00 | 0.00 | |
| 06/15/18 | 06/15/18 | 05/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 06/15/18 | 06/15/18 | 05/01/18 | PAYMENT | 1612.38 | 102.43 | 748.51 | 761.44 | 0.00 | 0.00 | |
| 07/12/18 | 07/12/18 | 05/01/18 | ESCROW DISBURSEMENT | -2799.82 | 0.00 | 0.00 | -2799.82 | 0.00 | 0.00 | |
| 07/13/18 | 07/13/18 | 06/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 07/13/18 | 07/13/18 | 06/01/18 | PAYMENT | 1612.38 | 103.03 | 747.91 | 761.44 | 0.00 | 0.00 | |
| 07/13/18 | 07/13/18 | 06/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 08/15/18 | 08/15/18 | 07/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 08/15/18 | 08/15/18 | 07/01/18 | PAYMENT | 1609.76 | 103.63 | 747.31 | 761.44 | 0.00 | -2.62 | N |
| 08/15/18 | 08/15/18 | 07/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 09/13/18 | 09/13/18 | 08/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 09/13/18 | 09/13/18 | 08/01/18 | PAYMENT | 1609.76 | 104.23 | 746.71 | 761.44 | 0.00 | -2.62 | N |
| 09/13/18 | 09/13/18 | 08/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 10/13/18 | 10/13/18 | 09/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 10/13/18 | 10/13/18 | 09/01/18 | PAYMENT | 1609.76 | 104.84 | 746.10 | 761.44 | 0.00 | -2.62 | N |
| 10/13/18 | 10/13/18 | 09/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 11/14/18 | 11/14/18 | 10/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 11/14/18 | 11/14/18 | 10/01/18 | PAYMENT | 1609.76 | 105.45 | 745.49 | 761.44 | 0.00 | -2.62 | N |

B= _Buydown/Subsidy_          F= _Fee Payment_          L= _Late Charges_          N= _Unapplied_

11/21/18                                        Account Number 1461138046

CHERYL L DECLOUET

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other |
|---|---|---|---|---|---|---|---|---|---|
| 11/14/18 | 11/14/18 | 10/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 N |

B= *Buydown/Subsidy*          F= *Fee Payment*          L= *Late Charges*          N= *Unapplied*

NATC  RF# TA0670 61358- MP
ELECTRONICALLY RECORDED  200600294226
DT  19 PGS

After Recording Return To:
UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC
311 PARK PLACE BOULEVARD, SUITE 500 - SECONDARY MARKETING OPS
CLEARWATER, FLORIDA 33759-3999
Loan Number: 0005779269

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

**MIN:** 100059600057792694

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JULY 27, 2006 , together with all Riders to this document.
(B) "Borrower" is CHERYL L DECLOUET, AN UNMARRIED WOMAN

Borrower is the grantor under this Security Instrument.
(C) "Lender" is UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC

Lender is a FLORIDA LIMITED LIABILITY COMPANY organized and existing under the laws of FLORIDA
Lender's address is 700 NW 107TH AVENUE, 3RD FLOOR, MIAMI, FLORIDA 33172-3139

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is SCOTT R. VALBY

Trustee's address is 1700 WEST LOOP SOUTH, SUITE 260, HOUSTON, TEXAS 77027

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                   Page 1 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx30441.mzd.1.tem

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated JULY 27, 2006
The Note states that Borrower owes Lender ONE HUNDRED TWENTY-THREE THOUSAND NINE HUNDRED FIFTY AND 00/100 Dollars (U.S. $ 123,950.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 1, 2036 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☒ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01 Page 2 of 15

DocMagic ℰℱℴℛℳℴ 800-649-1362
www.docmagic.com

Tx30442.mud.2.tem

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of DALLAS
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

LOT 21, BLOCK J, LAKEWOOD PHASE FIVE, AN ADDITION TO THE CITY OF GRAND PRAIRIE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN COLUME 2005182, PAGE 24, MAP/PLAT RECORDS, DALLAS COUNTY, TEXAS.

which currently has the address of
1328 CLEARWATER DRIVE
[Street]

GRAND PRAIRIE , Texas 75052 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

---

Exhibit "II" - Page 17 of 101

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                                    Page 4 of 15                                 DocMagic ℰℱℛⓄ⒫ⓄⓈ 800-649-1362
                                                                                                                        www.docmagic.com

Tx3044.sud.4.tem

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

---

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower. Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01

DocMagic eFarms 800-649-1362
www.docmagic.com

Tx30448.mzd.6.tem

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 7 of 15

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Tx30447.szd.7.tem

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 8 of 15

DocMagic *EForms* 800-649-1362
www.docmagic.com

Tx3044s.mzd.8.tem

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 9 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Tx30449.mzd.9.tem

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality

or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 11 of 15

DocMagic *EForms* 800-649-1362
www.docmagic.com

Tx304411.mzd.11.tem

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒ Purchase Money.
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ Owelty of Partition.
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ Renewal and Extension of Liens Against Homestead Property.
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ Acknowledgment of Cash Advanced Against Non-Homestead Property.
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 13 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Tx304413.mzd.13.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CHERYL L DECLOUET          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Witness:                   Witness:

_____  _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                          Page 14 of 15

DocMagic *CRecord* 800-649-1362
www.docmagic.com

Tx3044l4.mzd.14.tem

The State of Texas
County of   DALLAS

Before me,   *the undersigned*
on this day personally appeared   CHERYL L DECLOUET

known to me (or proved to me on the oath of ———
or through *drivers license ID*                                                     )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this   *31*   day of *July, 2006*

REXANNE McCAULEY
Notary Public
State of Texas
Comm. Expires 09-22-2009

_____
Notary Public Signature

(Seal)                              My commission expires:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                              Page 15 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Tx304415.mzd.15.tem

Loan Number: 0005779269

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 27th day of JULY, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, A FLORIDA LIMITED LIABILITY COMPANY (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1328 CLEARWATER DRIVE, GRAND PRAIRIE, TEXAS 75052
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

LAKEWOOD PHASE FIVE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01     Page 1 of 3

DocMagic EFForms 800-649-1362
www.docmagic.com

Us315O1.rid.1.tem

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                         Page 2 of 3

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Us3150.rid.2.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
CHERYL L DECLOUET     -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3150d.rid.3.xem

BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

**BSI Financial Services**

11/20/18

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052
Loan Number: 1461138046

Property Address: 1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

Dear CHERYL L DECLOUET :

Thank you for your inquiry about reinstatement of this loan. This statement is only valid for the name(s) and property address indicated above. Please contact our office immediately if you have received a reinstatement quote for the incorrect party or property.

The total amount due is broken down in the reinstatement calculation below. Please be advised that these figures are good through 12/19/18. Your loan is currently paid through 10/01/18. Upon receipt of the reinstatement amount of $6,145.53, your loan will be current and your next payment due date will be 01/01/19. **Any default or foreclosure activity, including potential sale of the property, will continue until the loan is fully reinstated or paid-in-full.**

| | |
|---|---|
| PAYMENTS DUE THROUGH 12/19/18 | $3,224.76 |
| UNPAID LATE FEES | $382.86 |
| UNPAID FEES | $2,540.53 |
| ESCROW ADVANCES | $0.00 |
| PENDING ATTORNEY FEES & COSTS | $0.00 |
| UNCOLLECTED INTEREST | $0.00 |
| UNAPPLIED FUNDS (CREDIT) | $( -2.62) |
| TOTAL AMOUNT TO REINSTATE LOAN IN FULL ON 12/19/18 | $6,145.53 |

* Only applicable if the reinstatement is not received prior to payment due date and/or end of grace period for the applicable payment.

The amount owed may change between the date of this letter and the date that the loan is reinstated. **Please contact BSI Financial Services within 48 hours of when you intend to reinstate to verify the current reinstatement amount.** Additionally, reinstatement figures will be adjusted if any check or money order previously received is rejected by the institution upon which it is drawn.

Please submit your reinstatement payment via certified funds or wire transfer to **BSI Financial Services. CERTIFIED FUNDS OR WIRE TRANSFERS MUST BE RECEIVED BY OUR OFFICE BY 3:30 P.M. (EST) ON A NORMAL BUSINESS DAY (MONDAY THROUGH FRIDAY) TO BE**

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

**CREDITED THAT DAY.** Funds received after 3:30 P.M. (EST) on 12/19/18 will require a new reinstatement quote.

Mail Certified Funds to:  **BSI FINANCIAL SERVICES**
314 S. FRANKLIN STREET/P.O. BOX 517
TITUSVILLE, PA 16354
**ATTN: Loan Operations**

Wire the funds using the following information:

Beneficiary:  **BSI Payment In Process Clearing Acct**
Texas Capital Bank
2000 McKinney Ave, Suite 700
Dallas, TX 75201
ABA: **111017979**
Account Number: **2111020455**
Final Credit To: **Payments** / Cashiering
Reference Information: Customer name, loan number and/or property address

- YOU MAY REINSTATE YOUR LOAN AT ANY TIME WITHOUT PENALTY. HOWEVER, ISSUANCE OF THIS STATEMENT DOES NOT SUSPEND YOUR CONTRACTUAL REQUIREMENT TO MAKE THE MORTGAGE PAYMENTS WHEN THEY ARE DUE.

- IF YOUR LOAN IS IN DEFAULT, FORECLOSURE ACTIVITY, INCLUDING ANY SALE OF THE PROPERTY, WILL CONTINUE UNTIL THE LOAN IS FULLY REINSTATED OR PAID IN FULL.

- IF YOU HAVE FILED A BANKRUPTCY PETITION AND THERE IS EITHER AN "AUTOMATIC STAY" IN EFFECT IN YOUR BANKRUPTCY CASE OR YOU HAVE RECEIVED A DISCHARGE OF YOUR PERSONAL LIABILITY FOR THE OBLIGATION IDENTIFIED IN THIS LETTER, WE MAY NOT AND DO NOT INTEND TO PURSUE COLLECTION OF THAT OBLIGATION FROM YOU PERSONALLY. IF THESE CIRCUMSTANCES APPLY, THIS NOTICE IS NOT AND SHOULD NOT BE CONSTRUED TO BE A DEMAND FOR PAYMENT FROM YOU PERSONALLY. UNLESS THE BANKRUPTCY COURT HAS ORDERED OTHERWISE, PLEASE ALSO NOTE THAT DESPITE ANY SUCH BANKRUPTCY FILING, WHATEVER RIGHTS THE OWNER OF THE LOAN HOLDS IN THE PROPERTY THAT SECURES THE OBLIGATION REMAINS UNIMPAIRED.

If you have any questions or concerns, please feel free to call us to speak with a Customer Care representative, toll-free at 1-800-327-7861. Our office hours are Monday through Friday 8:00 a.m. - 11:00 p.m. (ET) and Saturday 8:00 a.m. - 12:00 p.m. (ET).

**Licensed as Servis One, Inc. dba BSI Financial Services**.

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

Sincerely,
BSI Financial Services
NMLS # 38078; # 1195811

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

T05_T28-08092017_CA0329 2017

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

August 24, 2017                                          22

Sent via First Class Mail

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

New Account Number: 1461138046
Old Account Number: 138046

### NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred to BSI Financial Services, ("BSI Financial"), effective 08/17/2017. The transfer of servicing does not affect any term or condition of the mortgage loan other than terms directly related to the servicing of the loan.

Fay Servicing, LLC, your prior servicer, was collecting your payments. Fay Servicing, LLC, will not accept any payments received by you after the day preceding 08/17/2017.

As your new servicer, BSI Financial will start accepting payments received from you on or after 08/17/2017.

BSI Financial will collect your payments going forward. As your new servicer, BSI Financial will start accepting payments received from you on or 08/17/2017.

**Send all payments due on or after 08/17/2017 to BSI Financial at this address:**
**BSI Financial Services**
PO Box 679002
Dallas, TX 75267

If you have any questions for either your prior servicer, Fay Servicing, LLC, or your new servicer BSI Financial, about your mortgage loan or this transfer, please contact them using the information below:

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Page **1** of **10**



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

<u>Sent via First Class Mail</u>

November 26, 2018

Herrin Law
Attn: C. Daniel Herrin
4925 Greenville Ave.
Suite 455
Dallas, TX 75206

DEC – 3 2018

RE:   Borrower Name:  Cheryl L. DeClouet
        Account Number:  1461138046
        Property Address:  1328 Clearwater Dr., Grand Prairie, TX 75052
        Certified Mail #:  7014 2870 0000 8992 4720

Dear C. Daniel Herrin,

We received your letter on October 19, 2018, regarding the above-referenced loan, addressed to BSI Financial Services (BSI), which was forwarded to my attention for review and response.

After review of your Qualified Written Request and its corresponding requests for information, BSI has determined that the request for information is overbroad and unduly burdensome. You have requested that we provide an unreasonable volume of documents or information, BSI is servicing your loan in accordance to your loan origination documents, the requirements set by the owner of the note and all Mortgage Regulations/Laws. The volume of requested documents is beyond the scope of what a Qualified Written Request encompasses.

Servicers may reject requests for information that are overbroad or unduly burdensome. 12 C.F.R. § 1026.36(f)(1)(iv). A request for information request is unduly burdensome if a diligent servicer could not respond to the request without either exceeding the maximum time limits under Regulation X § 1024.36(d)(2) for responding to the request or incurring costs or dedicating resources that would be unreasonable in light of the circumstances.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

The Official Bureau Interpretation to Regulation X provides the following examples of an overbroad or unduly burdensome request for information:

•   Requests that seek documents regarding substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents.

Despite the foregoing, BSI is providing the following documents, which it deems reasonable to produce: BSI payment history; Deed of Trust; Reinstatement Quote; Notice of Servicing Transfer; Note; Annual Escrow Account Disclosure Statements dated November 22, 2017 and February 27, 2018; Loan Modification Agreement; copy of the owner of note letter sent under separate cover; copy of the payoff letter sent under separate cover.

If you require further assistance, or have further concerns regarding this letter, please address your letter to:

BSI Financial Services
Attn: Qualified Written Requests
PO Box 517
314 S Franklin Street
Titusville, PA 16354

If you would prefer to speak with a Customer Care representative, please contact BSI Financial Services toll-free at 1-800-327-7861 Monday through Friday 8:00 am to 11:00 pm (ET) or Saturday 8:00 am to 12:00 pm (ET).

Sincerely,

Jason W. Kuhn
Complaint Resolution Specialist
BSI Financial Services
NMLS # 38078; # 126672

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET), Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



October 17, 2018

BSI Financial Services
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038

*VIA CERTIFIED MAIL RRR*
*No. 7014 2870 0000 8992 4720 and*
*VIA FIRST CLASS MAIL*

RE:  Debtor:            Cheryl Lynn DeClouet
     Case No.:          14-30153-HDH
     Account No.:       1461138046
     Property Address:  1328 Clearwater Drive
                        Grand Prairie, TX 75052

---

### R.E.S.P.A.: NOTICE OF ERROR and

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

---

Dear Sir or Madam:

Please be advised that I represent the above-referenced borrower with respect to the mortgage loan you are servicing on the above-referenced property. My client has authorized me to send this request on his behalf. Specifically, my client is concerned with the following:

- Ms. DeClouet filed a petition for bankruptcy relief under Chapter 13 on January 6, 2014.
- The Chapter 13 Trustee filed his Notice of Plan Completion and Notice of Final Cure on June 26, 2017.
- Ms. DeClouet filed her Certification and Motion for Entry of Discharge on November 17, 2017.
- A Notice of Mortgage Payment Change was filed by BSI Financial Services on December 11, 2017 which stated that the mortgage payments would be $1,595.50 effective January 1, 2018.
- BSI Financial Services filed its Amended Response to Notice of Final Cure on March 28, 2018 stating that Ms. DeClouet was current with all post-petition mortgage payments and the next post-petition payment due was April 1, 2018.
- Since that time, Ms. DeClouet has made payments totaling over $9,500 which is more than sufficient to cover the monthly mortgage payments due between April 1, 2018 through September 1, 2018. However, each monthly statement that is sent to Ms. DeClouet reflects a past due balance as well as over $2,000 in fees and costs assessed on the loan.

www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



- Furthermore, it appears from the statements that the payments applied have not been applied correctly for several months.

BSI Financial needs to explain how it is possible for Ms. DeClouet to be delinquent on the mortgage payments and how there remain fees/costs on the mortgage loan after the Debtor received a Discharge from her Chapter 13 Case.

## R.E.S.P.A.: NOTICE OF ERROR

As servicer of my client's mortgage loan, please treat this letter as a "Notice of Error" under the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. §1024.35; and, as pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, Subpart C, 12 C.F.R. §1024.30 to 12 C.F.R. §1024.41.

Pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection and pursuant to 12 C.F.R. §1024.35(a) please respond to this written notice asserting the following errors:

1. Failure to properly audit borrower's account ensuring that all pre-petition payments are reconciled in accordance with the Chapter 13 Plan.

2. Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt.

3. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

4. Failure to provide an accurate reinstatement amount upon a borrower's request.

5. Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure.

6. Failure to transfer accurate and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

7. Any other error relating to the servicing of a mortgage loan.

Please provide your written responses, as required by law, to the address listed on the bottom of this letterhead within the statutory period allowed under 12 C.F.R. §1024.35(d) and 12 C.F.R. §1024.35(e).

www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



You should be advised that within **FIVE (5) DAYS**, excluding legal public holidays and weekends, you must send us a letter stating that you received this letter. 12 C.F.R. §1024.35(d). After you have confirmed receipt, you should be aware of the time in which to respond to the notice: **THIRTY (30) DAYS** to fully respond as per the time frame mandated by Congress pursuant to 12 C.F.R. § 1024.35(e)(3)(c), generally; **THIRTY (30) DAYS OR PRIOR TO THE FORECLOSURE DATE, WHICHEVER IS EARLIER** if the asserted error falls under 12 C.F.R. §1024.35(b)(9)-(10); and within **SEVEN (7) DAYS** if the asserted error falls under 12 C.F.R. §1024.35(b)(6).

You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.

---

### R.E.S.P.A.: QUALIFIED WRITTEN REQUEST

---

As servicer of my client's mortgage loan, please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2605(e); and, as a "request for information" pursuant to the Real Estate Settlement Procedures Act, subject to the response period set out in Regulation X, 12 C.F.R. § 1024.36(d)(2)(i)(B).

Pursuant to "Subtitle E Mortgage Servicing" of the Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1), please provide:

1. A complete life of loan history from the date of the alleged note origination to the date of your response to this request, prepared by the Servicer from its own records using its own system and default servicing personnel. This transaction history should include the dates, amounts, and breakdown of the specific application of all transactions on the loan including applications to and from internal accounts (i.e. principal, interest, escrow, suspense, corporate advances, etc.).

2. A copy of your Key Loan Transaction history, bankruptcy work form, XLS spreadsheet, or any other manually-prepared spreadsheet or record of all accounts associated with this loan (this would include both recoverable, non-recoverable, restricted and non-restricted accounts).

3. Please identify the mortgage servicing software you use in connection with this loan (i.e. MSP, LSAMS, Fiserv, etc.).

www.herrinlaw.com

**Dallas**
1025 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



4. A full and complete plain-English definitional dictionary of all transaction codes and other similar terms used in the records requested above or any of the other documents or records requested or referred to herein.

5. A full and complete itemized statement of any and all advances or charges against the loan (this would include both recoverable, non-recoverable, restricted and non-restricted accounts) from the date of the alleged note origination to the date of your response to this request.

6. Copies of any and all invoices and proof of payments by the servicer to any third party vendor or entity relating the advances or charges against the loan, from the date of the alleged note origination to the date of your response to this request.

7. A full and complete itemized statement of any and all fees and costs charged against the loan or related to the loan in any way, from the date of the alleged note origination to the date of your response to this request. This should include payment dates, purpose of payments, and recipient of any and all foreclosure fees and costs that have been charged to the loan.

8. Copies of any and all invoices and proof of payments by the servicer to any third party vendor or entity in relation to any fee or costs charged against the loan, from the date of the alleged note origination to the date of your response to this request.

9. A full and complete itemized statement of any late charges added to the loan from the date of the alleged note origination to the date of your response to this request.

10. A complete and itemized statement from the date of the alleged note origination to the date of your response to this request of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

11. Copies of any and all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof.

12. A full and complete copy of any transaction reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the alleged note origination to the date of your response to this request.

13. A full and complete and itemized statement of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan, from the date of the alleged note origination to the date of your response to this request.

www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



14. A statement/provision under the security instrument and/or note that authorizes charging any such fee against the loan.

15. Copies of any and all notes, statements, correspondence or other written documentation regarding the force placed implementation of an escrow account on the loan. Said information should also provide an explanation regarding Servicer's reason and justification for said implementation of an escrow account.

16. A full and complete itemized statement of the escrow for this loan from the date of the alleged note origination to the date of your response to this request.

17. Copies of any and all escrow statements, reviews, trial analyzes, or disclosures and any and all notices of shortage, deficiency, or surplus for this loan from the date of the alleged note origination to the date of your response to this request.

18. Copies of any and all notes, statements, correspondence, or other written documentation regarding the calculation of the current escrow payment. This should include a written explanation regarding the calculations used to derive the escrow payment amount for any increases upon the escrow being analyzed on an annual basis.

19. Please provide the current escrow analysis schedule for the loan, including the scheduled date that the annual analysis will be performed, together with the scheduled effective date of any payment changes.

20. Copies of any and all invoices and copies of any and all checks or other proof of payments by the servicer for any and all escrow related items (i.e. county taxes, city taxes, insurance, etc.) in which the servicer has advanced funds on behalf of the borrower, from the alleged date of loan origination to the date of your response to this request.

21. Have you purchased and charged to the account any Force-Placed Insurance?

22. A complete and itemized statement from the date of the alleged loan origination to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

23. A full and complete itemized statement of the full amount needed to reinstate the loan as of the date of your response to this request. This should also include an itemized statement of the full amount necessary to satisfy in full the terms of the note obligation.

www.herrinlaw.com

**Dallas**
4925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



24. Copies of any and all collection notes, collection records, communication files or any other form of recorded data with respect to any default, acceleration of the note, or foreclosure regarding this property, from the date of the alleged note origination to the date of your response to this request.

25. Copies of any and all loan servicing notes, including contacts with any previous server if this loan has been transferred to your company for servicing.

26. Copies of any and all internal records and correspondence with the borrower regarding potential loss mitigation options, including the borrower's application for a loan modification and any subsequent documents produced as a result of that application.

27. Copies of all written or recorded communications between you and any non-lawyer third parties regarding this mortgage (including but not limited to LPS Desktop communiques, NewTrak communications, NewInvoice transmittals, NewImage transmittals, electronic communications by email or otherwise, collection notes, and any other form of written or electronic document related to the servicing of or ownership of this loan).

28. Verification of any notification provided to me of a change in servicer.

**You should be advised that within FIVE (5) DAYS you must send us a letter stating that you received this letter. After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the "Dodd-Frank Wall Street Reform and Consumer Protection Act and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).**

**You should also be advised that the borrower herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein. The borrower also reserves the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code in the amount of $2,000.00 for each violation.**

www.herrinlaw.com

**Dallas**
1925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



## TRUTH – IN-LENDING ACT § 131(f)(2)

Pursuant to 15 U.S.C. § 1641 (f):

Please provide the name, address and telephone number of the current owner(s) of the mortgage and the master servicer of the mortgage.

**You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action.** *15 USC 1641*

Kind regards,

C. Daniel Herrin

www.herrinlaw.com

**Dallas**
1925 Greenville Ave., Suite 455
Dallas, Texas 75206
Tel.: (469)-607-8551
Fax: (214)-722-0271



CERTIFIED MAIL®

7014 2870 0000 8992 4720

Herrin Law
4925 Greenville Ave.
Suite 455
Dallas TX 75206

BSI Financial Service
ATTN: Qualified Written Request
1425 Greenway Drive, Suite 400
Irving, Texas 75038

RECEIVED
OCT 19 2018
By:

11/21/18

CHERYL L DECLOUET                                    Account Number 1461138046

1328 CLEARWATER DR

GRAND PRAIRIE        TX 75052

Collateral

| | | | | | |
|---|---|---|---|---|---|
| Original Balance | 123950.00 | P&I Payment | 850.94 | Next Due Date | 11/01/18 |
| Current Balance | 127692.35 | Escrow Payment | 761.44 | Last Payment Date | 11/14/18 |
| Escrow Balance | 933.64 | Opt Ins Payment | 0.00 | Current Interest Rate | 7.00000 |
| Unapplied Balance | 2.62 | Buydown | 0.00 | | |
| Fee Balance | -2540.53 | Total Payment | 1612.38 | | |

History from 08/17/17 through 11/21/18  Beginning statement balance     105524.19     Ending statement balance     127692.35

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/23/17 | 08/23/17 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | -11132.85 | 0.00 | 0.00 | |
| 08/23/17 | 08/23/17 | 12/01/15 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1611.46 | F |
| 08/28/17 | 08/28/17 | 12/01/15 | MISC RECEIPT | 1070.19 | 0.00 | 0.00 | 470.74 | 0.00 | 599.45 | N |
| 09/19/17 | 09/15/17 | 12/01/15 | MISC RECEIPT | 1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1550.00 | N |
| 09/22/17 | 08/28/17 | 12/01/15 | MISC RECEIPT | 376.77 | 0.00 | 0.00 | 0.00 | 0.00 | 376.77 | N |
| 09/22/17 | 09/22/17 | 12/01/15 | MISC RECEIPT | -376.77 | 0.00 | 0.00 | 0.00 | 0.00 | -376.77 | N |
| 09/22/17 | 08/28/17 | 12/01/15 | MISC RECEIPT | 222.68 | 0.00 | 0.00 | 0.00 | 0.00 | 222.68 | N |
| 09/22/17 | 09/22/17 | 12/01/15 | MISC RECEIPT | -222.68 | 0.00 | 0.00 | 0.00 | 0.00 | -222.68 | N |
| 09/22/17 | 09/15/17 | 01/01/16 | PAYMENT | 1326.84 | 207.57 | 648.53 | 470.74 | 0.00 | 0.00 | |
| 09/22/17 | 09/15/17 | 01/01/16 | MISC RECEIPT | 223.16 | 0.00 | 0.00 | 0.00 | 0.00 | 223.16 | N |
| 09/22/17 | 09/22/17 | 01/01/16 | MISC RECEIPT | -1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1550.00 | N |
| 10/17/17 | 10/13/17 | 02/01/16 | PAYMENT | 1326.84 | 208.84 | 647.26 | 470.74 | 0.00 | 0.00 | |
| 10/17/17 | 10/13/17 | 02/01/16 | MISC RECEIPT | 223.16 | 0.00 | 0.00 | 0.00 | 0.00 | 223.16 | N |
| 11/14/17 | 11/14/17 | 02/01/16 | MISC RECEIPT | 1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1550.00 | N |
| 11/29/17 | 10/13/17 | 01/01/16 | PAYMENT | -1326.84 | -208.84 | -647.26 | -470.74 | 0.00 | 0.00 | |
| 11/29/17 | 11/29/17 | 01/01/16 | MISC RECEIPT | 1326.84 | 0.00 | 0.00 | 0.00 | 0.00 | 1326.84 | N |
| 11/29/17 | 09/15/17 | 12/01/15 | PAYMENT | -1326.84 | -207.57 | -648.53 | -470.74 | 0.00 | 0.00 | |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | 1326.84 | 0.00 | 0.00 | 0.00 | 0.00 | 1326.84 | N |

B= *Buydown/Subsidy*          F= *Fee Payment*          L= *Late Charges*          N= *Unapplied*

11/21/18                                    Account Number 1461138046

CHERYL L DECLOUET

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | -222.68 | 0.00 | 0.00 | 0.00 | 0.00 | -222.68 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | 222.68 | 0.00 | 0.00 | 0.00 | 0.00 | 222.68 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | -376.77 | 0.00 | 0.00 | 0.00 | 0.00 | -376.77 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | MISC RECEIPT | 376.77 | 0.00 | 0.00 | 0.00 | 0.00 | 376.77 | N |
| 11/29/17 | 11/29/17 | 12/01/15 | ESCROW DISBURSEMENT | -4775.44 | 0.00 | 0.00 | -4775.44 | 0.00 | 0.00 | |
| 11/30/17 | 11/30/17 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 15437.55 | 0.00 | 0.00 | |
| 11/30/17 | 02/01/16 | 12/01/15 | MISC RECEIPT | -5249.45 | 0.00 | 0.00 | 0.00 | 0.00 | -5249.45 | N |
| 11/30/17 | 02/01/16 | 12/01/15 | MISC RECEIPT | 5249.45 | 0.00 | 0.00 | 0.00 | 0.00 | 5249.45 | N |
| 11/30/17 | 11/30/17 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | -15437.55 | 0.00 | 0.00 | |
| 12/01/17 | 12/01/17 | 12/01/15 | MISC RECEIPT | 10188.10 | 0.00 | 0.00 | 15437.55 | 0.00 | -5249.45 | N |
| 12/01/17 | 12/01/17 | 12/01/15 | MISC RECEIPT | -10188.10 | 0.00 | 0.00 | -15437.55 | 0.00 | 5249.45 | N |
| 12/01/17 | 12/01/15 | 12/01/15 | MISC RECEIPT | 10188.10 | 0.00 | 0.00 | 15437.55 | 0.00 | -5249.45 | N |
| 12/01/17 | 12/01/15 | 12/01/15 | MISC RECEIPT | -10188.10 | 0.00 | 0.00 | -15437.55 | 0.00 | 5249.45 | N |
| 12/04/17 | 12/04/17 | 12/01/15 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 514.67 | F |
| 12/08/17 | 10/13/17 | 12/01/15 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 12/12/17 | 12/12/17 | 12/01/15 | MISC RECEIPT | 1550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1550.00 | N |
| 01/18/18 | 01/14/18 | 12/01/15 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 02/15/18 | 02/15/18 | 12/01/15 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 02/16/18 | 02/16/18 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | -23783.96 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/16/18 | 02/16/18 | 12/01/15 | ADMIN ADJUSTMENT | 0.00 | 0.00 | 0.00 | 8363.49 | 0.00 | 0.00 | |
| 02/23/18 | 02/23/18 | 06/01/17 | MISC RECEIPT | -1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1600.00 | N |
| 02/26/18 | 02/24/18 | 06/01/17 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 02/28/18 | 02/28/18 | 06/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/28/18 | 02/24/18 | 07/01/17 | PAYMENT | 0.00 | 96.64 | 754.30 | 589.50 | 0.00 | -1440.44 | N |
| 02/28/18 | 02/24/18 | 08/01/17 | PAYMENT | 0.00 | 97.21 | 753.73 | 589.50 | 0.00 | -1440.44 | N |
| 02/28/18 | 02/24/18 | 09/01/17 | PAYMENT | 0.00 | 97.77 | 753.17 | 589.50 | 0.00 | -1440.44 | N |
| 02/28/18 | 02/28/18 | 09/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/28/18 | 02/28/18 | 09/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 10/01/17 | PAYMENT | 1440.44 | 98.34 | 752.60 | 589.50 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 11/01/17 | PAYMENT | 1440.44 | 98.92 | 752.02 | 589.50 | 0.00 | 0.00 | |
| 02/28/18 | 02/15/18 | 12/01/17 | PAYMENT | 1440.44 | 99.49 | 751.45 | 589.50 | 0.00 | 0.00 | |
| 02/28/18 | 02/28/18 | 12/01/17 | MISC RECEIPT | 1356.81 | 0.00 | 0.00 | 0.00 | 0.00 | 1356.81 | N |
| 02/28/18 | 02/28/18 | 12/01/17 | MISC RECEIPT | -5678.13 | 0.00 | 0.00 | 0.00 | 0.00 | -5678.13 | N |
| 03/15/18 | 03/15/18 | 12/01/17 | MISC RECEIPT | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | N |
| 03/15/18 | 03/15/18 | 12/01/17 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |

**B=** _Buydown/Subsidy_          **F=** _Fee Payment_          **L=** _Late Charges_          **N=** _Unapplied_

11/21/18                                        Account Number 1461138046

CHERYL L DECLOUET

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other | |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/16/18 | 03/16/18 | 12/01/17 | MISC RECEIPT | -20.00 | 0.00 | 0.00 | 0.00 | 0.00 | -20.00 | N |
| 03/16/18 | 03/16/18 | 12/01/17 | FEE PAID | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | F |
| 03/16/18 | 03/16/18 | 12/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03/19/18 | 03/15/18 | 01/01/18 | PAYMENT | 0.00 | 100.07 | 750.87 | 589.50 | 0.00 | -1440.44 | N |
| 03/22/18 | 03/15/18 | 12/01/17 | PAYMENT | 0.00 | -100.07 | -750.87 | -589.50 | 0.00 | 1440.44 | N |
| 03/22/18 | 03/22/18 | 12/01/17 | MISC RECEIPT | -1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1600.00 | N |
| 03/22/18 | 03/22/18 | 12/01/17 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | F |
| 03/23/18 | 03/23/18 | 12/01/17 | MISC RECEIPT | 1600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1600.00 | N |
| 03/23/18 | 03/23/18 | 12/01/17 | FEE BILLED | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 384.40 | F |
| 03/26/18 | 03/26/18 | 12/01/17 | MISC RECEIPT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 03/28/18 | 03/26/18 | 01/01/18 | PAYMENT | 0.00 | 100.07 | 750.87 | 589.50 | 0.00 | -1440.44 | |
| 04/16/18 | 03/26/18 | 02/01/18 | PAYMENT | 1440.44 | 100.66 | 750.28 | 589.50 | 0.00 | 0.00 | |
| 04/16/18 | 03/26/18 | 02/01/18 | MISC RECEIPT | -1280.88 | 0.00 | 0.00 | 0.00 | 0.00 | -1280.88 | N |
| 04/16/18 | 04/16/18 | 02/01/18 | MISC RECEIPT | -159.56 | 0.00 | 0.00 | 0.00 | 0.00 | -159.56 | N |
| 04/17/18 | 04/14/18 | 03/01/18 | PAYMENT | 1612.38 | 101.25 | 749.69 | 761.44 | 0.00 | 0.00 | |
| 04/17/18 | 04/14/18 | 03/01/18 | MISC RECEIPT | -12.38 | 0.00 | 0.00 | 0.00 | 0.00 | -12.38 | N |
| 05/15/18 | 05/15/18 | 04/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 05/15/18 | 05/15/18 | 04/01/18 | PAYMENT | 1612.38 | 101.84 | 749.10 | 761.44 | 0.00 | 0.00 | |
| 06/15/18 | 06/15/18 | 05/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 06/15/18 | 06/15/18 | 05/01/18 | PAYMENT | 1612.38 | 102.43 | 748.51 | 761.44 | 0.00 | 0.00 | |
| 07/12/18 | 07/12/18 | 05/01/18 | ESCROW DISBURSEMENT | -2799.82 | 0.00 | 0.00 | -2799.82 | 0.00 | 0.00 | |
| 07/13/18 | 07/13/18 | 06/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 07/13/18 | 07/13/18 | 06/01/18 | PAYMENT | 1612.38 | 103.03 | 747.91 | 761.44 | 0.00 | 0.00 | |
| 07/13/18 | 07/13/18 | 06/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 08/15/18 | 08/15/18 | 07/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 08/15/18 | 08/15/18 | 07/01/18 | PAYMENT | 1609.76 | 103.63 | 747.31 | 761.44 | 0.00 | -2.62 | N |
| 08/15/18 | 08/15/18 | 07/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 09/13/18 | 09/13/18 | 08/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 09/13/18 | 09/13/18 | 08/01/18 | PAYMENT | 1609.76 | 104.23 | 746.71 | 761.44 | 0.00 | -2.62 | N |
| 09/13/18 | 09/13/18 | 08/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 10/13/18 | 10/13/18 | 09/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 10/13/18 | 10/13/18 | 09/01/18 | PAYMENT | 1609.76 | 104.84 | 746.10 | 761.44 | 0.00 | -2.62 | N |
| 10/13/18 | 10/13/18 | 09/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 | N |
| 11/14/18 | 11/14/18 | 10/01/18 | UNCOLL LATE CHARGE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -42.54 | L |
| 11/14/18 | 11/14/18 | 10/01/18 | PAYMENT | 1609.76 | 105.45 | 745.49 | 761.44 | 0.00 | -2.62 | N |

B= _Buydown/Subsidy_          F= _Fee Payment_          L= _Late Charges_          N= _Unapplied_

11/21/18                                    Account Number 1461138046

CHERYL L DECLOUET

| Posting Date | Effective Date | Paid To Date | Transaction Description | Total Amount | Principal | Interest | Escrow | Insurance | Other |
|---|---|---|---|---|---|---|---|---|---|
| 11/14/18 | 11/14/18 | 10/01/18 | MISC RECEIPT | 2.62 | 0.00 | 0.00 | 0.00 | 0.00 | 2.62 N |

B= *Buydown/Subsidy*          F= *Fee Payment*          L= *Late Charges*          N= *Unapplied*

NATC RF# TX0670 61358- MP

**ELECTRONICALLY RECORDED** 200600294226
DT    19 PGS

After Recording Return To:
UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC
311 PARK PLACE BOULEVARD, SUITE 500 - SECONDARY MARKETING OPS
CLEARWATER, FLORIDA 33759-3999
Loan Number: 0005779269

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

**MIN:** 100059600057792694

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM
THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:
YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  JULY 27, 2006                    , together
with all Riders to this document.
(B)  "Borrower" is   CHERYL L DECLOUET, AN UNMARRIED WOMAN

Borrower is the grantor under this Security Instrument.
(C)  "Lender" is   UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC

Lender is a  FLORIDA LIMITED LIABILITY COMPANY                              organized
and existing under the laws of   FLORIDA
Lender's address is   700 NW 107TH AVENUE, 3RD FLOOR, MIAMI, FLORIDA
33172-3139

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D)  "Trustee" is   SCOTT R. VALBY

Trustee's address is   1700 WEST LOOP SOUTH, SUITE 260, HOUSTON, TEXAS
77027

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                Page 1 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

Tx30441.mad.1.tem

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated JULY 27, 2006
The Note states that Borrower owes Lender ONE HUNDRED TWENTY-THREE THOUSAND NINE HUNDRED FIFTY AND 00/100 Dollars (U.S. $ 123,950.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 1, 2036 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☒ Planned Unit Development Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Second Home Rider
☐ Condominium Rider            ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 2 of 15

DocMagic *EFamma* 800-649-1362
www.docmagic.com

Tx30442.mzd.2.tem

Exhibit "II" - Page 52 of 101

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY         of         DALLAS
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

LOT 21, BLOCK J, LAKEWOOD PHASE FIVE, AN ADDITION TO THE CITY OF GRAND PRAIRIE, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT RECORDED IN COLUME 2005182, PAGE 24, MAP/PLAT RECORDS, DALLAS COUNTY, TEXAS.

which currently has the address of         1328 CLEARWATER DRIVE
[Street]

GRAND PRAIRIE      , Texas  75052  ("Property Address"):
[City]        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01        Page 3 of 15        DocMagic *eFarms* 800-649-1362
                      www.docmagic.com

Tx30443.mzd.3.tem

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 4 of 15

DocMagic ℰℱⓇⓞⓡⓜⓢ 800-649-1362
www.docmagic.com

Tx30444.sud.4.um

Exhibit "II" - Page 54 of 101

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                         Page 5 of 15

DocMagic *eRewww* 800-649-1362
*www.docmagic.com*

Tx30445.mzd.5.tem

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower. Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 6 of 15

DocMagic EForms 800-649-1362
www.docmagic.com

Tx30440.mzd.6.tem

Exhibit "II" - Page 56 of 101

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 7 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx3044T.czzd.7.tem

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 8 of 15                          DocMagic ℰℱℴ⚹⚹⚹⚹ 800-649-1362
                                                                                                    www.docmagic.com

Tx30448.mzd.8.tem

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01         Page 9 of 15        DocMagic *eRorms* 800-649-1362
www.docmagic.com

Tx30049.mzd.9.tem

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 10 of 15                        DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx3044I0.mzd.10.tem

or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 11 of 15

DocMagic *ERForms* 800-649-1362
www.docmagic.com

Tx304411.mzd.11.tem

Exhibit "II" - Page 61 of 101

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 12 of 15                        DocMagic *eRauma* 800-649-1362
                                                                                         www.docmagic.com

Tx304412.mzd.12.tem

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

    **26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

    **27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒  Purchase Money.
    The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐  Owelty of Partition.
    The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐  Renewal and Extension of Liens Against Homestead Property.
    The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐  Acknowledgment of Cash Advanced Against Non-Homestead Property.
    The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

    **28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 13 of 15

DocMagic *eRarms* 800-649-1362
www.docmagic.com

Tx304413.mzd.13.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CHERYL L DECLOUET          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Witness:

_____

Witness:

_____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                    Page 14 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx3044l4.mzd.14.tem

The State of Texas
County of   DALLAS

Before me,  *the undersigned*
on this day personally appeared   CHERYL L DECLOUET

known to me (or proved to me on the oath of ———
or through *drivers license ID*                                                        )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.
Given under my hand and seal of office this   31   day of *July, 2006*

REXANNE McCAULEY
Notary Public
State of Texas
Comm. Expires 09-22-2009

Notary Public Signature

(Seal)

My commission expires:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                            Page 15 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Tx304415.mzd.15.tem

Loan Number: 0005779269

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    27th    day of JULY, 2006          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to   UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, A FLORIDA LIMITED LIABILITY COMPANY (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1328 CLEARWATER DRIVE, GRAND PRAIRIE, TEXAS 75052
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

LAKEWOOD PHASE FIVE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

---

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                 Page 1 of 3

DocMagic EForms 800-649-1362
www.docmagic.com

Us315O1.rid.1.tem

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.   Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                              Page 2 of 3

*DocMagic* €Fѕ₀₀₀₀₀₀  800-649-1362
www.docmagic.com

Us3150.rid.2.tem

Exhibit "II" - Page 67 of 101

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
CHERYL L DECLOUET        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                              Page 3 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

Us3150.rid.3.xsm

BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

**BSI** Financial
Services

11/20/18

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052
Loan Number: 1461138046

Property Address: 1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

Dear CHERYL L DECLOUET :

Thank you for your inquiry about reinstatement of this loan. This statement is only valid for the name(s) and property address indicated above. Please contact our office immediately if you have received a reinstatement quote for the incorrect party or property.

The total amount due is broken down in the reinstatement calculation below. Please be advised that these figures are good through 12/19/18. Your loan is currently paid through 10/01/18. Upon receipt of the reinstatement amount of $6,145.53, your loan will be current and your next payment due date will be 01/01/19. **Any default or foreclosure activity, including potential sale of the property, will continue until the loan is fully reinstated or paid-in-full.**

| PAYMENTS DUE THROUGH 12/19/18 | $3,224.76 |
|---|---|
| UNPAID LATE FEES | $382.86 |
| UNPAID FEES | $2,540.53 |
| ESCROW ADVANCES | $0.00 |
| PENDING ATTORNEY FEES & COSTS | $0.00 |
| UNCOLLECTED INTEREST | $0.00 |
| UNAPPLIED FUNDS (CREDIT) | $( -2.62) |
| TOTAL AMOUNT TO REINSTATE LOAN IN FULL ON 12/19/18 | $6,145.53 |

    * Only applicable if the reinstatement is not received prior to payment due date and/or end of grace period for the applicable payment.

The amount owed may change between the date of this letter and the date that the loan is reinstated. **Please contact BSI Financial Services within 48 hours of when you intend to reinstate to verify the current reinstatement amount.** Additionally, reinstatement figures will be adjusted if any check or money order previously received is rejected by the institution upon which it is drawn.

Please submit your reinstatement payment via certified funds or wire transfer to **BSI Financial Services. CERTIFIED FUNDS OR WIRE TRANSFERS MUST BE RECEIVED BY OUR OFFICE BY 3:30 P.M. (EST) ON A NORMAL BUSINESS DAY (MONDAY THROUGH FRIDAY) TO BE**

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

**CREDITED THAT DAY.** Funds received after 3:30 P.M. (EST) on 12/19/18 will require a new reinstatement quote.

Mail Certified Funds to:     **BSI FINANCIAL SERVICES**
314 S. FRANKLIN STREET/P.O. BOX 517
TITUSVILLE, PA 16354
**ATTN: Loan Operations**

Wire the funds using the following information:

Beneficiary:     **BSI Payment In Process Clearing Acct**
Texas Capital Bank
2000 McKinney Ave, Suite 700
Dallas, TX 75201
ABA: **111017979**
Account Number: **2111020455**
Final Credit To: **Payments** / Cashiering
Reference Information: Customer name, loan number and/or property address

- YOU MAY REINSTATE YOUR LOAN AT ANY TIME WITHOUT PENALTY. HOWEVER, ISSUANCE OF THIS STATEMENT DOES NOT SUSPEND YOUR CONTRACTUAL REQUIREMENT TO MAKE THE MORTGAGE PAYMENTS WHEN THEY ARE DUE.

- IF YOUR LOAN IS IN DEFAULT, FORECLOSURE ACTIVITY, INCLUDING ANY SALE OF THE PROPERTY, WILL CONTINUE UNTIL THE LOAN IS FULLY REINSTATED OR PAID IN FULL.

- IF YOU HAVE FILED A BANKRUPTCY PETITION AND THERE IS EITHER AN "AUTOMATIC STAY" IN EFFECT IN YOUR BANKRUPTCY CASE OR YOU HAVE RECEIVED A DISCHARGE OF YOUR PERSONAL LIABILITY FOR THE OBLIGATION IDENTIFIED IN THIS LETTER, WE MAY NOT AND DO NOT INTEND TO PURSUE COLLECTION OF THAT OBLIGATION FROM YOU PERSONALLY. IF THESE CIRCUMSTANCES APPLY, THIS NOTICE IS NOT AND SHOULD NOT BE CONSTRUED TO BE A DEMAND FOR PAYMENT FROM YOU PERSONALLY. UNLESS THE BANKRUPTCY COURT HAS ORDERED OTHERWISE, PLEASE ALSO NOTE THAT DESPITE ANY SUCH BANKRUPTCY FILING, WHATEVER RIGHTS THE OWNER OF THE LOAN HOLDS IN THE PROPERTY THAT SECURES THE OBLIGATION REMAINS UNIMPAIRED.

If you have any questions or concerns, please feel free to call us to speak with a Customer Care representative, toll-free at 1-800-327-7861. Our office hours are Monday through Friday 8:00 a.m. - 11:00 p.m. (ET) and Saturday 8:00 a.m. - 12:00 p.m. (ET).

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



BSI Financial Services
314 S Franklin St. / Second Floor PO Box 517
Titusville PA 16354
Toll Free: 800-327-7861
Fax: 814-217-1366
Myloanweb.com/BSI

Sincerely,
BSI Financial Services
NMLS # 38078; # 1195811

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

T05_T28-08092017_CA03292017

**Licensed as Servis One, Inc. dba BSI Financial Services.**

BSI Financial Services NMLS # 38078.  Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
888-738-5873
814-217-1366 Fax
www.bsifinancial.com

August 24, 2017 <sup>22</sup>

Sent via First Class Mail

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

New Account Number: 1461138046
Old Account Number: 138046

### NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred to BSI Financial Services, ("BSI Financial"), effective 08/17/2017. The transfer of servicing does not affect any term or condition of the mortgage loan other than terms directly related to the servicing of the loan.

Fay Servicing, LLC, your prior servicer, was collecting your payments. Fay Servicing, LLC, will not accept any payments received by you after the day preceding 08/17/2017.

As your new servicer, BSI Financial will start accepting payments received from you on or after 08/17/2017.

BSI Financial will collect your payments going forward. As your new servicer, BSI Financial will start accepting payments received from you on or 08/17/2017.

**Send all payments due on or after 08/17/2017 to BSI Financial at this address:**
**BSI Financial Services**
PO Box 679002
Dallas, TX 75267

If you have any questions for either your prior servicer, Fay Servicing, LLC, or your new servicer BSI Financial, about your mortgage loan or this transfer, please contact them using the information below:

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Page **1** of **10**

| Servicemembers Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Exp 11/30/2014 |
|---|---|---|

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?
- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps, and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?
- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?
- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. [Note: Lender should place its name, address, and contact information here.]

Servis One, Inc. d.b.a. BSI Financial Services, Inc 314 South Franklin St. Titusville, PA 16354  1-800-327-7861

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form HUD-92070
(02/2013)

**TYPICAL SERVICING-RELATED FEES THAT BSI MAY CHARGE BORROWERS**

Below is a list of standard or common fees that BSI Financial Services ("BSI") may charge you, the borrower, depending on the services you request or the loan servicing activity that we perform and with respect to which we are entitled by applicable law or the loan documents to charge a fee. In some cases, BSI may retain the fee and in others the fee may be a pass-through fee that BSI pays to a third party vendor. In the case of a pass-through fee, BSI will never charge a borrower more money than it is charged by a third party vendor to perform the particular service. Actual fees may vary depending upon the terms of your loan documents, and are subject to all applicable laws and regulations.

**IMPORTANT NOTE:** This list does not include all fees and costs that may be charged for certain services that may be rendered to BSI, but charged to the borrower in connection with a bankruptcy or foreclosure or other litigation or default situation, including, but not limited to, foreclosure costs, bankruptcy fees, attorneys' fees, and court costs.

**Payment Processing Related Fees and Costs**

| Type | Description | Amount or Range of Charge |
|---|---|---|
| Late Charge | A fee for failure to make an installment payment on time due to a payment not being received within the grace period as specified in the mortgage loan documents. | 5% of Principal & Interest or as otherwise permitted by the terms of the loan documents and/or state law. |
| NSF/Returned/Dishonored Check Fee | The fee that BSI will assess in the instance of a returned check or a rejected electronic payment due to insufficient funds. | $0.00 - $50.00 (varies by state). |
| Pay-By-Phone | Fee charged to allow payment on the phone with a live Loan Servicing Agent. | $20.00 or as permitted by state law. |

**Mortgage & Default-Related Fees and Costs**

| Type | Description | Amount Charge / Range |
|---|---|---|
| Appraisal | Fee charged by a professional, certified residential real estate appraiser to determine the market value of a mortgaged property, which includes an interior inspection of the dwelling. | Varies – typically $350.00 - $550.00. |
| Broker Price Opinion (BPO) | Fee charged by a real estate broker or other qualified individual to determine the estimated value of a property. | $75.00 - $125.00 or as otherwise permitted by state law |
| Document Recording Fee | The amount paid to the county recorder's office to make a document a matter of record. | Varies by county |
| Flood Certification | Fee charged by a flood certification vendor to determine if a mortgaged property is located in a flood zone. | $8.00 - $16.00 per certification |
| Lien Release Preparation Fee (pass-through by a third party) | Fee collected to prepare the documents to satisfy or release the lien. | $54.00 or as permitted by state law |

| Type | Description | Amount Charge / Range |
|------|-------------|----------------------|
| Lien Release Fee | Fee collected to record the documents to satisfy or release the lien. | Varies by County |
| Partial Release | Charge for processing the release of a portion of the mortgaged property. | $500.00 for loans with a UPB <= $750,000; $1,000 for others |
| Priority Processing (Overnight Delivery) | Fee charged if customer requests expedited service. | $0.00 - $15.00 |
| Property Preservation Fee | Fee charged by third party vendor to ensure that the condition and appearance of the mortgage property are maintained satisfactorily, as authorized in the mortgage. | $0.00 to $2500; and $0.00 to $110.00 for grass cuts |
| Subordination Agreements | An expense charged to the borrower to have the subordination prepared and submitted for investor approval. This fee is charged for the submission and is not dependent on approval or denial. | $500.00 |
| Title Search | Fee charged by a title company or title search provider to conduct a detailed examination of the land records and report the state of the title (that is, what liens and encumbrances affect the mortgaged property). | $0.00 - $500.00 |




MIN: 100059600057792694      **NOTE**      Loan Number: 0005779269

JULY 27, 2006          IRVING          TEXAS
[Date]                 [City]              [State]

1328 CLEARWATER DRIVE, GRAND PRAIRIE, TEXAS 75052
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 123,950.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, A FLORIDA LIMITED LIABILITY COMPANY
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     7.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st. day of each month beginning on SEPTEMBER 1 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 200 NW 107TH AVENUE, 3RD FLOOR, MIAMI, FLORIDA 33172-3139
or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 856.10

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01            Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us32001.not.1.tem



and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of     15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01         Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3200.2.ool.2.tem

Exhibit "II" - Page 77 of 101



the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

      If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
CHERYL J DECLOUET    -Borrower                             -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                             -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                             -Borrower

*[Sign Original Only]*

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01             Page 3 of 3

DocMagic *eForms*  800-649-1362
www.docmagic.com

Us3200.ool.3.tem

Greenpoint Mortgage Funding, Inc.

Pay to the order of

without recourse
Universal American Mortgage Company, LLC

Brenda Henry, Assistant Secretary

WITHOUT RECOURSE
PAY TO THE ORDER OF:

GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President

**Annual Escrow Account**
**Disclosure Statement**

314 S. Franklin Street, 2nd Floor
P.O. Box 517
Titusville, PA 16354
1-800-327-7861
https://myloanweb.com/BSI

ACCOUNT NUMBER: 1461138046

004

DATE: 11/22/17

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

PROPERTY ADDRESS

1328 CLEARWATER DR
GRAND PRAIRIE, TX 75052

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED. THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED ESCROW ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING 01/01/2018 THROUGH 12/31/2018.

**-------- ANTICIPATED PAYMENTS FROM ESCROW 01/01/2018 TO 12/31/2018 --------**

| | |
|---|---|
| HOMEOWNERS INS | $2,298.62 |
| COUNTY TAX | $4,487.32 |
| TOTAL PAYMENTS FROM ESCROW | $6,785.94 |
| MONTHLY PAYMENT TO ESCROW | $565.49 |

**----- ANTICIPATED ESCROW ACTIVITY 01/01/2018 TO 12/31/2018 --------**

| | ANTICIPATED PAYMENTS | | | ESCROW BALANCE COMPARISON | |
|---|---|---|---|---|---|
| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | ANTICIPATED | REQUIRED |
| | | | STARTING BALANCE --> | $2,965.88 | $5,052.81 |
| JAN | $565.49 | $4,487.32 | COUNTY TAX      L1-> | $955.95- | L2-> $1,130.98 |
| FEB | $565.49 | | | $390.46- | $1,696.47 |
| MAR | $565.49 | | | $175.03 | $2,261.96 |
| APR | $565.49 | | | $740.52 | $2,827.45 |
| MAY | $565.49 | | | $1,306.01 | $3,392.94 |
| JUN | $565.49 | | | $1,871.50 | $3,958.43 |
| JUL | $565.49 | $2,298.62 | HOMEOWNERS INS | $138.37 | $2,225.30 |
| AUG | $565.49 | | | $703.86 | $2,790.79 |
| SEP | $565.49 | | | $1,269.35 | $3,356.28 |
| OCT | $565.49 | | | $1,834.84 | $3,921.77 |
| NOV | $565.49 | | | $2,400.33 | $4,487.26 |
| DEC | $565.49 | | | $2,965.82 | $5,052.75 |

**--------- DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE --------**

IF THE ANTICIPATED LOW POINT BALANCE (L1) IS LESS THAN THE REQUIRED BALANCE (L2), THEN YOU HAVE AN ESCROW SHORTAGE. **YOUR ESCROW SHORTAGE IS $2,086.93.**

**CALCULATION OF YOUR NEW PAYMENT**

| | |
|---|---|
| PRIN & INTEREST | $856.10 |
| ESCROW PAYMENT | $565.49 |
| SHORTAGE PYMT | $173.91 |
| **NEW PAYMENT EFFECTIVE 01/01/2018** | **$1,595.50** |

YOUR ESCROW CUSHION FOR THIS CYCLE IS $1,130.98.

********** Continued on reverse side ************

-----------------------------------------------------------


BSI Financial Services

Loan Number: 1461138046
Statement Date: 11/22/17
Escrow Shortage: $2,086.93

**Important: Please return this coupon with your check.**

**BSI FINANCIAL SERVICES**
314 S. Franklin Street, 2nd Floor
P.O. Box 517
Titusville, PA 16354

**Escrow Payment Options**

I understand that my taxes and/or insurance has increased and that my escrow account is short $2,086.93. I have enclosed a check for:

☐ **Option 1:** $2,086.93, the total shortage amount. I understand that if this is received by 01/01/2018 my monthly mortgage payment will be $1,421.59 starting 01/01/2018.

☐ **Option 2:** $_____, part of the shortage. I understand that the rest of the shortage will be divided evenly and added to my mortgage payment each month.

☐ **Option 3:** You do not need to do anything if you want to have all of your shortage divided evenly among the next 12 months.

Please make you check payable to: **BSI FINANCIAL SERVICES** and please include your loan number on your check.

Licensed as Servis One, Inc. dba BSI Financial Services. BSI Financial Services NMLS# 38078. Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (#008681).

********** Continued from front **********

| ACCOUNT HISTORY |
|---|

THIS HISTORY STATEMENT COMPARES YOUR PRIOR ANALYSIS CYCLE PROJECTED ESCROW ACTIVITY TO THE ACTUAL ESCROW ACTIVITY BEGINNING 01/01/2017 AND ENDING 12/31/2017. IF YOUR LOAN WAS PAID-OFF, ASSUMED OR TRANSFERRED DURING THIS PRIOR CYCLE, OR THE COMPUTATION YEAR IS BEGING CHANGED, ACTUAL ACTIVITY STOPS AT THAT POINT. THIS STATEMENT IS INFORMATION ONLY AND REQUIRES NO ACTION ON YOUR PART.

YOUR PAYMENT BREAKDOWN AS OF 01/01/2017 IS:

| PRIN & INTEREST | $856.10 |
|---|---|
| ESCROW PAYMENT | $803.63 |
| BORROWER PAYMENT | $1,659.73 |

| | PAYMENTS TO ESCROW | | PAYMENTS FROM ESCROW | | ESCROW BALANCE | | |
|---|---|---|---|---|---|---|---|
| MONTH | PRIOR PROJECTED | ACTUAL | PRIOR PROJECTED | ACTUAL | DESCRIPTION | PRIOR PROJECTED | ACTUAL |
| | | | | | STARTING BALANCE | $0.00 | $0.00 |
| AUG | $0.00 | $10,662.11 * | | | | $0.00 | A-> $10,662.11- |
| SEP | $0.00 | $470.74 * | | | | $0.00 | $10,191.37- |
| OCT | $0.00 | $470.74 * | | | | $0.00 | $9,720.63- |
| | $0.00 | $9,720.63 | $0.00 | $0.00 | | | |

UNDER FEDERAL LAW, WHEN YOUR ACTUAL ESCROW BALANCE REACHED THE LOWEST POINT, THAT BALANCE WAS TARGETED NOT TO EXCEED 1/6TH OF THE ANNUAL PROJECTED DISBURSEMENTS. YOUR LOAN DOCUMENTS OR STATE LAW MAY SPECIFY THAT YOUR LOWEST BALANCE MUST BE A LOWER AMOUNT THAN THE FEDERAL LAW ALLOWS.

UNDER YOUR MORTGAGE CONTRACT OR STATE OR FEDERAL LAW, YOUR TARGETED LOW POINT BALANCE (T) WAS $0.00. YOUR ACTUAL LOW POINT ESCROW BALANCE (A) WAS $10,662.11-.

BY COMPARING THE ANTICIPATED ESCROW TRANSACTIONS WITH THE ACTUAL TRANSACTIONS YOU CAN DETERMINE WHERE A DIFFERENCE MAY HAVE OCCURRED. AN ASTERISK (*) INDICATES A DIFFERENCE IN EITHER THE AMOUNT OR DATE OF THE PROJECTED ACTIVITY THAT HAS NOT YET OCCURRED DUE TO THE DATE OF THIS STATEMENT.

IF THERE ARE NO PRIOR PAYMENTS TO OR FROM ESCROW SHOWN, THERE WAS NO PRIOR PROJECTION TO WHICH THE ACTUAL ACTIVITY COULD BE COMPARED.

## Determining your Shortage or Surplus
**Shortage:**
Any shortage in your escrow account is usually caused by one the following items:
- An increase, if any, in what was paid for insurance and/or taxes from your escrow account.
- A projected increase in taxes for the upcoming year.
- The number of months elapsed from the time of these disbursements to the new payment effective date.

Shortages are divided evenly of the next twelve months. To reduce the increase in your monthly payment, the shortage can be paid either partially or in full.
**Surplus:**
A surplus in your escrow account is usually caused by one the following items:
- The insurance/taxes paid during the past year were lower than projected.
- A refund was received from the taxing authority or insurance carrier.
- Additional funds were applied to your escrow account.

If your surplus is $50.00 or greater and your loan was contractually current at the time when the analysis was run or calculated, a check will be sent to you. If your surplus is less than $50.00, the funds will be retained in your escrow account.

If you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired

BSI Financial Services
603004_1461138046_000_20180227_0000

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-260-4159 Fax
www.bsifinancial.com

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE TX 75052

YOUR LOAN NUMBER: 1461138046

DATE: 02/27/18

*** ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED. THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED ESCROW ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING 03/18 THROUGH 02/19.

------- ANTICIPATED PAYMENTS FROM ESCROW - 03/18 THROUGH 02/19 -------

| | |
|---|---|
| HOMEOWNERS INS | 2298.62 |
| COUNTY TAX | 4775.44 |
| TOTAL PAYMENTS FROM ESCROW | 7074.06 |
| MONTHLY PAYMENT TO ESCROW | 589.50 (1/12TH OF ABOVE TOTAL) |

------- ANTICIPATED ESCROW ACTIVITY - 03/18 THROUGH 02/19--------

| MONTH | -ANTICIPATED PAYMENTS- TO ESCROW | FROM ESCROW | DESCRIPTION | | -- ESCROW BALANCE COMPARISON -- ANTICIPATED | | REQUIRED |
|---|---|---|---|---|---|---|---|
| | | | ACTUAL STARTING BALANCE | | -2358.06 | | 1768.56 |
| MAR 18 | 589.50 | | | | -1768.56 | | 2358.06 |
| APR 18 | 589.50 | | | | -1179.06 | | 2947.56 |
| MAY 18 | 589.50 | | | | -589.56 | | 3537.06 |
| JUN 18 | 589.50 | | | | -.06 | | 4126.56 |
| JUL 18 | 589.50 | 2298.62 | HOMEOWNERS INS | | -1709.18 | | 2417.44 |
| AUG 18 | 589.50 | | | | -1119.68 | | 3006.94 |
| SEP 18 | 589.50 | | | | -530.18 | | 3596.44 |
| OCT 18 | 589.50 | | | | 59.32 | | 4185.94 |
| NOV 18 | 589.50 | | | | 648.82 | | 4775.44 |
| DEC 18 | 589.50 | | | | 1238.32 | | 5364.94 |
| JAN 19 | 589.50 | 4775.44 | COUNTY TAX | ALP | -2947.62 | RLP | 1179.00 |
| FEB 19 | 589.50 | | | | -2358.12 | | 1768.50 |

------------ DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE (RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS -4126.62.

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS 0.00.

603004_1461138046_000_20180227_0000

```
----------------- CALCULATION OF YOUR NEW PAYMENT AMOUNT -----------------
PRINCIPAL & INTEREST                                        850.94 *
ESCROW (1/12TH OF ANNUAL ANTICIPATED
DISBURSEMENTS AS COMPUTED ABOVE)                            589.50
PLUS: OPTIONAL INSURANCE PREMIUMS                             0.00
PLUS: REPLACEMENT RESERVE OR FHA SVC CHG                      0.00
PLUS: SHORTAGE PAYMENT                                      171.94
MINUS: SURPLUS CREDIT                                         0.00
ROUNDING ADJUSTMENT                                           0.00
MINUS: BUYDOWN/ASSISTANCE PAYMENTS                            0.00

BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 03/01/18    1612.38 *
```

IF YOUR LOAN IS AN ADJUSTABLE RATE MORTGAGE, THE PRINCIPAL & INTEREST PORTION OF YOUR PAYMENT MAY CHANGE WITHIN THIS CYCLE IN ACCORDANCE WITH YOUR LOAN DOCUMENTS.

NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS  1179.00. YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE IS TARGETED TO BE YOUR CUSHION AMOUNT.

YOUR ESCROW CUSHION FOR THIS CYCLE IS  1179.00.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT TO OR DISBURSEMENT FROM ESCROW):

```
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
07/17  589.50
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
07/17  589.50 *  3537.00
00/00    0.00       0.00
00/00    0.00       0.00
```

Licensed as Servis One, Inc. dba BSI Financial Services.

BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).

If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Page 2

C. Daniel Herrin
State Bar No. 24065409
HERRIN LAW, PLLC
4925 Greenville Avenue, Suite 130
Dallas, Texas 75206
(469) 607-8551 Phone
(214) 722-0271 Fax
ATTORNEY FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | **CASE NO. 14-30153-HDH** |
| **CHERYL LYNN DECLOUET** | § | |
| | § | **CHAPTER 13** |
| **Debtor** | § | |

## MOTION TO OBTAIN APPROVAL MORTGAGE LOAN MODIFICATION

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242-1496 BEFORE CLOSE OF BUSINESS ON AUGUST 28, 2017, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE JUDGE  OF THIS COURT:

COMES NOW, **Cheryl Lynn DeClouet,** (hereinafter, "Debtor"), who files this Motion to Obtain Approval of Mortgage Loan Modification, (hereinafter, "Motion"), and would respectfully show the Court as follows:

1.     This Court has jurisdiction over this matter pursuant to 11 U.S.C. §105(a), 28 U.S.C.

§157(b)(1), and 28 U.S.C. §1334.  This matter constitutes a core proceeding as defined by 28 U.S.C. §157(b)(2)(D).

2.    Debtor filed the current petition for relief under Chapter 13 on January 6, 2014.

3.    Debtor has a mortgage with Fay Servicing, LLC.

4.    Debtor and Fay Servicing, LLC have reached an agreement concerning the current Mortgage Loan which is attached hereto and incorporated herein as Exhibit "A".  The Debtor was not charged any fees by Fay Servicing, LLC in association with modifying the Mortgage Loan.

5.    Pursuant to the Mortgage Loan Modification, the mortgage arrears will be subsumed in the refinancing and a plan modification will be required to remove the arrears from the Debtor's Chapter 13 Plan.

6.    Pursuant to Clerk's Notice 09-03, the Debtor has filed amended schedules I & J, attached hereto and incorporated herein as Exhibit "B".

7.    This loan modification is in the Debtor's best interest.  Debtor's prior mortgage contained an original principal balance of $123,950.00 financed over a term of 360 months with a fixed interest rate of 7.375%.  The Debtor's prior mortgage payment totaled $1,326.84 which consisted of a principal and interest payment of $856.10 and an additional escrow payment of $470.74.  Under the new Mortgage Loan Modification, the principal balance will be $129,308.15 amortized over a term of 480 months, payable over a term of 232 months, with a fixed interest rate of 7.000%.  The Debtor's proposed new mortgage payment shall be $1,549.52 which contains a principal and interest payment of $850.94 and an escrow payment of $698.58.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully request the Court to enter an order granting Debtor's Motion and award attorney fees to Debtor's counsel, Herrin Law, PLLC of two hundred and fifty dollars ($250.00) for services rendered in filing this motion, to be paid direct by the Debtor.

Dated: <u>August 2, 2017</u>

Respectfully Submitted,

HERRIN LAW, PLLC

/s/ C. Daniel Herrin
C. Daniel Herrin
State Bar No. 24065409
4925 Greenville Avenue, Suite 130
Dallas, Texas 75206
(469) 607-8551 Phone
(214) 722-0271 Fax
ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2017, a true and correct copy of the

foregoing was served on all parties in interest below and on the attached mailing matrix via

electronic mail or first class mail.

**DEBTOR**:
Cheryl Lynn DeClouet
1328 Clearwater Drive
Grand Prairie, TX 75052

**STANDING CHAPTER 13 TRUSTEE**:
Thomas Powers
123 E. John Carpenter Fwy., Suite 1100
Irving, Texas 75062

**U.S. TRUSTEE**
Rm. 976
1100 Commerce Street
Dallas, TX 75242

By: /s/ C. Daniel Herrin
C. Daniel Herrin
State Bar No. 24065409

Prepared By & Return To:
FAY SERVICING, LLC
MODIFICATION PROCESSING
DEPARTMENT
440 S. LASALLE ST., STE. 2000
CHICAGO, IL 60605

Fay Servicing, LLC Loan No.:

_____[Space Above This Line For Recording Data]_____

MIN:

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

Borrowers ("Borrower"): CHERYL DECLOUET
Lender ("Lender"): PROF-2013-M4 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL
ASSOCIATION, AS LEGAL TITLE TRUSTEE
Mortgage Electronic Registration Sytems, Inc. ("MERS") P.O Box 2026, Flint, MI 48501-2025, tel (888)
679-MERS ("Mortgagee")
Date of first lien Security Instrument ("Security Instrument") and Note ("Note"): July 27, 2006
Property Address ("Property"): 1328 CLEARWATER DR, GRAND PRAIRIE, TX 75052

This Loan Modification Agreement (the "Agreement"), amends and supplements the Security
Instrument and Timely Payment Rewards Rider if any and the Note, bearing the same dates, and secured
by the Security Instrument which covers the Property.  Capitalized terms used in this Agreement and not
defined have the meaning given to them in Loan Documents.

### RECITALS

WHEREAS, Borrower is prepared to make a principal payment of $0.00 and desires a
modification of the Loan Documents, as set forth herein; and

WHEREAS, Lender has agreed to modify the Loan Documents in accordance with the terms and
conditions set forth in this Agreement upon receipt of $0.00 from Borrower; and

Loan Modification Agreement
Proprietary W3078B

Page 1 of 7

Exhibit "A"

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated herein by this reference, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrower agree as follows:

## COVENANTS AND CONDITIONS

1. This Agreement shall become effective and binding upon Lender's receipt and acceptance of:

   a. This Agreement, properly executed by Borrower, no later than **June 29, 2017**.

   b. An ACH payment, certified check, money order, or personal check made payable to **Fay Servicing, LLC** in the amount of $0.00 no later than N/A (the "Good Faith Payment").

2. If the preconditions to the modification set forth in Section 1 have been met, Lender shall modify the Loan Documents as follows:

   a. As of July 1, 2017, the amount payable under the Note and the Security Instrument will be reduced by $0.00. Thereafter, the remaining unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized will be $129,308.15 (the "New Principal Balance").

   b. Lender will amortize $129,308.15 of the New Principal Balance (the "Amortized Principal Balance") and defer the remaining $0.00 of the New Principal Balance until the Maturity Date (the "Deferred Principal Balance").

   c. On **August 1, 2036** (the "Maturity Date"), Borrower promises to pay $82,745.54 (the "Balloon Payment") and $0.00 (the "Deferred Principal Balance") to the order of Lender. If on the Maturity Date, Borrower still owes any amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. Borrower promises to pay the Amortized Principal Balance, plus Interest, together with all payments of taxes, insurance premiums, assessments, impounds, and all other related payments (the "Escrowed Funds") to the order of Lender, beginning on July 1, 2017, and continuing thereafter on the first day of each succeeding month until the Amortized Principal Balance and Interest are paid in full. Interest will begin to accrue on the Amortized Principal Balance at the yearly rate of **7.000%**, beginning on June 1, 2017. The monthly payment will be **$850.94** for Principal and Interest, plus $698.58 for Escrow for a total monthly payment of $1,549.52. Please note, however, that the amount of Borrower's Escrow payment may be adjusted periodically in

accordance with applicable law and, therefore, the total monthly payment may change accordingly.

4. Lender promises to maintain Borrower's Escrowed Funds in a separately managed account and to pay Borrower's related expenses with Borrower's Escrowed Funds. Lender hereby revokes any waiver as to payment of Borrower's Escrow related expenses.

5. If all of any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Loan Documents. Borrower will continue to be obligated under the Loan Documents unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

6. Borrower promises to comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that Borrower is obligated to make under the Security Instrument, however, the following terms and provisions are forever cancelled, null and void, as of the date of this Agreement:

   a. All terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in the Timely Payment Rewards Addendum to Note and Timely Payment Rewards Rider.

By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   b. All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

   a. If Borrower fails to fulfill the preconditions to the modification set forth in Section 1, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided under the Loan Documents.

   b. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   c. All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender.

   d. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents.

   e. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   f. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement and in any Rider attached hereto and executed by Borrower simultaneously herewith.

_____ (Seal)

CHERYL DECLOUET                                    -Borrower
[Printed Name]

## ACKNOWLEDGMENT

State of _Texas_                          §
                                         §
County of _Dallas_                        §

This instrument was acknowledged before me on _June 24, 2017_ by CHERYL DECLOUET.

_____
Signature of Officer

_Sarah Wildes_
Printed Name

_Notary_
Title of Officer

My Commission Expires: _August 11, 2018_

SARAH WILDES
Notary Public, State of Texas
My Commission Expires
August 11, 2018

Loan Modification Agreement
Proprietary W3078B                         Page 5 of 7

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**PROF-2013-M4 LEGAL TITLE TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE
TRUSTEE**

By: _____    _____    _____
    **FAY SERVICING, LLC**             -Lender      Date of Lender's Signature

## ACKNOWLEDGMENT

State of _____        §

County of _____    §

      This instrument was acknowledged before me on _____ BY FAY
SERVICING, LLC as MODIFICATION PROCESSING DEPARTMENT of PROF-2013-M4 LEGAL TITLE
TRUST II, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE.

                            _____
                            Signature of Notary Public

                            _____
                            Printed Name

                            _____
                            Title or Rank

(Seal)                      Serial Number, if any: _____

Loan Modification Agreement
Proprietary W3078B                Page 6 of 7

**MERS**

_____

Mortgage Electronic Registration Systems, Inc. - Nominee for Lender

## ACKNOWLEDGMENT

State of _____                                          §
                                                             §
County of _____                                        §

    The foregoing instrument was acknowledged before me on _____ by
_____ , as _____ of _____
a _____ corporation, on behalf of the corporation.

_____
Signature of Person Taking Acknowledgment

_____
Printed Name

_____
Title or Rank

(Seal)              Serial Number, if any: _____

Loan Modification Agreement
Proprietary W3078B              Page 7 of 7

**BSI** *Financial*
*Services*

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

Sent via First Class Mail

November 1, 2018

Herrin Law
Attn: C. Daniel Herrin
4925 Greenville Ave., Suite 455
Dallas, TX 75206

Re:  Certified Mail #:        7014 2870 0000 8992 4720
     Borrower:              Cheryl L. DeClouct
     Account #:             1461138046
     Property address:      1328 Clearwater Drive
                            Grand Prairie, TX 75052

Dear C. Daniel Herrin,

I am writing in response to your inquiry concerning the above referenced account.

The owner or assignee of the loan referenced above is:

U.S. Bank Trust National Association as
Trustee of Igloo Series III Trust
7144 East Stetson Drive, Suite 410
Scottsdale, AZ 85251

**Please be advised that all questions concerning your loan account should be directed to BSI Financial Services at the number below and not to the owner or assignee of the loan. The owner or assignee of the loan does not have access to information relating to the administration of your loan and will not be able to answer most loan-related questions.**

Licensed as Servis One, Inc. in Florida and as Servis One, Inc. dba BSI Financial Services in all other jurisdictions in which we conduct business.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

**Page 1 of 2**

**BSI Financial Services**

314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

**X** Additional information was requested in your correspondence. We will respond in a separate letter once we have completed our research.

☐ No additional research is required. This completes our response to your request.

Should you have any questions regarding this matter, please contact BSI Financial Services at 1-800-327-7861.

HOURS:
> Monday – Friday 8:00 am to 11:00 pm (ET)
> Saturday 8:00 am to 12:00 pm (ET)

If you wish to send a further request for information or a notice of error, please address your letter to:

BSI Financial Services
Attn: Qualified Written Requests
PO Box 517
314 S Franklin Street
Titusville, PA 16354

Sincerely,

Valerie George
Complaint Resolution Specialist
BSI Financial Services
NMLS # 38078; # 126672

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Licensed as Servis One, Inc. in Florida and as Servis One, Inc. dba BSI Financial Services in all other jurisdictions in which we conduct business.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839.
Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

**Page 2 of 2**



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

<u>Sent via First Class Mail</u>

October 23, 2018

Herrin Law
Attn: C. Daniel Herrin
4925 Greenville Ave., Suite 455
Dallas, TX 75206

Re:     Certified Mail #:     7014 2870 0000 8992 4720
        Borrower:     Cheryl L. DeClouet
        Account #:     1461138046
        Property address:     1328 Clearwater Drive
                                Grand Prairie, TX 75052

Dear C. Daniel Herrin,

I am writing in response to your inquiry concerning the above referenced account. Please see the enclosed payoff statement good through 11/22/18. Please contact our office at 1-800-327-7861 two business days prior to remitting payoff funds to confirm the payoff amount.

We are in the process of reviewing the other requests contained in your inquiry and will provide a response to those requests within the timelines permitted by law.

Should you have any questions regarding this matter, please contact BSI Financial Services at 1-800-327-7861.

HOURS:
       Monday – Friday 8:00 am to 11:00 pm (ET)
       Saturday 8:00 am to 12:00 pm (ET)

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839. Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



314 S Franklin St / Second Floor
PO Box 517
Titusville PA 16354
800-327-7861
814-217-1366 Fax
www.bsifinancial.com

Sincerely,

Valerie George
Complaint Resolution Specialist
BSI Financial Services
NMLS # 38078; # 126672

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. – Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to
12:00 pm (ET). Colorado Office Location: 13111 E. Briarwood Ave., Suite 340, Centennial, CO 80112 (303) 309-3839.
Licensed as a Debt Collection Agency by the New York City Department of Consumer Affairs, (# 2001485-DCA). North
Carolina Collection Agency Permit (# 105608).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have
received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend
to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and
should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered
otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that
secures the obligation remain unimpaired.

 **BSI Financial Services**

BSI Financial Services
314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
Toll Free 800-327-7861
Fax 814-217-1366
www.bsifinancial.com

October 22, 2018

CHERYL L DECLOUET
1328 CLEARWATER DR
GRAND PRAIRIE      TX 75052

**RE: PAYOFF STATEMENT**
**MORTGAGE LOAN #: 1461138046**
**PROPERTY ADDRESS: 1328 CLEARWATER DR**
**GRAND PRAIRIE      TX 75052**

Thank you for your inquiry regarding a payoff for this mortgage loan.

The total amount required to pay the loan in full is broken down for you in the payoff calculation below and is good through 11/22/18. Please call us if you have any questions.

If your loan is in default, foreclosure activity, including any sale of the property, will continue until the loan is paid in full.

| | |
|---|---:|
| UNMODIFIED UNPAID PRINCIPAL BALANCE | $127,797.80 |
| DEFERRED AMOUNT, IF APPLICABLE | $ 0.00 |
| ESCROW BALANCE (TAXES AND INSURANCE)* | $ 0.00 |
| PRIVATE MORTGAGE INSURANCE (PMI)** | $ 0.00 |
| INTEREST TO 11/22/18 | $2,012.82 |
| PREPAYMENT PENALTY | $ 0.00 |
| UNPAID LATE CHARGE | $ 340.32 |
| UNAPPLIED FUNDS (CREDIT): Partial Payments | -$ 2.62 |
| Bankruptcy Funds | -$ 63.55 |
| | |
| UNPAID FEES | $2,540.53 |
| LIEN RELEASE PREPARATION FEE (PASS-THROUGH BY A THIRD PARTY) | $ 54.00 |
| LIEN RELEASE RECORDING FEE (PAID TO RECORDING OFFICE) | $ 26.00 |
| PAYOFF STATEMENT | $ 0.00 |
| TOTAL AMOUNT TO PAY LOAN IN FULL ON 11/22/18 | $132,705.30 |

*Please note, the Total Amount To Pay Loan in Full may change between the date of this letter and the date that funds are received. If there is activity on your loan that increases the Total Amount To Pay Loan in Full, an updated/amended payoff quote will be sent to the original requestor. Once this update quote is sent, the amount listed above will not be accepted to pay your loan in full. We highly recommend that you call in advance of sending funds to confirm the payoff amount at 1-800-327-7861.*

**These figures may not total correctly if the loan has PMI. If this loan has a positive escrow balance and PMI is due prior to the expiration date of this payoff quote, the PMI amount is listed for your reference and PMI payment will be made using the positive escrow funds available. This PMI amount will not be factored into the total amount due to payoff this loan. The PMI amount will only be factored into the total amount due to payoff this loan if there are*

**Licensed as Servis One, Inc. dba BSI Financial Services**
BSI Financial Services NMLS # 38078
Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an 'automatic stay' in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Page 1 of 3



BSI Financial Services
314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
Toll Free 800-327-7861
Fax 814-217-1366
www.bsifinancial.com

*insufficient funds in the escrow account to pay the PMI installment. The Total Amount to Pay the Loan in Full is the payoff amount listed through the date provided.*

The amount owed may change between the date of this letter and the date that the loan is paid off. The next payment on this loan is due **October 1, 2018.** The scheduled payment is **$1612.38**, which includes a Principal and Interest Payment of **$850.94** and an Escrow Payment of **$761.44.** Additionally, payoff figures will be adjusted if any check or money order previously received is rejected by the institution upon which it is drawn.

Please submit your payoff via **certified funds or wire transfers** to **BSI FINANCIAL SERVICES. CERTIFIED FUNDS OR WIRE TRANSFERS MUST BE RECEIVED BY OUR OFFICE BY 3:30 P.M. (ET) ON A NORMAL BUSINESS DAY (MONDAY THROUGH FRIDAY) TO BE CREDITED THAT DAY.** Funds received after 3:30 P.M. (ET) on **11/22/18** will require additional interest of **$24.8496** per day. Mail Certified Funds to:

> **BSI FINANCIAL SERVICES**
> **314 S. FRANKLIN STREET/P.O. BOX 517**
> **TITUSVILLE, PA 16354**
> **ATTN: CASHIERING**

Wire instructions are as follows:

> Bank: Texas Capital Bank
> Beneficiary: BSI Payment in Process Clearing Account
> 2000 McKinney Ave, Suite 700
> Dallas, TX 75201
> ABA: **111017979**
> Account Number: **2111020455**
> Final Credit To: **Payments/Cashiering**
> Reference Information: Loan Number, Borrower Name and Property address

Failure to include the above information on the wire advice may cause a delay in posting the funds. BSI will not be responsible for any additional interest or fees that may be assessed as a result of incomplete or incorrect wire information. Wire transactions that are received and cannot be identified will be returned to the ABA and account number from which they were received. If you have any questions regarding the wire instructions listed here, **contact our office at 1-800-327-7861.**

- ISSUANCE OF THIS STATEMENT DOES NOT SUSPEND YOUR CONTRACTUAL REQUIREMENT TO MAKE THE MORTGAGE PAYMENTS WHEN THEY ARE DUE. A LATE CHARGE OF **$42.54** WILL BE ADDED TO THE PAYOFF TOTAL IF RECEIVED AFTER THE EXPIRATION OF YOUR GRACE PERIOD.

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078
Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an 'automatic stay' in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.



BSI Financial

Services

BSI Financial Services
314 S Franklin St. / Second Floor
PO Box 517
Titusville, PA 16354
Toll Free 800-327-7861
Fax 814-217-1366
www.bsifinancial.com

- THIS LOAN MUST BE KEPT CURRENT WHILE THIS STATEMENT IS PENDING, OR LATE CHARGES WILL BE ASSESSED.

- IF YOUR LOAN IS IN DEFAULT, FORECLOSURE ACTIVITY, INCLUDING ANY SALE OF THE PROPERTY, WILL CONTINUE UNTIL THE LOAN IS FULLY REINSTATED OR PAID IN FULL.

- AFTER THE FUNDS HAVE BEEN APPLIED AND THE LOAN SHOWS PAID IN FULL, A LIEN RELEASE OR FULL RECONVEYANCE WILL BE PREPARED AND SENT TO THE COUNTY RECORDER WHERE THE PROPERTY IS LOCATED.

- BENEFICIARY OF RECORD: U.S. BANK TRUST NATIONAL ASSOCIATION , AS TRUSTEE OF THE IGLOO SERIES III TRUST

- REPRESENTATIVE/ASSIGNEE/SERVICING AGENT: Servis One, Inc. d/b/a BSI Financial Services

Sincerely,
BSI Financial Services
Payoff Department
NMLS # 38078; 1195811

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

TD4_T75-07272017_CA07262017

Licensed as Servis One, Inc. dba BSI Financial Services
BSI Financial Services NMLS # 38078
Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an 'automatic stay' in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Page 3 of 3